UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>The Budd Company, Inc.<br><br>    Debtor. | Case No. 14bk11873<br><br>Chapter 11<br><br>Judge Jack B. Schmetterer |

## MEMORANDUM OPINION

Before this Court is the Ad Hoc Committee of Asbestos Personal Injury Claimants' (the "Movant") Motion for Order Directing United States Trustee to Appoint an Official Committee of Asbestos Personal Injury Claimants (the "Motion") [Dkt #169]. Pursuant to 11 U.S.C. § 1102(a)(2), the Motion asks the Court for an order directing the United States Trustee ("UST") to appoint an Official Committee of Asbestos Personal Injury Claimants.

The Budd Company, Inc. ("Debtor") filed its objection. Joinders in the Debtor's objection were filed by Thyssenkrupp North America, Inc. ("TKNA") and The Committee of Executive & Administrative Retirees (the "Retiree Committee"). The UST filed a Response to the Motion. Movant also has filed a Reply in Support of its Motion.

For reasons stated below, the Movant's Motion will be granted.

## JURISDICTION

The Court has jurisdiction over this motion under 28 U.S.C. § 1334(a). It is referred here by Internal Operating Procedure 15(a) of the District Court for the Northern District of Illinois. A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A proceeding on a motion to appoint an additional committee under section 1102 arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## UNDISPUTED FACTS

On March 31, 2014, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has a long history of manufacturing related to the automobile, rail and other industries and is a wholly-owned subsidiary of TKNA. However, the Debtor ceased all manufacturing activities in 2006 and is said to have no current employees. The Debtor filed this bankruptcy case in order to liquidate its assets in an orderly manner and dispose of creditor claims. It asserts that its significant case assets likely will be insufficient to satisfy its long-term liabilities, most of which are owed to its retirees.

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") acts as the authorized representative for the Debtor's union retirees, and the Retiree Committee represents the interests of the Debtor's non-union retirees. By letter dated April 16, 2014, counsel for the Movant requested the UST to appoint an official committee of asbestos personal injury claimants. By a letter dated May 7, 2014, the UST declined the Movant's request. The UST has not appointed an official committee of general unsecured creditors.

Although the Debtor has some environmental and asbestos related liabilities, the vast majority of the Debtor's creditors are its former employees, and the vast majority of the Debtor's liabilities (by dollar amount) arise from medical, pension, and other post-retirement obligations owed to its former employees. The Debtor estimates that the retiree benefit and pension obligations for union and non-union retirees comprise approximately 97% of the Debtor's total liabilities. However, the Debtor also estimates the value of its asbestos liabilities to be approximately $23 million net of insurance coverage.

## DISCUSSION

A. Applicable Law

The decision to appoint an additional committee is governed by section 1102(a) of the Bankruptcy Code, which provides as follows:

(1)    As soon as practicable after the order for relief under chapter 11 of this title, the United States Trustee . . . may appoint additional committees of creditors or of equity security holders as the United States Trustee deems appropriate;

(2)    On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure the adequate representation of creditors or of equity security holders. The United States Trustee shall appoint any such committee.

Appointment of an additional committee of creditors or equity holders has been considered by some opinions to be extraordinary relief. 11 U.S.C.A. § 1102(a)(2). *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009); *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D. N.Y. 2006). The movant seeking appointment of an additional committee bears the burden of proving it is not adequately represented by an existing committee. *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D. N.Y. 2002).

The Court has discretion to appoint an additional committee of creditors on a case-by-case basis. *In re Spansion, Inc.*, 421 B.R. at 156. In deciding whether appointment of additional creditors' committee is necessary to ensure adequate representation, courts have considered many and diverse factors: (1) ability of existing committee to function; (2) nature of Chapter 11 case; (3) standing and desires of the various constituencies; (4) ability of creditors to participate in case without an additional committee; (5) delay and additional cost that would result if appointment were granted; (6) tasks that the separate committee would perform; and (7) other factors relevant to adequate representation issue. *In re Residential Capital, LLC*, 480 B.R. 550 (Bankr. S.D. N.Y. 2012). No one factor is dispositive, and the amount of due consideration given to each depends on the circumstances of the particular chapter 11 case. *In re Kalvar Microfilm*, 195 B.R. 599, 601 (Bankr. D.Del. 1996).

Once the Bankruptcy Court has found need for an additional committee in a Chapter 11 case, it must leave the job of naming members of that committee to the United States Trustee. *In re Dow Corning Corp.*, 194 B.R. 121, 146 (Bankr. E.D. Mich. 1996), order rev'd on other grounds, 212 B.R. 258 (E.D. Mich. 1997).

### B. Ability of Official Committee to Function

The Movant argues that all of the other creditors are represented in this case—the UAW acts as the authorized representative for the union retirees, the Retiree Committee represents the interests of non-union retirees, the Pension Benefit Guarantee Corporation (the "PBGC") oversees the interests of the pension claimants, and the U.S. Environmental Protection Agency (the "USEPA") and its state counterparts receive notices on account of each of the Debtor's scheduled environmental liabilities. In this case, the UST has not appointed an official committee of general unsecured creditors[1] and has declined to appoint a separate asbestos committee. Therefore, there is no opportunity to have a representative of the asbestos claimants appointed to an existing committee to represent the interests of ill former employees with asbestos cancer claims or the families of employees who have already died of asbestos-related diseases. *C.f., In re Dana Corp* (where asbestos claimants already had one representative on official creditors' committee and failed to show that diverse composition of committee impaired its ability to function).

### C. Nature of the Case

The Debtor's case presents a single debtor that is 100% owned by TKNA, the parent company. According to Brian Bastien's (CEO and President of Debtor) Declaration [Dkt #14], as of the Petition Date, the Debtor had approximately $384 million in cash and had, as of September 30, 2013, book-value liabilities of approximately $1.2 billion. The Debtor appears to have claims against TKNA to fund pension and health claims and a motion is pending to approve an agreement to resolve these claims.

In its Schedules, Debtor scheduled approximately 578 creditors holding asbestos claims, as disputed, contingent and unliquidated. In Bastien's Declaration, the Debtor notes that there are approximately 356 pending asbestos personal injury claimants with claims valued by Debtor at $23 million net of insurance coverage. In an April 28, 2014 letter, Debtor's counsel states that, as of the Petition Date, the Debtor was a defendant in 336 such actions. However, the Movant states that it

---

[1] The UST states in its Response to Movant's Motion that no creditor, including the Movant, has requested that the UST appoint such a committee.

consists of lawyers representing more than 950 asbestos personal injury claimants holding claims which the Movant asserts to be valued at $50 million. According to the Debtor, "as of September 30, 2013, the book value of its asbestos liabilities comprised less than 2% of the book value of its total liabilities," and "approximately 50% of this book value is a reserve for defense costs." Even at the Movant's estimated value the asbestos claims would be only approximately 4% of the unsecured claims, but they require a reorganization plan to deal in some way with the net value of these claims in excess of insurance coverage.

The UST argues that the asbestos claims are speculative, contingent and unliquidated, and cites to the April 28, 2014 letter from Debtor's counsel as the source for its belief that "historically 95% of such claims have been dismissed without payment and the remaining actions have generally settled for less than $5,000." In the letter cited by the UST, Debtor's counsel states in footnote 1 that "from Budd's 1995 fiscal year to the Petition Date: (a) 42,701 actions asserting asbestos-related tort claims were commenced against Budd; (b) 40,293 of such actions were dismissed without payment; and (c) 2,072 of such actions (the balance of such claims, net of the 336 pending as of the Petition Date) were settled at a total costs of $8,724,668 (or an average of $4,210.75 per action). However, the Debtor does not indicate how many of the claimants whose cases were dismissed had counsel representing them or the basis for such dismissals. Nor does the Debtor report the size of the largest settlements.

### D. The Standing and Desires of the Constituencies

No plan has been filed in this case and at this early state the Debtor has not indicated how it plans to handle the asbestos claims. The Debtor may or may not propose a trust under 11 U.S.C. 524(g). Because this is a liquidating case, the asbestos claims will not "pass through" the bankruptcy to allow the claimants to have the ability to seek recovery from a reorganized Debtor entity. The Debtor must propose some treatment of the asbestos claims.

The Movant asserts that the Debtor has underestimated its asbestos liability, while the Debtor asserts that the Movant has overestimated the Debtor's liability after insurance. As earlier noted, Debtor asserts that the asbestos liability is $23 million "net of insurance;" the Movant's estimate is a net of $50 million. Yet the Debtor has yet to provide any information regarding the insurance policies.

Both the Retiree Committee and UAW have been authorized by this Court to engage experts to aid in determining the value of the claims of the non-union and union interests. If an Asbestos Committee is not appointed to supply one source of input on the net value of asbestos claims and a proposal for plan treatment, the many attorneys representing asbestos claimants are likely to present many arguments and proposals.

At some point during these proceedings, the amount of the asbestos liability will have to be estimated. The Court agrees with the Movant that any legitimate estimate of asbestos liability should be rendered with the help of research by an expert with experience in actuarial science or other expertise.

### E. Ability to Continue Participating and Recover Costs

4

The Movant contends that, absent the formation of an official committee, it will be difficult for asbestos claimants to have any meaningful participation in the case. The Movant cites the claimants' age, health and dispersion across the country as a reason for their inability to individually participate in the case. Finally, the Movant argues that the claimants are of modest means, and while they are able to retain personal injury counsel on a contingent fee basis, they cannot pay the hourly charges of bankruptcy counsel.

The Debtor argues that even without appointment of an official committee, the asbestos claimants may continue to monitor and participate in the case. The Debtor further argues that the Movant members have many years of asbestos litigation experience, and several firms represented by such members have significant experience in Chapter 11 cases as well (citing as examples Steven Kazan as one such member who advertises bankruptcy experience in his firm biography and Peter G. Angelos as one such member involved in a successful bankruptcy appeal before the Second Circuit). Finally, the Debtor contends that there are more than 10,000 retirees who are also elderly and who rely upon the Debtor for their benefits and health care.

But, in contrast to the asbestos claimants, the 10,000 retirees cited by the Debtor have representative voices in the case through the Retiree Committee, the UAW and the PBGC. The Movant is comprised of seven lawyers, but not all attorneys and firms that represent individual asbestos claimants. To require each attorney for all claimants to participate in the case will likely become chaotic and opens the risk of inequitable treatment depending on the sophistication and experience in bankruptcy of the particular counsel. Instead, the Court has determined that it would benefit the asbestos claimants and the bankruptcy process to have one voice represent all asbestos claimants.

F.  Delay or Additional Cost to the Estate

Movant acknowledges that the appointment of an additional committee may result in additional costs to the Debtor's estate, but such appointment likely will also expedite the case, which will result in significant reductions in costs. The Movant also contends that an asbestos committee can analyze and evaluate asbestos-related claims and develop procedures for resolving and paying those claims pursuant to a plan of reorganization and can build a consensus within its constituency for support of such plan.

The Debtor points out that this case is a liquidating case, in which preventing unnecessary attorneys' fees is particularly important because every dollar spent in attorneys' fees is a dollar not available to distribute to creditors. The Debtor again cites *In re Dana Corp.* to support its position that a separate committee should not be appointed. However, unlike in this case, in that case there was an official committee of general unsecured creditors on which there was a party representing the interests of the asbestos claimants.

"The potential added cost is not sufficient in itself to deprive the creditors of the formation of an additional committee if one is otherwise appropriate." *In re Hill Stores, Co.*, 137 B.R. 4, 6 (Bankr. S.D. N.Y. 1992). In this case, the additional cost to be incurred by the Debtors' estate can be justified. Appointing a separate committee for the asbestos claimants will not likely lead to duplicative efforts, especially given that there is no official committee for general unsecured creditors. Limitations on expenses can be put in place to avoid or limit duplicative expenses if requested.

In this case, the professional fees that a separate asbestos committee would incur do not outweigh the benefits of the appointment of such committee.

## CONCLUSION

The determination of whether this Court should order the UST to appoint a separate asbestos committee requires the balancing of the many considerations discussed above. The Movant has met its burden to show that the asbestos claimants are not adequately represented in this case and that the cost to the estate of appointing the proposed committee is justified. Most important is the consideration that an Asbestos Committee will be able to obtain sophisticated expert to supply information helpful in evaluating the necessary plan treatment of asbestos claims.

Therefore, the Motion will be granted by a separate order.

Dated: July 7, 2014

Hon. Jack B. Schmetterer
United States Bankruptcy Judge