**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No. 14 B 11873 |
| | ) | |
| Debtor. | ) | |

**FIFTH AMENDED CHAPTER 11 PLAN FOR THE BUDD COMPANY, INC.**

**DATED MARCH 1, 2016**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARTICLE I. RULES OF INTERPRETATION.................................................................................1
    A.    Rules of Interpretation ..........................................................................................1
    B.    Exhibits ..................................................................................................................1

ARTICLE II. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS .......2
    A.    Summary of Classification and Treatment of Classified Claims and Equity Interests.....................2
    B.    Classification and Treatment of Claims and Equity Interests. .............................3
          1.    Class 1: Non-Tax Priority Claims .........................................................3
          2.    Class 2: Secured Claims .........................................................................3
          3.    Class 3: UAW Retiree Benefits Claims..................................................3
          4.    Class 4: E&A Retiree Benefits Claims....................................................4
          5.    Class 5: Asbestos Claims ........................................................................6
          6.    Class 6: General Unsecured Claims ........................................................6
          7.    Class 7: Claims Assumed by TKNA .......................................................7
          8.    Class 8: Equity Interests .........................................................................8
    C.    Special Provision Governing Unimpaired Claims .................................................8

ARTICLE III. UNCLASSIFIED CLAIMS .....................................................................................8
    A.    Administrative Claims ...........................................................................................8
          1.    Time for Filing Administrative Claims ...................................................8
          2.    Allowance of Administrative Claims. ......................................................8
          3.    Payment of Administrative Claims .........................................................8
    B.    Priority Tax Claims................................................................................................9

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN.................................................9
    A.    Modification of Retiree Benefits and Establishment and Funding of VEBAS ................9
    B.    Execution of the TKNA Settlement Agreement....................................................11
    C.    Rights and Powers of the Independent Fiduciary.................................................14
    D.    Rights and Powers of the Debtor .........................................................................14
    E.    Abandonment of Property ....................................................................................14
    F.    Reports to Be Filed by the Debtor........................................................................14
    G.    Term of Injunctions or Stays................................................................................15
    H.    Implementation of Asbestos Claims Mechanics...................................................15
          1.    Funding of Asbestos Funds and Asbestos Administration Fund...........15
          2.    Formation of Asbestos Springing Trust ................................................16
          3.    Injunction on Future Asbestos Claims ..................................................16
          4.    Amended Asbestos Cost Sharing Agreement........................................16
          5.    Litigation of Insured Asbestos Claims After the Effective Date ...........16
          6.    Litigation of Uninsured Asbestos Claims After the Effective Date .......17
    I.    Dissolution of Committees and Retiree Representatives ......................................17
          1.    The Asbestos Committee........................................................................17
          2.    The E&A Retiree Committee and the UAW ..........................................17

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS .......................................................18
    A.    Distributions to Holders of Unsecured Claims.....................................................18
    B.    Use of Operating Cash .........................................................................................18
    C.    Application of Reserved Cash...............................................................................18
    D.    Record Date for Distributions ..............................................................................18
    E.    Delivery of Distributions .....................................................................................19
          1.    General Provisions; Undeliverable Distributions ..................................19
          2.    Unclaimed Property...............................................................................19
    F.    Manner of Cash Payments Under the Plan...........................................................19

G.     Compliance with Tax Requirements ................................................................19
H.     Interest on Claims ...........................................................................................20

ARTICLE VI. DISPUTED CLAIMS .......................................................................................20
A.     No Distribution Pending Allowance .................................................................20
B.     Resolution of Disputed Claims That Are Not Asbestos Claims.........................20
C.     Resolution of Asbestos Claims ........................................................................20
D.     Estimation of Claims .......................................................................................20
E.     Compromise and Allowance of Claims. ...........................................................21

ARTICLE VII. PRESERVATION OF CAUSES OF ACTION AND RIGHT TO DEFEND AND
CONTEST...................................................................................................................21
A.     Preservation of Rights.....................................................................................21
B.     Causes of Action .............................................................................................21
C.     Setoffs ............................................................................................................21
D.     No Payment or Distribution Pending Allowance ..............................................22

ARTICLE VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........22
A.     General Treatment of Executory Contracts: Rejected.......................................22
B.     Cure Payments and Release of Liability ...........................................................22
C.     Claims Based on Rejection of Executory Contracts or Unexpired Leases..........23

ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...................................23
A.     Conditions Precedent to the Effective Date ....................................................23

ARTICLE X. RELEASE, INJUNCTIVE AND RELATED PROVISIONS ....................................24
A.     Compromise and Settlement ...........................................................................24
B.     Exculpation ....................................................................................................24
C.     Injunction ......................................................................................................25
D.     Release by the Estate of the Release Parties ...................................................25
E.     Release of the Released TKNA Parties and Injunction....................................26
F.     Release of the Released Estate Parties .............................................................27
G.     Releases of Liens ............................................................................................28

ARTICLE XI. RETENTION OF JURISDICTION .....................................................................28

ARTICLE XII. MISCELLANEOUS PROVISIONS ...................................................................28
A.     Final Fee Applications ....................................................................................28
B.     Payment of Statutory Fees ..............................................................................28
C.     Modification of Plan .......................................................................................28
D.     Revocation of Plan .........................................................................................29
E.     Successors and Assigns....................................................................................29
F.     Governing Law ...............................................................................................29
G.     Reservation of Rights......................................................................................29
H.     Insurance Neutrality .......................................................................................29
I.     Article 1146 Exemption ..................................................................................30
J.     Section 1125(e) Good Faith Compliance ..........................................................31
K.     Further Assurances..........................................................................................31
L.     Service of Documents ......................................................................................31
M.     Filing of Additional Documents.......................................................................31
N.     Closing of the Bankruptcy Case.......................................................................31
O.     No Stay of Confirmation Order........................................................................31

## <u>EXHIBITS TO PLAN</u>

<u>**Exhibit A**</u> **– Glossary of Defined Terms**

<u>**Exhibit B**</u> **– TKNA Settlement Agreement**

<u>**Exhibit C**</u> **– Amended and Restated Bylaws of The Budd Company, Inc.**

<u>**Exhibit D**</u> **– Amended Asbestos Cost Sharing Agreement**

**FIFTH AMENDED CHAPTER 11 PLAN FOR THE BUDD COMPANY, INC.**
**DATED MARCH 1, 2016**

Pursuant to chapter 11 of the Bankruptcy Code, The Budd Company, Inc. respectfully proposes the following plan to administer its chapter 11 estate.

The Plan adopts, incorporates, and is premised upon both: (1) the TKNA Settlement Agreement that is attached to the Plan as **Exhibit B**; and (2) the Amended Asbestos Cost Sharing Agreement attached to the Plan as **Exhibit D**. Notwithstanding anything herein to the contrary, in the event of any conflict between the TKNA Settlement Agreement and the Plan, the TKNA Settlement Agreement shall control, and in the event of any conflict between the terms of the Amended Asbestos Cost Sharing Agreement and the Plan, the Amended Asbestos Cost Sharing Agreement shall control.

**ARTICLE I.**
**RULES OF INTERPRETATION**

**A.    Rules of Interpretation**

For purposes herein: in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; the words "herein," "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**B.    Exhibits**

**Any Plan Supplement shall be Filed with the Clerk of the Bankruptcy Court not later than fourteen (14) days prior to the Confirmation Hearing or as otherwise directed by the Bankruptcy Court.** The Plan and all exhibits to the Plan: (a) may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court;

*Chapter 11 Plan*

and (b) are posted on the website of the Debtor's Balloting Agent at http://dm.epiq11.com/TBC/Project. Holders of Claims or Equity Interests may also obtain a copy of the Plan and exhibits, once Filed, by (i) calling the Balloting Agent at (877) 559-8630, (ii) emailing the Balloting Agent at tabulation@epiqsystems.com (please reference "The Budd Company" in the subject line of the email), or (iii) sending a written request to either of the following addresses:

| | |
|---|---|
| **Proskauer Rose LLP** | **The Budd Company, Inc.** |
| Brandon W. Levitan | C/o Epiq Bankruptcy Solutions, LLC |
| 70 West Madison St. | 10300 SW Allen Boulevard |
| Suite 3800 | Beaverton, OR 97005 |
| Chicago, Illinois 60602-4342 | |
| Phone: (312) 962-3550 | |

## ARTICLE II.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.      Summary of Classification and Treatment of Classified Claims and Equity Interests.**

Except for Administrative Claims and Priority Tax Claims, all Claims against and Equity Interests in the Debtor are placed in Classes for purposes of solicitation of votes to accept the Plan.

The table below identifies Classes of Claims against and Equity Interests in the Debtor for all purposes, including voting, confirmation, and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code, other than as noted elsewhere in the Plan. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Non-Tax Priority Claims | Unimpaired | Not Entitled to Vote |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote |
| 3 | UAW Retiree Benefit Claims | Impaired | Entitled to Vote |
| 4 | E&A Retiree Benefit Claims | Impaired | Entitled to Vote |
| 5 | Asbestos Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Claims Assumed by TKNA | Impaired | Entitled to Vote |
| 8 | Equity Interests | Impaired | Entitled to Vote |

*Chapter 11 Plan*

**B.** **Classification and Treatment of Claims and Equity Interests.**

1. ***Class 1: Non-Tax Priority Claims***

(a) *Classification*: Class 1 consists of all Non-Tax Priority Claims.

(b) *Treatment:* Each holder of an Allowed Class 1 Non-Tax Priority Claim shall receive, in the sole discretion of the Debtor, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim: (i) Cash equal to the amount of such Allowed Non-Tax Priority Claim on or as soon as practicable after the latest of (x) the Effective Date, (y) the date that such Claim becomes Allowed, and (z) a date agreed to by the Debtor and the holder of such Claim; or (ii) such other, less favorable treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Claim and the Debtor, or as the Bankruptcy Court may order.

(c) *Voting*: Class 1 is not Impaired, and holders of Non-Tax Priority Claims are not entitled to vote to accept or reject the Plan.

2. ***Class 2: Secured Claims***

(a) *Classification*: Class 2 consists of all Secured Claims.

(b) *Treatment:* Each holder of an Allowed Class 2 Secured Claim shall receive, in the sole discretion of the Debtor, in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (i) Cash equal to the amount of such Allowed Secured Claim on or as soon as practicable after the latest of (x) the Effective Date, (y) the date that such Secured Claim becomes Allowed, and (z) a date agreed to by the Debtor and the holder of such Class 2 Secured Claim; (ii) treatment that such Secured Claim is reinstated; (iii) the property securing such Secured Claim, with any deficiency to result in a Class 6 General Unsecured Claim; or (iv) such other, less favorable treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Claim and the Debtor, or as the Bankruptcy Court may order.

(c) *Voting*: Class 2 is not Impaired, and holders of Secured Claims are not entitled to vote to accept or reject the Plan.

3. ***Class 3: UAW Retiree Benefits Claims***

(a) *Classification*: Class 3 consists of UAW Retiree Benefits Claims.

(b) *Allowance of UAW Retiree Benefits Claims for Voting:* Each UAW Retiree Benefits Claim shall be allowed solely for purposes of voting on the Plan in the amount of $1.

(c) *Treatment:* In satisfaction of the UAW Retiree Benefits Claims, the UAW VEBA shall be established and funded as set forth in the Plan for the benefit of the UAW Retirees. The UAW VEBA shall be governed by the UAW VEBA Trust Agreement, which shall: (i) be in form and substance reasonably acceptable to the Debtor and the UAW; (ii) substantially conform to the trust agreement adopted in connection with the emergence from chapter 11 of Dana Corporation; and (iii) provide for the establishment

***Chapter 11 Plan***

of a committee (the "Committee") of trustees to manage the affairs of the UAW VEBA, which Committee shall be the settlor of the UAW VEBA trust.

The Committee shall be comprised of five (5) individual persons consisting of three (3) independent members with expertise in health care, employee benefits, asset management, human resources, labor relations, economics, and/or law, and two (2) members appointed by the UAW. The Committee shall have the ability to establish investment guidelines for the UAW VEBA assets, hire investment managers, and compromise, settle, and release claims held by the UAW Retirees under the TKNA Settlement Agreement.

In light of the UAW's refusal to provide the Debtor with sufficient detail to adequately disclose to the UAW Retirees what the UAW's preferred healthcare delivery model would be, each UAW Retiree shall receive an allocation from the UAW VEBA to his or her HRA on an annual basis as set forth in the UAW VEBA Trust Agreement, as the same may be amended from time to time. Each UAW Retiree will be able to use his or her HRA to pay eligible medical, dental, and vision expenses, including premiums for insurance policies and Medicare supplement plans purchased on the individual insurance market and certain medical expenses that are not covered by insurance policies, Medicare, or Medicare supplement plans.

From and after the UAW VEBA Effective Date, the Committee shall have sole discretion to determine the healthcare benefits delivery model to be implemented by the UAW VEBA for the benefit of the UAW Retirees.

Until the UAW VEBA Effective Date, the Debtor shall continue to provide Retiree Benefits to the UAW Retirees pursuant to the terms and conditions of the Debtor's existing retiree medical plans, the cost of which shall be paid by the Estate. Claims for Retiree Benefits that are incurred but not paid prior to the UAW VEBA Effective Date shall likewise be paid by the Estate pursuant to the terms and conditions of the Debtor's existing retiree medical plans.

(d) *Voting*: Class 3 is Impaired, and holders of UAW Retiree Benefits Claims are entitled to vote to accept or reject the Plan.

4. **_Class 4: E&A Retiree Benefits Claims_**

(a) *Classification*: Class 4 consists of E&A Retiree Benefits Claims.

(b) *Allowance of E&A Retiree Benefits Claims for Voting:* Each E&A Retiree Benefits Claim shall be allowed solely for purposes of voting on the Plan in the amount of $1.

(c) *Treatment:* In satisfaction of the E&A Retiree Benefits Claims, the E&A Retirees will receive Retiree Benefits through the E&A VEBA.

From and after the E&A VEBA Effective Date, each E&A Retiree will receive Retiree Benefits funded by the E&A VEBA pursuant to the terms of the E&A VEBA Trust Plan, as the same may be amended from time to time. The E&A VEBA will be

*Chapter 11 Plan*

managed by a board of five trustees, which will initially be the current members of the E&A Retiree Committee (Jacqueline Delowery, Mercedes Godin, William Kroger, James Wahlman, and Thomas Whomsley). The E&A VEBA will provide benefits to the Post-Medicare E&A Retirees through a Blue Cross Blue Shield Medicare advantage plan.  For the Pre-Medicare E&A Retirees, the E&A VEBA will provide benefits through a self-insured Blue Cross Blue Shield group plan with stop loss insurance for claims in excess of $100,000. It is expected that the funds in the E&A VEBA will last for 25 years, through 2041. The average age of the E&A Retirees (including surviving spouses) is 78. After the funds are exhausted, coverage for the E&A Retirees will terminate.

From and after the Effective Date until the E&A VEBA Effective Date, the Debtor shall continue to provide Retiree Benefits to the E&A Retirees pursuant to the terms and conditions of the Debtor's existing retiree medical plans, the cost of which shall be paid by the Estate. Claims for Retiree Benefits that are incurred but not paid prior to the E&A VEBA Effective Date shall likewise be paid by the Estate pursuant to the terms and conditions of the Debtor's existing retiree medical plans.

(d) *Voting*: Class 4 is Impaired, and holders of E&A Retiree Benefits Claims are entitled to vote to accept or reject the Plan.

***Chapter 11 Plan***

5. *__Class 5: Asbestos Claims__*

(a) *Classification:* Class 5 consists of Asbestos Claims.

(b) Allowance: Unless otherwise explicitly Allowed or Disallowed by the Bankruptcy Court or another court of competent jurisdiction prior to the Effective Date, all Asbestos Claims on the Debtor's schedules or for which proofs of claims were filed are, upon the Effective Date, hereby deemed objected to and shall not be deemed Allowed pursuant to Section 502(a) of the Bankruptcy Code or any other statutory provision or Bankruptcy Rule.  Unless otherwise explicitly Allowed and liquidated by the Bankruptcy Court or another court of competent jurisdiction prior to the Effective Date, all Asbestos Claims must be filed and prosecuted by the claimant in a court of competent jurisdiction (not the Bankruptcy Court) in order to receive compensation.

Upon the later of (a) 180 days after the Effective Date or (b) if an objection has been filed in the Bankruptcy Court or a court of competent jurisdiction before the end of such 180-day period, the entry of a Final Order overruling any objection to an Asbestos Claim, any holder of an Asbestos Claim that has not been explicitly Disallowed by the Bankruptcy Court (by a Final Order, non-final order, or otherwise) and as to which an objection is not pending shall be relieved of all stays or injunctions provided for in the Plan and the Confirmation Order and may thereafter pursue such Claim against the Debtor in the state or federal court of competent jurisdiction for the sole purposes of determining the extent and validity of such Asbestos Claim, with any recovery, if any, limited to (i) the proceeds of Asbestos Insurance Policies and (ii) the Uninsured Asbestos Claim Fund. Notwithstanding anything herein to the contrary, if the Bankruptcy Court or another court of competent jurisdiction at any time entered or enters a Final Order disallowing any Asbestos Claim, then all stays or injunctions provided for in the Plan and the Confirmation Order shall apply to such Asbestos Claim.

(c) *Treatment*:

(i) *Insured Asbestos Claims*:  Upon the entry of (a) a Final Order by a court of competent jurisdiction determining the extent of the Debtor's liability for an Insured Asbestos Claim, or (b) a definitive written settlement agreement with the Debtor consented to by Participating Carriers determining the extent of the Debtor's liability for an Insured Asbestos Claim, the holder of such Insured Asbestos Claim shall receive Cash equal to 100% of the amount of its Insured Asbestos Claim from the proceeds of Asbestos Insurance Policies in accordance with the terms of the Amended Asbestos Cost Sharing Agreement. Any right to recover or pursue recovery on account of any Asbestos Claim from an Asbestos Insurance Policy shall be subject to all coverage and other defenses asserted by a Participating Carrier. On the Effective Date, the Debtor will fund the Insured Asbestos Claim Fund with $2.2 million in cash, which shall be used for the benefit of the Insurers in accordance with the Amended Asbestos Cost Sharing Agreement.

(ii) *Uninsured Asbestos Claims*:  On the Effective Date, the Debtor shall fund the Uninsured Asbestos Claim Fund in the amount of $1.25 million.

-6-

*__Chapter 11 Plan__*

Upon the entry of (a) a Final Order by a court of competent jurisdiction determining the extent of the Debtor's liability for an Uninsured Asbestos Claim, or (b) a definitive written settlement agreement with the Debtor determining the extent of the Debtor's liability for an Uninsured Asbestos Claim, then payments on account of such Uninsured Asbestos Claim shall be made in Cash solely from the Uninsured Asbestos Claim Fund; *provided however,* in no event shall the holder of an Uninsured Asbestos Claim receive from the Uninsured Asbestos Claim Fund more on account of its Uninsured Asbestos Claim than it would have received if such Uninsured Asbestos Claim had been an Allowed Class 6 Claim.

Except from the Uninsured Asbestos Claim Fund, no holder of an Asbestos Claim shall have the right to seek payment on account of such Asbestos Claim from the Debtor or its property (other than under an Asbestos Insurance Policy in accordance with the Plan), even if there are insufficient funds in the Uninsured Asbestos Claim Fund to pay the holder of an Asbestos Claim the Distribution to which he or she otherwise would be entitled under this Plan.

(d) *Voting*: Class 5 is Impaired, and holders of Allowed Asbestos Claims are entitled to vote to accept or reject the Plan. All Asbestos Claims that have not been Disallowed as of the Voting Record Date shall be allowed in the amount of $1 solely for the purpose of voting on the Plan.

6. *Class 6: General Unsecured Claims*

(a) *Classification:* Class 6 consists of General Unsecured Claims.

(b) *Treatment:* Each Allowed Class 6 General Unsecured Claim shall receive from the Debtor and in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, Cash equal to the amount of 66% of the Allowed amount of such Allowed Class 6 General Unsecured Claim on or as soon as practicable after the later of (x) the Effective Date, (y) the date that such Claim becomes Allowed.

(c) *Voting*: Class 6 is Impaired, and holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

7. *Class 7: Claims Assumed by TKNA*

(a) *Classification:* Class 7 consists of Claims that TKNA will assume under the TKNA Settlement Agreement or otherwise, which are: (i) Claims of Retirees arising under the SERP, which plan TKNA is assuming as of the Effective Date; (ii) Claims of the PBGC arising under either of the ERISA Pension Plans (both of which TKNA is assuming as of the Effective Date); (iii) Claim number 521 Filed by Waupaca Foundry, Inc. in the Bankruptcy Case; and (iv) all Workers Compensation Claims.

(b) *Treatment:* Each Allowed Class 7 Claim shall be assumed by TKNA under the TKNA Settlement Agreement and, as of the Effective Date, TKNA shall bear full financial responsibility for payment and/or other satisfaction in full of all such Claims. No holder of a Class 7 Claim shall receive or retain any property of the Estate on account of such Claim.

*Chapter 11 Plan*

(c) *Voting*: Class 7 is Impaired, and holders of Class 7 Claims are entitled to vote to accept or reject the Plan.

8. ***Class 8: Equity Interests***

(a) *Classification:* Class 8 consists of Equity Interests.

(b) *Treatment*: TKNA shall retain 100% of the Equity Interests in the Debtor, in accordance with the TKNA Settlement Agreement.

(c) *Voting*: Class 8 is Impaired, and holder of Equity Interests is entitled to vote to accept or reject the Plan.

## C.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such unimpaired Claim.

## ARTICLE III.
## UNCLASSIFIED CLAIMS

## A.    Administrative Claims

### 1. *Time for Filing Administrative Claims*

The holder of any Administrative Claim that is incurred, accrued or in existence prior to the Effective Date, other than an Allowed Administrative Claim or a claim incurred in the ordinary course of business, must File and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before the date that is twenty-eight (28) days after the Effective Date. Such request must comply with applicable sections of the Bankruptcy Code, the Bankruptcy Rules, and orders of the Bankruptcy Court, and must include: (a) the name of the holder of the Claim, (b) the amount of the Claim, and (c) the basis of the Claim. Failure to timely and properly File and serve an application for payment of an Administrative Claim may result in such Administrative Claim being forever barred and discharged. Objections to Administrative Claim applications must be filed and served pursuant to the Bankruptcy Rules and served on the requesting party and the Debtor within twenty-eight (28) days after the filing of such application.

### 2. *Allowance of Administrative Claims.*

An Administrative Claim that is not incurred and paid by the Debtor in the ordinary course of business shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

### 3. *Payment of Administrative Claims*

The Debtor shall pay in Cash in the ordinary course of business and without further order of the Bankruptcy Court all Administrative Claims incurred in the ordinary course of the Debtor's business. All other Allowed Administrative Claims incurred, accrued, or in existence

***Chapter 11 Plan***

prior to the Effective Date shall be paid in Cash: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter; (3) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (4) at such time and upon such terms as set forth in any order of the Bankruptcy Court.

The Estate shall pay the cost of all Retiree Benefits incurred by UAW Retirees prior to the UAW VEBA Effective Date, including costs for Retiree Benefits incurred prior to the UAW VEBA Effective Date that are submitted and/or paid on or after the UAW VEBA Effective Date. The Estate shall pay the cost of all Retiree Benefits incurred by E&A Retirees prior to the E&A VEBA Effective Date, including costs for Retiree Benefits incurred prior to the E&A VEBA Effective Date that are submitted and/or paid on or after the E&A VEBA Effective Date. The Estate shall pay the costs, fees, and expenses of the Debtor, the UAW, the E&A Retiree Committee, and their respective professionals associated with establishing the UAW VEBA and the E&A VEBA. To the extent incurred after the Effective Date, all of the foregoing amounts shall be paid from administrative reserves established by the Debtor prior to its determination of Effective Date Cash.

## B.    Priority Tax Claims

All Allowed Priority Tax Claims shall be paid on the later of: (1) the date the Priority Tax Claim becomes an Allowed Priority Tax Claim, or (2) the date a Priority Tax Claim first becomes payable pursuant to any agreement between the Debtor and the holder of such Priority Tax Claim. At the sole option of the Debtor, such holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of such Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in any other manner such that its Allowed Priority Tax Claim shall not be Impaired, including periodic payments on a quarterly basis over a period ending not later than five (5) years after the Petition Date, in accordance with the provisions of sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, or (iii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing. Clause (iii) of the preceding sentence shall not be construed to avoid the need for Bankruptcy Court approval of a Priority Tax Claim when such Bankruptcy Court approval is otherwise required by the Bankruptcy Code.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

## A.    Modification of Retiree Benefits and Establishment and Funding of VEBAS

The Plan is premised upon providing to or for the benefit of the Retirees: (1) Effective Date Cash estimated to be in excess of $200 million; (2) Cash over an 8 year period beginning on the Effective Date in the aggregate amount of either $300 million or $335 million if the Confirmation Order includes the Waupaca Claims Release (in each case in accordance with the terms of the TKNA Settlement Agreement and subject to adjustment) under a stream of payments to be made by TKNA on behalf of the Debtor pursuant to the TKNA Settlement Agreement; and (3) additional Cash from the proceeds of Causes of Action and other assets of

-9-

the Estate liquidated after the Effective Date. This Cash will be made available to or for the benefit of Retirees under the Retiree VEBAs described in the Plan.

Consistent with Bankruptcy Code Section 1129(a)(13) and Section 1114, the Debtor's Plan contemplates that on or before the entry of the Confirmation Order, the Bankruptcy Court shall enter the E&A Section 1114 Agreement and the UAW Section 1114 Order. The UAW Section 1114 Order and E&A Section 1114 Agreement will modify the obligations of the Debtor to provide Retiree Benefits to the E&A Retirees and the UAW Retirees by allowing the Debtor to terminate its obligations under its existing retiree health and welfare plans on the E&A VEBA Effective Date and the UAW VEBA Effective Date and will provide replacement coverage by funding through this Plan the E&A VEBA and the UAW VEBA. The UAW Section 1114 Order and E&A Section 1114 Agreement will not be effective unless and until: (1) the Bankruptcy Court enters the Confirmation Order; and (2) the Effective Date has occurred. After the respective E&A Retiree VEBA Effective Date and the UAW Retiree VEBA Effective Date, the E&A Retirees and the UAW Retirees will have the rights afforded to them under the Retiree VEBAs and will receive Retiree Benefits pursuant to the terms of the E&A VEBA Trust Plan and the UAW VEBA Trust Plan, as the same may be amended from time to time, in lieu of all rights otherwise afforded to them under the Debtor's existing retiree medical plans (including rights under applicable laws, such as, but not limited to, the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended, ERISA, and the Patient Protection and Affordable Care Act).

Prior to the Effective Date, the UAW VEBA and the E&A VEBA will be established to meet the requirements of Code section 501(c)(9) and ERISA section 3(1). The UAW VEBA Trust Agreement, the UAW VEBA Trust Plan, the E&A VEBA Trust Agreement, and the E&A VEBA Trust Plan will be filed with the Plan Supplement. The Debtor shall pay all costs and expenses of the Debtor, the UAW, and the E&A Retiree Committee (and their respective professionals) associated with establishing the UAW VEBA and the E&A VEBA. Each VEBA document shall be drafted to address the requirements of the UAW VEBA Trust Plan and the E&A VEBA Trust Plan and the requirements for a tax-exempt trust. The Debtor shall provide TKNA with drafts of the UAW VEBA Trust Agreement and the E&A VEBA Trust Agreement prior to submission to the Internal Revenue Service, and shall provide TKNA with copies of all correspondence received from or sent to the IRS in conjunction with the qualification of each VEBA. Each Retiree VEBA will be separate from the other, and assets of the Retiree VEBAs will not be commingled and, for the avoidance of doubt, no unused assets of the UAW VEBA or the E&A VEBA will revert to the Debtor or TKNA. From and after the Effective Date until the respective E&A VEBA Effective Date and the UAW VEBA Effective Date, the Debtor shall continue to provide to the E&A Retirees and the UAW Retirees Retiree Benefits pursuant to the terms and conditions of the Debtor's existing retiree medical plans, the cost of which shall be paid by the Estate. Claims for Retiree Benefits that are incurred but not paid prior to the applicable E&A VEBA Effective Date or UAW VEBA Effective date shall likewise be paid by the Estate pursuant to the terms and conditions of the Debtor's existing retiree medical plans. The Debtor shall cooperate with the UAW VEBA and the E&A VEBA and provide the UAW VEBA and the E&A VEBA with all records and other information reasonably requested by the UAW VEBA and/or the E&A VEBA in connection with the administration of the UAW VEBA and the E&A VEBA, including but not limited to personally identifiable information, census data, and all contracts that the Debtor has made for the provision of Retiree Benefits.

-10-

As soon as practicable after the Effective Date, the Debtor shall deposit or cause to be deposited $70 million into the E&A VEBA and the UAW Cash into the UAW VEBA. Thereafter: (1) TKNA shall pay to the UAW VEBA on behalf of the Debtor, Cash in the aggregate amount of $285 million and, in the event the UAW affirmatively elects to grant the Waupaca Claims Release in the form set forth on Attachment 4 to the TKNA Settlement Agreement, an additional $35 million, all payable in accordance with the schedule and subject to the terms and conditions of the TKNA Settlement Agreement; (2) the E&A VEBA shall receive 12.5% of any Settlement Increase; and (3) the Debtor shall contribute Net Proceeds of Causes of Action not released pursuant to the Plan to the UAW VEBA. In the event the UAW fails to make an election as to whether to grant the Waupaca Claims Release, then the UAW shall be deemed to have elected not to grant the Waupaca Claims Release and the UAW VEBA shall not receive the $35 million of Additional Payments in exchange therefore.

## B.      Assumption of ERISA Pension Plans by TKNA

The Debtor currently sponsors three defined-benefit Pension Plans. Two of the Pension Plans are the ERISA Pension Plans, each a defined benefit Pension Plan covered by Title IV of ERISA. The ERISA Pension Plans are insured by the PBGC, a wholly owned United States government corporation that guarantees the payment of certain pension benefits upon termination of pension plans covered by Title IV of ERISA.

The ERISA Pension Plans are also subject to certain rules and regulations. Among other things, upon any termination of the ERISA Pension Plans, the Debtor and its "controlled group" members, including TKNA and certain other Affiliates, will become jointly and severally liable for the underfunded portion of the ERISA Pension Plans. The Debtor estimates that, as of September 30, 2015, the ERISA Pension Plans had a combined funding deficit of approximately $365 million on a "termination basis."

The ERISA Pension Plans will not be modified or affected by the Plan, and will be continued after the Effective Date in accordance with the respective terms of each ERISA Pension Plan. Under the Plan, on the Effective Date, TKNA shall assume all liabilities associated with the ERISA Pension Plans under ERISA and the Code and shall be obligated to: (a) satisfy each ERISA Pension Plan's minimum funding standards under 26 U.S.C. §§ 412, 430 and 29 U.S.C. § 1082; (b) pay statutory premiums to the PBGC with respect to each ERISA Pension Plan in accordance with 29 U.S.C. §§ 1306 and 1307; and (c) administer each ERISA Pension Plan in accordance with the provisions of each of the ERISA Pension Plans, ERISA and the Code.

After the Effective Date, TKNA will have the authority to terminate or amend either ERISA Pension Plan in accordance with the respective terms of each ERISA Pension Plan, ERISA, and the Code.  In general, if either (or both) ERISA Pension Plan(s) terminates after the Effective Date, TKNA and all members of TKNA's controlled group (as defined in 29 U.S.C. §§ 1301(a)(14)) will be jointly and severally liable to the PBGC for any unpaid minimum funding contributions owed to the terminated ERISA Pension Plan(s), and any statutory premiums owed to PBGC, along with any unfunded benefit liabilities of the terminated ERISA Pension Plan(s).

-11-

*__Chapter 11 Plan__*

No provision within this Disclosure Statement, the Plan, the Confirmation Order, or section 1141 of the Bankruptcy Code shall be deemed or construed to discharge, release, or relieve the Debtor, TKNA, any member of TKNA's controlled group, or any other entity or person, in any capacity, from any current or future liability with respect to either ERISA Pension Plan, and the PBGC and the ERISA Pension Plans will not be enjoined or precluded from enforcing such liability as a result of the Plan's provisions or confirmation.

PBGC has filed contingent claims against the Debtor (collectively, the "PBGC Claims"), including estimated claims for the ERISA Pension Plans' unfunded benefit liabilities on a termination basis in an unliquidated amount.  Upon the Effective Date, PBGC will be deemed to have withdrawn the PBGC Claims with prejudice. But for the TKNA Settlement Agreement and assumption by TKNA of the Pension Plans under the TKNA Settlement Agreement, these Claims would be Class 6 General Unsecured Claims under the Plan that would receive a Distribution, if Allowed. Similarly, TKNA and 26 other Affiliates also filed Claims asserting joint and several liability against the Debtor in the event one or both ERISA Pension Plans are terminated. The allowance of the PBGC Claims and the claims of TKNA and the Affiliates would greatly diminish the amount of cash available to satisfy the Debtor's other claims.

The third Pension Plan is the SERP, which is an unfunded defined benefit plan for the benefit of certain E&A Retirees. The SERP is not covered by the PBGC. Liabilities under the SERP are general unsecured obligations of the Debtor and the benefits are paid only from the Debtor's general assets. TKNA has guaranteed certain of the obligations of the Debtor under the SERP. Under the Plan, the SERP will be assumed by TKNA and TKNA will continue to pay in full obligations arising under the SERP, and thus holders of Claims alleging SERP liability will not receive any Distribution from the Estate on account of such Claims. The Debtor estimates that, as of September 30, 2015, its unfunded obligations under the SERP were approximately $11.2 million.

## C.     Execution of the TKNA Settlement Agreement

To implement the Plan, the Debtor, the E&A Retiree Committee, and TKNA have executed and will perform under the TKNA Settlement Agreement, the terms of which are incorporated herein and are controlling in all respects. By way of summary, and subject to the express terms and conditions set forth in the TKNA Settlement Agreement, the TKNA Settlement Agreement provides for (among other things) the following:

1.     TKNA agrees to:

   (a)     make the Settlement Payments, including the E&A Payment and the UAW Settlement Payments to fund Distributions to the Retirees on behalf of the Debtor, pursuant to the schedule set forth in Section 3 of the TKNA Settlement Agreement (and subject to adjustment as set forth in the TKNA Settlement Agreement);

   (b)     make the Additional Payments, pursuant to the schedule set forth in Section 3 of the TKNA Settlement Agreement, in the event the UAW elects to grant, and the Confirmation Order includes, the Waupaca Claims

*Chapter 11 Plan*

Release in the form set forth on Attachment 4 to the TKNA Settlement Agreement;

(c)     assume, as of the Effective Date, sponsorship of, full financial responsibility for, and all liabilities associated with the Pension Plans;

(d)     assume, as of the Effective Date, sponsorship of, full financial responability for, and all liabilities associated with the SERP;

(e)     be deemed to have withdrawn any and all proofs of claim filed by TKNA and Affiliates (collectively, the "TKNA Claims") solely for purposes of any distribution from the Estate; provided, however, that TKNA and Affiliates do not waive and expressly retain for purposes of setoff, in the event that the Confirmation Order which approves the TKNA Settlement Agreement does not become a Final Order, the claims identified and asserted in the TKNA Claims for all matters other than those relating to the Pension Plans; and

(f)     assume Workers Compensation Claims, as more fully described in Section 7 of the TKNA Settlement Agreement and Claim number 521 Filed by Waupaca Foundry, Inc. in the Bankruptcy Case.

2.     The UAW VEBA and the E&A VEBA shall provide to TKNA information (other than personally protected information) reasonably requested by TKNA to support the deductibility of any payments made by the Debtor and/or TKNA directly or indirectly into the E&A VEBA or the UAW VEBA.

3.     From and after the Effective Date, neither the Debtor nor the Estate shall settle or compromise any tax proceeding without the prior written consent of TKNA.

4.     The Debtor shall cooperate with the UAW VEBA and the E&A VEBA and provide the UAW VEBA and the E&A VEBA with records and information reasonably requested by the UAW VEBA and/or the E&A VEBA in connection with the administration of the UAW VEBA and the E&A VEBA.

5.     The UAW VEBA and the E&A VEBA shall cooperate with TKNA and the TKNA Tax Group and provide TKNA access to their records and personnel and fulfill any other reasonable request of TKNA in connection with the filing of the Federal Group Returns and the State Group Returns and with respect to any inquiry, audit or other communications by any tax authority, and shall provide access to their records (other than personally protected information) and personnel in connection with such matters.

6.     The UAW VEBA and the E&A VEBA: (i) shall not take any unreasonable action that results in a loss of deductibility for U.S. federal income tax purposes, as applicable, of the UAW Settlement Payments, the Additional Payments, the E&A Payment, or the payments made by the Debtor or the Estate to the UAW VEBA or the E&A VEBA, or any other payment made to the UAW VEBA or the E&A

*Chapter 11 Plan*

VEBA; and (ii) shall take any reasonable action as requested by TKNA to prevent the loss of deductibility for U.S. federal income tax purposes of such UAW VEBA or E&A VEBA payments, as applicable.

**D.      Rights and Powers of the Independent Fiduciary**

The UAW will select the individual who will serve as the Independent Fiduciary. In accordance with the Amended and Restated Bylaws of The Budd Company, Inc., the Independent Fiduciary shall enforce the TKNA Settlement Agreement, oversee TKNA's payments to the UAW VEBA required by the TKNA Settlement Agreement, and exercise sole authority to pursue, litigate, settle, compromise, and retain and pay professionals from assets of the Debtor to assist in such actions as to all Causes of Action not released pursuant to the Plan. The Independent Fiduciary shall have sole authority to: (1) retain and use Operating Cash to pay professionals to pursue Causes of Action not released pursuant to the Plan and to pay fees due and payable to the U.S. Trustee; (2) to enforce payment of the Settlement Payments, Additional Payments (if applicable), and any Settlement Increase (if applicable); and (3) to enforce the Letter of Credit to be obtained and maintained by TKNA under the TKNA Settlement Agreement from the Effective Date until all Settlement Payments (including any Settlement Increase) and Additional Payments (if applicable) have been made, as more fully described in, and subject to the conditions set forth in TKNA Settlement Agreement. The Independent Fiduciary shall have no ability to modify in any way, without the express written consent of the E&A Retiree Committee, the TKNA Effective Date Payment or any other distribution to the E&A VEBA provided for by this Plan.

**E.      Rights and Powers of the Debtor**

After the Effective Date, the Debtor shall not require authority of the Bankruptcy Court to act, other than as specifically set forth in the TKNA Settlement Agreement, Amended Asbestos Cost Sharing Agreement, Plan, or the Confirmation Order. Subject to Articles II(B)(5) and VI(C), the Debtor shall have the right to, among other things, (1) object to Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; and (2) conduct examinations in accordance with Bankruptcy Rules 2004 or 7001 *et. seq.* or otherwise in accordance with applicable law.

**F.      Abandonment of Property**

The Plan shall be considered a motion for authority to destroy and/or abandon property of the Estate. Without further order of the Bankruptcy Court (other than the Confirmation Order), the Debtor may, in its sole and absolute discretion so long as the Independent Fiduciary or any of the Participating Carriers do not object after advance notice: (i) retain or destroy documents, files and records of the Estate; and (ii) abandon property of the Estate that it deems burdensome or of immaterial value.

**G.      Reports to Be Filed by the Debtor**

The Debtor shall: (1) until the Bankruptcy Case is closed, File customary quarterly reports with the Bankruptcy Court within forty-five (45) days of the end of the applicable quarterly period and serve copies of such reports on Persons requesting notice thereof; and

*__Chapter 11 Plan__*

(2) pay quarterly fees out of Operating Cash when due to the Office of the U.S. Trustee until the earliest to occur of the Bankruptcy Case being closed, converted or dismissed.

**H.    Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the Bankruptcy Case is closed. Notwithstanding anything herein to the contrary, and subject to further order of the Bankruptcy Court upon application of any party pursuant to the terms of the Status Quo Order: (1) the Status Quo Order shall remain effective until the Confirmation Order approving the TKNA Settlement Agreement shall have become a Final Order; and (2) upon the Confirmation Order approving the TKNA Settlement Agreement becoming a Final Order, the Debtor and TKNA shall cooperate to have the adversary proceeding in which the Status Quo Order was entered dismissed.

**I.    Implementation of Asbestos Claims Mechanics**

1. *__Funding of Asbestos Funds and Asbestos Administration Fund__*

On the Effective Date, the Debtor shall deposit $2,200,000 Cash into the Insured Asbestos Claim Fund, $1,250,000 Cash into the Uninsured Asbestos Claim Fund, and $1,500,000 Cash into the Asbestos Administration Fund. Each of the Asbestos Funds and the Asbestos Administration Fund shall be maintained until the earlier to occur of (a) the date on which less than $1,000 remains in such Asbestos Fund, or (b) the date on which all lawsuits on account of Asbestos Claims brought as of January 1, 2045 have been resolved. In the event that funds remain in an Asbestos Fund or the Asbestos Administration Fund on the date on which all lawsuits on account of Asbestos Claims brought as of January 1, 2045 have been resolved, then such remaining funds shall be given to the UAW VEBA. Each of the Asbestos Funds and the Asbestos Administration Fund shall be segregated, not commingled with any other Cash or other property of the Debtor, and shall not be used to pay any obligation of the Debtor other than pursuant to (a), (b), or (c) below.

(a)    *Insured Asbestos Claim Fund*.  The Insured Asbestos Claim Fund shall be used solely in accordance with the terms of the Amended Asbestos Cost Sharing Agreement.

(b)    *Uninsured Asbestos Claim Fund*.  The Uninsured Asbestos Claim Fund shall be used by the Budd Funds Administrator to pay Defense Costs and make Distributions to holders of Uninsured Asbestos Claims at the Plan Percentage Amount and pursuant to Article II of the Plan until such time as the Uninsured Asbestos Claim Fund is exhausted; *provided, however*, that in no event shall Budd or the Budd Funds Administrator be required to pay Defense Costs or make Distributions to holders of Allowed Uninsured Asbestos Claims after the Uninsured Asbestos Claim Fund is exhausted.

(c)    *Asbestos Administration Fund*.  The Asbestos Administration Fund shall be used by the Budd Funds Administrator to fund the expenses of discharging the obligations of the Debtor in connection with the Insured

-15-

*__Chapter 11 Plan__*

Asbestos Claim Fund, the Uninsured Asbestos Claim Fund, and the Amended Asbestos Cost Sharing Agreement.

2. ***Formation of Asbestos Springing Trust***

The Amended and Restated Bylaws of the Budd Company, Inc. shall include a provision that in the event of the dissolution of the Debtor, any remaining balance of the Asbestos Funds and the Asbestos Administration Fund, the Debtor's rights and obligations under the Asbestos Insurance Policies, the Debtor's rights and obligations under the Plan with respect to Asbestos Claims, and the Debtor's rights and obligations under the Amended Asbestos Cost Sharing Agreement all shall be transferred into a trust (the "Asbestos Springing Trust"), which shall be established as set forth in this Plan. Upon dissolution of the Debtor, the Asbestos Springing Trust shall: (a) be a successor of the Debtor (under the Plan and otherwise) for all purposes related to treatment and administration of Asbestos Claims, but for no other purpose; (b) have authority to accept service of Asbestos Claims against the Debtor; and (c) be authorized to serve on behalf of the Debtor notice under or in connection with Asbestos Insurance Policies. As a successor to the Debtor, the Asbestos Springing Trust shall obtain the benefit of all injunctions and other protections in the Plan regarding Asbestos Claims and other Claims. The Asbestos Administration Fund shall be used to establish and pay the expenses of the Asbestos Springing Trust. The Asbestos Springing Trust Shall dissolve upon the earlier of: (i) the date on which all lawsuits on account of Asbestos Claims brought as of January 1, 2045 have been resolved (in which event the remaining balances of the Asbestos Funds and the Asbestos Administration Fund shall be transferred to the UAW VEBA), and (ii) the date on which the balance of both Asbestos Funds is less than $1,000. This provision of the Amended and Restated Bylaws of the Budd Company, Inc. shall be subject to amendment only with the approval of the Bankruptcy Court.

3. ***Injunction on Future Asbestos Claims***

**The Confirmation Order shall include an injunction that limits recovery on account of any Asbestos Claim, whether manifested or filed before or after the Petition Date, to the Asbestos Funds and the proceeds of Asbestos Insurance Policies, and prevents any Person from collecting, recovering, or receiving payment or recovery with respect to any Asbestos Claim from assets of the Debtor or the Estate, other than the Asbestos Funds or the proceeds of one or more Asbestos Insurance Policies.**

4. ***Amended Asbestos Cost Sharing Agreement***

On the Effective Date, the Debtor shall execute and perform under the Amended Asbestos Cost Sharing Agreement (a copy of which is attached as **Exhibit D** hereto).

5. ***Litigation of Insured Asbestos Claims After the Effective Date***

After the Effective Date, litigation of Insured Asbestos Claims will be administered in accordance with the Amended Asbestos Cost Sharing Agreement. Following the Effective Date, the Debtor or its agents shall notify the pertinent Insurer(s) of any Insured Asbestos Claim that the Debtor determines may be an Insured Asbestos Claim. No Insurer shall have any obligation with respect to any Insured Asbestos Claim for which such notice has not been given; *provided however,* that such notice will be deemed to have been given with respect to Insured Asbestos

-16-

***Chapter 11 Plan***

Claims for which any Insurer had undertaken to provide a defense prior to the Petition Date. Following the Effective Date, the Participating Carriers, in accordance with the Amended Asbestos Cost Sharing Agreement, shall be authorized to settle and compromise Insured Asbestos Claims without further order of the Bankruptcy Court.

### 6. *Litigation of Uninsured Asbestos Claims After the Effective Date*

After the Effective Date, litigation of Uninsured Asbestos Claims will be administered by the Budd Funds Administrator.

Following the Effective Date, the Budd Funds Administrator may retain defense counsel retained before the Bankruptcy Case without further order of the Bankruptcy Court to defend Uninsured Asbestos Claims and such defense counsel shall provide such information as requested by the Budd Funds Administrator. Following the Effective Date, the Budd Funds Administrator shall be authorized to settle and compromise Uninsured Asbestos Claims without further order of the Bankruptcy Court.

## J.  Dissolution of Committees and Retiree Representatives

### 1. *The Asbestos Committee*

The duties and powers of the Asbestos Committee, and the duties and powers of its respective Professionals, will terminate on the later of: (1) completion of performance of those actions required to be executed on or about the Effective Date; and (2) resolution of any Fee Applications filed or objected to by the Asbestos Committee, or its respective Professionals. The fees and expenses of the Asbestos Committee and its Professionals through the date that the Asbestos Committee is dissolved shall be paid by the Debtor, and after the Effective Date from administrative reserves, after entry of an order of the Bankruptcy Court authorizing such payment. Upon the termination of the duties and powers of the Asbestos Committee, the Asbestos Committee will be dissolved, its members will be deemed released by the Debtor and its Estate from their duties, responsibilities and obligations in connection with the Bankruptcy Case, and the Debtor shall have no further obligation to pay any costs, fees, or expenses of the Asbestos Committee, or its respective members or Professionals.

Upon the dissolution of the Asbestos Committee, no notice to that Committee that might otherwise be required pursuant to an order of the Bankruptcy Court shall be required.

### 2. *The E&A Retiree Committee and the UAW*

The duties and powers of the E&A Retiree Committee and the UAW in their respective capacity as representative of Retirees under section 1114 of the Bankruptcy Code, and the duties and powers of their respective Professionals, will terminate on the latest of: (1) completion of performance of those actions required to be executed on or about the Effective Date; (2) resolution of any Fee Applications filed or objected to by either the E&A Retiree Committee, the UAW, or their respective Professionals; and (3) (i) for the E&A Retiree Committee, the E&A VEBA Effective Date; and (ii) for the UAW, the UAW VEBA Effective Date. The fees and expenses of the E&A Retiree Committee, the UAW, and their respective Professionals through the date(s) the E&A Retiree Committee is dissolved and the UAW is relieved of its obligations as the authorized representative of the Retirees shall be paid by the Debtor, and after the

*Chapter 11 Plan*

Effective Date from administrative reserves, after entry of an order of the Bankruptcy Court authorizing such payment. Upon the respective termination of the duties and powers of the E&A Retiree Committee and the UAW, the E&A Retiree Committee will be dissolved, the UAW will no longer be the authorized representative of the UAW Retirees under section 1114 of the Bankruptcy Code, their members will be deemed released by the Debtor and its Estate from their duties, responsibilities and obligations in connection with the Bankruptcy Case, and the Debtor shall have no further obligation to pay any costs, fees, or expenses of the E&A Retiree Committee, the UAW, or their respective members or Professionals.

Upon the respective dissolution of the E&A Retiree Committee and termination of the UAW's representation of the UAW Retirees, no notice to the E&A Retiree Committee or the UAW that might otherwise be required pursuant to an order of the Bankruptcy Court shall be required.

**ARTICLE V.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.      Distributions to Holders of Unsecured Claims**

After satisfaction in full or the establishment of adequate reserves for all Administrative Claims, Priority Tax Claims, and Secured Claims, and on or as soon as practicable after the Effective Date, the Debtor shall: (1) reserve and deposit into segregated accounts Cash in an amount equal to the Asbestos Funds and the Asbestos Administration Fund, (2) make Distributions to and/or establish adequate reserves for all Class 6 General Unsecured Claims, (3) pay or cause to be paid $55 million of Effective Date Cash and the $15 million E&A Payment to the E&A VEBA, (4) reserve the Operating Cash, and (5) pay the UAW Cash to the UAW VEBA.

**B.      Use of Operating Cash**

While the Bankruptcy Case remains open, the Debtor shall hold its reserved Cash (other than the Asbestos Funds and the Asbestos Administration Fund) and its Operating Cash in accounts authorized by US Trustee Guidelines. The Independent Fiduciary shall have authority to pay from Operating Cash fees and expenses incurred pursuing Causes of Action not released pursuant to the Plan and to pay Net Proceeds of Causes of Action not released pursuant to the Plan to the UAW VEBA.

**C.      Application of Reserved Cash**

Each reserve shall be closed and extinguished by the Debtor when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan. Upon closure of a reserve, all Cash or other property held in that reserve shall be deposited in the UAW VEBA.

**D.      Record Date for Distributions**

The Debtor shall use the Record Date in making Distributions.

E.      **Delivery of Distributions**

1.   *__General Provisions; Undeliverable Distributions__*

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder, (b) the last known address of such holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address, or (c) otherwise at the direction of a holder of such Claim, including as directed on any Ballot. If any Distribution is returned as undeliverable, the Debtor may, in its discretion, make such efforts to determine the current address of the holder of the Claim.

2.   *__Unclaimed Property__*

Except with respect to property not distributed because it is being held in a reserve, Distributions that are not claimed by the expiration of one year from any Distribution shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest or revest in the Debtor, and the Claims with respect to which those Distributions are made shall be automatically Disallowed. After the expiration of that one-year period, the Claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim. All funds or other property that vests or revests in the Debtor pursuant to this section shall be distributed by the Debtor 100% to the UAW VEBA.

F.      **Manner of Cash Payments Under the Plan**

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Debtor or by wire transfer from a domestic bank, at the option of the Debtor.

G.      **Compliance with Tax Requirements**

In connection with making Distributions under this Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtor to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with the Plan.

*__Chapter 11 Plan__*

**H.      Interest on Claims**

Except as specifically provided for in the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon (if and after that Disputed Claim becomes an Allowed Claim). Except as expressly provided in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

**ARTICLE VI.**
**DISPUTED CLAIMS**

**A.      No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, the Debtor shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.

**B.      Resolution of Disputed Claims That Are Not Asbestos Claims**

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtor shall have the right to the exclusion of all others (except as to (1) the Professionals' applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code and (2) the right of Insurers to object to Asbestos Claims) to make, File, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims. The costs of pursuing the objections to Claims shall be borne by the Debtor and paid from administrative reserves.

**C.      Resolution of Asbestos Claims**

After the Effective Date, the Participating Carriers shall have the right to file and prosecute objections to Insured Asbestos Claims filed prior to the Effective Date, and Debtor shall have the right to file and prosecute objections to Uninsured Asbestos Claims filed prior to the Effective Date.

**D.      Estimation of Claims**

Subject to Articles II(B)(5) and VI(C) of the Plan, at any time, the Debtor may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether any Entity previously objected to such Claim or whether the Court ruled on any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtor may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Subject to Articles II(B)(5) and VI(C) of the Plan,

*__Chapter 11 Plan__*

Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**E.    Compromise and Allowance of Claims.**

Prior to entry of a Final Decree, the compromise of any Cause of Action not released by the Plan must be approved by Final Order.

# ARTICLE VII.
## PRESERVATION OF CAUSES OF ACTION AND
## RIGHT TO DEFEND AND CONTEST

**A.    Preservation of Rights**

Except to the extent that any Claim is Allowed during the Bankruptcy Case or expressly by this Plan, nothing, including, but not limited to, the failure of the Debtor to object to a Claim or Equity Interest for any reason, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Estate or the Debtor with respect to any Claim or Equity Interest, including, but not limited to, all rights of the Estate or the Debtor to contest or defend itself against such Claims or Equity Interests in any lawful manner or forum when and if such Claim or Equity Interest is sought to be enforced by the holder thereof.

**B.    Causes of Action**

Except as otherwise provided in the TKNA Settlement Agreement or the Plan, on the Effective Date, all Causes of Action (including, without limitation, Avoidance Actions) shall automatically be preserved and will revest in the Debtor. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Debtor (subject to the control of the Independent Fiduciary in accordance with the Plan and the Amended and Restated Bylaws of The Budd Company, Inc.), will have the exclusive right to enforce and prosecute such Causes of Action against any Entity, other than those Causes of Action expressly released or compromised as part of or pursuant to the Plan.

As provided in the TKNA Settlement Agreement, to the extent the Debtor (whether via the Independent Fiduciary or otherwise, in accordance with the Plan) prosecutes any Causes of Action that result in a recovery of assets that is included in the gross taxable income of the TKNA Tax Group, the Debtor shall pay to TKNA out of such assets recovered a sum equal to such gross taxable income multiplied by the highest marginal corporate tax rate in effect for the year or years in which such amounts are included in the gross taxable income of the TKNA Tax Group, prior to making any Distribution of such proceeds.

**C.    Setoffs**

Except to the extent that any Claim is Allowed, the Debtor may, but shall not be required to, set off against any Claims and the payments or Distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities, Causes of Action and claims of every type and nature whatsoever which the Estate may have, but neither the failure to do so nor the allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Estate of any such claims or Causes of Action the Estate may have

*Chapter 11 Plan*

against such parties, and all such claims and Causes of Action which are not expressly released pursuant to the Plan shall be reserved by the Estate and vest or revest in the Debtor.

### D.      No Payment or Distribution Pending Allowance

All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Debtor and the holder of such Claim, by operation of law, by Final Order, or by this Plan. Notwithstanding any other provision in the Plan, no payment or Distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

<h2 style="text-align:center">ARTICLE VIII.<br>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</h2>

### A.      General Treatment of Executory Contracts: Rejected

The Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to: (a) reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for (i) the Affiliate Services Agreement, which shall be amended and restated pursuant to the TKNA Settlement Agreement, (ii) any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, or (iii) the Asbestos Insurance Policies or any other insurance policy of the Debtor (to the extent they are or can be construed as executory), and (b) assume the Affiliate Services Agreement (as amended and restated pursuant to the TKNA Settlement Agreement) and any Executory Contract identified in the Schedule of Assumed Contracts that will be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date. Notice of the Confirmation Hearing shall constitute notice to any non-debtor party to an Executory Contract that is to be assumed or rejected under the Plan of the proposed assumption or rejection of such Executory Contract and any proposed Cure Amount.

### B.      Cure Payments and Release of Liability

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c) and (f), all Cure Amounts that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to a Final Order shall be paid by the Debtor within fifteen (15) Business Days after such order becomes a Final Order with respect to Cure Amounts that are not Disputed or within fifteen (15) Business Days after a Disputed Cure Amount is Allowed by agreement of the parties or a Final Order. If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing any proposed Cure Amount, the cure of any other defaults, the promptness of the Cure Amount payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters. Any party to an assumed Executory Contract that receives full payment of a Cure Amount shall waive the right to receive any payment on a Class 6 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

*__Chapter 11 Plan__*

**C.     Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Claims created by the rejection of Executory Contracts pursuant to the Plan, or the expiration or termination of any Executory Contract prior to the Effective Date, must be Filed with the Bankruptcy Court and served on the Debtor no later than thirty (30) days after the Effective Date. Any Claims arising from the rejection of an Executory Contract pursuant to the Plan which proofs of Claim are not timely Filed will be forever barred from assertion against the Debtor, the Estate, and their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the discharge and/or injunction set forth in the Plan. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Class 6 General Unsecured Claims under the Plan.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**A.     Conditions Precedent to the Effective Date**

The following are conditions precedent to the Effective Date that must be satisfied in full or waived:

1. The order approving the Disclosure Statement shall have become a Final Order.

2. All of the schedules, documents, supplements and exhibits to the Plan shall have been Filed in form and substance acceptable to the Debtor, the E&A Retiree Committee, and TKNA.

3. The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance reasonably satisfactory to TKNA and the E&A Retiree Committee, and shall include the Claims Bar and Indemnity Order in the form set forth on Attachment 3 to the TKNA Settlement Agreement.

4. The Bankruptcy Court shall have entered the UAW Section 1114 Order (either as part of the Confirmation Order or separately) and entered a Confirmation Order approving the E&A Section 1114 Agreement.

5. The TKNA Settlement Agreement shall have been executed and approved without modification by the Confirmation Order.

6. The Amended Services Agreement shall have been executed.

7. The Independent Fiduciary shall have been appointed.

8. The Independent Fiduciary shall have accepted his or her role.

9. The Amended Asbestos Cost Sharing Agreement shall have been executed and approved by the Confirmation Order.

10. The Debtor shall have funded the Insured Asbestos Claim Fund, the Uninsured Asbestos Claim Fund, and the Asbestos Administration Fund.

*Chapter 11 Plan*

11. The Amended and Restated Bylaws of The Budd Company, Inc. shall have become effective.

12. The Retiree VEBAs shall have been established and the trustees of the Retiree VEBAs shall have been identified and accepted such positions.

13. TKNA shall have obtained and provided to the Debtor a copy of the Letter of Credit that satisfies section 3(i) of the TKNA Settlement Agreement.

Notwithstanding the foregoing, the Debtor reserves, in its discretion, the right to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent, provided, however, that no such waiver or modification (a) may be made by the Debtor without the consent of TKNA and the E&A Retiree Committee, and (b) to conditions precedent 9 or 10 may be made without the consent of the Participating Carriers. Subject to the foregoing, any such waiver or modification of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## ARTICLE X.
## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

### A.    Compromise and Settlement

**Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests. Specifically, the Plan shall constitute a good faith compromise of all Affiliate Claims and Estate Claims under the terms and provisions of the TKNA Settlement Agreement. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests and of the TKNA Settlement Agreement, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtor, the Estate, and holders of Claims and Equity Interests.**

### B.    Exculpation

**The Exculpated Parties and any property of the Exculpated Parties will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date or for any and all Claims and Causes of Action arising on or after the Petition Date, in connection with or related to the Estate, including, but not limited to, (i) the commencement and administration of the Bankruptcy Case, (ii) the operation of the business of the Debtor or administration of the Estate during the pendency of the Bankruptcy Case, (iii) formulating, negotiating, preparing, disseminating, soliciting, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, the TKNA Settlement Agreement, the Amended Asbestos Cost Sharing Agreement, or any other contract, instrument, release or other agreement or document**

-24-

created or entered into in connection with the Plan or any other post petition act taken or omitted to be taken in connection with the administration of the Estate; (iv) submission of and statements made in, the Disclosure Statement or any contract, instrument, release or other agreement or document entered into, or any action taken or omitted to be taken in connection with the Plan; or (v) any Distributions made pursuant to the Plan, except for acts constituting willful misconduct, gross negligence, or fraud and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The entry of the Confirmation Order shall constitute a determination by the Court that the Exculpated Parties shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among other provisions of law, sections 1125(e) and 1129(a)(3) of the Bankruptcy Code, with respect to the foregoing, provided, further, that the foregoing provisions of the Plan shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan Documents or any defenses thereto.

C.      Injunction

Subject to Articles II(B)(5)(b) and IV(I)(2) of the Plan and the corresponding injunction in the Confirmation Order, all Persons who have held, hold, or may hold Equity Interests or Claims against the Estate shall, with respect to any such Equity Interests or Claims, be permanently enjoined from and after the Effective Date, from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estate, Debtor, or any of their respective representatives or property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Estate, the Debtor, or any of their respective representatives or property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estate, the Debtor, or any of their representatives or property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Estate, the Debtor, or any of their property, except as contemplated or allowed by the Plan or the Confirmation Order; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (vi) pursuing, prosecuting, or recovering proceeds on account of any claims belonging to the Estate; and (vii) prosecuting or otherwise asserting any right, claim, or cause of action released pursuant to the Plan.

D.      Release by the Estate of the Release Parties

Effective as of the Effective Date, and except as otherwise set forth in the Plan or the Confirmation Order, the Debtor will be deemed to have forever released, waived and discharged each of the Release Parties from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtor to act in accordance with or otherwise enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered

*Chapter 11 Plan*

or executed thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, or the Plan.

**E.     Release of the Released TKNA Parties and Injunction**

In accordance with the TKNA Settlement Agreement, and subject to and conditioned upon the occurrence of the Effective Date and the payment of the E&A Payment, the Debtor, the Estate and the E&A Retiree Committee, on behalf of themselves and their agents, members, predecessors, successors, and assigns, and all Persons who have held, hold, or may hold Claims against the Debtor or the Estate, acting derivatively through the Debtor or the Estate, shall be deemed to have unconditionally, absolutely, irrevocably and forever released and discharged the Released TKNA Parties with respect to all causes of action, suits, debts, liabilities, accounts, promises, warranties, damages and consequential damages, agreements, costs, expenses, claims or demands that have been or could have been asserted by or on behalf of the Debtor, the Estate, and/or the E&A Retiree Committee against the Released TKNA Parties related to or arising out of any act or thing that occurred or failed to occur prior to the Effective Date, whether known or unknown, direct, indirect, or derivative, liquidated or unliquidated, disputed or undisputed, fixed or contingent, inchoate or matured, foreseen or unforeseen, whether based in contract, tort, statute or otherwise, including, without limitation, avoidance actions or other causes of action available under chapter 5 of the Bankruptcy Code and claims arising from or relating to the Debtor's Actual Tax Sharing Agreement, the Non-Debtor TSA Amendment, the Affiliate Services Agreement (as amended and restated by this Plan or the TKNA Settlement Agreement), the Debtor's sale of Waupaca, and/or the ownership and/or control of the Debtor by TKNA or Affiliates or the equity securities of the Debtor (collectively, the "<u>Released Estate Claims</u>"); provided, however, that nothing contained in this paragraph shall be deemed or construed to be a covenant, release, waiver or discharge of the terms and conditions of this Plan, the TKNA Settlement Agreement, or the Affiliate Services Agreement (as amended and restated by this Plan and the TKNA Settlement Agreement).

In furtherance of the foregoing release, and subject to and conditioned upon the occurrence of the Effective Date and the payment of the E&A Payment, each of the Debtor, the Estate, and the E&A Retiree Committee, on behalf of themselves and their agents, members, predecessors, successors, and assigns, and all Persons who have held, hold, or may hold Claims against the Debtor or the Estate, acting derivatively through the Debtor or the Estate, shall be deemed to have unconditionally, absolutely, irrevocably and forever released, waived and discharged each of the Released TKNA Parties from each of the Released Estate Claims; and each of the foregoing Persons are permanently precluded and enjoined from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Released TKNA Parties or any of their property based upon, arising out of or related to the Released Estate Claims; or (ii) enforcing, levying, attaching (including, without limitation, any pre-

-26-

judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Released TKNA Parties or any of their property with respect to the Released Estate Claims.

F.     Release of the Released Estate Parties

Subject to and conditioned upon the occurrence of the Effective Date, and expressly subject to the reservation of TKNA's setoff rights as expressly reserved in Section 6 of the TKNA Settlement Agreement, each of the Released TKNA Parties, as of the Effective Date, shall be deemed to have unconditionally, absolutely and irrevocably released the Debtor, the Estate, and their current and former officers (including, without limitation, the Debtor's past and current Chief Restructuring Officers Mr. Carl Lane and Mr. Charles Moore), directors (including, without limitation, the current Independent Director, Mr. Charles Sweet, and directors Brian Bastien and Heinz Hense), agents, professionals, employees, members, legal representatives, attorneys, predecessors, heirs, successors and assigns, each in his, her, or its capacity as such, and each of them, and the E&A Retiree Committee, and its members, agents, professionals, legal representatives, attorneys, actuaries, financial advisors, predecessors, heirs, successors and assigns, each in his, her or its capacity as such, and each of them, and, solely in the event that the UAW elects to accept on behalf of the UAW VEBA the Additional Payments as provided for in Section 17 of the TKNA Settlement Agreement, then also including the UAW, and its agents, professionals, legal representatives, attorneys, actuaries, financial advisors, predecessors, heirs, successors and assigns, each in his, her or its capacity as such and each of them (collectively, the "Released Estate Parties") with respect to all causes of action, suits, debts, liabilities, accounts, promises, warranties, damages and consequential damages, agreements, costs, expenses, claims or demands that the Released TKNA Parties has or ever had or claims to have currently or at any future date against the Released Estate Parties related to or arising out of any act or thing that occurred or failed to occur prior to the Effective Date, whether known or unknown, direct, indirect, or derivative, liquidated or unliquidated, disputed or undisputed, fixed or contingent, inchoate or matured, foreseen or unforeseen, whether arising in law, equity, contract, tort, statute or otherwise, including, without limitation, any claims relating to or arising from the Pension Plans, TKNA's assumption of the Pension Plans, or any funding of the Pension Plans, and claims arising under or related to the Debtor's Actual Tax Sharing Agreement, the Non-Debtor TSA Amendment, and/or the Affiliate Services Agreement (as amended and restated by this Plan and/or the TKNA Settlement Agreement) (collectively, the "Released TKNA/Affiliate Claims"); provided, however, that nothing contained in this paragraph shall be deemed or construed to be a covenant, release, waiver or discharge of the terms and conditions of this Plan, the TKNA Settlement Agreement, the Affiliate Services Agreement (as amended and restated by the TKNA Settlement Agreement), or any claim or cause of action that is wholly unrelated to Budd; or of any claim or cause of action relating to work performed by Towers Watson in connection with its Benefits Investment Committee, or by Stevenson Keppelmen for TKNA in connection with any PBGC related issue.

-27-

**G.      Releases of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estate shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtor.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

Pursuant to Sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Bankruptcy Case and all Entities with respect to all matters related to the Bankruptcy Case, the Debtor and the Plan as is legally permissible. Notwithstanding anything herein to the contrary, after 180 days after the Effective Date, the Bankruptcy Court shall not retain jurisdiction over any Asbestos Claim for which the Bankruptcy Court has not entered a Final Order allowing or disallowing such Asbestos Claim; provided, however, the Bankruptcy Court shall retain jurisdiction over any Asbestos Claims for which the Bankruptcy Court or another court of competent jurisdiction has entered an order disallowing any Asbestos Claim within 180 days of the Effective Date, and such order is subject to an unexpired appeal or challenge period or has been appealed or otherwise challenged.

**ARTICLE XII.**
**MISCELLANEOUS PROVISIONS**

**A.      Final Fee Applications**

The deadline for Professionals to File applications for payment of Fee Claims shall be twenty-eight (28) days after the Effective Date.

**B.      Payment of Statutory Fees**

All fees payable pursuant to Article 1930 of title 28 of the United States Code after the Effective Date, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid prior to the closing of the Bankruptcy Case on the earlier of when due or the Effective Date, or as soon thereafter as practicable.

**C.      Modification of Plan**

Subject to the provisions of the TKNA Settlement Agreement and the limitations contained in the Plan: (1) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules and with the consent of TKNA and the E&A Retiree Committee, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor may, with the consent of TKNA and the E&A Retiree Committee, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any

-28-

inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; *provided, however,* that the E&A Payment and any other distributions to the E&A VEBA provided for by this Plan may not be modified in any way without the express written consent of the E&A Retiree Committee.

### D.    Revocation of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then the Plan shall be null and void in all respects, and nothing herein shall be deemed an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity including with respect to the amount or allowability of any Claim or the value of any property of the Estate.

### E.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### F.    Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Illinois, without giving effect to the principles of conflict of laws thereof.

### G.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement (written or oral) made by any Person in connection with the Plan or the negotiation or prosecution of the Plan, including, without limitation, the representations made in the TKNA Settlement Agreement or the Disclosure Statement, or any provision contained in the Plan, nor the taking of any action by the Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Estate or the Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest, in each case prior to the Effective Date.

### H.    Insurance Neutrality

Nothing in the Plan Documents shall diminish or impair, or be deemed to diminish or impair, the rights of any Insurer, including the right to assert any claim or defense, including, but not limited to, any claim for contribution or subrogation, defense, right, setoff or counterclaim against other insurance companies, the holder of an Asbestos Claim in connection with any Asbestos Claim, or any Asbestos Insurance Policy. Without limiting the generality of the foregoing, nothing in the Plan Documents shall, under any theory, (1) constitute a trial, an

-29-

*Chapter 11 Plan*

adjudication on the merits, or evidence establishing the liability of any Insurer in any litigation for any Claim, including any Asbestos Claim, or under any Asbestos Insurance Policy, (2) constitute, or be deemed to constitute a determination of the reasonableness of the amount of any Claim, including any Asbestos Claim, either individually or in the aggregate with other Claims, (3) be deemed to grant to any Person or Entity any right to sue any Insurer directly, in connection with any Claim, including any Asbestos Claim, or any Asbestos Insurance Policy, (4) constitute a finding or determination that the Debtor is a named insured, or insured in any other way under an Asbestos Insurance Policy, (5) be subject to, controlled by, or affected by the principles set forth in *UNR Industries v. Continental Cas. Co.*, 942 F.2d 1101 (7th Cir. 1991) or similar principles or authorities, or (6) constitute a finding or determination that any Insurer has any defense or indemnity obligation with respect to any Claim, including any Asbestos Claim.

No Insurer shall be bound in any current or future litigation concerning a Claim, including any Asbestos Claim, or an Asbestos Insurance Policy, by any factual findings or conclusions of law issued in connection with confirmation of the Plan (including on appeal or in any subsequent proceeding necessary to effectuate the Plan), and no such findings of fact or conclusions of law shall have any *res judicata* or collateral estoppel effect on any claim, defense, right, offset or counterclaim that has been asserted or that may be asserted in any current or subsequent litigation concerning a Claim, including any Asbestos Claim, or an Asbestos Insurance Policy. The Participating Carriers shall be bound by the terms of the Amended Asbestos Cost Sharing Agreement, to the extent a party thereto, provided, however, (1) nothing in the Plan Documents shall impair or diminish the rights, or increase the obligations or burdens, of any Participating Carrier under the Amended Asbestos Cost Sharing Agreement, and (2) to the extent the Plan Documents impose different or greater obligations upon the Participating Carriers or are otherwise deemed inconsistent with the Amended Asbestos Cost Sharing Agreement with respect to the Participating Carriers, the Amended Cost Sharing Agreement shall control. Nothing in the Amended Asbestos Cost Sharing Agreement shall diminish or impair, or be deemed to diminish or impair, the rights of (i) any Insurer, that is not a Participating Carrier, against a Participating Carrier, and (ii) any Participating Carrier against an Insurer that is not a Participating Carrier. It is the intent of this Plan that Insurers shall retain, and be permitted to assert, (a) all of their defenses to coverage of Claims, including Asbestos Claims, notwithstanding any provision of any Plan Document and (b) all of the Debtor's defenses to liability, both legal and equitable in connection with any asserted Claims, including Asbestos Claims, and that the Insurers' rights to assert all such underlying defenses and defenses to coverage of any Claims will not be impaired in any way by any of the Plan Documents.

I.     **Article 1146 Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

***Chapter 11 Plan***

**J.      Section 1125(e) Good Faith Compliance**

The Debtor and its representatives shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**K.      Further Assurances**

The Debtor, all holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**L.      Service of Documents**

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by first class U.S. mail, postage prepaid as follows:

**PROSKAUER ROSE LLP**            **The Budd Company, Inc.**
Brandon W. Levitan                Attn: President
70 W. Madison St.                 111 W. Jackson Blvd.
Suite 3800                        Suite 2400
Chicago, IL 60602                 Chicago, IL 60604
Phone: (312) 962-3550
Facsimile: (312) 962-3551

**M.      Filing of Additional Documents**

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**N.      Closing of the Bankruptcy Case**

Upon payment and collection of all of the Settlement Payments (including any applicable Settlement Increase) and the Additional Payments (if applicable) payable under the TKNA Settlement Agreement, the Debtor may seek entry of a Final Decree closing the Bankruptcy Case.

**O.      No Stay of Confirmation Order**

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

*Chapter 11 Plan*

Dated: March 1, 2016

The Budd Company, Inc.

*/s/ Carl S. Lane*

Carl S. Lane

Its Chief Restructuring Officer

**PROSKAUER ROSE LLP**
Jeff Marwil (IL 6194054)
Jeremy T. Stillings (IL 6279868)
Brandon W. Levitan (IL 6303819)
70 W. Madison St.
Suite 3800
Chicago, IL 60602
Phone: (312) 962-3550
Facsimile: (312) 962-3551

*Counsel for Debtor*

***Chapter 11 Plan***