**Exhibit A**

Execution Version

## Settlement Agreement Between ThyssenKrupp Finance USA, Inc. and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)

This Settlement Agreement (the "Agreement") is entered into on April 14, 2016 by and between ThyssenKrupp Finance USA, Inc. ("TK Finance") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) (the "UAW"), in its capacity as the section 1114(c)(1) authorized representative of the union retirees (the "UAW Retirees") of The Budd Company, Inc. (the "Debtor") with respect to their retiree benefits (as retiree benefits are defined in 11 U.S.C. § 1114(a)). TK Finance and the UAW are referred to herein as each a "Party" and together the "Parties."

### Recitals

A.  The Debtor is currently a debtor-in-possession in the chapter 11 case pending before the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court") captioned *In re The Budd Company, Inc.*, Case No. 14-11873 (the "Chapter 11 Case").

B.  On November 16, 2015 the Debtor, ThyssenKrupp North America, Inc. ("TKNA") and the Committee of Executive and Administrative Retirees entered into a settlement agreement (the "TKNA Settlement Agreement").

C.  The purpose of the TKNA Settlement Agreement is to settle potential claims that the Debtor believes it holds against TKNA and others, and potential claims that TKNA believes it holds against the Debtor.

D.  Pursuant to the TKNA Settlement Agreement, among other things, at the irrevocable direction of the Debtor, TKNA has agreed to pay to a Voluntary Employees' Beneficiary Association ("VEBA") to be established for the benefit of the UAW Retirees (the

1

**Execution Version**

"UAW VEBA"), eight (8) equal annual payments of $35,625,000, beginning on the later of (i) October 3, 2016 or (ii) thirty (30) days after an order of the Bankruptcy Court confirming the Debtor's chapter 11 plan (the "Confirmation Order") has become a Final Order (as defined in the TKNA Settlement Agreement), and continuing each year thereafter for seven (7) years (each payment a "UAW Settlement Payment" and collectively the "UAW Settlement Payments").

E. The TKNA Settlement Agreement further provides that, at the irrevocable direction of the Debtor, TKNA will pay to the UAW VEBA, upon the UAW's election, additional payments totaling $35 million, payable in eight (8) equal annual installments of $4,375,000 on the dates of each UAW Settlement Payment (the "Additional Payments") for the Waupaca Claims Release (as defined in the TKNA Settlement Agreement).

F. The TKNA Settlement Agreement is subject to and conditioned upon, among other things, the Bankruptcy Court's entry of a Confirmation Order that approves the TKNA Settlement Agreement without modification.

G. On March 31, 2016, the Debtor filed that certain Seventh Amended Chapter 11 Plan For The Budd Company, Inc. [D.I. 1728] (the "Seventh Amended Plan") and that certain Disclosure Statement For Seventh Amended Chapter 11 Plan For The Budd Company, Inc. [D.I. 1729] (the "Seventh Amended DS"). In the Seventh Amended DS, the Debtor estimates that on the effective date of the Seventh Amended Plan, the Debtor will fund the UAW VEBA with $179 million in cash (the "UAW Cash") from the Debtor's estate (the "Estate").

H. The UAW has contended that pursuant to section 1114 of the Bankruptcy Code the UAW Retirees are entitled to assert claims against the Estate for any reduction to their retiree benefits. In consideration for and conditioned upon receipt of the funds the UAW VEBA is entitled to upon consummation of this Agreement, in addition to delivering the releases

**Execution Version**

contemplated hereunder, the UAW will no longer pursue the section 1114 claim reduction contention.

### Agreement

**Now, therefore,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. The prefatory phrases, recitals A through G and definitions set forth above are incorporated in full, and made a part of, this Agreement.

2. In exchange for the releases provided herein by the UAW Releasing Parties (defined below), TK Finance will (a) pay the sum of $4 million (i) to the UAW VEBA on the Effective Date (as defined in the TKNA Settlement Agreement) if the Effective Date occurs on or after the date that the Confirmation Order becomes a Final Order (as defined in the TKNA Settlement Agreement), or (ii) into an escrow account to be designated by the UAW if the Effective Date occurs on a date that is before the Confirmation Order has become a Final Order, in which case such amount will be released from escrow to the UAW VEBA on the date that the Confirmation Order becomes a Final Order, and (b) pay to the UAW VEBA an additional sum of $6 million on the later of (i) October 3, 2016 or (ii) 30 days after the Confirmation Order has become a Final Order. The amounts set forth in subsections (a) and (b) of this Paragraph 2 are collectively referred to as the "TK Finance Payments." The TK Finance Payments are in addition to the UAW Settlement Payments, the Additional Payments and the UAW Cash described in Recitals D, E and G above.

3. Subject to and conditioned upon the occurrence of the Effective Date and the payment of the TK Finance Payments, the UAW, on behalf of itself, its agents, predecessors, successors, and assigns, and as the section 1114(c)(1) authorized representative of the UAW

3

**Execution Version**

Retirees in the Chapter 11 Case (collectively, the "UAW Releasing Parties"), on the Effective Date shall be deemed to have unconditionally, absolutely, and irrevocably and forever released and discharged the Released TKNA Parties with respect to all causes of action, suits, debts, liabilities, accounts, promises, warranties, damages and consequential damages, agreements, costs, expenses, claims or demands, related to the Debtor or the Estate, that have been or could have been asserted by or on behalf of the UAW Releasing Parties against the Released TKNA Parties, acting derivatively (and not in their individual capacities) through the Debtor or the Estate, related to or arising out of any act or thing that occurred or failed to occur prior to the Effective Date, whether known or unknown, direct, indirect, or derivative, liquidated or unliquidated, disputed or undisputed, fixed or contingent, inchoate or matured, foreseen or unforeseen, whether based in contract, tort, statute or otherwise, including, without limitation, avoidance actions or other causes of action available under chapter 5 of the Bankruptcy Code and claims arising from or relating to the Debtor's Actual Tax Sharing Agreement, the Non-Debtor TSA Amendment, the Debtor's sale of Waupaca, and/or the ownership and/or control of the Debtor by TKNA or Affiliates (as each of the foregoing terms is defined in the TKNA Settlement Agreement) or the equity securities of the Debtor; provided, however, that nothing contained in this paragraph shall be deemed or construed to be a release, waiver or discharge of any claim or cause of action that is unrelated to the Debtor or which could be asserted by the UAW Releasing Parties directly and without acting derivatively through the Debtor or the Estate; and provided further, that nothing contained in this Agreement shall waive or be deemed to waive the right to enforce this Agreement or the TKNA Settlement Agreement.

    4.    The UAW elects to accept on behalf of the UAW VEBA the Additional Payments as set forth in Paragraph 17 of the TKNA Settlement Agreement, and the Confirmation Order

**Execution Version**

shall include the Waupaca Claims Release, in the form set forth in Attachment 4 to the TKNA Settlement Agreement.

5. The UAW will support the approval of the TKNA Settlement Agreement by the Bankruptcy Court so long as the TKNA Settlement Agreement has not been modified in a manner that provides for treatment of the UAW Retirees that is materially less beneficial than the treatment provided in the current form.

6. The UAW will support confirmation of an amended chapter 11 plan and amended chapter 11 disclosure statement that reflects this Agreement and that provides for treatment of the UAW Retirees in a manner that is not materially less beneficial than the treatment provided in the Seventh Amended Plan and will recommend in a writing to be included in the Debtor's plan solicitation materials that the UAW Retirees vote in favor of such a plan.

7. The effectiveness of this Agreement is subject to, and expressly conditioned upon, the following:

    a. the Bankruptcy Court approving the TKNA Settlement Agreement in a form that has not been modified in a manner that provides for treatment of the UAW Retirees that is materially less beneficial than the treatment provided in the current form of the TKNA Settlement Agreement;

    b. the Debtor amending the Seventh Amended Plan and Seventh Amended DS to incorporate the terms of this Agreement without modification;

    c. any such amended or modified plan presented to the Bankruptcy Court providing for treatment of the UAW Retirees in a manner that is not materially less beneficial than the treatment now proposed in the Seventh Amended Plan, giving effect to this Agreement;

**Execution Version**

      d.    the Bankruptcy Court entering a Confirmation Order confirming such amended or modified plan and such order becoming a Final Order (as defined in the TKNA Settlement Agreement);

      e.    the Bankruptcy Court entering a Confirmation Order that includes the Claims Bar and Indemnity Order (as defined in the TKNA Settlement Agreement) in the form set forth on Attachment 3 to the TKNA Settlement Agreement and the Waupaca Claims Release; and

      f.    the Debtor continuing to estimate, through and including the date of the entry of the Confirmation Order, that the UAW Cash will be no less than $179 million.

    8.    In the event that the conditions of effectiveness of this Agreement set forth in Paragraph 7 are not satisfied, this Agreement shall immediately terminate and be of no further effect, and the rights of the Parties shall be in all respects unaffected by the execution of this Agreement, and any amounts placed into escrow hereunder shall be promptly returned to TK Finance.

    9.    Nothing in this Agreement shall be considered to be an admission against interest or an acknowledgement of the strength or weakness of any litigation position. This Agreement shall not be admissible in any litigation or contested matter, other than one seeking enforcement of this Agreement and/or assertion of rights hereunder.

    10.    The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction to the fullest extent possible over the interpretation and enforcement of this Agreement and over any dispute between them in any way related to this Agreement. The Parties further agree that this Agreement shall be construed and governed by the laws of the State of Illinois irrespective of its choice of law rules.

**Execution Version**

11. This Agreement constitutes the entire agreement of the Parties as to the subject matter hereof and is the final and complete expression of their intent.

12. This Agreement may be executed in one or more counterparts, by facsimile, electronic mail or other means confirmed in writing as acceptable to the Parties, with each counterpart to be considered an original portion of this Agreement.

13. Any and all notices required or permitted under this Agreement and any and all correspondence shall be in writing and shall be personally delivered or mailed by registered or certified mail, return receipt requested, or by overnight delivery to the Parties at the following addresses, unless and until a different person and/or address has been designated by written notice to the other Party:

| Notice to TK Finance: | Notice to the UAW |
|---|---|
| ThyssenKrupp Finance USA, Inc.<br>Attn: Joaquin Boeker<br>111 West Jackson Street, Suite 2400<br>Chicago, Illinois  60604<br><br>with a copy to<br><br>Gibbons P.C.<br>Attn: Terry Myers<br>One Pennsylvania Plaza<br>37th Floor<br>New York, NY 10119-3701<br>Email: tmyers@gibbonslaw.com | International Union, UAW<br>Attn: Niraj Ganatra<br>8000 East Jefferson Avenue<br>Detroit, Michigan 48214<br>Email: nganatra@uaw.net<br><br>with copies to<br><br>Cleary Gottlieb Steen & Hamilton LLP<br>Attn: James Bromley<br>One Liberty Plaza<br>New York, NY 10006<br>Email: jbromley@cgsh.com<br><br>and<br><br>Nicholson Feldman LLP<br>Attn: Michael Nicholson<br>232 Nickels Arcade<br>Ann Arbor, MI 48104<br>Email: mnicholson@nichfeld.com |

Case 14-11873    Doc 1755-1    Filed 04/15/16    Entered 04/15/16 15:51:09    Desc
Exhibit A - Settlement Agreement Between ThyssenKrupp Finance USA  Inc. and the    Page 9 of 10

Execution Version

In witness whereof, the Parties, each by a person duly authorized, have caused this Agreement to be executed as of the date first set forth above.

**ThyssenKrupp Finance USA, Inc.**

_____
Joaquin Boeker
President


**The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)**

_____
Niraj R. Ganatra
General Counsel

8

**Execution Version**

**In witness whereof**, the Parties, each by a person duly authorized, have caused this Agreement to be executed as of the date first set forth above.

**ThyssenKrupp Finance USA, Inc.**

_____
Joaquin Boeker
President

**The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)**

_____
Niraj R. Ganatra
General Counsel