UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: )
) Case No. 14 B 11873
The Budd Company, Inc. ) Chapter 11
) Honorable Jack B. Schmetterer
Debtor )

**OPINION ON FEES SOUGHT BY PROSKAUER ROSE LLP IN
FIFTH INTERIM APPLICATION FOR WORK ON
DISCLOSURE STATEMENT BY COUNSEL FOR DEBTOR (Dkt No. 1483)**

About 25 months into this Chapter 11 case, large fees allowed to counsel and in prospect for various parties have contributed to eroding of the cash held by Debtor. A large part of that cash is needed for a Plan that would provide healthcare insurance for the lifetime of 6500 former workers. Those fees were increased by fights over many issues between several parties in interest.

This Opinion focuses on one such issue, which is the preparation and possible approval over objection to the Disclosure Statement which will accompany the ultimate Plan that must be voted on by creditors at a confirmation hearing.

Debtor's Plan originally proposed to fund future health insurance coverage out of cash on hand and a settlement offered by Debtor's parent company and possibly other parties. The original settlement offer totaled $335 million, and subsequent negotiations have increased that total. The cash on hand was reported at approximately $384 million when the case was filed on March 31, 2014, and at last report has shrunk to about $271 million (as of the March 2016 monthly report).

Payment of attorneys' fees of the parties were only partly responsible for shrinkage of cash on hand. The cash has also been used to fund pre-bankruptcy healthcare of the former

employees and their families. The pre-bankruptcy obligations for healthcare were at risk as soon as the bankruptcy case was filed; at the rate of expenditure in the case, all cash on hand was projected to last only six years.

The United Auto Workers originally favored litigation against possible liable parties to obtain recovery of more than the offered settlement, and it also disputed the allocation of available funds. All disputes resulted in multiple drafts of the Plan and Disclosure Statement. We are now on the case's Ninth Amended Chapter 11 Plan and Ninth Amended Disclosure Statement, following negotiations which finally brought the case to a consensual Plan.

The prior draft Disclosure Statements and amended versions were both bulky and complicated. The Eighth version was 71 pages long plus exhibits. It was purportedly drafted to help creditors understand a Plan that was then 32 pages long plus exhibits. Thus, the explanation supposed to help creditors understand the Plan to enable them to vote sensibly was more than twice the length of the Plan. Moreover, each successive draft Disclosure Statement has been repetitive, confusing and overly technical. Over successive drafts, the Court urged, then ordered, preparation of a clear simplified introduction which ran 20 pages before the parties settled. The rest of the various Disclosure Statement drafts were repetitive, overly complex, and not helpful to ordinary creditors. It also incorporated the wishes of different interests who urged that technical matters they had placed in the Plan should be repeated in the Disclosure Statement.

In addition to the Disclosure Statement, any party in interest may seek court approval of a letter with arguments supporting or opposing the Plan to accompany the Disclosure Statement. As negotiations have brought the case close to a consensual Plan each interest has drafted such a

letter. They are each short, clear, simple and informative, the kind of information that should appear in a Disclosure Statement.

In the pending fee applications filed by Counsel for Debtor, the Court has, among other subjects, examined fees sought by counsel for the work by them in the battle over drafts of the Disclosure Statement. The pending fee application reflect a long and costly dispute over draft Disclosure Statements, and future fee applications will likely do the same.

So it is appropriate both to consider reduction of fees requested for such work, and to give an explanation for the reductions.

### Applicable Standards

A thorough discussion has been found in a recent opinion by a Bankruptcy Judge in *In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 WL 6848113, at *7-8 (Bankr. S.D.N.Y., Nov. 6, 2015) (Glenn, J.):

> Under section 1125 of the Bankruptcy Code, a disclosure statement contains "adequate information" if it contains
>
>> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.
>
> 11 U.S.C. § 1125(a)(1). Congress purposely left vague the standard for judging what constitutes adequate information to allow the Court to make a case-by-case determination:

> The flexibility in the standard comes primarily in the use of the phrase "investor typical of holders of claims or interests of the relevant class." That phrase is further defined to develop the idea that the disclosure required depends on the circumstances of the case, the relative sophistication of the creditors, and their access to other sources of information about the plan.
>
> . . .

[S]ection 1125 of the Bankruptcy Code provides some guidance to the Court, stating it shall consider "the complexity of the case, the benefit of additional information to creditors and other parties-in-interest, and the cost of providing additional information" when determining if a disclosure statement provides adequate information. 11 U.S.C. § 1125(a)(1). Under section 1125 and its legislative history, courts have held that

> a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization. A disclosure statement should likewise contain all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization. The disclosure statement, on the other hand, should not be burdened with overly technical and extremely numerous additions, where such information would serve only to diminish the understanding of a typical creditor or interest holder.

*In re Cardinal Congregate I*, 121 B.R. 760, 765–66 (Bankr. S.D. Ohio 1990) (citations and internal quotation marks omitted). Furthermore, a disclosure statement is intended to be a source "of factual information upon which one can make an informed judgment about a reorganization plan," and not "an advertisement or a sales brochure." *In re Eagan*, 33 B.R. 672, 676–76 (Bankr. N.D. Ill.1983). Accordingly, "disclosure statements must contain factual support for any opinions contained therein since opinions alone do not provide the parties voting on the plan with sufficient information upon which to formulate decisions." 10 COLLIER ON BANKRUPTCY ¶ 1125.02[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2014).

Other courts have created a non-exhaustive list of factors that should be disclosed, with the qualification that "[d]isclosure of all factors is

not necessary in every case." *In re Metrocraft Publ'g Servs.*, 39 B.R. 567, 568 (Bankr. N.D. Ga.1984). The factors are:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*Id.* (citations omitted); see also *In re Phoenix Petroleum*, 278 BR 385, 406 n.6 (Bankr. E.D. Pa.2001); 10 COLLIER ON BANKRUPTCY ¶ 1125.02[2] at 1125.

Another Bankruptcy Judge in New York further elaborated in *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008).

> The standard for disclosure is, thus, flexible and what constitutes "adequate information" in any particular situation is determined on a case-by-case basis, *see In re Aspen Limousine Service Inc.*, 193 B.R. 325, 334 (D. Colo. 1996); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr.N.D.N.Y.1988), with the determination being largely within the discretion of the bankruptcy court. *See In re*

*A.H. Robins Co., Inc.*, 880 F.2d 694, 697 (4th Cir.1989); *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir.1988); *see also In re El Comandante Management Co., LLC*, 359 B.R. 410, 414 (Bankr. D. Puerto Rico 2006) (holding that the determination of what is "adequate information" in a disclosure statement is a practical and variable inquiry made on a case-by-case basis * * * Beyond the statutory guidelines described in Section 1125(a)(1), the decision to approve or reject a disclosure statement is within the discretion of the bankruptcy court (internal quotations and citations omitted)). "Factual findings of the bankruptcy judge on 'core matters' such as the adequacy of disclosure under Section 1125(a) should be set aside on appeal by the district court only if those findings represent an abuse of discretion." *Kirk v. Texaco, Inc.*, 82 B.R. 678, 681 (S.D.N.Y.1988) (citing *In re Snyder*, 56 B.R. 1007, 1009 (N.D. Ind. 1986)). Thus, the issue is whether the Bankruptcy Court's finding that the Disclosure Statement contains "adequate information" within the meaning of Section 1125(a)(1) is clearly erroneous.

The Disclosure Statement should be clearly written with sufficient information as to enable the creditors to make "in informed judgment about the plan" 11 U.S.C. § 1125(a)(1). It certainly should not be written in complex technical terms that ordinary creditors will not understand. It is not a vehicle to supply each interest have its special parts of the Plan repeated. It should explain and simplify the Plan, not write something far larger than the Plan and hard to read. Each party in interest may have a letter stating is position on the Plan, and the parties in this case are doing exactly that. It is ironic that at long last they have thereby come to prepare clear descriptions of the Plan.

### The Pending Fee Application

Between August 3, 2015 and November 30, 2015, Debtor set many lawyers to work to deal with objections to its changing versions of Disclosure Statement. Instead of drafting a coherent Statement and defending it in court, Debtor re-wrote, re-wrote, and re-wrote again attempting mainly to accommodate UAW counsel who at that time were seeking to destroy the

Plan, not clarify it. Debtor now seeks a total of $131,500.50 for this unnecessary work which was not finished during this time period and was not at all useful either at the time or in retrospect. During this same period of time the UAW counsel (the lead party attacking Disclosure Statement) billed only $10,459.50 by raising objections. The UAW thereby played Debtor's counsel into a drafting exercise that was useless and extravagant.

Allowing 50% of the fees thereby sought for such useless work would be generous. The Fee Examiner reduced fees on this work by 15%. The Court will further reduce by an additional 35%. Further fee applications by Debtor and other parties will be reviewed similarly as to work on Disclosure Statement drafting.

## CONCLUSION

As part of current fee review, an Order will be entered reducing fees in accord with the foregoing.

Enter:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated: May _____, 2016

MAY 2 0 2016