## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No. 14-11873 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |
| | ) | |
| | ) | |

## ORDER CONFIRMING NINTH AMENDED
## CHAPTER 11 PLAN FOR THE BUDD COMPANY, INC. DATED MAY 4, 2016

The Budd Company, Inc. (the "Debtor" or "Proponent"), as debtor and debtor in possession in the above-captioned chapter 11 case, having proposed and filed the *Ninth Amended Chapter 11 Plan For The Budd Company, Inc. Dated May 4, 2016* (the "Plan")[1] [Docket No. 1797] with the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court"); the Court having entered, after due notice and a hearing, the *Order Approving The Disclosure Statement And Plan Confirmation Procedures* (the "Disclosure Statement Order") [Docket No. 1811]; the *Disclosure Statement For Ninth Amended Chapter 11 Plan For The Budd Company, Inc.*, dated May 4, 2016 (the "Disclosure Statement") [Docket No. 1798] and the Plan and Solicitation Packages having been distributed to holders of Claims and Equity Interests entitled to vote thereon as provided in the Disclosure Statement Order; due notice of (a) entry of the Disclosure Statement Order, (b) the Confirmation Hearing, and (c) the deadline for voting on, and/or objecting to, the Plan having been provided to holders of Claims and Equity Interests and other parties in interest in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules for the Northern District

---

[1] Unless otherwise defined herein, capitalized terms used in this Order shall have the meanings ascribed to them in the Plan and/or the Disclosure Statement Order (as defined herein).

of Illinois (the "Local Rules"); such notice being sufficient under the circumstances and no other

or further notice being required; the deadline for objections to the Plan having passed with no

objections to the Plan having been filed; the Confirmation Hearing having been held before the

Court on June 24, 2016; the Court having reviewed and considered the Plan, the Disclosure

Statement, the Disclosure Statement Order, the Report and Certification Regarding Ballots on

Plan of Reorganization, dated June 20, 2016 (certifying the methodology for the tabulation and

results of voting with respect to the Plan and evidencing that the Proponent received the requisite

acceptances of the Plan in both number and amount as required by section 1126 of the

Bankruptcy Code for each of the Voting Classes except Class 5) (as amended by the Amended

Voting Declaration, the "Voting Declaration") [Docket No. 1894], the *Amended Declaration of*

*Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and*

*Tabulation of Ballots Accepting and Rejecting the Ninth Amended Chapter 11 Plan for the Budd*

*Company, Inc.* (the "Amended Voting Declaration") [Docket No. 1900]; the *Request of Certain*

*Class 5 Voters That Court Accept Newly Cast Ballots In Support of Debtor's Chapter 11 Plan*

(the "Late Class 5 Ballots") [Docket No. 1897], the *Declaration of Chief Restructuring Officer*

*Carl S. Lane in support of confirmation of the Plan* (the "Lane Declaration") [Docket No. 1903],

*Century Indemnity Company's Objection to the Budd Company Inc.'s Proposed Order*

*Confirming Ninth Amended Plan of Reorganization* (the "Century Objection") [Docket No.

1898], and all testimony and exhibits proffered, adduced, and admitted into evidence at the

Confirmation Hearing; the appearance of all interested parties having been duly noted in the

record of the Confirmation Hearing; the Court having determined based upon all of the foregoing

that the Plan should be confirmed, as reflected by the Court's rulings made herein and on the

record of the Confirmation Hearing; and after due deliberation and sufficient cause appearing

2

therefor, it is hereby DETERMINED, FOUND, ADJUDGED, AND DECREED:

## FINDINGS OF FACT

A. <u>Findings</u>.  The findings set forth herein and on the record of the Confirmation Hearing

constitute the Court's findings of fact pursuant to Rule 52 of the Federal Rules of Civil

Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of

the following findings of fact constitute conclusions of law, they are adopted as such.  To the

extent any of the following conclusions of law constitute findings of fact, they are adopted as

such.

B. <u>Exclusive Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.  This

Court has jurisdiction over the Bankruptcy Case and the confirmation of the Plan pursuant to 28

U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(L), and this Court has the constitutional authority to enter a final order with respect

thereto.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Burden of Proof</u>.  The Proponent has met its burden of proving the elements of section

1129(a) of the Bankruptcy Code for confirmation of the Plan by a preponderance of the

evidence.

D. <u>Solicitation and Notice</u>.  On May 6, 2016 (the "<u>Disclosure Statement Approval Date</u>"),

the Court entered the Disclosure Statement Order, which, among other things, approved the

Disclosure Statement, finding that it contained "adequate information" within the meaning of

section 1125 of the Bankruptcy Code, and established procedures for the Proponent's solicitation

of votes of acceptances and rejections with respect to the Plan.  Prior to the Solicitation Deadline

of May 13, 2016, the Solicitation Packages, containing, as appropriate and in accordance with

the Disclosure Statement Order, the Disclosure Statement, the Disclosure Statement Order, the

Confirmation Hearing Notice, appropriate ballots for voting on the Plan (the "<u>Ballots</u>"), and for

3

holders of Claims in Class 3, Class 4, and Class 5, correspondence from the UAW, the E&A

Retiree Committee, or the Asbestos Committee, were served in compliance with the Bankruptcy

Rules and the Disclosure Statement Order.[2] As described in the Disclosure Statement Order,

(a) the service of Solicitation Packages was adequate and sufficient under the circumstances of

the Bankruptcy Case, and (b) adequate and sufficient notice of the Confirmation Hearing and

other requirements, deadlines, hearings, and matters described in the Disclosure Statement Order

were timely provided in compliance with the Bankruptcy Rules and the Local Rules, and

provided due process to all parties in interest.[3]

E.  Notice of Confirmation Hearing. All parties required to be provided notice of the

Confirmation Hearing (including the deadline for filing and serving objections to confirmation of

the Plan) have been given due, proper, timely, and adequate notice in compliance with the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order,

and have had an opportunity to appear and be heard with respect thereto.  No other or further

notice is required.

F.  Voting. Votes on the Plan were solicited after disclosure of "adequate information" as

defined in section 1125 of the Bankruptcy Code.  As evidenced by the Voting Declaration, votes

to accept or reject the Plan were solicited and tabulated fairly, in good faith, and in a manner

consistent with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.

G.  Plan Supplement.  On June 10, 2016, the Proponent filed that certain supplement to the

Plan (as supplemented, the "Plan Supplement") [Docket No. 1885], which includes the following

documents: (a) the UAW VEBA Trust Agreement, (b) the UAW VEBA Trust Plan, (c) the E&A

---

[2] *See Affidavit Of Service Of Solicitation Materials* [Docket No. 1853].

[3] *See* **Exhibit 8** to the Disclosure Statement Order and *Affidavit of Publication* [Docket No.

4

VEBA Trust Agreement, and (d) the Schedule of Assumed Contracts.  On June 23, 2016, the

Debtor filed a supplement to the Plan Supplement that includes the Asbestos Springing Trust

Agreement, the Budd Funds Administrator Engagement Letter, and an amendment to Budd's

bylaws [Docket No. 1899].  All such materials comply with the terms of the Plan, and the filing

and notice of such documents was good and proper in accordance with the Bankruptcy Code, the

Bankruptcy Rules, and the Local Rules, and no other or further notice is or shall be required.

**Compliance With Section 1129 of the Bankruptcy Code**

H. Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies

with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of

the Bankruptcy Code.

I. Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to Administrative

Claims, Fee Claims, and Priority Tax Claims, which need not be classified, Article II of the Plan

designates the following seven (7) classes of Claims and one (1) class of Equity Interests in the

Debtor: Class 1 (Non-Priority Tax Claims), Class 2 (Secured Claims), Class 3 (UAW Retiree

Benefits Claims), Class 4 (E&A Retiree Benefits Claims), Class 5 (Asbestos Claims), Class 6

(General Unsecured Claims), Class 7 (Claims Assumed by TKNA), and Class 8 (Equity

Interests).  Each of the Claims or Equity Interests, as the case may be, in each particular Class is

substantially similar to the other Claims or Equity Interests in such Class.  Valid business, legal,

and factual reasons exist for separately classifying the various Claims and Equity Interests

pursuant to the Plan, and such Classes do not unfairly discriminate between holders of Claims

and Equity Interests.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the

Bankruptcy Code.

---

1896].

56416327v17

J.  <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Article II of the Plan specifies

that Classes 1 and 2 are unimpaired by the Plan and describes the treatment provided in the Plan

for each of such Classes, thereby complying with section 1123(a)(2) of the Bankruptcy Code.

The Plan therefore satisfies section 1123(a)(2) of the Bankruptcy Code.

K.  <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  Article II of the Plan

specifies that Classes 3, 4, 5, 6, 7, and 8 are impaired by the Plan and describes the treatment for

each of such Classes, thereby complying with section 1123(a)(3) of the Bankruptcy Code.  The

Plan therefore satisfies section 1123(a)(3) of the Bankruptcy Code.

L.  <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment

for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim

or Equity Interest has agreed to a less favorable treatment on account of such Claim or Equity

Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.  The Plan therefore

satisfies section 1123(a)(4) of the Bankruptcy Code.

M.  <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan, together with the

documents and agreements comprising or contemplated by the Plan Supplement, provide

adequate and proper means for the implementation of the Plan as required by section 1123(a)(5)

of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

N.  <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  The Plan does not provide for

the issuance of any equity securities in the Debtor.  The Plan therefore satisfies section

1123(a)(6) of the Bankruptcy Code.

O.  <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  The reorganized

Debtor's directors and officers, other than the Independent Fiduciary, which will be selected by

the UAW and appointed prior to the Effective Date, have been disclosed prior to or at the

6

Confirmation Hearing and are consistent with the interests of creditors and equity holders and

public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the

Bankruptcy Code.

P.  Additional Plan Provisions (11 U.S.C. § 1123(b)). The other provisions of the Plan are

appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby

satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a

provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the

effectiveness of this Confirmation Order.

Q.  Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. §

1123(b)(1)).  As contemplated by section 1123(b)(1) of the Bankruptcy Code, (a) Classes 1 and 2

are not impaired by the Plan; and (b) Classes 3, 4, 5, 6, 7, and 8 are impaired by the Plan.

R.  Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)).  In

accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code, Article VIII.A. of the

Plan provides that the Plan constitutes and incorporates a motion to  (a) reject, as of the Effective

Date, all Executory Contracts to which the Debtor is a party except for (i) the Affiliate Services

Agreement, which shall be amended and restated pursuant to the TKNA Settlement Agreement,

(ii) any Executory Contract that was (A) terminated before the Effective Date or has been

assumed or rejected pursuant to an order of the Court entered before the Effective Date or

(B) listed in the Schedule of Assumed Contracts (*see* **Exhibit D** to the Plan Supplement), and

(iii) the Asbestos Insurance Policies or any other insurance policy of the Debtor (to the extent

they are or can be construed as executory); and (b) assume by the Debtor, as of the Effective

Date, (i) the Affiliate Services Agreement (as amended and restated pursuant to the TKNA

Settlement Agreement) and (ii) any Executory Contract listed in the Schedule of Assumed

7

Contracts. The Proponent shall provide notice of any amendments to the Schedule of Assumed

Contracts to the parties to the Executory Contracts affected thereby. The listing of a document

on the Schedule of Assumed Contracts shall not constitute an admission by the Proponent that

such document is an Executory Contract or that the Debtor has any liability thereunder.

Accordingly, the plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

S.    Compromise and Settlement (11 U.S.C. § 1123(b)(3)(A)). Pursuant to sections 363 and

1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the

Distributions and other benefits provided under the Plan, upon the Effective Date, the provisions

of the Plan shall constitute a good-faith compromise and settlement of all claims or controversies

resolved pursuant to the Plan, including, without limitation, potential claims against the Released

TKNA Parties resolved pursuant to the TKNA Settlement Agreement and TK Finance

Settlement Agreement (collectively, the "TK Settlement Agreements"). Specifically, subject to

and in accordance with the terms and provisions of the TK Settlement Agreements, the Plan

constitutes a good faith compromise of all Affiliate Claims, Estate Claims, and the claims

covered by the Waupaca Claims Release. Such compromises and settlements, including, without

limitation, the compromises and settlements embodied in the TK Settlement Agreements, (a) are

the cornerstone of the Plan, (b) are supported by the holders of Claims and Equity Interests

affected thereby who voted to accept the Plan, (c) are the product of extensive arm's-length

bargaining by sophisticated parties, and (d) avoid protracted litigation of complex claims and

disputes, the outcome of which is highly uncertain and the costs of which would be prohibitively

expensive. The compromises and settlements incorporated into the Plan, including the

compromises and settlements embodied in the TK Settlement Agreements, are fair, equitable,

reasonable, and in the best interests of the Debtor, the Estate, and the holders of Claims and

8

Equity Interests. All Distributions are intended to be and shall be final, and no Distribution to

the holder of a Claim or Equity Interest in one Class shall be subject to being shared with or

reallocated to the holders of any Claim or Equity Interest in another Class by virtue of any

prepetition collateral trust agreement, shared collateral agreement, subordination agreement,

other similar intercreditor arrangement, or deficiency claim.

T.  Retention and Enforcement (11 U.S.C. § 1123(b)(3)(B)).  Except as otherwise provided

in the TKNA Settlement Agreement or the Plan, on the Effective Date, all Causes of Action

(including, without limitation, Avoidance Actions) shall automatically be preserved and will

revest in the Debtor.  Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Debtor (subject

to the control of the Independent Fiduciary in accordance with the Plan and the Amended and

Restated Bylaws of The Budd Company, Inc.), will have the exclusive right to enforce and

prosecute such Causes of Action against any Entity, other than those Causes of Action expressly

released or compromised as part of or pursuant to the Plan.  As provided in the TKNA

Settlement Agreement, to the extent the Debtor (whether via the Independent Fiduciary or

otherwise, in accordance with the Plan) prosecutes any Causes of Action that result in a recovery

of assets that is included in the gross taxable income of the TKNA Tax Group, the Debtor shall

pay to TKNA out of such assets recovered a sum equal to such gross taxable income multiplied

by the highest marginal corporate tax rate in effect for the year or years in which such amounts

are included in the gross taxable income of the TKNA Tax Group, prior to making any

Distribution of such proceeds.

U.  Payments Related to Assumption of Contracts and Leases (11 U.S.C. § 1123(d)).  Article

VIII.B. of the Plan provides for the satisfaction of Cure Amounts.  All Cure Amounts will be

determined in accordance with the underlying agreements and applicable bankruptcy and non-

56416327v17

bankruptcy law. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

V. Proponent's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). Except as otherwise provided or permitted by orders of the Court, the Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement in transmitting the Solicitation Packages and in tabulating the votes with respect to the Plan, thereby complying with sections 1125, with respect to the Disclosure Statement and the Plan, and 1129(a)(2) of the Bankruptcy Code.

W. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Proponent is the proponent for the Plan. The Proponent has proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the Bankruptcy Code. The Proponent's good faith is evident from the record of the Bankruptcy Case, including the record of the hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in connection with the Bankruptcy Case. The Plan is based upon extensive, arm's-length negotiations between and among the Proponent and other parties in interest, and represents the culmination of months of intensive negotiations and discussions among these parties. Moreover, the settlements embodied in the Plan provide certainty regarding the resolution of significant disputes and accomplishes maximization of the Estate and equitable distribution of the Debtor's assets by providing the means through which the Debtor may effectuate Distributions. Inasmuch as the Plan promotes the purposes of the Bankruptcy Code, the Plan and the related documents have been filed in good faith and the Proponent has satisfied its obligations under section 1129(a)(3).

X. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Pursuant to the compensation procedures previously approved by this Court and established in the Bankruptcy

Case pursuant to section 331 of the Bankruptcy Code, all payments made or to be made by the

Debtor for services or for costs and expenses in connection with the Bankruptcy Case, or in

connection with the Plan and incident to the Bankruptcy Case, have been approved by, or are

subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the

Bankruptcy Code.

Y. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The reorganized Debtor's

principal office is located in Chicago, Illinois. The reorganized Debtor's directors and officers,

other than the Independent Fiduciary, which will be selected by the UAW and appointed prior to

the Effective Date, have been disclosed prior to or at the Confirmation Hearing and are

consistent with the interests of creditors and equity holders and public policy.

Z. No Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtor has and, after the Effective Date

will continue to have, no ongoing business subject to any regulatory approval and accordingly,

section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

AA.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). As demonstrated by the

Voting Declaration, Disclosure Statement, and Liquidation Analysis attached thereto as **Exhibit**

**2**, which employed commonly accepted methodologies and reasonable assumptions, with respect

to each impaired Class of Claims against or Equity Interests in the Debtor, each holder of a

Claim or Equity Interest in such Class has accepted the Plan or will receive or retain pursuant to

the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date,

that is not less than the amount that such holder would so receive or retain if the Debtor were

liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. Accordingly, the Plan

satisfies section 1129(a)(7) of the Bankruptcy Code.

BB.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 and Class 2 are

11

unimpaired under the Plan and are, therefore, conclusively deemed to have accepted the Plan

pursuant to section 1126(f) of the Bankruptcy Code.  The Court hereby allows for voting

purposes the Late Class 5 Ballots, and based on that allowance and the information set forth in

the Voting Declaration, finds that Class 3, Class 4, Class 5, Class 6, Class 7 and Class 8, which

are impaired Classes of Claims and Equity Interests eligible to vote, have affirmatively voted to

accept the Plan.  As such, section 1129(a)(8) of the Bankruptcy Code is satisfied with respect to

these Classes of Claims and Equity Interests.

CC.      Treatment of Administrative Claims and Priority Tax Claims (11 U.S.C. §

1129(a)(9)).  The treatment of Administrative Claims and Priority Tax Claims  pursuant to

Article IV.A. and Article IV.B., respectively, of the Plan satisfies the requirements of, and

complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

DD.      Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  Class 3, Class 4,

Class 5, Class 6, and Class 7, which are impaired Classes of Claims eligible to vote, voted to

accept the Plan by the requisite majorities, determined without including any acceptance of the

Plan by any insider. Specifically, as set forth in the Voting Declaration, Class 3 voted 97.74% in

both number and total dollar amount to accept the Plan; Class 4 voted 99.52% in both number

and total dollar amount to accept the Plan; Class 6 voted 100% in both number total dollar

amount to accept the Plan; Class 7 voted 100% in both number and total dollar amount to accept

the Plan.  As such, section 1129(a)(10) of the Bankruptcy Code is satisfied. Moreover, after

allowance of the Master Ballots attached to the Late Class 5 Ballots, Class 5 voted 94.43% both

in number and amount to accept the Plan.

EE. Feasibility (11 U.S.C. § 1129(a)(11).  As demonstrated in the Debtor's Projected

56416327v17

Effective Date Cash,[4] the Debtor will have sufficient resources to meet all of its obligations under the Plan, including post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan and closing the Bankruptcy Case. Accordingly, the Plan is feasible and section 1129(a)(11) of the Bankruptcy Code is satisfied.

FF. Payment of Fees (11 U.S.C. § 1129(a)(12)). As required pursuant to Article XII.B. of the Plan, all fees payable under section 1930 of title 28 of the United States Code have been or will be paid on the Effective Date, or as soon thereafter as is practicable, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

GG. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtor has modified its obligations with respect to retiree benefits pursuant to section 1114(e)(1)(B) of the Bankruptcy Code, and the Plan provides for the payment of Retiree Benefits at the level established by such agreements. Accordingly, section 1129(a)(13) of the Bankruptcy Code is satisfied.

HH. No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). By agreement with its Retiree representatives, the Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Plan.

II. The Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15)). The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Plan.

JJ. No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtor is a moneyed, business, or commercial corporation, and accordingly, section

---

[4] *See* **Exhibit 1** to the Disclosure Statement.

1129(a)(16) of the Bankruptcy Code is inapplicable to the Plan.

KK.    No Unfair Discrimination; Fair and Equitable; New Value Provided (11 U.S.C. §
1129(b)).  The Debtor has satisfied the requirements of section 1129(b)(1) and (b)(2) of the
Bankruptcy Code with respect to Class 5.  Based on evidence proffered, adduced, and/or
presented in the Lane Declaration at ¶¶39-40 and as a result of TKNA's contribution of new
value, the Plan does not discriminate unfairly and is fair and equitable with respect to Class 5.
As required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, the Plan does not
"unfairly discriminate" because no Class of Claims of similar legal rights is receiving different
treatment under the Plan.  The Plan is "fair and equitable" as to Class 5 because the Plan
maintains the relative priority among the classes.  The treatment of Class 5 meets the
requirements of section 1129(b)(2)(B) of the Bankruptcy Code because no junior Equity Interest
will receive or retain any property under the Plan on account of such junior Equity Interest.  The
retention by TKNA of the Equity Interests of the Debtor is on account of new value contributed
by TKNA under the Plan and the TKNA Settlement Agreement, and is not on account of any
Claims or Equity Interests held by TKNA as of the Petition Date. Based on the foregoing, the
requirements of section 1129(b) of the Bankruptcy Code are met with respect to Class 5.  As
such, the Plan could have been confirmed over the rejecting vote of Class 5, had the Late Class 5
Ballots not been filed and allowed.

LL.  Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan for which confirmation
currently is being sought in the Bankruptcy Case, and accordingly, section 1129(c) of the
Bankruptcy Code is satisfied in the Bankruptcy Case.

MM.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the
Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the

14

Securities Act of 1933, as such satisfying the requirements of section 1129(d) of the Bankruptcy Code.

NN.    <u>Small Business Case (11 U.S.C. § 1129(e))</u>.  The Bankruptcy Case is not a "small business case," as that term is defined by the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

OO.    <u>Good-Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Court in the Bankruptcy Case, the Proponent has solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

PP.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

QQ.    <u>Implementation</u>.  All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

RR.    <u>Good Faith</u>.  The Proponent, and all of its respective officers, directors, agents, financial advisors, attorneys, employees, affiliates, and representatives, (a) have acted in good faith in negotiating, formulating, and confirming the Plan and agreements, compromises, settlements, transactions, and transfers contemplated thereby or incorporated therein, and (b) will be acting in good faith in proceeding to (i) consummate the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby or incorporated

56416327v17

therein and (ii) take the actions authorized and directed or contemplated by this Confirmation Order.

SS. <u>Executory Contracts and Unexpired Leases</u>.  The Debtor has satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment, and rejection of executory contracts and unexpired leases pursuant to the Plan.

TT. <u>Transfers by Debtor</u>.  All transfers of property of the Estate, including, but not limited to transfers to the Retiree VEBAs, the Asbestos Funds, and the Asbestos Administration Fund shall be free and clear of all liens, charges, Claims, encumbrances, and other interests, except as otherwise expressly provided in the Plan, the Plan Documents, the TKNA Settlement Agreement, or this Confirmation Order.

UU.      <u>Injunction, Exculpation, and Releases</u>.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, releases, and exculpations set forth in Article X of the Plan.  Such provisions, in accordance with section 105(a) of the Bankruptcy Code, (a) are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (b) confer substantial benefits on the Estate, (c) are fair and reasonable, and (d) are in the best interests of the Debtor, the Estate, and parties in interest in the Bankruptcy Case.  Further, the exculpations and releases in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, or any other exception set forth therein.  Based upon the record of the Bankruptcy Case and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law.

16

## CONCLUSIONS OF LAW

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

1.      Confirmation. All requirements for confirmation of the Plan have been satisfied.

The Plan is CONFIRMED in its entirety pursuant to section 1129 of the Bankruptcy Code. A

copy of the confirmed Plan is attached as **Exhibit A** to this Confirmation Order. The terms of

the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of,

this Confirmation Order.

2.      No Objections Timely Filed. In the Disclosure Statement Order, the Court set

June 3, 2016 at 5:00 p.m. prevailing Central Time (the "Objection Deadline") as the deadline for

filing objections to the Plan. No objections were filed prior to or after the Objection Deadline.

3.      Century Objection Overruled. Subject to the Insurance Requirement (as defined in

paragraph 23 hereof), the Century Objection is otherwise overruled.

4.      Approval of the TKNA Settlement Agreement and the TK Finance Settlement

Agreement and Withdrawal of Proofs of Claim. The TKNA Settlement Agreement and the TK

Finance Settlement Agreement, including all transactions contemplated therein, are hereby

approved and, upon the occurrence of the Effective Date, the TKNA Settlement Agreement and

the TK Finance Settlement Agreement shall be in full force and effect and valid, binding, and

enforceable immediately in accordance with their terms without further notice to or action, order,

or approval of the Court or any other Person. The Parties to the TKNA Settlement Agreement

and the TK Finance Settlement Agreement are authorized and directed to perform in accordance

with the terms of the TKNA Settlement Agreement and the TK Finance Settlement Agreement.

Upon the Effective Date, all TKNA Claims shall be deemed to have been withdrawn with

prejudice without further notice to, or action, order, or approval of the Court or any Person solely

for purposes of any Distribution from the Estate; provided, however, that TKNA and its

Affiliates do not waive and expressly retain for purposes of setoff, in the event that this

Confirmation Order does not become a Final Order, the Claims identified and asserted in the

TKNA Claims for all matters other than those relating to the Pension Plans.

5.      ERISA Pension Plans and SERP. In the event that TKNA has not formalized its

assumption of the Pension Plans as of the Effective Date in accordance with Section 4 of the

TKNA Settlement Agreement, TKNA shall nonetheless bear full and complete responsibility for

the Pension Plans (and all amounts due and payable or that become due and payable thereunder

or in connection therewith) from the Effective Date until formal assumption of the Pension Plans

by TKNA. From and after the Effective Date, TKNA or its agent shall remit all VEBA-based

retiree directed deductions from individual retirees pension checks for Retiree Benefits, to their

respective VEBA.

6.      Plan Supplement.  The documents contained in the Plan Supplement, and any

amendments, modifications, and supplements thereto, are authorized and approved.  Without

further order or authorization of this Court, (a) subject to reasonable notice to TKNA for so long

as amounts are owed by TKNA to the respective VEBA, the E&A Retiree Committee and/or its

successor are authorized and empowered to make all modifications to the E&A VEBA Trust

Agreement and the UAW and/or its successor are authorized and empowered to make all

modifications to the UAW VEBA Trust Agreement and the UAW VEBA Trust Plan that are

consistent with the Plan, the TK Settlement Agreements, and the terms of any agreements

entered as of the Effective Date and to execute and deliver such documents, and (b) the Debtor

and/or its successor are authorized and empowered to make all modifications to any other

additional Plan Supplement documents, other than the Asbestos Springing Trust Agreement and

18

the Budd Funds Administrator Engagement Letter, that are consistent with the Plan. On and after

the Effective Date, execution versions of the documents comprising the Plan Supplement, with

such changes therein and modifications thereto as shall be made by the Retiree Committee, the

UAW, or the Debtors, as the case may be, shall constitute legal, valid, binding, and authorized

obligations of the respective parties thereto, enforceable in accordance with their terms.

7.   Omission of Reference to Particular Plan Provisions.  The failure to specifically

describe or include any particular provision of the Plan in this Confirmation Order shall not

diminish or impair the effectiveness of such provision, it being the intent of this Court that the

Plan be approved and confirmed in its entirety.

8.   Binding Effect.  Except as otherwise provided in section 1141(d)(3) of the

Bankruptcy Code, upon entry of this Confirmation Order and subject to the occurrence of the

Effective Date, the provisions of the Plan shall bind (a) any holder of a Claim against or Equity

Interest in the Debtor and its respective successors and assigns, whether or not such Claim or

Equity Interest of such holder is impaired under the Plan and whether or not such holder has

accepted the Plan, (b) any and all non-Debtor parties to assumed Executory Contracts set forth in

the Schedule of Assumed Contracts, (c) every other party in interest in the Bankruptcy Case, and

(d) all parties receiving or retaining property under the Plan, and their respective heirs, executors,

administrators, successors, or assigns.

9.   Merger, Dissolution, or Consolidation of Corporate Entities.  Subject to the

proviso in the next sentence, the Debtor shall not be merged, dissolved or otherwise consolidated

until after TKNA has made all of the Settlement Payments and Additional Payments in full.

TKNA shall hold and not transfer or encumber in any way its ownership in the Debtor until after

it has made all of the Settlement Payments and Additional Payments in full, provided that TKNA

19

may change the form of the Debtor from a corporation to a limited liability company and may, at

its sole discretion, treat the Debtor as liquidated and disregarded as a separate taxpayer for

purposes of U.S. federal and state income taxes. Consistent with the terms of the Plan and

applicable terms of the TKNA Settlement Agreement, on or after the Effective Date and without

the need for any further action but in compliance with the TKNA Settlement Agreement, the

Debtor may (a) cause the transfer of assets or property in a manner consistent with the Plan; or

(b) engage in any other transaction authorized by or in furtherance of the Plan.

     10.   <u>Insurance Policies</u>.  Notwithstanding anything contained in the Plan to the

contrary, the Debtor's insurance policies, and any agreements, documents, or instruments

relating thereto, shall not be considered executory contracts subject to rejection pursuant to

Article VIII.A. of the Plan.  To the extent any of the Debtor's insurance policies are deemed

executory contracts, they are hereby assumed by the Debtor.  In accordance with Article XII.H.

of the Plan, which is incorporated herein, notwithstanding all other terms of the Insurance

Neutrality provisions contained in the Plan, nothing in the Plan, the Plan Documents, or Article

XII.H. of the Plan shall impair or prevent the Debtor from transferring its rights and obligations

under any Asbestos Insurance Policies or the Amended Asbestos Cost Sharing Agreement to the

Asbestos Springing Trust as provided for in Article IV.J.3 of the Plan and such transfer is hereby

authorized without further notice to, or action, order, or approval of the Court or any other

Person or other act or action under applicable laws.

     11.   <u>Post-Effective Date Assets</u>.  On and after the Effective Date, the Debtor may

dispose of the assets and other property of the Estate free of any restrictions of the Bankruptcy

Code, but in accordance with the provisions of the Plan.

     12.   <u>Injunction, Release, and Exculpation Provisions</u>.  Each of the injunctions,

20

including the Asbestos Injunction and the Claims Bar and Indemnity Injunction, release, and

exculpation provisions set forth in the Plan, is hereby approved in all respects, is incorporated

herein in its entirety, is so ordered and shall be effective immediately on the Effective Date of the

Plan without further action or notice by the Court, any of the parties to such provisions or any

other party.

        a.     <u>Injunctions</u>:

        i.     <u>General Injunction</u>.  Subject to Articles II.B.5.b. and IV.J.4. of the

Plan, all Persons who have held, hold, or may hold Equity Interests or Claims against the Estate

shall, with respect to any such Equity Interests or Claims, be permanently enjoined from and

after the Effective Date, from taking any of the following actions (other than actions to enforce

any rights or obligations under the Plan): (a) commencing, conducting, or continuing in any

manner, directly or indirectly, any suit, action or other proceeding of any kind (including,

without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or

affecting the Estate, Debtor, or any of their respective representatives or property; (b) enforcing,

levying, attaching (including, without limitation, any pre-judgment attachment), collecting or

otherwise recovering by any manner or means, whether directly or indirectly, any judgment,

award, decree or order against the Estate, the Debtor, or any of their respective representatives or

property; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any

encumbrance of any kind against the Estate, the Debtor, or any of their representatives or

property; (d) asserting any right of setoff, directly or indirectly, against any obligation due the

Estate, the Debtor, or any of their property, except as contemplated or allowed by the Plan or this

Confirmation Order; (e) acting or proceeding in any manner, in any place whatsoever, that does

not conform to or comply with the provisions of the Plan; (f) pursuing, prosecuting, or

21

recovering proceeds on account of any claims belonging to the Estate; and (g) prosecuting or

otherwise asserting any right, claim, or cause of action released pursuant to the Plan.

          ii.          <u>Injunction on Future Asbestos Claims</u>.  In accordance with Article

IV.J.4. of the Plan, all Persons who have, held, or may hold Asbestos Claims against the Debtor

or its Estate, whether manifested or filed before or after the Petition Date, are limited to recovery

on account thereof to the Asbestos Funds and/or the proceeds of Asbestos Insurance Policies.

Any such Person is prevented and prohibited from collecting, recovering, or receiving payment

or recovery with respect to any such Asbestos Claims from any other asset of the Debtor or the

Estate.

          iii.          <u>Claims Bar and Indemnity Order (the "Bar Order")</u>:

          1.          All Persons against whom the Estate retains Causes of

Action (collectively, the "<u>Barred Persons</u>") are hereby permanently barred, enjoined, and

restrained from commencing, prosecuting, or asserting in this Bankruptcy Court, in any federal

or state court, or in any other court, arbitration proceeding, administrative agency, or other forum

in the United States or elsewhere, any action, lawsuit, cause of action, claim, investigation,

demand, complaint, or proceeding of any nature, including but not limited to litigation,

arbitration, or other proceeding against the Released TKNA Parties, where the injury to the

Barred Person is the liability of the Barred Person to the Plaintiff (as defined below), arising out

of or reasonably flowing from the claims or allegations in any of the Causes of Action that will

be retained by the Estate after the Effective Date (each a "<u>Preserved Cause of Action</u>") or the

Released Estate Claims, whether arising under state, federal, or foreign law as claims, cross-

claims, counterclaims, or third-party claims (collectively, the "<u>Barred Claims</u>").  The foregoing

specifically includes any claim, however denominated, seeking contribution, indemnity,

22

damages, or other remedy where the alleged injury to such Person, or the claim asserted by such Person, is based upon such Person's liability to any Plaintiff (as defined below) or other claimant arising out of, relating to, or based in whole or in part upon money owed, demanded, requested, offered, paid, agreed to be paid, or required to be paid to any Plaintiff (as defined below) or other claimant, whether pursuant to a demand, judgment, claim, agreement, settlement or otherwise. If a court or tribunal determines that Barred Claims exist that would have given rise to liability of any Released TKNA Party to a Barred Person but for this Bar Order, the Barred Persons are also entitled to the judgment reduction provisions set forth herein.  This Bar Order is without prejudice to the position of any party as to the existence, in the absence of this Bar Order, of any Barred Claims.

2.    In the event any Person asserts a Preserved Cause of Action or a Released Estate Claim (a "Plaintiff") against any Barred Person with respect to one or more Preserved Causes of Action or Released Estate Claim based upon, arising from, or related to the facts, allegations, or transactions underlying any Barred Claims (the "Action"), then, prior to entry of any judgment or arbitration award ("Judgment") in the Action, the Plaintiff shall provide notice of this Bar Order to the court or tribunal hearing the Action. Such court or tribunal shall determine whether the Action gives rise to Barred Claims on which Released TKNA Parties would have been liable to the Barred Persons in the absence of this Bar Order.  If the court or tribunal so determines, it may reduce any Judgment against such Barred Person in an amount equal to (a) the amount of the Judgment against any such Barred Persons multiplied by (b) that portion of the Judgment (expressed as a percentage) that such court or tribunal shall determine would have been payable by the Released TKNA Party or Parties to such Barred Person in the absence of this Bar Order based on any direct claim or contribution claim, whether grounded in

23

tort or contract or based upon any other legal theory.  Nothing herein shall prejudice or operate to

preclude the right of any defendant in such Action to (a) provide notice of this Bar Order to the

court or tribunal hearing the Action at any point, or (b) raise any issues, claims or defenses

regarding judgment reduction or proportionate share of fault in the court or tribunal hearing the

Action at any point in accordance with applicable law or procedure and this Bar Order.  For the

avoidance of doubt, nothing herein shall be deemed to entitle a Plaintiff to more than a single

satisfaction with respect to any Preserved Causes of Action or Released Estate Claims.

    3.  If any Plaintiff enters into a settlement with any Person

with respect to one or more causes of action based upon, arising from, or related to the Barred

Claims or any transaction underlying any Barred Claim, then such Plaintiff shall cause to be

included, and in all events, the settlement shall be deemed to include, a dismissal, release, and

waiver of any Barred Claims with respect to such settlement.

    4.  Each Plaintiff is hereby enjoined and restrained from

seeking relief or collecting judgments against any Barred Person in any manner that fails to

confirm to the terms of this Bar Order, including, without limitation, the proportionate judgment

reduction provision set forth herein.

    5.  This Court shall retain continuing jurisdiction with respect

to all matters concerning this Bar Order, including, without limitation, hearing a petition for

relief by a Barred Person or any other party in interest in the event that a court or tribunal hearing

the Action fails to apply the judgment reduction provisions of this Bar Order.

    6.  TKNA is indemnified against any and all losses resulting

from the Independent Fiduciary's prosecution of any Cause of Action not released pursuant to the

Plan, including, without limitation, any expenses incurred and any liability imposed on TKNA

24

resulting from such litigation, with such indemnity to be secured by the last Settlement Payment

pursuant to the TKNA Settlement Agreement.

7.      Nothing in paragraph 12(a)(iii) of this Confirmation Order

shall apply in any way to any Asbestos Claims asserted or that may be asserted by any persons

who hold, have held, or may hold Asbestos Claims against the Debtor or its Estate, whether

manifested or filed before or after the Petition Date.

iv.      Terms of Injunction.  Unless otherwise provided in this

Confirmation Order, the Plan, or the TKNA Settlement Agreement, all injunctions or stays

arising under or entered during the Bankruptcy Case under section 105 or 362 of the Bankruptcy

Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and

effect until the Effective Date with respect to the Debtor; provided, however, that (a) no such

injunction or stay shall preclude enforcement of any party's rights under the Plan and related

documents; and (b) upon the Confirmation Order becoming a Final Order, the Debtor shall

promptly move to dismiss, with TKNA's cooperation, the adversary proceeding in which the

Status Quo Order was entered and provide TKNA with evidence of such dismissal in accordance

with Article IV.I. of the Plan.

b.      Exculpation.  The Exculpated Parties and any property of the Exculpated

Parties will not have or incur any liability to any Person for any act taken or omission occurring

on or after the Petition Date or for any and all Claims and Causes of Action arising on or after

the Petition Date, in connection with or related to the Estate, including, but not limited to, (a) the

commencement and administration of the Bankruptcy Case, (b) the operation of the business of

the Debtor or administration of the Estate during the pendency of the Bankruptcy Case, (c)

formulating, negotiating, preparing, disseminating, soliciting, implementing, administering,

25

confirming or consummating the Plan, the Disclosure Statement, the TKNA Settlement

Agreement, the Amended Asbestos Cost Sharing Agreement, or any other contract, instrument,

release or other agreement or document created or entered into in connection with the Plan or

any other post petition act taken or omitted to be taken in connection with the administration of

the Estate; (d) submission of and statements made in, the Disclosure Statement or any contract,

instrument, release or other agreement or document entered into, or any action taken or omitted

to be taken in connection with the Plan; or (e) any Distributions made pursuant to the Plan,

except for acts constituting willful misconduct, gross negligence, or fraud and in all respects such

parties shall be entitled to rely upon the advice of counsel with respect to their duties and

responsibilities under the Plan. This Confirmation Order constitutes a determination by the Court

that the Exculpated Parties have acted in good faith and in compliance with the applicable

provisions of the Bankruptcy Code, pursuant to, among other provisions of law, sections 1125(e)

and 1129(a)(3) of the Bankruptcy Code, with respect to the foregoing; provided, that the

foregoing provisions of the Plan shall not apply to any acts, omissions, Claims, Causes of Action

or other obligations expressly set forth in and preserved by the Plan Documents or any defenses

thereto.

        c.    <u>Releases</u>:

        i.    <u>Release by the Debtor of the Release Parties</u>.  Effective as of the

Effective Date, and except as otherwise set forth in the Plan or this Confirmation Order, the

Debtor will be deemed to have forever released, waived and discharged each of the Release

Parties from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights,

Causes of Action and liabilities (other than the rights of the Debtor to act in accordance with or

otherwise enforce the Plan and the contracts, instruments, releases, indentures and other

agreements or documents delivered or executed thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, or the Plan.

      ii.         <u>Release of the Released TKNA Parties and Injunction</u>.  In accordance with the TKNA Settlement Agreement and the TK Finance Settlement Agreement, and subject to and conditioned upon the occurrence of the Effective Date, the payment of the E&A Payment, payment of the TK Finance Payments (as defined in the TK Finance Settlement Agreement), the payment of $950,000 to the Uninsured Asbestos Claim Fund (in accordance with Article IV.A. of the Plan), and the payment of $50,000 to the UAW VEBA (in accordance with Article IV.A. of the Plan), the Debtor, the Estate, the E&A Retiree Committee, and the Asbestos Committee, on behalf of themselves and their agents, members, predecessors, successors, and assigns, and all Persons who have held, hold, or may hold Claims against the Debtor or the Estate, acting derivatively through the Debtor or the Estate, shall be deemed to have unconditionally, absolutely, irrevocably and forever released and discharged the Released TKNA Parties with respect to all causes of action, suits, debts, liabilities, accounts, promises, warranties, damages and consequential damages, agreements, costs, expenses, claims or demands that have been or could have been asserted by or on behalf of the Debtor, the Estate, the E&A Retiree Committee, and/or the Asbestos Committee against the Released TKNA Parties related to or arising out of any act or thing that occurred or failed to occur prior to the Effective Date, whether known or unknown, direct, indirect, or derivative, liquidated or unliquidated,

27

disputed or undisputed, fixed or contingent, inchoate or matured, foreseen or unforeseen,

whether based in contract, tort, statute or otherwise, including, without limitation, avoidance

actions or other causes of action available under chapter 5 of the Bankruptcy Code and claims

arising from or relating to the Debtor's Actual Tax Sharing Agreement, the Non-Debtor TSA

Amendment, the Affiliate Services Agreement (as amended and restated by the Plan or the

TKNA Settlement Agreement), the Debtor's sale of Waupaca, and/or the ownership and/or

control of the Debtor by TKNA or Affiliates or the equity securities of the Debtor (collectively,

the "Released Estate Claims"), and any Settlement Increase and/or Asbestos Committee

Settlement Increase Claim; provided, however, that nothing contained in this paragraph shall be

deemed or construed to be a covenant, release, waiver or discharge of the terms and conditions of

the Plan, the TKNA Settlement Agreement, or the Affiliate Services Agreement (as amended and

restated by the Plan and the TKNA Settlement Agreement).  In furtherance of the foregoing

release, and subject to and conditioned upon the occurrence of the Effective Date, the payment of

the E&A Payment, payment of the TK Finance Payments, the payment of $950,000 to the

Uninsured Asbestos Claim Fund (in accordance with Article IV.A. of the Plan), and the payment

of $50,000 to the UAW VEBA (in accordance with Article IV.A. of the Plan), each of the

Debtor, the Estate, the E&A Retiree Committee, and the Asbestos Committee, on behalf of

themselves and their agents, members, predecessors, successors, and assigns, and all Persons

who have held, hold, or may hold Claims against the Debtor or the Estate, acting derivatively

through the Debtor or the Estate, shall be deemed to have unconditionally, absolutely,

irrevocably and forever released, waived and discharged each of the Released TKNA Parties

from each of the Released Estate Claims; and each of the foregoing Persons are permanently

precluded and enjoined from: (a) commencing, conducting or continuing in any manner, directly

28

or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any

proceeding in a judicial, arbitral, administrative or other forum) against the Released TKNA

Parties or any of their property based upon, arising out of or related to the Released Estate

Claims; or (b) enforcing, levying, attaching (including, without limitation, any pre-judgment

attachment), collecting or otherwise recovering by any manner or means, whether directly or

indirectly, any judgment, award, decree or order against the Released TKNA Parties or any of

their property with respect to the Released Estate Claims.

      iii.      <u>Release of the Released Estate Parties and of the Asbestos</u>

<u>Committee Released Parties</u>.  Subject to and conditioned upon the occurrence of the Effective

Date, and expressly subject to the reservation of TKNA's setoff rights as expressly reserved in

Section 6 of the TKNA Settlement Agreement, each of the Released TKNA Parties, as of the

Effective Date, shall be deemed to have unconditionally, absolutely and irrevocably released the

Debtor, the Estate, and their current and former officers (including, without limitation, the

Debtor's past and current Chief Restructuring Officers Mr. Carl Lane and Mr. Charles Moore),

directors (including, without limitation, the current Independent Director, Mr. Charles Sweet,

and directors Brian Bastien and Heinz Hense), agents, professionals, employees, members, legal

representatives, attorneys, predecessors, heirs, successors, and assigns, each in his, her, or its

capacity as such, and each of them, the E&A Retiree Committee, and its members, agents,

professionals, legal representatives, attorneys, actuaries, financial advisors, predecessors, heirs,

successors, and assigns, each in his, her or its capacity as such, and each of them, and the UAW,

and its agents, professionals, legal representatives, attorneys, actuaries, financial advisors,

predecessors, heirs, successors, and assigns, each in his, her or its capacity as such and each of

them (collectively, the "<u>Released Estate Parties</u>"), and the Asbestos Committee, the members of

the Asbestos Committee (solely in their capacity as members of the Asbestos Committee), and

the Asbestos Committee's agents, professionals, legal representatives, attorneys, actuaries,

financial advisors, predecessors, heirs, successors, and assigns, each in his, her or its capacity as

such, and each of them (the "Asbestos Committee Released Parties"), with respect to all causes

of action, suits, debts, liabilities, accounts, promises, warranties, damages and consequential

damages, agreements, costs, expenses, claims or demands that the Released TKNA Parties have

or ever had or claims to have currently or at any future date against the Released Estate Parties or

the Asbestos Committee Released Parties related to or arising out of any act or thing that

occurred or failed to occur prior to the Effective Date, whether known or unknown, direct,

indirect, or derivative, liquidated or unliquidated, disputed or undisputed, fixed or contingent,

inchoate or matured, foreseen or unforeseen, whether arising in law, equity, contract, tort, statute

or otherwise, including, without limitation, any claims relating to or arising from the Pension

Plans, TKNA's assumption of the Pension Plans, or any funding of the Pension Plans, and claims

arising under or related to the Debtor's Actual Tax Sharing Agreement, the Non-Debtor TSA

Amendment, and/or the Affiliate Services Agreement (as amended and restated by the Plan

and/or the TKNA Settlement Agreement); provided, however, that with respect to the Released

Estate Parties, nothing contained in this paragraph shall be deemed or construed to be a

covenant, release, waiver or discharge of the terms and conditions of the Plan, the TKNA

Settlement Agreement, the Affiliate Services Agreement (as amended and restated by the TKNA

Settlement Agreement), or any claim or cause of action that is wholly unrelated to Budd; or of

any claim or cause of action relating to work performed by Towers Watson in connection with its

Benefits Investment Committee, or by Stevenson Keppelman for TKNA in connection with any

PBGC related issue; provided, further, that with respect to the Asbestos Committee Released

30

Parties neither this release nor the release by the Asbestos Committee, among others, set forth in

Article X.E. of the Plan shall prejudice or prohibit: (a) any of the Released TKNA Parties from

asserting any claim or defense to a claim brought by a holder of an asbestos claim, or by or

against an insurer regarding coverage of an asbestos claim and all such claims and defenses are

fully preserved; and (b) the Asbestos Committee or the members of the Asbestos Committee

(solely in their capacity as members of the Asbestos Committee) from asserting a claim which

could be asserted only directly, and without acting derivatively through the Debtor or the Estate,

including without limitation in an action by a Person or by an Insurer regarding coverage of an

Asbestos Claim, and all such claims and defenses are fully preserved.  Further, the Asbestos

Committee Released Parties acknowledge that they are not a party and have no rights under the

TKNA Settlement Agreement, the Pension Plans, Debtor's Actual Tax Sharing Agreement, the

Non-Debtor TSA Amendment or the Affiliate Services Agreement.  For the avoidance of doubt,

nothing in Article X of the Plan and nothing in this Confirmation Order shall be deemed to

release an Asbestos Claim or an Affiliate Asbestos Claim, or affect any rights, obligations and/or

defenses to such claims under the Amended Asbestos Cost Sharing Agreement, any other

agreements or applicable law.

        iv.      Waupaca Claims Release.  In consideration for the election to

receive the Additional Payments as set forth in the TKNA Settlement Agreement, and subject to

and conditioned upon the occurrence of the Effective Date of the Plan approving the TKNA

Settlement Agreement (including the election to receive such Additional Payments), the Debtor,

the Estate, the Retiree Committee and its members, and the UAW, as the section 1114(c)

Authorized Representative of the UAW Retirees in the Chapter 11 Case, on behalf of themselves

and their agents, predecessors, successors, and assigns (collectively, the "Estate Parties"), shall

31

have and shall be deemed to have unconditionally, absolutely, and irrevocably released against

all manners of action, causes of action, suits, debts, accounts, promises, warranties, damages and

consequential damages, agreements, costs, expenses, claims or demands that any Estate Party has

or ever had or claims to have currently or at any future date have, arising out of or in any way

related to the sale of the Debtor's equity interest in Waupaca, whether known or unknown,

direct, indirect, or derivative, liquidated or unliquidated, disputed or undisputed, contingent,

inchoate or matured, in law or in equity, including, without limitation, avoidance actions and

other causes of action available under chapter 5 of the Bankruptcy Code or any state law, that

have been or may be asserted against any person whomsoever including but not limited to any

non-party or third party to the Bankruptcy Case.

13.     <u>Causes of Action/Avoidance Actions/Objections</u>.  Other than any release granted

by this Confirmation Order, by Final Order of the Court, or contained in the TKNA Settlement

Agreement or the Amended Asbestos Cost Sharing Agreement, as applicable, from and after the

Effective Date, effective as of the Effective Date, the Debtor shall retain any and all such Causes

of Action, and all defenses, counterclaims, setoffs, and rights related thereto that it has asserted

or could assert against or with respect to all Claims asserted against the Debtor or property of its

Estate.  No claim, right, Cause of Action, or other Asset shall be deemed waived or otherwise

forfeited by virtue of the Debtor's failure to identify such property in the Schedules or the

Disclosure Statement unless otherwise ordered by the Court.  Except as provided in the Plan, this

Confirmation Order, or in the TKNA Settlement Agreement or in the Amended Asbestos Cost

Sharing Agreement, including with respect to the releases granted herein, nothing contained in

the Plan or this Confirmation Order shall be deemed to be a waiver or the relinquishment of any

rights or Causes of Action that the Debtor may have or may choose to assert on behalf of the

32

Estate under any provision of the Bankruptcy Code or any applicable non-bankruptcy law,

including, without limitation, (a) any and all Claims against any person or entity, to the extent

such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks

affirmative relief against the Debtor, the Estate, or their officers , directors, or representatives

and (b) the turnover of any property of the Estate.  Nothing contained in the Plan or this

Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of

Action, right of setoff, or other legal or equitable defense which the Debtor had immediately

prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan.  All

of the Debtor's legal and equitable rights respecting any Claim left unimpaired by the Plan may

be asserted after the Confirmation Date to the same extent as if the Bankruptcy Case had not

been commenced.

14.    <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and

until the conditions set forth in Article IX of the Plan are satisfied or waived pursuant to Article

IX of the Plan.

15.    <u>Retention of Jurisdiction</u>.  Pursuant to Article XI of the Plan, the Court shall retain

and have exclusive jurisdiction over any matter arising under the Bankruptcy Code and arising in

or related to the Bankruptcy Case, the Debtor, and the Plan, to the fullest extent as is legally

permissible.

16.    <u>Effectuating Documents and Further Transactions</u>.  On, before, and/or after the

Effective Date, and without the need for any further order or authority, the Proponent shall

execute, deliver, file, or record such contracts, instruments, releases, indentures, and other

agreements or documents that are in form and substance satisfactory to them as may be

necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan

and any securities issued pursuant to the Plan.

17.     Corporate Action. Other than as specifically set forth in the Plan or this

Confirmation Order, on the Effective Date, all matters provided for under the Plan that would

otherwise require approval of the officers or directors of the Debtor shall be deemed approved

pursuant to the applicable general corporation law of the jurisdiction in which the Debtor is

incorporated or established, without any requirement of further action by the officers or directors

of the Debtor.

18.     Retention of Property. In accordance with the terms of Article IV.G. of the Plan,

from and after the Effective Date, the Debtor may, in its sole and absolute discretion so long as

the Independent Fiduciary, TKNA, or any of the Participating Carriers or the Asbestos

Committee (or ACC Designee after dissolution of the Asbestos Committee) do not object after

90 days' advance written notice: (a) retain or destroy documents, files and records of the Estate;

and (b) abandon property of the Estate that it deems burdensome or of immaterial value;

provided, however, that the Debtor shall retain and preserve, pursuant to the terms of the Plan

and the Amended Asbestos Cost Sharing Agreement, all documents and records related to

potential Asbestos Claims against the Debtor for asbestos related liability, including, but not

limited to, historic and corporate documents and documents necessary to prosecute or defend

lawsuits against the Debtor and the Asbestos Springing Trust; provided, further, that all

documents in the Debtor's possession at the time of entry of this Confirmation Order related to

Asbestos Claims shall be provided by the Debtor to the Budd Funds Administrator and the

Participating Carriers or their designee; provided, further, that the Debtor's membership at

Oakhurst Golf & Country Club shall be abandoned as of the Effective Date; and provided,

further, that any documents, records, or files of the Estate related to the provision of Retiree

34

Benefits to the E&A Retirees shall not be destroyed unless the E&A Retiree Committee, or after

the E&A Retiree Committee has dissolved, the Budd E&A VEBA Retiree Committee, shall not

have objected after 90 days' advance written notice; provided, further that any documents,

records, or files of the Estate related to the provision of Retiree Benefits to the UAW Retirees

shall not be destroyed unless the UAW, or after the UAW representation of UAW Retirees has

terminated, the UAW VEBA Retiree Committee, shall not have objected after 90 days' advance

written notice.

19.     Compromise and Settlement of Claims and Equity Interests.  Pursuant to

Bankruptcy Rule 9019, in consideration for the Distributions and other benefits provided under

the Plan, upon the Effective Date, all provisions of the Plan setting forth and incorporating,

pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, a good-faith compromise and

settlement of various Claims and controversies are hereby approved.  All Distributions are

intended to be and shall be final, and no Distribution to the holder of a Claim or Equity Interest

in one Class shall be subject to being shared with or reallocated to the holders of any Claim or

Equity Interest in another Class by virtue of any prepetition collateral trust agreement, shared

collateral agreement, subordination agreement, other similar intercreditor arrangement, or

deficiency claim. Classification of Claims under the Plan is appropriate, and there are no other

holders of Claims entitled to a Distribution under the Plan.

20.     Payment of Statutory Fees.  The Independent Fiduciary shall timely pay to the

United States Trustee all quarterly fees incurred by the Debtor pursuant to 28 U.S.C. §

1930(a)(6) until the Bankruptcy Case is closed or dismissed.  Any such payment shall be made

from Operating Cash, in accordance with Article IV.E. of the Plan.

21.     Post-Effective Date Fees and Expenses.  From and after the Effective Date, the

56416327v17

Debtor shall, in the ordinary course of business and without necessity for any approval by the

Court in consultation with the Independent Fiduciary, be authorized to pay from Reserved Cash

(as defined below) the reasonable fees and expenses of the Debtor's Professionals incurred in

connection with performing the Debtor's duties hereunder and pursuant to the Plan.

22.     <u>Empowerment of Officers</u>.  From and after the date hereof, the Debtor, through its

current duly authorized officers (Carl Lane and Brian Bastien, in consultation with the

Independent Fiduciary), is authorized to assist in performing under the Plan and to cause the

Debtor to (a) from cash of the Estate reserved from Effective Date Cash (the "<u>Reserved Cash</u>"),

make any payment of fees and expenses, including Fee Claims, of professional persons

employed by the Estate, including Fee Claims of the Fee Examiner and professionals for the

Debtor, the UAW, the E&A Retiree Committee, the Asbestos Committee, and the Fee Examiner;

(b) prosecute approval of and enforce the Martinrea Settlement and the Estate's settlement

regarding the Blosenski landfill (*see* Docket No. 1884) ; (c) enforce the Debtor's right to refunds

and rebates related to healthcare insurance; (d) pay from the Reserved Cash any claim incurred

as of the Effective Date but not reported until after the Effective Date, for services rendered

pursuant to any of the Debtor's prepetition healthcare benefits plans (the "<u>IBNR Claims</u>"); (e)

with the assistance of TKNA, seek return of the Tennessee Workers Comp Cash Deposit, as

defined in the Prepetition Agreement; (f) without further order of the Court, make any payment

from the Reserved Cash of fees and expenses in connection with the imaging, preservation, or

destruction of documents or records, which payment obligations shall be the sole and exclusive

responsibility of the Debtor and not any of the Released TKNA Parties; and (g) begin to remit

the balance of the Reserved Cash not necessary to pay IBNR Claims to the UAW VEBA no later

than December 31, 2016, with any remaining balance of the Reserved Cash to be remitted to the

UAW VEBA no later than December 31, 2017. Prior to the Effective Date, the Debtor shall

provide the UAW and the Independent Fiduciary with a budget for the use of Reserved Cash,

and after the Effective Date the Debtor shall provide the Independent Fiduciary with a monthly

update comparing the actual uses of Reserved Cash to the budget.

     23.    <u>Budd Funds Administrator</u>.  The engagement letter of the Budd Funds

Administrator, which is attached hereto as **<u>Exhibit C</u>** (the "<u>Engagement Letter</u>") is conditionally

approved, subject to the entry by the Bankruptcy Court of an order approving evidence of

insurance required under the Engagement Letter to cover negligence of the Budd Funds

Administrator (the "<u>Insurance Requirement</u>"), and shall govern the terms of his retention

including, without limitation, the insurance requirements and the limitation on damages

provision as to all parties in interest (including, without limitation, the Participating Carriers), as

set forth in section 8 (pg. 8) of the Engagement Letter. However, nothing in the Engagement

Letter will (a) limit or expand the duties and responsibilities of the Budd Funds Administrator

under the terms of the Plan or the Amended Asbestos Cost Sharing Agreement or (b) alter or

amend the terms of the Amended Asbestos Cost Sharing Agreement or the Plan, <u>provided,</u>

<u>however,</u> notwithstanding anything to the contrary set forth in the Amended Asbestos Cost

Sharing Agreement or the Plan, (i) the Budd Funds Administrator shall be Carl Lane through the

engagement of WTCG (BFA), LLC, and not Carl Lane in his individual capacity, and (ii) failure

of the Budd Funds Administrator to maintain insurance required under the Engagement Letter

shall be "cause" for termination of the Budd Funds Administrator under the terms of the

Amended Asbestos Cost Sharing Agreement.

     24.    <u>Independent Fiduciary</u>. The Independent Fiduciary shall be selected by the UAW

prior to the Effective Date, and any replacement shall be selected by the UAW VEBA

37

Committee. The Independent Fiduciary shall be empowered, along with any successor, to

perform all actions in such position contemplated by the Plan, the TKNA Settlement Agreement,

and all other Plan Documents, and (subject to Article XV of the Amended Asbestos Cost Sharing

Agreement) to enforce all claims, rights, remedies, and defenses against Travelers Indemnity

Company ("TIC") for its share of a group MDL settlement with Glasser & Glasser, P.L.C. (the

"Travelers Action") and any other Causes of Action not released by the Plan. The Independent

Fiduciary shall enforce the TKNA Settlement Agreement, oversee TKNA's payments to the

UAW VEBA required by the TKNA Settlement Agreement, and exercise sole authority to retain

and pay professionals from assets of the Debtor to assist in such actions as to all Causes of

Action not released pursuant to the Plan. The Independent Fiduciary's fees and expenses shall

be paid from Operating Cash. After the settlement, prosecution, or abandonment of retained

Causes of Action, including the Travelers Action, and after payment of all funds due pursuant to

the TK Settlement Agreements, the Independent Fiduciary shall remit any remaining reserves or

funds in his or her possession to the UAW VEBA.

25.    Consolidation of Funds. On or before the Effective Date, all Reserved Cash shall

be moved to and consolidated in the Debtor's disbursement account maintained at Bankruptcy

Management Solutions, Inc.; provided, however, that, for the avoidance of doubt, such reserves

and funds shall not include any reserves or funds of the Asbestos Funds or the Asbestos

Administration Fund.

26.    Workers' Compensation Refund. In accordance with the Prepetition Agreement

and as affirmed by the TKNA Settlement Agreement, TKNA shall post replacement security for

and assist the Debtor in seeking the return of the Tennessee Workers Comp Cash Deposit, as

defined in the Prepetition Agreement.

38

27.    Remaining Funds. After the payment of all Administrative Claims (including Fee

Claims and IBNR Claims) and amounts related to other tasks the Debtor is authorized to perform

in connection with performing under the Plan after the Effective Date, the Debtor shall remit the

unused balances of the Reserved Cash and the Operating Cash, and any remaining funds in its

possession or that afterward come into its possession, to the UAW VEBA, provided, however,

that the UAW VEBA shall have no claim to any funds which may be provided to the Debtor by

TKNA after the Effective Date as a loan or capital contribution.

28.    Asbestos Springing Trust. Upon notice of dissolution of the Debtor as provided

in the Asbestos Springing Trust Agreement, and execution of the Asbestos Springing Trust

Agreement, any remaining balance of the Asbestos Funds and the Asbestos Administration Fund,

the Debtor's rights and obligations under the Asbestos Insurance Policies, the Debtor's rights and

obligations under the Plan with respect to Asbestos Claims, and the Debtor's rights and

obligations under the Amended Asbestos Cost Sharing Agreement all shall be transferred into a

trust (the "Asbestos Springing Trust"), which shall be established as set forth in the Plan and

pursuant to the Asbestos Springing Trust Agreement, which is attached hereto as **Exhibit D** and

is hereby approved. Upon notice of dissolution of the Debtor as provided in the Asbestos

Springing Trust Agreement and execution of the Asbestos Springing Trust Agreement, the

Asbestos Springing Trust Agreement shall become immediately effective.  The Debtor is

directed to, prior to its dissolution, execute the Asbestos Springing Trust Agreement, and the

Bankruptcy Court shall retain jurisdiction to the fullest extent possible concerning effectiveness

of the Asbestos Springing Trust Agreement.  Upon dissolution of the Debtor, the Asbestos

Springing Trust shall: (a) be a successor of the Debtor (under the Plan and otherwise) for all

purposes related to treatment and administration of Asbestos Claims, but for no other purpose;

(b) have authority to accept service of process related to Asbestos Claims against the Debtor; and

(c) be authorized to serve on behalf of the Debtor notice under or in connection with Asbestos

Insurance Policies.  As a successor to the Debtor, the Asbestos Springing Trust shall obtain the

benefit of all injunctions and other protections in the Plan regarding Asbestos Claims and other

Claims.  The Asbestos Administration Fund shall be used to establish and pay the expenses of

the Asbestos Springing Trust.  The Asbestos Springing Trust shall dissolve upon the date on

which all lawsuits on account of Asbestos Claims brought as of January 1, 2045 have been

resolved (in which event the remaining balances of the Asbestos Funds and the Asbestos

Administration Fund shall be transferred to the UAW VEBA).  For the avoidance of doubt,

pursuant to their consent in the Amended Asbestos Cost Sharing Agreement, the anti-assignment

provisions contained in any policy issued by any Participating Carrier will not prevent the

transfer of the Debtor's rights and obligations under the Asbestos Insurance Policies and

Amended Asbestos Cost Sharing Agreement to the Asbestos Springing Trust as provided herein.

29.    Service on the Registered Agent.  On and after the entry of this Confirmation

Order, all Asbestos Claims shall be determined and liquidated in the administrative or judicial

tribunal of appropriate jurisdiction without further relief from the Bankruptcy Court.  On and

after the entry of this Confirmation Order, all Asbestos Claims brought against the Debtor prior

to its dissolution must be served upon the registered agent, by actual delivery of a summons and

complaint purporting to state a valid claim for relief under applicable law, at the following

address:

> The Budd Company, Inc.
> c/o CSC-Lawyers Incorporating Service
> 601 Abbot Road
> East Lansing, MI  48823

30.    Service on the Asbestos Springing Trust. Upon the creation of the Asbestos

Springing Trust, and for the duration of the existence of the Asbestos Springing Trust, all

Asbestos Claims must be served upon the Delaware Trustee, as that term is defined at section 5.9

of The Budd Company, Inc. Asbestos Springing Trust Agreement, by actual delivery of a

summons and complaint purporting to state a valid claim for relief under applicable law, at the

following address:

>  Wilmington Trust, National Association
>  Rodney Square North
>  1100 N. Market Street
>  Wilmington, Delaware 19890-1615

Provided that the Budd Funds Administrator shall give notice of creation of said trust to

attorneys for asbestos claimants and *pro se* claimants who have appeared or Filed Claims in the

Bankruptcy Case.

31.    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy

Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with

the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or

assignment of any lease or sublease or the making or delivery of any deed or other instrument of

transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp,

real estate transfer, mortgage recording, or other similar tax.

32.    <u>Fee Claims</u>.  Any Person who holds or asserts an Administrative Claim that is a

Fee Claim shall be required to file with the Court and serve on all parties required to receive such

notice a Fee Application within twenty-eight (28) days after the Effective Date for Fee Claims

against the Debtor.  Failure to timely and properly file and serve a Fee Application as required

under this paragraph (and Article XII.A. and L. of the Plan) shall result in the Fee Claim being

forever barred and discharged.  No Fee Claim will be deemed Allowed until an order allowing

the Fee Claim becomes a Final Order.  Allowed Fee Claims shall be paid in full by the Debtor.

56416327v17

Objections to final Fee Applications must be filed and served pursuant to the Bankruptcy Rules

on the Debtor and the Person to whose application the objections are directed or made within

seventy-four (74) days after the Effective Date. The report of the Fee Examiner regarding final

Fee Applications shall be filed with the Bankruptcy Court and served on Professionals no later

than the date that is seventy-four (74) days after the Effective Date. No hearing may be held on a

specific Fee Application until the foregoing objection period with respect to that Fee Application

has expired. The Debtor is authorized to pay compensation for services rendered or

reimbursement of expenses incurred after the Effective Date in the ordinary course of business

and without the need for Court approval.

33.    Administrative Claims Bar Date. The holder of any Administrative Claim that is

incurred, accrued or in existence prior to the Effective Date, other than an Allowed

Administrative Claim or a claim incurred in the ordinary course of business, must File and serve

on all parties required to receive such notice a request for the allowance of such Administrative

Claim on or before the date that is twenty-eight (28) days after the Effective Date. Such request

must comply with applicable sections of the Bankruptcy Code, the Bankruptcy Rules, and orders

of the Bankruptcy Court, and must include: (a) the name of the holder of the Claim, (b) the

amount of the Claim, and (c) the basis of the Claim. Failure to timely and properly File and

serve an application for payment of an Administrative Claim may result in such Administrative

Claim being forever barred and discharged. Objections to Administrative Claim applications

must be filed and served pursuant to the Bankruptcy Rules and served on the requesting party

and the Debtor within twenty-eight (28) days after the filing of such application.

34.    Notice of Entry of Confirmation Order. Pursuant to Bankruptcy Rules 2002(f)(7),

2002(k), and 3020(c), the Debtor shall file and serve notice of this Confirmation Order in

substantially the form annexed hereto as **Exhibit B** (the "Notice of Confirmation Order") on all

holders of Claims and Equity Interests, by causing the Notice of Confirmation Order to be

delivered to such parties by first class mail, postage prepaid, within 10 Business Days after entry

of this Confirmation Order. Such notice is adequate under the particular circumstances and no

other or further notice is necessary. The form of Notice of Confirmation Order substantially in

the form annexed hereto as **Exhibit B** is approved.

35.    Notice of the Effective Date. As soon as practicable after the occurrence of the

Effective Date, the Debtor shall file notice of the occurrence of the Effective Date and shall serve

a copy of the same on all parties entitled to receive notice in the Bankruptcy Case.

36.    Substantial Consummation. On the Effective Date, the Plan shall be deemed to be

substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

37.    Conflicts Between Order and Plan. The provisions of the Plan and this

Confirmation Order shall be construed in a manner consistent with each other so as to effect the

purpose of each; provided, however, that if there is determined to be any inconsistency between

any Plan provision and any provision of this Confirmation Order that cannot be so reconciled,

then solely to the extent of such inconsistency, the provisions of the Plan shall govern.

38.    Final Order. Notwithstanding anything to the contrary in Bankruptcy Rule

3020(e) or Federal Rule of Civil Procedure 62(e), incorporated by Bankruptcy Rule 7062, this

Confirmation Order is a final order, shall not be stayed, and shall take effect immediately upon

entry.

39.    Final Decree. As provided in the TKNA Settlement Agreement, the Bankruptcy

Case shall remain open until all of the Settlement Payments and Additional Payments have been

collected. The Debtor may seek entry of a Final Decree closing the Bankruptcy Case upon

43

payment and collection of all of the Settlement Payments and the Additional Payments payable

under the TKNA Settlement Agreement.

Dated: June 27th, 2016
     Chicago, Illinois

United States Bankruptcy Judge

44