## Exhibit A

## The Plan

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| THE BUDD COMPANY, INC., ) | Case No. 14 B 11873 |
| ) | |
| Debtor. ) | |

# NINTH AMENDED CHAPTER 11 PLAN FOR THE BUDD COMPANY, INC.

**DATED MAY 4, 2016**

# TABLE OF CONTENTS

Page

ARTICLE I. RULES OF INTERPRETATION ................................................................................. 1
    A.    Rules of Interpretation ................................................................................................. 1
    B.    Exhibits ....................................................................................................................... 1

ARTICLE II. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ........................ 2
    A.    Summary of Classification and Treatment of Classified Claims and Equity Interests ..................... 2
    B.    Classification and Treatment of Claims and Equity Interests. ................................................. 3
        1.    Class 1: Non-Tax Priority Claims .................................................................. 3
        2.    Class 2: Secured Claims ................................................................................. 3
        3.    Class 3: UAW Retiree Benefits Claims .......................................................... 3
        4.    Class 4: E&A Retiree Benefits Claims ............................................................ 4
        5.    Class 5: Asbestos Claims ................................................................................ 5
        6.    Class 6: General Unsecured Claims ............................................................... 7
        7.    Class 7: Claims Assumed by TKNA ............................................................... 7
        8.    Class 8: Equity Interests ................................................................................. 7
    C.    Special Provision Governing Unimpaired Claims ..................................................... 8

ARTICLE III. UNCLASSIFIED CLAIMS .................................................................................... 8
    A.    Administrative Claims ................................................................................................ 8
        1.    Time for Filing Administrative Claims .......................................................... 8
        2.    Allowance of Administrative Claims. ............................................................ 8
        3.    Payment of Administrative Claims ................................................................ 8
    B.    Priority Tax Claims .................................................................................................... 9

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .................................................... 9
    A.    Modification of Retiree Benefits and Establishment and Funding of VEBAS ........... 9
    B.    Assumption of ERISA Pension Plans by TKNA ...................................................... 11
    C.    Execution of the TKNA Settlement Agreement ........................................................ 12
    D.    Execution of the TK Finance Settlement Agreement ................................................ 14
    E.    Rights and Powers of the Independent Fiduciary ..................................................... 14
    F.    Rights and Powers of the Debtor .............................................................................. 14
    G.    Abandonment of Property ......................................................................................... 15
    H.    Reports to Be Filed by the Debtor ............................................................................ 15
    I.    Term of Injunctions or Stays .................................................................................... 15
    J.    Implementation of Asbestos Claims Mechanics ....................................................... 15
        1.    Funding of Asbestos Funds and Asbestos Administration Fund .................. 15
        2.    Appointment and Reporting Requirements of Budd Funds Administrator ..... 16
        3.    Formation of Asbestos Springing Trust ....................................................... 17
        4.    Injunction on Future Asbestos Claims ......................................................... 17
        5.    Amended Asbestos Cost Sharing Agreement ............................................... 17
        6.    Litigation of Insured Asbestos Claims After Entry of the Confirmation Order ..... 17
        7.    Litigation of Uninsured Asbestos Claims After Entry of the Confirmation Order ..... 18
    K.    Dissolution of Committees and Retiree Representatives ......................................... 18
        1.    The Asbestos Committee .............................................................................. 18
        2.    The E&A Retiree Committee and the UAW .................................................. 18

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS ....................................................... 19
    A.    Distributions to Holders of Unsecured Claims ......................................................... 19
    B.    Use of Operating Cash ............................................................................................. 19
    C.    Application of Reserved Cash .................................................................................. 19
    D.    Record Date for Distributions .................................................................................. 20
    E.    Delivery of Distributions ......................................................................................... 20

|  |  | 1. | General Provisions; Undeliverable Distributions | 20 |
|  |  | 2. | Unclaimed Property | 20 |
|  | F. | | Manner of Cash Payments under the Plan | 20 |
|  | G. | | Compliance with Tax Requirements | 20 |
|  | H. | | Interest on Claims | 21 |

ARTICLE VI. DISPUTED CLAIMS ............................................................................................21
    A.    No Distribution Pending Allowance ..............................................................................21
    B.    Resolution of Disputed Claims That Are Not Asbestos Claims....................................21
    C.    Resolution of Asbestos Claims .....................................................................................21
    D.    Estimation of Claims.....................................................................................................21
    E.    Compromise and Allowance of Claims. ......................................................................22

ARTICLE VII. PRESERVATION OF CAUSES OF ACTION AND RIGHT TO DEFEND AND
    CONTEST..................................................................................................................22
    A.    Preservation of Rights...................................................................................................22
    B.    Causes of Action ..........................................................................................................22
    C.    Setoffs ...........................................................................................................................22
    D.    No Payment or Distribution Pending Allowance .........................................................23

ARTICLE VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........................23
    A.    General Treatment of Executory Contracts: Rejected..................................................23
    B.    Cure Payments and Release of Liability .....................................................................23
    C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases..................24

ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .........................................................24
    A.    Conditions Precedent to the Effective Date .................................................................24

ARTICLE X. RELEASE, INJUNCTIVE AND RELATED PROVISIONS............................................................25
    A.    Compromise and Settlement ........................................................................................25
    B.    Exculpation ...................................................................................................................25
    C.    Injunction .....................................................................................................................26
    D.    Release by the Estate of the Release Parties ................................................................26
    E.    Release of the Released TKNA Parties and Injunction................................................27
    F.    Release of the Released Estate Parties and of the Asbestos Committee Released Parties ...............28
    G.    Releases of Liens .........................................................................................................29

ARTICLE XI. RETENTION OF JURISDICTION..................................................................................................29

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................................................................30
    A.    Final Fee Applications ..................................................................................................30
    B.    Payment of Statutory Fees ............................................................................................30
    C.    Modification of Plan ....................................................................................................30
    D.    Revocation of Plan .......................................................................................................30
    E.    Successors and Assigns.................................................................................................30
    F.    Governing Law .............................................................................................................31
    G.    Reservation of Rights....................................................................................................31
    H.    Insurance Neutrality......................................................................................................31
    I.    Article 1146 Exemption ................................................................................................32
    J.    Section 1125(e) Good Faith Compliance .....................................................................32
    K.    Further Assurances........................................................................................................32
    L.    Service of Documents ..................................................................................................32
    M.    Filing of Additional Documents...................................................................................33
    N.    Closing of the Bankruptcy Case....................................................................................33
    O.    No Stay of Confirmation Order.....................................................................................33

**EXHIBITS TO PLAN**

**Exhibit A** – **Glossary of Defined Terms**

**Exhibit B** – **TKNA Settlement Agreement**

**Exhibit C** – **Amended and Restated Bylaws of The Budd Company, Inc.**

**Exhibit D** – **Amended Asbestos Cost Sharing Agreement**

**Exhibit E** – **TK Finance Settlement Agreement**

# NINTH AMENDED CHAPTER 11 PLAN FOR THE BUDD COMPANY, INC.
## DATED MAY 4, 2016

Pursuant to chapter 11 of the Bankruptcy Code, The Budd Company, Inc. respectfully proposes the following plan to administer its chapter 11 estate.

The Plan adopts, incorporates, and is premised upon: (1) the TKNA Settlement Agreement that is attached to the Plan as **Exhibit B**; (2) the Amended Asbestos Cost Sharing Agreement that is attached to the Plan as **Exhibit D**; and (3) the TK Finance Settlement Agreement that is attached to the Plan as **Exhibit E**. Notwithstanding anything herein to the contrary, in the event of any conflict between the TKNA Settlement Agreement and the Plan, the TKNA Settlement Agreement shall control, and in the event of any conflict between the terms of the Amended Asbestos Cost Sharing Agreement and the Plan, the Amended Asbestos Cost Sharing Agreement shall control.

## ARTICLE I.
## RULES OF INTERPRETATION

**A.     Rules of Interpretation**

For purposes herein: in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**B.     Exhibits**

**Any Plan Supplement shall be Filed with the Clerk of the Bankruptcy Court not later than fourteen (14) days prior to the Confirmation Hearing or as otherwise directed by the Bankruptcy Court.** The Plan and all exhibits to the Plan: (a) may be inspected in the office

-1-

*Chapter 11 Plan*

of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court; and (b) are posted on the website of the Debtor's Balloting Agent at http://dm.epiq11.com/TBC/Project. Holders of Claims or Equity Interests may also obtain a copy of the Plan and exhibits, once Filed, by (i) calling the Balloting Agent at (877) 559-8630, (ii) emailing the Balloting Agent at tabulation@epiqsystems.com (please reference "The Budd Company" in the subject line of the email), or (iii) sending a written request to either of the following addresses:

| **Proskauer Rose LLP** | **The Budd Company, Inc.** |
|---|---|
| Brandon W. Levitan | c/o Epiq Bankruptcy Solutions, LLC |
| 70 West Madison St. | 10300 SW Allen Boulevard |
| Suite 3800 | Beaverton, OR 97005 |
| Chicago, Illinois 60602-4342 | |
| Phone: (312) 962-3550 | |

## ARTICLE II.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.   Summary of Classification and Treatment of Classified Claims and Equity Interests.**

Except for Administrative Claims and Priority Tax Claims, all Claims against and Equity Interests in the Debtor are placed in Classes for purposes of solicitation of votes to accept the Plan.

The table below identifies Classes of Claims against and Equity Interests in the Debtor for all purposes, including voting, confirmation, and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code, other than as noted elsewhere in the Plan. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| **Class** | **Claim** | **Status** | **Voting Rights** |
|---|---|---|---|
| 1 | Non-Tax Priority Claims | Unimpaired | Not Entitled to Vote |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote |
| 3 | UAW Retiree Benefits Claims | Impaired | Entitled to Vote |
| 4 | E&A Retiree Benefits Claims | Impaired | Entitled to Vote |
| 5 | Asbestos Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Claims Assumed by TKNA | Impaired | Entitled to Vote |
| 8 | Equity Interests | Impaired | Entitled to Vote |

**B.** **Classification and Treatment of Claims and Equity Interests.**

1. *Class 1: Non-Tax Priority Claims*

    (a) *Classification*: Class 1 consists of all Non-Tax Priority Claims.

    (b) *Treatment:* Each holder of an Allowed Class 1 Non-Tax Priority Claim shall receive, in the sole discretion of the Debtor, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim: (i) Cash equal to the amount of such Allowed Non-Tax Priority Claim on or as soon as practicable after the latest of (x) the Effective Date, (y) the date that such Claim becomes Allowed, and (z) a date agreed to by the Debtor and the holder of such Claim; or (ii) such other, less favorable treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Claim and the Debtor, or as the Bankruptcy Court may order.

    (c) *Voting*: Class 1 is not Impaired, and holders of Non-Tax Priority Claims are not entitled to vote to accept or reject the Plan.

2. *Class 2: Secured Claims*

    (a) *Classification*: Class 2 consists of all Secured Claims.

    (b) *Treatment:* Each holder of an Allowed Class 2 Secured Claim shall receive, in the sole discretion of the Debtor, in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (i) Cash equal to the amount of such Allowed Secured Claim on or as soon as practicable after the latest of (x) the Effective Date, (y) the date that such Secured Claim becomes Allowed, and (z) a date agreed to by the Debtor and the holder of such Class 2 Secured Claim; (ii) treatment that such Secured Claim is reinstated; (iii) the property securing such Secured Claim, with any deficiency to result in a Class 6 General Unsecured Claim; or (iv) such other, less favorable treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Claim and the Debtor, or as the Bankruptcy Court may order.

    (c) *Voting*: Class 2 is not Impaired, and holders of Secured Claims are not entitled to vote to accept or reject the Plan.

3. *Class 3: UAW Retiree Benefits Claims*

    (a) *Classification*: Class 3 consists of UAW Retiree Benefits Claims.

    (b) *Allowance of UAW Retiree Benefits Claims for Voting:* Each UAW Retiree Benefits Claim shall be allowed solely for purposes of voting on the Plan in the amount of $1.

    (c) *Treatment:* In satisfaction of the UAW Retiree Benefits Claims, the UAW VEBA shall be established and funded as set forth in the Plan for the benefit of the UAW Retirees. The UAW VEBA shall be governed by the UAW VEBA Trust Agreement, which shall: (i) be in form and substance reasonably acceptable to the Debtor and the UAW; (ii) substantially conform to the trust agreement adopted in connection with the emergence from chapter 11 of Dana Corporation; and (iii) provide for the establishment

of a committee of trustees (the "UAW VEBA Committee") to manage the affairs of the UAW VEBA, which Committee shall be the settlor of the UAW VEBA Trust Plan.

The UAW VEBA Committee shall be comprised of five (5) individual persons consisting of three (3) independent members with expertise in health care, employee benefits, asset management, human resources, labor relations, economics, and/or law, and two (2) members appointed by the UAW. The UAW VEBA Committee shall have the ability to establish investment guidelines for the UAW VEBA assets, hire investment managers, and take actions to enforce the rights of the UAW VEBA as third-party beneficiary under the TKNA Settlement Agreement.

The UAW has indicated that the UAW VEBA Committee will offer initial benefits through group insurance similar in structure to the VEBAs that cover UAW retirees of companies such as General Motors, Ford, Chrysler and Dana Corporation. From and after the UAW VEBA Effective Date, the UAW VEBA Committee shall have sole discretion to determine the healthcare benefits delivery model to be implemented by the UAW VEBA for the benefit of the UAW Retirees. The UAW VEBA Committee will have the ability to modify benefits based upon, among other things, the amount of money paid to the UAW VEBA, as well as other factors such as claim experience, medical and prescription drug inflation, earnings on UAW VEBA trust assets, and unexpected changes in the demographics of UAW VEBA participants.

Until the UAW VEBA Effective Date, the Debtor shall continue to provide Retiree Benefits to the UAW Retirees pursuant to the terms and conditions of the Debtor's existing retiree medical plans, the cost of which shall be paid by the Estate. Claims for Retiree Benefits that are incurred but not paid prior to the UAW VEBA Effective Date shall likewise be paid by the Estate pursuant to the terms and conditions of the Debtor's existing retiree medical plans.

(d) *Voting*: Class 3 is Impaired, and holders of UAW Retiree Benefits Claims are entitled to vote to accept or reject the Plan.

4. ***Class 4: E&A Retiree Benefits Claims***

(a) *Classification*: Class 4 consists of E&A Retiree Benefits Claims.

(b) *Allowance of E&A Retiree Benefits Claims for Voting:* Each E&A Retiree Benefits Claim shall be allowed solely for purposes of voting on the Plan in the amount of $1.

(c) *Treatment:*

*In General:* In satisfaction of the E&A Retiree Benefits Claims, the E&A Retirees will receive Retiree Benefits through the E&A VEBA. From and after the E&A VEBA Effective Date, each E&A Retiree will receive Retiree Benefits funded by the E&A VEBA pursuant to the terms of the E&A VEBA Trust Plan, as the same may be amended from time to time. The E&A VEBA will be managed by a board of five trustees, which will initially be the current members of the E&A Retiree Committee (Jacqueline Delowery, Mercedes Godin, William

-4-

Kroger, James Wahlman, and Thomas Whomsley). The members of the E&A Retiree Committee also will be the members of the E&A VEBA Committee on the E&A VEBA Effective Date, which E&A VEBA Committee will be the sponsor of the E&A VEBA Plan.

From and after the Effective Date until the E&A VEBA Effective Date, the Debtor shall continue to provide Retiree Benefits to the E&A Retirees pursuant to the terms and conditions of the Debtor's existing retiree medical plans, the cost of which shall be paid by the Estate. Claims for Retiree Benefits that are incurred but not paid prior to the E&A VEBA Effective Date shall likewise be paid by the Estate pursuant to the terms and conditions of the Debtor's existing retiree medical plans.

(i) *Settlement Increase:* The E&A Retiree Committee, on behalf of the E&A Retirees, consents to and assigns to the Uninsured Asbestos Claims Fund the first $1.5 million of any Settlement Increase otherwise payable to or for the benefit of the E&A Retirees under the TKNA Settlement Agreement.

(d) *Voting*: Class 4 is Impaired, and holders of E&A Retiree Benefits Claims are entitled to vote to accept or reject the Plan.

5. *Class 5: Asbestos Claims*

(a) *Classification:* Class 5 consists of Asbestos Claims.

(b) Allowance: Without regard to whether an Asbestos Claim has been Allowed or Disallowed by the Bankruptcy Court or another court of competent jurisdiction in the Bankruptcy Case prior to the date of entry of the Confirmation Order, each Asbestos Claim must be filed and prosecuted by the claimant in a court of competent jurisdiction (not the Bankruptcy Court) in order to receive compensation, and the extent of the Debtor's liability for such Asbestos Claim shall be resolved by such a court *de novo* without regard to whether such Asbestos Claim was previously Disallowed or was not evidenced by a proof of claim filed in the Bankruptcy Case.

Upon the entry of the Confirmation Order, any holder of an Asbestos Claim, without regard to whether such Asbestos Claim has been Allowed or Disallowed by the Bankruptcy Court or another court of competent jurisdiction in the Bankruptcy Case, shall be relieved of all stays or injunctions provided for in the Plan and the Confirmation Order and may thereafter pursue such Claim against the Debtor in the state or federal court of competent jurisdiction for the sole purposes of determining the extent and validity of such Asbestos Claim, with any recovery, if any, limited to (i) the proceeds of Asbestos Insurance Policies and (ii) the Uninsured Asbestos Claim Fund.

(c) *Treatment*:

(i) *Insured Asbestos Claims*: Upon the entry of (a) a Final Order by a court of competent jurisdiction determining the extent of the Debtor's liability for an Insured Asbestos Claim, or (b) a definitive written settlement agreement with the Debtor consented to by Participating Carriers determining the extent of the

Debtor's liability for an Insured Asbestos Claim, the holder of such Insured Asbestos Claim shall receive Cash equal to 100% of the amount of its Insured Asbestos Claim from the proceeds of Asbestos Insurance Policies in accordance with the terms of the Amended Asbestos Cost Sharing Agreement. Any right to recover or pursue recovery on account of any Asbestos Claim from an Asbestos Insurance Policy shall be subject to all coverage and other defenses asserted by a Participating Carrier, as determined by a court of competent jurisdiction. No later than the date of entry of the Confirmation Order, the Debtor will fund the Insured Asbestos Claim Fund with $2.2 million in cash, which shall be used for the benefit of the Insurers in accordance with the Amended Asbestos Cost Sharing Agreement.

(ii)     *Uninsured Asbestos Claims*: No later than the date of entry of the Confirmation Order, the Debtor shall fund the Uninsured Asbestos Claim Fund in the amount of $3.5 million. In addition, the Uninsured Asbestos Claim Fund shall receive on the Effective Date an additional $950,000 from the UAW Cash in full and final satisfaction of the Asbestos Committee's Settlement Increase Claim (defined below). Upon the entry of (a) a Final Order by a court of competent jurisdiction determining the extent of the Debtor's liability for an Uninsured Asbestos Claim, or (b) a definitive written settlement agreement with the Debtor determining the extent of the Debtor's liability for an Uninsured Asbestos Claim, the holder of such Uninsured Asbestos Claim shall receive Cash equal to 67% of the amount of its Uninsured Asbestos Claim (the same percentage recovery afforded to Class 6 General Unsecured Claims) solely from the Uninsured Asbestos Claim Fund.

Except from the Uninsured Asbestos Claim Fund, no holder of an Asbestos Claim shall have the right to seek payment on account of such Asbestos Claim from the Debtor or its property (other than under an Asbestos Insurance Policy in accordance with the Plan), even if there are insufficient funds in the Uninsured Asbestos Claim Fund to pay the holder of an Asbestos Claim the Distribution to which he or she otherwise would be entitled under this Plan.

(d) *Voting*: Class 5 is Impaired, and holders of Asbestos Claims are entitled to vote to accept or reject the Plan. Each Asbestos Claim, without regard to whether such Asbestos Claim has been Disallowed as of the Voting Record Date, shall be allowed in the amount of $1 solely for the purpose of voting on the Plan.

6. *Class 6: General Unsecured Claims*

(a) *Classification*: Class 6 consists of General Unsecured Claims.

(b) *Treatment*: Each Allowed Class 6 General Unsecured Claim shall receive from the Debtor in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, Cash equal to 67% of the Allowed amount of such Allowed Class 6 General Unsecured Claim on or as soon as practicable after the later of (x) the Effective Date, or (y) the date that such Claim becomes Allowed.

(c) *Voting*: Class 6 is Impaired, and holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

7. *Class 7: Claims Assumed by TKNA*

(a) *Classification*: Class 7 consists of Claims that TKNA will assume under the TKNA Settlement Agreement, which are: (i) Claims of Retirees arising under the SERP, which plan TKNA is assuming as of the Effective Date; (ii) Claims of the PBGC arising under either of the ERISA Pension Plans (both of which TKNA is assuming as of the Effective Date); (iii) Claim number 521 Filed by Waupaca Foundry, Inc. in the Bankruptcy Case; and (iv) all Workers Compensation Claims.

(b) *Treatment*: Each Allowed Class 7 Claim shall be assumed by TKNA under the TKNA Settlement Agreement and, as of the Effective Date, TKNA shall bear full financial responsibility for payment and/or other satisfaction in full of all such Claims. No holder of a Class 7 Claim shall receive or retain any property of the Estate on account of such Claim.

(c) *Voting*: Class 7 is Impaired, and holders of Class 7 Claims are entitled to vote to accept or reject the Plan.

8. *Class 8: Equity Interests*

(a) *Classification*: Class 8 consists of Equity Interests.

(b) *Treatment*: TKNA shall retain 100% of the Equity Interests in the Debtor, in accordance with the TKNA Settlement Agreement.

(c) *Voting*: Class 8 is Impaired, and holder of Equity Interests is entitled to vote to accept or reject the Plan.

C.     **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such unimpaired Claim.

### ARTICLE III.
### UNCLASSIFIED CLAIMS

A.     **Administrative Claims**

   1.   *Time for Filing Administrative Claims*

The holder of any Administrative Claim that is incurred, accrued or in existence prior to the Effective Date, other than an Allowed Administrative Claim or a claim incurred in the ordinary course of business, must File and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before the date that is twenty-eight (28) days after the Effective Date. Such request must comply with applicable sections of the Bankruptcy Code, the Bankruptcy Rules, and orders of the Bankruptcy Court, and must include: (a) the name of the holder of the Claim, (b) the amount of the Claim, and (c) the basis of the Claim. Failure to timely and properly File and serve an application for payment of an Administrative Claim may result in such Administrative Claim being forever barred and discharged. Objections to Administrative Claim applications must be filed and served pursuant to the Bankruptcy Rules and served on the requesting party and the Debtor within twenty-eight (28) days after the filing of such application.

   2.   *Allowance of Administrative Claims.*

An Administrative Claim that is not incurred and paid by the Debtor in the ordinary course of business shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

   3.   *Payment of Administrative Claims*

The Debtor shall pay in Cash in the ordinary course of business and without further order of the Bankruptcy Court all Administrative Claims incurred in the ordinary course of the Debtor's business. All other Allowed Administrative Claims incurred, accrued, or in existence prior to the Effective Date shall be paid in Cash: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter; (3) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (4) at such time and upon such terms as set forth in any order of the Bankruptcy Court.

The Estate shall pay the cost of all Retiree Benefits incurred by UAW Retirees prior to the UAW VEBA Effective Date, including costs for Retiree Benefits incurred prior to the UAW VEBA Effective Date that are submitted and/or paid on or after the UAW VEBA Effective Date. The Estate shall pay the cost of all Retiree Benefits incurred by E&A Retirees prior to the E&A VEBA Effective Date, including costs for Retiree Benefits incurred prior to the E&A VEBA

-8-

*Chapter 11 Plan*

Effective Date that are submitted and/or paid on or after the E&A VEBA Effective Date. The Estate shall pay the costs, fees, and expenses of the Debtor, the UAW, the E&A Retiree Committee, and their respective professionals associated with establishing the UAW VEBA and the E&A VEBA. To the extent incurred after the Effective Date, all of the foregoing amounts shall be paid from administrative reserves established by the Debtor prior to its determination of Effective Date Cash.

### B.    Priority Tax Claims

All Allowed Priority Tax Claims shall be paid on the later of: (1) the date the Priority Tax Claim becomes an Allowed Priority Tax Claim, or (2) the date a Priority Tax Claim first becomes payable pursuant to any agreement between the Debtor and the holder of such Priority Tax Claim. At the sole option of the Debtor, such holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of such Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in any other manner such that its Allowed Priority Tax Claim shall not be Impaired, including periodic payments on a quarterly basis over a period ending not later than five (5) years after the Petition Date, in accordance with the provisions of sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, or (iii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing. Clause (iii) of the preceding sentence shall not be construed to avoid the need for Bankruptcy Court approval of a Priority Tax Claim when such Bankruptcy Court approval is otherwise required by the Bankruptcy Code.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Modification of Retiree Benefits and Establishment and Funding of VEBAS

The Plan is premised upon providing to or for the benefit of the Retirees: (1) Effective Date Cash estimated to be in excess of $200 million; (2) Cash over an 8 year period beginning on the Effective Date in the aggregate amount of $335 million (since the UAW has elected to grant the Waupaca Claims Release in accordance with the terms of the TKNA Settlement Agreement) under a stream of payments to be made by TKNA on behalf of the Debtor pursuant to the TKNA Settlement Agreement, plus an additional $10 million in cash to be paid by TK Finance in accordance with the terms of the TK Finance Settlement Agreement; and (3) additional Cash from the proceeds of Causes of Action and other assets of the Estate liquidated after the Effective Date. This Cash will be made available to or for the benefit of Retirees under the Retiree VEBAs described in the Plan.

Consistent with Bankruptcy Code Section 1129(a)(13) and Section 1114, the Debtor's Plan contemplates that the Bankruptcy Court shall enter a Confirmation Order that incorporates the terms of the Section 1114 Agreements. The Section 1114 Agreements will modify the obligations of the Debtor to provide Retiree Benefits to the E&A Retirees and the UAW Retirees by allowing the Debtor to terminate its obligations under its existing retiree health and welfare plans on the E&A VEBA Effective Date and the UAW VEBA Effective Date and will provide replacement coverage by funding through this Plan the E&A VEBA and the UAW VEBA. The Section 1114 Agreements will not be effective unless and until: (1) the Bankruptcy Court enters the Confirmation Order; and (2) the Effective Date has occurred. After the respective E&A

VEBA Effective Date and the UAW VEBA Effective Date, the E&A Retirees and the UAW Retirees will have the rights afforded to them under the Retiree VEBAs and will receive Retiree Benefits pursuant to the terms of the E&A VEBA Trust Plan and the UAW VEBA Trust Plan, as the same may be amended from time to time, in lieu of all rights otherwise afforded to them under the Debtor's existing retiree medical plans (including rights under applicable laws, such as, but not limited to, the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended, ERISA, and the Patient Protection and Affordable Care Act).

Prior to the Effective Date, the UAW VEBA and the E&A VEBA will be established to meet the requirements of Code section 501(c)(9) and ERISA section 3(1). The UAW VEBA Trust Agreement, the UAW VEBA Trust Plan, the E&A VEBA Trust Agreement, and the E&A VEBA Trust Plan will be filed with the Plan Supplement. The Debtor shall pay all costs and expenses of the Debtor, the UAW, and the E&A Retiree Committee (and their respective professionals) associated with establishing the UAW VEBA and the E&A VEBA. Each VEBA document shall be drafted to address the requirements of the UAW VEBA Trust Plan and the E&A VEBA Trust Plan and the requirements for a tax-exempt trust. The Debtor shall provide TKNA with drafts of the UAW VEBA Trust Agreement and the E&A VEBA Trust Agreement prior to submission to the Internal Revenue Service, and shall provide TKNA with copies of all correspondence received from or sent to the IRS in conjunction with the qualification of each VEBA. Each Retiree VEBA will be separate from the other, and assets of the Retiree VEBAs will not be commingled and, for the avoidance of doubt, no unused assets of the UAW VEBA or the E&A VEBA will revert to the Debtor or TKNA. From and after the Effective Date until the respective E&A VEBA Effective Date and the UAW VEBA Effective Date, the Debtor shall continue to provide to the E&A Retirees and the UAW Retirees Retiree Benefits pursuant to the terms and conditions of the Debtor's existing retiree medical plans, the cost of which shall be paid by the Estate. Claims for Retiree Benefits that are incurred but not paid prior to the applicable E&A VEBA Effective Date or UAW VEBA Effective date shall likewise be paid by the Estate pursuant to the terms and conditions of the Debtor's existing retiree medical plans. The Debtor shall cooperate with the UAW VEBA and the E&A VEBA and provide the UAW VEBA and the E&A VEBA with all records and other information reasonably requested by the UAW VEBA and/or the E&A VEBA in connection with the administration of the UAW VEBA and the E&A VEBA, including but not limited to personally identifiable information, census data, and all contracts that the Debtor has made for the provision of Retiree Benefits.

As soon as practicable after the Effective Date, the Debtor shall deposit or cause to be deposited $55 million into the E&A VEBA (and pursuant to the TKNA Settlement Agreement, TKNA shall pay $15 million to the E&A VEBA on behalf of the Debtor) and the UAW Cash (minus the $950,000 that will be used to fund the Uninsured Asbestos Claim Fund on the Effective Date) into the UAW VEBA. Thereafter: (1) TKNA shall pay to the UAW VEBA on behalf of the Debtor, Cash in the aggregate amount of $320 million (since the UAW has elected to grant the Waupaca Claims Release in the form set forth on Attachment 4 to the TKNA Settlement Agreement), all payable in accordance with the schedule and subject to the terms and conditions of the TKNA Settlement Agreement, and TK Finance shall pay an additional $10 million in cash in accordance with the terms of the TK Finance Settlement Agreement; (2) on the date of the First UAW Payment (as defined in the TKNA Settlement Agreement), TKNA, TK Finance, or an affiliate, shall contribute $50,000 to the UAW VEBA on account of its share of the $950,000 payment from UAW Cash to the Uninsured Asbestos Claim Fund in full and final