**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

In re:

THE BUDD COMPANY, INC.,                                          Chapter 11

                                                                 Case No. 14-11873

      Debtor.

_____/                              Hon. Jack B. Schmetterer


**FINAL APPLICATION OF DICKINSON WRIGHT PLLC**
**FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Name of Applicant:                                   Dickinson Wright PLLC

Authorized to Provide Professional Services to:      The Budd Company, Inc.

Date of Retention:                                   March 31, 2014

Period for which compensation and
reimbursement are sought:                            March 31, 2014–July 31, 2016

Amount of compensation sought as actual,
reasonable, and necessary:                           $541,810.00

Amount of expense reimbursement sought as
actual, reasonable, and necessary:                   $17,635.24

This is a(n):        ___ Monthly          ____ Interim        __X__ Final Application

If this is not the first application filed, disclose the following for prior applications:

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|------------|----------------|----------------|--------------------|---------------|-------------------|
| 9/15/14 | 3/31 – 7/31/2014 | $411,260.15 | $8,510.08 | $398,760.15 | $8,510.08 |
| 1/20/15 | 8/1 – 11/30/2014 | $123,771.85 | $5,675.13 | $117,775.85 | $5,535.13 |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

In re:

THE BUDD COMPANY, INC.,                                                 Chapter 11

                                                                        Case No. 14-11873

                    Debtor.

_____/

**FINAL APPLICATION OF DICKINSON WRIGHT PLLC FOR**
**COMPENSATION AND REIMBURSEMENT EXPENSES**

Dickinson Wright PLLC ("Dickinson"), as Special Counsel to Debtor, The Budd

Company, Inc. ("Debtor"), submits this Final Application ("Final Application") seeking final

allowance and payment of compensation for the period from March 31, 2014 through July 31,

2016 (the "Compensation Period") under (i) 11 U.S.C. §§ 328, 330 and 331 (the "Bankruptcy

Code"), (ii) Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), (iii) the Order of this Court Establishing Professional Interim Fee and

Expense Reimbursement dated May 9, 2014 (the "Compensation Order"), (iv) the Order of this

Court dated July 25, 2014 establishing procedures of interim monthly compensation and

reimbursement of expenses of professionals (the "Fee Examiner Order"), and (v) the Order of

this Court dated December 23, 2014 Granting Fee Examiner's Motion to Amend Order

Establishing Professional Interim Compensation Procedures.

Dickinson certifies that the Debtor has received a copy of this Final Fee Application and

that a copy has been served on (i) the office of the U.S. Trustee, (ii) counsel for The International

Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the

"UAW"), (iii) counsel for the Official Asbestos Committee, (iv) counsel for The Committee of

Executive & Administrative Retirees (the "Committee"), (v) the Fee Examiner and counsel for

2

the Fee Examiner, and all other counsel and parties of record in this case.  In support of this Final

Fee Application, Dickinson respectfully represents as follows:

## BACKGROUND

1.      On March 31, 2014 ("Petition Date"), Debtor filed a voluntary petition in this

Court for reorganization relief under chapter 11 of title 11 of the United States Bankruptcy Code

(the "Bankruptcy Code").  The Debtor continues to manage its affairs as debtor in possession as

authorized by Sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On May 9, 2014, the Bankruptcy Court entered its Compensation Order

establishing procedures for interim monthly compensation and reimbursement of expenses of

professionals (Docket No. 147).

3.      Also on May 9, 2014, the Bankruptcy Court entered the Order Authorizing and

Approving Retention and Employment of Dickinson Wright as Special Counsel *nunc pro tunc* to

the Petition Date (the "Retention Order", Docket No. 150, attached as Exhibit A).

4.      On July 25, 2014, the Bankruptcy Court entered the Stipulation and Agreed Order

with Respect to Appointment of An Independent Fee Examiner (the "Fee Examiner Order",

Docket No. 346), appointing a fee examiner to review fees charged by professionals representing

the parties in this matter.

## RETENTION OF DICKINSON WRIGHT PLLC

5.      Before the Petition Date, the Debtor's initial chief restructuring officer Charles

Moore ("CRO")[1], in consultation with the Debtor's lead counsel, Proskauer Rose ("Proskauer"),

determined that the Debtor should undertake an independent investigation of potential claims and

---

[1] For purposes of this Motion, "CRO" shall refer to Mr. Moore, despite Mr. Moore being
replaced as CRO after the Affiliated Entity Investigation was completed.

causes of action (the "Affiliated Entity Investigation") among the Debtor and its affiliates,

including its sole shareholder, ThyssenKrupp North America, Inc. (collectively, the "Affiliates").

6.      Due to Proskauer's prior relationship with certain Affiliates, the CRO

recommended that Debtor retain Dickinson to advise the CRO and Independent Director, Charles

Sweet, during the Affiliated Entity Investigation and to negotiate, if possible, a resolution or to

prosecute claims in accordance with the engagement letter between Debtor and Dickinson dated

May 17, 2013, as amended by letter agreement dated March 27, 2014 (as amended, the

"Engagement Letter", attached as Exhibit B).

7.      During the course of the Affiliated Entity Investigation, Dickinson, the CRO, and

Conway Mackenzie identified, analyzed and evaluated the potential claims and causes of action

against the Affiliates (the "Affiliate Claims").  Dickinson also took the lead on negotiating a

resolution of the Affiliate Claims and finalizing the initial settlement.

8.      In the days leading up to Petition Date, Dickinson worked closely with Proskauer

in drafting and preparing a Motion to Approve the Settlement with Affiliates (the "Initial

Settlement Motion") and the CRO's declaration in support of the Initial Settlement Motion.

9.      The Affiliated Entity Investigation took over five (5) months and involved

reviewing over 800 documents prior to the Petition Date.  Dickinson's lead role in the Affiliated

Entity Investigation resulted in Dickinson having a wealth of institutional knowledge about the

documents reviewed, the Affiliated Claims investigated, and the settlement negotiations with the

Affiliates.  To promote efficiency during this case, Dickinson provided advice and counsel to the

Debtor, the CRO and Proskauer with respect to the Affiliated Entity Investigation and Initial

Settlement Motion.  As further detailed below, Dickinson's legal service and counsel were

narrowly tailored so as to not duplicate Proskauer's legal services and counsel to the Debtor.

**COMPENSATION**

10.    Per the Engagement letter and Retention Order, the Debtor has agreed to (a) pay Dickinson the hourly rates specified in the Engagement Letter, pursuant to Section 328 of the Bankruptcy Code, and subject to the final approval of the Bankruptcy Court, and (b) reimburse Dickinson for reasonable out-of-pocket expenses incurred in connection with the provision of services under the Engagement Letter, including, without limitation, reasonable expenses incurred in connection with travel, lodging, data processing, communication charges, database usage, research, postage, and courier services.

11.    Dickinson Wright submitted its First Interim Fee Application on September 15, 2014 (for the period covering March 31, 2014 through July 31, 2014) seeking compensation of $411,260.15 in fees and reimbursement of $8,510.08 in expenses.

12.    This Court entered an Order Approving the First Interim Fee Application of Dickinson Wright PLLC on October 17, 2014, which allowed compensation for professional services in the amount of $398,760.15 and $8,510.08 in expenses. The $398,760.15 amount reflects a $12,500.00 reduction in fees agreed upon with the Fee Examiner.

13.    Dickinson Wright submitted its Second Interim Fee Application on January 20, 2015 (for the period covering August 1, 2014 through November 30, 2014) seeking compensation of $123,775.85 in fees and reimbursement of $5,675.13 in expenses.

14.    This Court entered an Order Approving the Second Interim Fee Application of Dickinson Wright PLLC on March 9, 2015, which allowed compensation for professional services in the amount of $117,775.85 and $5,535.13 in expenses. The $117,775.85 amount reflects a $6,000.00 reduction in fees agreed upon with the Fee Examiner; the $5,535.13 amount reflects a $300.00 reduction in expenses agreed upon with the Fee Examiner.

15.     Pursuant to discussions with the Fee Examiner, Dickinson did not submit any additional Interim Fee Applications between the Order Approving the Second Interim Fee Application of Dickinson Wright PLLC on March 9, 2015 and this Final Fee Application. Dickinson's work on this matter was primarily focused on the Affiliated Entity Investigation, which was completed prior to the Petition Date.

16.     Rather than creating a cycle of submitting interim fee applications for preparing the prior interim fee application, Dickinson did not submit an interim fee application for $28,868.03 (the "New Fees & Expenses") which represents the limited time spent and expenses incurred on preparing Dickinson's Second Interim Fee Application, on non-working travel related thereto, and on other contested matters, including providing professionals with access to documents stored in the online data room, confidentiality agreements required in order to access the data room, and other tasks related to the tens of thousands of pages stored in the online data room, which was hosted and moderated by Dickinson. Dickinson requests that this Court, via this Final Fee Application, approve the New Fees & Expenses that were, in interests of efficiency, not previously submitted via an interim fee application.

**RELIEF REQUESTED**

17.     By this Final Fee Application, Dickinson seeks final allowance of compensation and reimbursement of expenses incurred for the Compensation Period, including the New Fees and Expenses. Dickinson also seeks payment of all outstanding holdbacks owing with respect to Dickinson's First Interim Fee Application and Second Interim Fee Application.

18.     Dickinson performed all services for which it seeks compensation for and on behalf of the Debtor.  Dickinson has not entered into any agreement, express or implied, with

6

any party in interest for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in this case.

19.     Attached as <u>Exhibit C</u> are invoices for Dickinson's New Fees. <u>Exhibit D</u> is a Professional Summary Page, as requested by the Fee Examiner in her August 26, 2014 Memorandum regarding Professional Fee Review Procedures. <u>Exhibit E</u> contains a breakdown of compensation by category. <u>Exhibit F</u> details expenses by category. All of the information in Exhibits C, D, E, and F was provided in Dickinson's First and Second Interim Fee Applications and is provided in cumulative form in this Final Fee Application.

## LEGAL BASIS FOR REQUESTED COMPENSATION

20.     Dickinson is entitled to receive the fees requested in accordance with the express terms of the Engagement Letter and the provisions of Section 328(a) of the Bankruptcy Code which permits a debtor, with the Court's approval, to employ a professional person "on reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

21.     Moreover, Section 330 of the Bankruptcy Code provides for the award of compensation to professionals "subject to" the provisions of Section 328 of the Bankruptcy Code.  11 U.S.C. § 330.

22.     Congress intended Section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a).  See also *Donaldson, Lufkin, & Jenrette Sec. Corp. v. Nat'l Gypsum Co.*, 123 F.3d 861, 862-63 (5th Cir. 1997) ("[I]f the most competent professionals are to

be available for complicated capital restructuring and the development of successful corporate

reorganization, they must know what they will receive for their expertise and commitment.").

23.     Pursuant to the Retention Order, this Court approved the retention of Dickinson

under the terms of the Engagement Letter, subject to the standard of review provided under

Section 328(a).  *See* Exhibits A and B.

24.     The compensation for services rendered during the Compensation Period has been

earned and is due and payable in full under the terms of the Engagement Letter.  Dickinson

submits that the fees and expense reimbursements sought should be allowed and approved by the

Court under Sections 328(a) and 330 of the Bankruptcy Code.

25.     Senior level professionals with extensive experience in the area of bankruptcy

directed Dickinson's team.  The services rendered by Dickinson were performed primarily by

Theodore B. Sylwestrzak, Member; Daniel D. Quick, Member; Allison R. Bach, Member; Adam

D. Grant, Member.  Dickinson assigned other members, experienced junior associates, and other

support personnel as needed throughout the course of its representation of Debtor.  In this case,

Theodore B. Sylwestrzak had overall responsibility for the case.  His responsibilities included

developing strategy to prosecute the Initial Settlement Motion, directing negotiations, and

interfacing with other senior professionals involved with the case.  Allison R. Bach was

responsible for the day-to-day coordination of the case for Dickinson, including advising and

strategizing with the CRO and Proskauer on issues related to the Affiliated Entity Investigation

and Initial Settlement Motion and communicating with counsel for the UAW and Committee

(and their respective financial advisors) on issues related to the Affiliated Entity Investigation.

Daniel D. Quick and Adam D. Grant was involved in the litigation aspects of this matter,

including coordinating discovery responses related to the Affiliated Entity Investigation and

responding to demands from creditors and threatened and/or actual motion practice concerning the Initial Settlement Motion and Affiliated Entity Investigation. Additionally, junior associates were involved in first-level review privileged and relevance document review; any second-level review was performed by one of the more senior attorneys listed above. The above-listed attorneys coordinated their actions so as not to duplicate efforts. Given the different roles of these professionals and overlapping responsibilities, there are times where it was necessary and appropriate for two or more attorneys to be present at a meeting, deposition, or hearing.

26. The amount of fees and expenses sought in this Final Fee Application and Dickinson's billing process are consistent with market practices for law firms both in and out of a bankruptcy context.

27. Dickinson bills its clients based on the number of hours expended by its professionals. Its professionals were billed at rates specifically negotiated with Debtor and memorialized in the Engagement Letter. To the extent an individual attorney did not have a specifically-negotiated billing rate in the Engagement Letter, that attorney's time was billed at Dickinson's standard national rates.

28. In light of the complexity of this case, as well as the corporate and financial structure of the Debtor, the amount of activity during the Compensation Period, and the level of services rendered by Dickinson to the Debtor, Dickinson considers the compensation sought both fair and reasonable. In addition, it is consistent with the terms of the Engagement Letter and Retention Order.

## SUMMARY OF SERVICES RENDERED

29.     All services rendered by Dickinson during the Compensation Period were performed at the request or direction of either the CRO, Proskauer, or the Court and were performed in accordance with the Engagement Letter and the Retention Order.

30.     During the Compensation Period, Dickinson provided a broad range of necessary legal services with respect to the Affiliated Entity Investigation, including the discovery issues related to the Initial Settlement Motion.  Provided below is a summary of the services provided by Dickinson in connection with this matter.  This work occurred from March 31, 2014 through July 31, 2016 and is described in further detail in the monthly invoices submitted by Dickinson, attached as Exhibit C.

a.      Maintained and updated an online data room of documents reviewed during the Affiliated Entity Investigation for review by creditors;

b.      Responded to informal data requests directed to the CRO regarding the Affiliated Entity Investigation and other topics addressed during his July 2014 deposition;

c.      Facilitated and oversaw of voluminous in-person reviews by UAW and Committee of tens of thousands of hard-copy documents from Budd's Law Department and other sources;

d.      Attended numerous in-person meetings and conference calls with advisors and counsel to the UAW and Committee to provide background information on the Affiliated Entity Investigation and to respond to specific, direct inquiries;

e.      Met with professionals engaged by creditors to facilitate an unencumbered flow of information about the Affiliated Entity Investigation during the discovery period on the Initial Settlement Motion;

f.      Analyzed and reviewed various documents and other materials in conjunction with providing legal advice regarding the Affiliated Entity Investigation and Initial Settlement Motion, including but not limited to issues regarding the tax sharing agreement;

g.      Engaged in extensive discussions with management of ThyssenKrupp North America ("TKNA") regarding the Affiliated Entity Investigation and Initial

Settlement Motion, including but not limited to issues regarding the tax sharing agreement;

h.     Participated in the negotiation, drafting, and execution of various motions, non-disclosure agreements, common interest agreements, and other documents related to Dickinson's role in the Affiliated Entity Investigation and Initial Settlement Motion;

i.     Assisted Proskauer in responding to adversary complaint seeking injunctive relief and advised the CRO regarding same;

j.     Prepared for and attended court hearings and conferences related to the Initial Settlement Motion, with travel and in-person attendance limited to those hearings at which either the Affiliated Entity Investigation or discovery regarding the Affiliated Entity Investigation was likely to be a focal point;

k.     Drafted Interim Fee Applications, participated in numerous telephone conferences with Fee Examiner, and attended multiple court hearings regarding Dickinson's Interim Fee Applications;

l.     Drafted supplemental briefing requested by Court regarding issues related to the tax sharing agreement.  The Court wanted to understand the tax sharing agreement situation and asked Dickinson on the record to address the issue in a supplement to Dickinson's fee application. This process involved lengthy discussions with both the CRO and Proskauer and factual investigation regarding the tax sharing agreement issue, as this supplemental briefing was the medium through which the Debtor told its side of the story regarding the tax sharing agreement issues; and

m.     Reviewed all documents prior to production, redacted confidential and sensitive information as necessary, and prepared privilege logs identifying documents withheld from production on the basis of the attorney-client privilege and/or work product doctrine.

31.     Dickinson's role has at all times been separate and distinct from that of Proskauer. While Proskauer is Debtor's overall and lead bankruptcy counsel, Dickinson's role has been limited to the areas for which it was specifically retained, namely the Affiliated Entity Investigation.  Notwithstanding the foregoing, Dickinson and Proskauer worked closely together during the Compensation Period to investigate issues regarding the tax sharing agreement and to develop a strategy for the Debtor regarding same.

11

32.     Additionally, while Dickinson has attended many court hearings, attendance at court hearings by Dickinson has been primarily telephonic, with travel to and attendance in person being limited to those court hearings at which either the Affiliated Entity Investigation or the discovery disputes related to the Affiliated Entity Investigation and Initial Settlement Motion, was likely to be a focal point.

33.     Dickinson participated in numerous conference calls with Proskauer during the Compensation Period to discuss strategy related to the Initial Settlement Motion and discovery disputes, including but not limited to issues regarding the tax sharing agreement. This joint participation benefits Debtor and creditors and is essential and efficient given the separate and distinct roles played in this case by Dickinson and Proskauer.

34.     In sum, Dickinson counseled and advised the Debtor with respect to the Affiliated Entity Investigation.

## CONCLUSION

35. Dickinson rendered necessary and important legal services to Debtor in the areas for which it was specifically retained during the Compensation Period.  Dickinson respectfully submits that the compensation requested by this application is reasonable in light of the nature and value of the services provided to the Debtor.

WHEREFORE, Dickinson Wright PLLC respectfully requests that this Court enter an order (i) allowing Dickinson Wright PLLC compensation in the amount of $541,810.00 for actual, reasonable, and necessary professional services rendered on behalf of the Debtor during the Compensation Period; (ii) allowing Dickinson Wright PLLC reimbursable expenses in the amount of $17,635.24; (iii) authorizing and directing the Debtor to make payment in respect of 100% of such fees and expenses, to the extent not yet received by Dickinson Wright PLLC for

the Compensation Period, including, without limitation, the New Fees & Expenses and any

holdbacks previously not paid within fourteen (14) days of entry of such order, the amount of

$28,868.03 ($25,278.00 in New Fees and $3,590.03 in New Expenses) represents the amount

remaining unpaid.

DICKINSON WRIGHT PLLC

By: /s/ Adam D. Grant
    Adam D. Grant  (ARDC #6298408)
Special Counsel to Debtor The Budd Company, Inc.
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226

Dated:  August 24, 2016        (313) 223-3500

**CERTIFICATE OF FILING**

I hereby certify that I filed a copy of the foregoing document, along with all exhibits, via the Court's ECF system on August 24, 2016, which will effectuate service on all parties of record.

DICKINSON WRIGHT PLLC


By:  /s/ Adam D. Grant
      Adam D. Grant  (ARDC #6298408)
Special Counsel to Debtor The Budd Company, Inc.
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226
Dated:  August 24, 2016      (313) 223-3500

14