## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No. 14-11873 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |
| | ) | |

**NOTICE OF HEARING ON SEVENTH INTERIM AND FINAL FEE APPLICATION OF MILLCO ADVISORS, LP, FINANCIAL ADVISOR TO THE INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) AS SECTION 1114 AUTHORIZED <u>REPRESENTATIVE FOR THE PERIOD APRIL 30, 2014 THROUGH AUGUST 1, 2016</u>**

**PLEASE TAKE NOTICE** that on August 26, 2016, Millco Advisors, LP filed that certain *Seventh Interim And Final Fee Application of Millco Advisors, LP, Financial Advisor To The International Union, United Automobile, Aerospace And Agricultural Implement Workers Of America (UAW) As Section 1114 Authorized Representative, For The Period April 30, 2014 through August 1, 2016* (the "<u>Seventh Interim and Final Fee Application</u>").

**PLEASE TAKE FURTHER NOTICE** that the Court will consider the Seventh Interim and Final Fee Application at the hearing scheduled for **<u>October 21, 2016 at 1:30 p.m. (CT)</u>** before the Honorable Jack B. Schmetterer or any other judge who may be sitting in his place and stead, in Courtroom 682 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, at which time you may appear if you deem fit.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Seventh Interim and Final Fee Application shall be filed and served by no later than **<u>October 14, 2016 at 4:00 p.m. (CT)</u>**.

*[Remainder of Page Intentionally Left Blank]*

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in this case are available free of charge by visiting the case website maintained by Epiq Bankruptcy Solutions, LLC, notice and claims agent for this chapter 11 case, at http://dm.epiq11.com/Budd or by calling (646) 282-2400. You also may obtain copies of any pleadings by visiting the Court's website at www.ilnb.uscourts.gov in accordance with the procedures and subject to the fees applicable thereto.

Dated:  August 26, 2016

Respectfully submitted,

*International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)*

By: _/s/    James L. Bromley_____
        One of its attorneys

James L. Bromley (admitted *pro hac vice*)
Daniel J. Soltman (admitted *pro hac vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
jbromley@cgsh.com
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

-and-

Scott R. Clar
CRANE, HEYMAN, SIMON, WELCH & CLAR
135 South LaSalle Street, Suite 3705
Chicago, Illinois 60603

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No. 14-11873 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |

**COVER SHEET TO SEVENTH INTERIM AND FINAL FEE APPLICATION OF MILLCO
ADVISORS, LP, FINANCIAL ADVISOR TO THE INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA (UAW) AS SECTION 1114 AUTHORIZED REPRESENTATIVE,
FOR THE PERIOD OF APRIL 30, 2014 THROUGH AUGUST 1, 2016**

| | |
|---|---|
| Name of Applicant: | Millco Advisors, LP ("Millstein & Co.") |
| Authorized to provide professional services to: | The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) (the "UAW"), as section 1114 authorized representative |
| Date of retention: | May 9, 2014 *nunc pro tunc* to April 30, 2014 |
| Interim Fee Period for which compensation and reimbursement is sought: | April 1, 2016 through August 1, 2016 |
| Final Fee Period for which compensation and reimbursement is sought: | April 30, 2014 through August 1, 2016 |
| Interim Fee Application: | Interim fees incurred: $705,645.16<br>Interim expenses incurred: $0 |
| Final Fee Application: | Final fees incurred:  $4,736,478.50<br>Total expenses incurred: $3,527.09<br>Discount: $525,000.00<br>Total Amount: $4,215,005.59 |

## Summary of Millstein & Co. Interim Fee Applications

*In re The Budd Company, Inc.*
(Case No. 14-11873 (JBS))

| Date Interim Fee Application Filed | Period Covered by Interim Fee Application | Amounts Incurred | | Amounts Approved | | Payments Received | Holdback |
|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | | |
| 9/15/2014 Docket No. 462 | 4/30/2014-7/31/2014 | $530,833.34 | $2,422.07 | $530,833.34 | $2,422.07 | $533,255.41 | – |
| 1/20/2015 Docket No. 702 | 8/1/2014-11/30/2014 | $700,000.00 | $853.02 | $595,000.00 | $853.02 | $595,853.02 | $105,000.00 |
| 5/14/2015 Docket No. 871 | 12/1/2014-3/31/2015 | $350,000.00 | – | $280,000.00 | – | $280,000.00 | $70,000.00 |
| 8/28/2015 Docket No. 1036 | 4/1/2015-7/31/2015 | $700,000.00 | $252.00 | $430,000.00 | $252.00 | $430,252.00 | $270,000.00 |
| 1/19/2016 Docket No. 1477 | 8/1/2015-11/30/2015 | $700,000.00 | – | $210,000.00 | – | $210,000.00 | $490,000.00 |
| 5/16/2016 Docket No. 1837 | 12/1/2015-3/31/2015 | $700,000.00 | – | $83,000.00 | – | $83,000.00 | $617,000.00 |
| Total Prior Interim Requests | | $3,680,833.34 | $3,527.09 | $2,128,833.34 | $3,527.09 | $2,132,360.43 | $1,552,000.00 |
| Seventh Interim Application | 4/1/2016-8/1/2016 | $705,645.16 | – | – | – | $55,000.00* | $650,645.16 |
| Prior Unbilled Months | 1/1/2015-2/28/2015 | $350,000.00 | – | – | – | – | $350,000.00 |
| Total Contract Amount | | $4,736,478.50 | $3,527.09 | | | $2,187,360.43 | $2,552,645.16 |
| Voluntary Reduction | | | | | | | ($525,000.00) |
| **Final Amount Due** | | | | | | | **$4,215,005.59** |

*Includes $10,000 received and $45,000 invoiced but not yet received.

2

## Cumulative Time Summary by Professional

*In re The Budd Company, Inc.*
(Case No. 14-11873 (JBS))

**Period Covered**
**April 30 2014 - August 1, 2016**

| Professional | Title | Hours |
|---|---|---|
| Jim Millstein | CEO and Chairman | 15 |
| Jane Vris | Partner and General Counsel | 668 |
| Brendan Hayes | Managing Director | 4 |
| Jay Kim | Associate | 503 |
| Brendon Philipps | Associate | 46 |
| Eric Glyman | Analyst | 574 |
| Jiten Suthar | Analyst | 49 |
| Ali Abramovitz | Analyst | 70 |
| Aileen Wang | Analyst | 417 |
| **Grand Total** | | **2,346** |

## Cumulative Time Summary by Category

*In re The Budd Company, Inc.*
(Case No. 14-11873 (JBS))

**Period Covered**
**April 30 2014 - August 1, 2016**

| Category | Jim Millstein | Jane Vris | Brendan Hayes | Jay Kim | Brendon Philipps |
|---|---|---|---|---|---|
| General Due Diligence | 5 | 52 | 4 | 61 | 26 |
| Settlement Analysis | – | 125 | – | 201 | 1 |
| Tax | – | 9 | – | 52 | – |
| Communications and Presentations | 9 | 229 | – | 188 | 3 |
| Client Recovery | – | 5 | – | – | 2 |
| Deposition Preparation | – | 129 | – | – | – |
| Review of Documents | – | 27 | – | – | 14 |
| Case Administration | 1 | 74 | – | 1 | – |
| Effective Date Closing Matters | | 18 | | | |
| **Total Hours** | **15** | **668** | **4** | **503** | **46** |

| Category | Eric Glyman | Jiten Suthar | Ali Abramovitz | Aileen Wang | **Total Hours** |
|---|---|---|---|---|---|
| General Due Diligence | 103 | 5 | – | – | **148** |
| Settlement Analysis | 229 | 6 | – | 121 | **327** |
| Tax | 17 | – | – | – | **61** |
| Communications and Presentations | 192 | 7 | – | 131 | **429** |
| Client Recovery | – | 9 | – | – | **7** |
| Deposition Preparation | – | – | – | 115 | **129** |
| Review of Documents | – | 22 | 70 | 146 | **41** |
| Case Administration | 33 | – | – | 25 | **76** |
| Effective Date Closing Matters | | | | 16 | **18** |
| **Total Hours** | **574** | **49** | **70** | **554** | **1,236** |

| Grand Total | | | | | 1,236 |
|---|---|---|---|---|---|

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No. 14-11873 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |

**SEVENTH INTERIM AND FINAL FEE APPLICATION OF MILLCO ADVISORS, LP,**
**FINANCIAL ADVISOR TO THE INTERNATIONAL UNION, UNITED AUTOMOBILE,**
**AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA**
**(UAW) AS SECTION 1114 AUTHORIZED REPRESENTATIVE,**
**FOR THE PERIOD OF APRIL 30, 2014 THROUGH AUGUST 1, 2016**

Pursuant to section 328 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5082-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Northern District of Illinois and that certain *Order Authorizing the Employment and Retention of Millco Advisors, LP  as Financial Advisor for the International Union, United Automobile, Aerospace and Agricultural Implement Works of America Nunc Pro Tunc To April 30, 2014*   ("Retention Order"), Millco Advisors LP ("Millstein & Co.") hereby files this final application (the "Final Fee Application") for the allowance of compensation for services rendered and reimbursement for actual and necessary expenses incurred during the periods commencing (i) April 1, 2016 through and including August 1, 2016 (the "Seventh Interim Application Period"), and (ii) April 30, 2014 through and including August 1, 2016 (the "Final Application Period"). In support of this Seventh Interim and Final Fee Application, Millstein & Co. respectfully represents as follows:

**JURISDICTION VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 328 and 331 of the Bankruptcy Code.

**STATEMENT**

3.      When The Budd Company, Inc. ("Budd" or the "Debtor") filed its petition on March 31, 2014 commencing this Chapter 11 case, it stated in its petition that it had approximately $1.107 billion in liabilities and assets equal to approximately 35% of its liabilities. Budd and its corporate family (the "TKNA Group") proposed a settlement under which, among other things, ThyssenKrupp North America, Inc. ("TKNA") would assume certain joint and several liabilities and contribute just $10.3 million in cash for a global release of all claims and causes of action.

4.      Today, Budd has confirmed a plan of reorganization that incorporates a materially improved settlement which increases the cash contribution from the TKNA Group from $10.3 to $335 million in addition to other consideration such as assumption of the Debtor's pension plans. This dramatic improvement, which will allow Budd's retirees to continue receiving meaningful health insurance for the remainder of their lives while keeping their pensions, is largely attributable to claims surrounding the Debtor's sale of Waupaca Foundry Inc. ("Waupaca") in 2012.

5.      By now, Waupaca is well-known to everyone involved in this case.  Less than two years after Budd sold Waupaca and just five months after the Debtor commenced this Chapter 11

case, the purchaser of Waupaca sold it for $1.3 billion, an amount greater than all of the

liabilities in this Chapter 11 case.   Prior to the stunning announcement of the $1.3 billion sale,

Millstein & Co. had already advised the UAW and its professionals that Waupaca warranted

investigation: it had been sold at rock bottom to the disadvantage of Budd's creditors without

any apparent reason.

 6. But the claims related to Waupaca were not always well known.  Shortly after the

bankruptcy filing, Budd shared with the Committee of Executive & Administrative Retirees

("E&A Committee") and the UAW a report its Chief Restructuring Officer ("CRO") prepared

outlining the findings of his prepetition investigation.  Budd had commissioned the investigation

to support the proposed prepetition settlement with Budd's affiliates. But Budd limited the

investigation to intercompany transactions; it did not include an investigation into the sale of

Waupaca.  With the benefit of the CRO's report and the assistance of the CRO and the Debtor's

professionals, the financial advisors for the UAW and E&A Committee quickly gained an

understanding of the intercompany transactions.  Millstein & Co. appreciated that these

intercompany transactions would not prove to be a source of meaningful recovery for the retirees

and quickly turned to third party transactions.  In particular, Millstein & Co. pressed from the

start the timing of the Waupaca sale – that is, years after Budd had sold its other operating assets

and less than two years before Budd's bankruptcy.  Less than two weeks after that initial due

diligence meeting with the CRO, Millstein &Co. had placed the sale of Waupaca on its list of

priority projects.

 7. Beginning in mid-July 2014 and continuing throughout that summer, Millstein &

Co. performed an extensive investigation of the materials it had access to through discovery and

public information about Budd's ultimate parent, ThyssenKrupp AG ("TKAG").  By early

August 2014, it was Millstein & Co.'s view, which it shared with the UAW and its counsel, that the timing of the Waupaca sale appeared to be materially detrimental to Budd, potentially depriving it of a valuable operating business with a dominant market position whose recurring cash flows (or value in a more propitiously timed sale transaction) might have proven to be sufficient to pay its creditors in full.  It was this view and the discovery process that ensued which allowed the Debtor to confirm its Ninth Amended Chapter 11 Plan for The Budd Company, Inc. (the "Plan of Reorganization") – a plan which gives retirees their full pensions and meaningful health insurance for the remainder of their lives.

## BACKGROUND

8.     On March 31, 2014, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the date and time of such filing, the "Petition Date").  Throughout the Chapter 11 case, the Debtor managed its affairs as a debtor-in-possession, as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.

9.     No trustee or examiner was appointed in the Debtor's Chapter 11 case.

10.    On July 25, 2014, the Court entered that certain *Stipulation and Agreed Order With Respect To Appointment Of An Independent Fee Examiner* [D.I. 346], pursuant to which Ms. Diana G. Adams was appointed as the independent fee examiner in this case (the "Fee Examiner").

11.    The UAW was appointed as the authorized representative of the UAW retirees pursuant to that certain *Order Directing The Debtor To Pay The Reasonable And Necessary Expenses Of The Legal, Financial And Other Advisors Of International Union, United Automobile, Aerospace And Agricultural Implement Workers of America As The Section 1114 Authorized Representative For The UAW Retirees* [D.I. 60] (the "UAW Retiree Order").

8

12.     On April 30, 2014, the UAW filed its *Application of International Union, United Automobile, Aerospace And Agricultural Implement Workers of American For Entry Of An Order Authorizing And Approving The Retention And Employment Of Millco Advisors, LP as Financial Advisor Nunc Pro Tunc To April 30, 2014* [D.I. 114] (the "Retention Application") on the terms set forth in the engagement letter effective as of April 29, 2014, attached to the Retention Application as Exhibit B (the "Millstein Engagement Letter").  On May 9, 2014, this Court entered the Retention Order.

13.     Previously, Millstein & Co. filed six interim fee applications for each of the prior interim fee periods, (Docket Nos. 462, 702, 871, 1036, 1477 and 1837) ("Prior Fee Applications"). This Court entered Orders approving each of the Prior Fee Applications (Docket Nos. 550, 786, 946, 1196, 1720, 1952).

14.     During the Final Application Period, as described in more detail in each of the Prior Fee Applications and stated below, Millstein & Co. provided services as financial advisor to the UAW in its capacity as the section 1114 authorized representative in this Chapter 11 case. Millstein & Co. worked closely with the UAW, UAW's actuary, Milliman, Inc. ("Milliman"), and UAW's counsel, Cleary Gottlieb Steen & Hamilton LLP ("Cleary") (Milliman and Cleary, together with Millstein & Co., the "UAW Professionals").

## RELIEF REQUESTED

15.     Millstein & Co. submits this application for interim allowance of compensation for the Seventh Interim Application Period and final allowance of compensation and reimbursement of expenses for the professional services it rendered as financial advisor to the UAW in this case for the Final Application Period, The Retention Order entered by the Court was made pursuant to Section 328 of the Bankruptcy Code, and the Court authorized a monthly

fee for Millstein & Co. of $175,000.  For the Final Application Period, the aggregate amount of

the monthly fees is $4,736,478.50 and the aggregate amount of expenses is $3,527.09, inclusive

of fees during the Seventh Interim Application Period in the amount of $705,645.16 (there were

no expenses during the Seventh Interim Application Period).

16.     Millstein & Co. is voluntarily reducing the amount of fees for which it seeks final

allowance by $525,000.  For the Final Fee Period, it seeks final allowance of compensation in

the amount $4,211,478.50, which reflects the voluntary reduction.  It also seeks final approval of

reimbursement of expenses in the amount of $3,527.09 and interim allowance of its fees for the

Seventh Interim Period (not in addition to, but as part of, the final allowance amount).  The Court

has previously approved on an interim basis, and Millstein & Co. has previously been paid,

$2,128,833.34 for its monthly fees and $3,527.09 for its expenses.  The remaining amount of

compensation, less the discount of $525,000, is $2,027,645.16 (the "Incremental Amount").[1]

17.     The Incremental Amount results from an increase Millstein & Co. made to its

holdbacks. Starting with its invoice dated January 21, 2015 for the month of December 2014,

Millstein & Co. voluntarily increased the amount of its holdback, requesting current payment of

only a portion of its monthly fee and itemizing the full amount of the holdback from all prior

invoices.  At the time, Millstein & Co. was mindful that both this Court and the Fee Examiner

did not have the information needed to assess the tremendous progress that was being made in

the potential settlement with TKNA, and by increasing the amount of its holdback during the

---

[1] Millstein & Co. has received payment on an interim basis for April 2016 and has submitted an invoice for payment of an additional $45,000.00 for the interim portion of monthly fees, no expenses, for the months of May through July 2016 which it anticipates that the Debtor will pay in the ordinary course.  The Incremental Amount does not include these amounts, but they are included in the final fee amount.

case, Millstein & Co. sought to address any concern the Court and the Fee Examiner may have had about the ultimate outcome in this case.

18.      Accordingly, in each of its subsequent fee applications, Millstein & Co. did not request payment of the full holdback on an interim basis and instead received authorization from the Court to request the full holdback at a later time.   With the success of this case now clear, Millstein & Co. seeks approval of its holdback in accordance with Section 328 of the Bankruptcy Court and the Retention Order.

## SUMMARY OF SERVICES RENDERED BY MILLSTEIN & CO.

19.      <u>Overview</u>.  Millstein & Co. focused early in this case on increasing the potential settlement with the TKNA Group through its work on the potential causes of action related to the sale of Waupaca.  After working extensively on the initial proposed settlement with the UAW Professionals as well as the E&A Committee's financial advisers, Millstein & Co. turned to Waupaca, conducting due diligence from public sources, discovery and materials provided by the Debtor; performing financial evaluations of the sale of Waupaca under various scenarios; and evaluating the benefit of the sale of Waupaca to TKAG, including the TKNA Group.  Millstein & Co. worked seamlessly with the UAW Professionals throughout the discovery process to review thousands of emails, numerous financial statements, projections, operating reports, and thousands of pages of deposition transcripts. Through an iterative process with the UAW Professionals, Millstein & Co. evaluated the recovery for the UAW's constituents under various scenarios and with various assumptions.  Millstein & Co. assisted the UAW in its negotiations with TKNA and the Debtor during the entire settlement process, advising the UAW until the TKNA Settlement was reached.  And of course, Millstein & Co. participated in the review, evaluation and analysis of the various disclosure statements and plans filed by the Debtor that

culminated in the Plan of Reorganization.  Each of these tasks is described in more detail below.

In addition, during the Seventh Interim Application Period, Millstein & Co. worked toward the

consummation of the Plan of Reorganization by evaluating material related to the anticipated

distributions and the funding of the UAW VEBA (as defined in the Plan of Reorganization) and

preparing analyses and financial information at the UAW's request in preparation for

consummation and the related transactions.

20.     General Due Diligence. During the case, Millstein & Co. spent a considerable

amount of timing undertaking general due diligence surrounding the Debtor's former business.

Millstein & Co.'s main diligence activities involved reviewing historical financial statements and

significant transactions involving the Debtor and its affiliates in the years leading up to Budd's

bankruptcy. In order to obtain more knowledge on the industry and markets at the relevant time

periods, Millstein & Co. analyzed the financial trends of comparable companies as well as

TKAG. Millstein & Co. also reviewed documents on an ongoing basis to stay current on material

developments in the case and focused on examining areas likely to affect recoveries for retirees,

including background materials relevant to areas investigated by the CRO.

21.     Waupaca Investigation and Causes of Action. After the review of materials

related to the CRO's investigation, Millstein & Co. explored additional topics that it believed

could have economic relevance to the UAW.  In particular, Millstein & Co. spent significant

time looking into the circumstances surrounding transactions that the Debtor had entered into

before filing for Chapter 11 as well as the decision to ultimately file for bankruptcy. During this

investigation, Millstein & Co. identified the sale of Waupaca to KPS Capital Partners LP

("KPS") as an area that should be further explored before the UAW could properly assess any

settlement proposals. The Millstein & Co. team, working closely with the other UAW

Professionals, reviewed tens of thousands of documents produced by the Debtor, its affiliates and related parties in the sale of Waupaca. Through analyzing presentation materials, emails and models created by KPS for the sale of Waupaca, Millstein & Co., together with Cleary, developed a general understanding of the sale of Waupaca from the perspective of the Debtor and TKNA as well as the acquisition of Waupaca from the perspective of KPS.  An understanding of the financial condition of TKAG on a consolidated basis and the material events affecting TKAG's financial perform at the time of the Waupaca sale was critical both to Millstein & Co.'s understanding of the Waupaca sale and to the development of the claims that ultimately resulted in the settlement embodied in the Plan of Reorganization.  Millstein & Co.'s due diligence and investigation accordingly involved much more than just the details around the Waupaca sale and the sale process.

22.    <u>Preparation of Depositions</u>. During the case, Millstein & Co. supported the deposition of various parties in connection with the sale of Waupaca by providing financial resource information requested by Cleary. In preparation for the depositions, the UAW Professionals worked together to craft key themes to be highlighted after receiving and reviewing numerous documents, including complex financial documents, that were produced. Millstein & Co.'s activities included helping identify potential areas of focus related to the financial aspects of the sale and reviewing and providing feedback on deposition outlines prepared by Cleary, together with the proposed exhibits for use in the depositions. In addition, Millstein & Co. reviewed deposition transcripts to reinforce prior hypotheses relating to the sale of Waupaca and the events surrounding it.

23.    <u>Settlement Analysis</u>. Millstein & Co. spent a significant amount of time and effort performing investigations and due diligence on all financial aspects of the various settlement

proposals. In both the initial settlement proposal and the ultimate settlement contained in the

Plan of Reorganization between the Debtor and the TKNA Group, Millstein & Co. evaluated a

wide range of alternative settlement structures. In doing so, Millstein & Co. analyzed thousands

of documents necessary to understand the Debtor's former business and its relationship with

TKNA and other affiliates, and conducted analyses of past sales, acquisitions and divestitures by

Budd, TKNA and any other affiliates that had affected Budd's financial position at relevant

points in time.  Working with the other UAW Professionals, Millstein & Co. modeled the effect

various settlement structures and terms would have on the ability of the UAW retirees to

preserve their pension and health care plans.  Although the original settlement proposal was

wholly inadequate and unacceptable (and based on inaccurate assumptions about the Debtor's

tax sharing arrangement with its affiliates), the structure of the settlement continued to be

relevant throughout the case, including TKNA's assumption of pension plans and the concept of

a global resolution of intercompany claims in exchange for a cash contribution.

24.     Tax.  Working closely with Cleary, Millstein & Co. performed financial analyses

on issues related to taxation, including due diligence on net operating losses generated by the

Debtor and certain of its affiliates as well as the utilization and value of those losses at various

times. The UAW Professionals undertook these analyses initially because resolution of potential

claims under a tax sharing agreement was one of the primary benefits asserted by the Debtor as a

justification for approving the initial proposed settlement. Even after the Debtor abandoned the

original settlement, tax issues remained relevant.  Building on work done in the first part of the

case, Millstein & Co. and Cleary utilized their tax due diligence in evaluating the potential tax

consequences to TKNA of different settlement structures.

25.     Preparation of Presentations and Client Recovery.  In connection with settlement

discussions, Millstein & Co. prepared information to use in analyzing potential recoveries to

UAW in the context of understanding the impact, security, and long-term viability of the various

economic terms of current proposals and other agreements between the parties involved.

Millstein & Co. continued to update and refine its recovery analysis under various claims and

distribution assumptions to assist the UAW and its professionals throughout the settlement

discussions.  In doing this work, Millstein & Co. worked closely with Milliman to understand –

beyond the "recovery" to the UAW retirees – what the distribution to the UAW VEBA under

various settlement proposals would mean for the health and pension benefits the retirees and

their dependents could expect to receive throughout their lives.

26.     <u>Communication with the UAW Professionals and Other Professionals.</u>

Throughout the case, Millstein & Co. has engaged in numerous communications and meetings

with the UAW and the UAW Professionals to coordinate efforts, develop work products, and

increase the shared understanding of the potential settlements and economic impacts to the

retirees. To clearly communicate particularly complex elements surrounding the case, Millstein

& Co. developed joint presentations with the other UAW Professionals.  Drawing on its

investment banking expertise, Millstein & Co. modeled numerous settlement terms; presented

traditional banking analyses of the Waupaca sale and its process; and assisted Milliman as it

advised the UAW on retiree healthcare benefits.

27.     <u>Administrative Matters</u>. Millstein & Co.'s work on this matter also required

preparing monthly fee statements to file with the Court, processing expense reports (including

voluntarily reducing expenses), preparing time records and preparing interim fee applications.

## **MILLSTEIN & Co.'S REQUESTED COMPENSATION SHOULD BE ALLOWED**

28.     Pursuant to the Retention Order, this Court approved a flat monthly rate (and

reimbursement of expenses) for Millstein & Co.'s services under section 328(a) of the

Bankruptcy Code.  Retention Order, ¶7.  The U.S. Trustee was given the right to review under

the standard of section 330 of the Bankruptcy Code, modified such that "reasonableness" is not

to be evaluated primarily on an hourly basis. Id. at ¶8.

29.     Section 328(a) of the Bankruptcy Code permits, with the Court's approval, the

employment of a professional person "on any reasonable terms and conditions of employment,

including on a retainer, on an hourly basis, . . . or on a contingent fee basis." 11 U.S.C. § 328(a).

The standards for compensation under section 328 are significantly different than under Section

330, and the reasonableness standard of section 330 does not apply.  *Paloian v. Grupo Serla S.A.*

*de C.V.* (*In re GGSI Liquidation, Inc.*), 433 B.R.19, 45 (N.D. Ill. 2010) ("'There is no question

that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and

their benefit to the estate if the court already has approved the professional's employment under

11 U.S.C. § 328.'") (*quoting In re B.U.M. Int'l, Inc.,* 229 F.3d 824, 829 (9th Cir. 2000)). The

purpose of section 328 is to permit the pre-approval of compensation arrangements as a method

of ensuring that the most competent professionals will be available to provide services in

bankruptcy cases. *See Daniels v. Barron* (*In re Barron*)*,* 325 F.3d 690, 692-93 (5th Cir. 2003)

(section 328 intended to eliminate uncertainty about compensation to attract able professionals);

*In re Westbrooks*, 202 B.R. 520, 521 (Bankr. N.D. Ala. 1996) (percentage fee arrangements

"comport with the Bankruptcy Code's goal of attracting highly qualified professionals to the

bankruptcy forum").

30.     Once the terms of a professional's retention have been approved under section

328(a) of the Bankruptcy Code, the approved compensation structure cannot be altered unless the

agreed terms "prove to have been improvident in light of developments not capable of being

anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).

31.     The hurdle for altering the terms of a fee arrangement approved under section

328(a) is high.  *Ascaro L.L.C. v. Barclays Capital, Inc.* (*In re Asarco, L.L.C.*), 702 F.3d 250, 258

(5th Cir. 2012) ("Section 328(a) therefore creates a 'high hurdle' for a movant seeking to revise

the terms governing a professional's compensation *ex post facto.*"); *Riker, Danzig, Schere, Hyland*

*& Perretti v. Official Comm, of Unsecured Creditors* (*In re Smart World Tech., LLC*), 552 F.3d

228, 234-35 (2d Cir. 2009) (altering terms of compensation approved under section 328 is a

"high hurdle to clear").   This high hurdle is designed to eliminate uncertainty "even at the risk of

potentially underpaying, or, conversely, providing a windfall to, professionals retained by the

estate under § 328(a)." *Asarco, L.L.C.*, 702 F.3d at 259.

32.     When the fee arrangement is <u>not</u> an hourly one, an imputed hourly rate is

irrelevant.  *In re River Road Hotel Partners, LLC*, 536 B.R. 228, 237-39 (N.D. Ill. 2015)

(upholding approval of financial advisor's restructuring fee regardless of alleged imputed hourly

rate of $6,420 and noting that the underlying engagement letter made clear in advance that the

parties agreed to the fee based on factors other than an hourly rate).

33.     The Millstein Engagement Letter unambiguously states that the firm's specialized

expertise and knowledge in restructuring and capital markets would be beneficial, that these

factors determined the fee arrangement agreed to, and that the "structure and amount of fees are

reasonable, regardless of the number of hours to be expended by our professionals in the

performance of services to be provided [under the engagement letter]."  Here, just as in *River*

*Road*, it was completely foreseeable that on an imputed hourly rate for Millstein could be higher

or lower than hourly arrangements approved for other professionals in this case.  <u>Application</u>, at

p. 94.  It is Millstein & Co.'s specialized knowledge in both restructuring and investment

banking that laid the essential groundwork for developing the Waupaca claims that led to the

materially improved settlement.

34.    The fees and expenses requested in this Interim and Final Fee Application are also

reasonable in light of the skill and expertise Millstein & Co. brought to bear in this Chapter 11

case and the extraordinary results for retirees.  Even before unraveling a narrative by reviewing

of tens of thousands of documents which led to the ultimate settlement, Millstein & Co. applied

its skill and expertise in an efficient manner to focus on potential areas of meaningful value for

the estate.  Once it had narrowed its search down to Waupaca, Millstein & Co. focused its efforts

efficiently and productively on those areas. For example, rather than participate in hundreds of

hours of depositions, it worked on outlines of questions with Cleary prior to the depositions,

assisted in providing relevant documents for the depositions, reviewed the transcripts afterward,

and provided its updated financial analyses based on the testimony.   In this manner of

collaborative team work throughout the Chapter 11 case, Millstein & Co. was an indispensable

and integral part of the UAW Professional team, focused on one goal: improving the healthcare

coverage for the retirees left behind in the liquidation of the Budd assets.  Millstein & Co. also

remained very mindful of costs throughout the case and kept its request for reimbursement of

expenses extraordinarily low.

35.    The Millstein Engagement Letter also gives Millstein & Co. the ability to seek

approval of a success fee in the event the circumstances warrant it.  And as noted in the

Retention Application, Millstein & Co.'s fee arrangement typically would include a fee

contingent upon the occurrence of certain events, which in a Chapter 11 case would typically

include confirmation of a plan of reorganization. Retention Application, ¶5 at p. 7. In our

experience, this type of arrangement is common for investment bankers providing financial

advisory services in complex restructurings.  With the result achieved in this Chapter 11 case, a

success fee is warranted.  However, Millstein & Co. is not seeking a success fee.  Millstein &

Co's requested fees are reasonable in light of the fact that it is not seeking a success fee here,

particularly since its fees are less than 1% of the cash to be contributed to the UAW VEBA.

36.      By any measure, Millstein & Co.'s contributions are substantial: it devoted time

and effort to assist the UAW in obtaining the best possible outcome for the UAW retirees.  The

improvement in recovery for the retirees has been material in this Chapter 11 case, and Millstein

& Co. played a vital and instrumental role in securing that improvement. Millstein & Co. further

submits that the amount of fees requested herein is fair and reasonable in light of (a) the

complexity of the issues presented, (b) the time expended, (c) the skill required to properly

perform the financial advisory services, (d) the experience, reputation and ability of the

professionals rendering services, (e) the preclusion of other similar employment, (f) the value of

such services, (g) the market rates charged for comparable services both in and out of the

Chapter 11 context, and (h) the nature and scope of work performed by Millstein & Co. in this

case during the Application Period.

37.      Finally, under the terms of the Plan of Reorganization, all cash remaining in the

estate (subject to certain holdbacks to fund the closing and transition) is to be distributed to the

UAW VEBA.  Millstein & Co.'s fee request represents less than 1% of the distribution the UAW

VEBA is to receive, and the increase in the amount to be distributed to the UAW VEBA has

been dramatically increased during this Chapter 11 case as a result of the Waupaca investigation.

In fact, the Incremental Amount is just 0.6% of that increase. This factor is an additional

indication of the reasonableness of the request under this Interim and Final Fee Application.

38.      Accordingly, Millstein & Co. respectfully submits that the fees sought herein

should be allowed and approved by this Court pursuant to sections 328(a) and 330 of the

Bankruptcy Code, as modified by the Retention Order.

*[Remainder of Page Intentionally Left Blank]*

39.     WHEREFORE, Millstein & Co. respectfully requests that this Court enter an order approving (i) final allowance of compensation for professional services rendered during the Seventh Interim Application Period in the amount of $705,645.16, (ii) final allowance of compensation for professional services rendered during the Final Compensation Period in the amount of $4,211,478.50, which includes a discount of $525,000 from the professional fees incurred, (iii) final approval of reimbursement of expenses in the amount of $3,527.09, representing 100% of actual and necessary expenses incurred,  and (iv) granting Millstein & Co. such other and further relief as the Court deems just and proper.

Dated: August 26, 2016

MILLCO ADVISORS, LP

Jane L. Vris
555 Madison Avenue, 16th Floor
New York, New York 10022
Telephone:  (212) 416-5800
Facsimile: (646) 559-2394

Financial Advisor for the International Union,
United Automobile, Aerospace and Agricultural
Implement Workers of America (UAW) as Section
1114 Authorized Representative