# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No. 14-11873 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |
| | ) | **Objection Deadline: October 14, 2016** |

### NOTICE OF FILING OF SEVENTH
### INTERIM AND FINAL FEE APPLICATION OF PROSKAUER
### ROSE, LLP FOR COMPENSATION FOR SERVICES RENDERED AND
### REIMBURSEMENT OF EXPENSES AS COUNSEL TO DEBTOR THE BUDD
### COMPANY, INC. FOR THE PERIOD MARCH 31, 2014 THROUGH JULY 31, 2016

**PLEASE TAKE NOTICE** that on **August 29, 2016,** the *Seventh Interim and Final Application of Proskauer Rose, LLP for Compensation for Services Rendered and Reimbursement of Expenses as Counsel to Debtor the Budd Company, Inc. for the Period March 31, 2014 through July 31, 2016* (the "Fee Application") was filed.

**PLEASE TAKE FURTHER NOTICE** that (1) any objection to the Fee Application must be filed and served no later than **October 14, 2016;** and (2) that the Bankruptcy Court has instructed that a hearing on the Fee Application not be set at this time.

**PLEASE TAKE FURTHER NOTICE** that you may obtain copies of the Fee Application and all other documents filed in this chapter 11 case: (1) free of charge by visiting the case website maintained by Epiq Bankruptcy Solutions, LLC at http://dm.epiq11.com/TBC or by calling (877) 559-8630; or (2) by visiting the Court's website at www.ilnb.uscourts.gov.

Dated: August 29, 2016

Respectfully submitted,

**THE BUDD COMPANY, INC.**

By: */s/ Jeff J. Marwil*_____
      One of Its Attorneys

Jeff J. Marwil (IL #6194054)
Jeremy T. Stillings (IL #6279868)
Proskauer Rose LLP
70 W. Madison St.
Chicago, Illinois 60602-4342
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Counsel to the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No. 14-11873 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |
| | ) | **Objection Deadline: October 14, 2016** |

**COVER SHEET TO SEVENTH INTERIM**
**AND FINAL FEE APPLICATION OF PROSKAUER ROSE,**
**LLP FOR COMPENSATION FOR SERVICES RENDERED AND**
**REIMBURSEMENT OF EXPENSES AS COUNSEL TO DEBTOR THE BUDD**
**COMPANY, INC. FOR THE PERIOD MARCH 31, 2014 THROUGH JULY 31, 2016**

Name of Applicant:        Proskauer Rose LLP ("Proskauer")

Authorized to Provide
Professional Services to:        The Budd Company, Inc., Debtor and Debtor-In-Possession

Date of Retention:        Order entered April 23, 2014 [Docket No. 105]
*Nunc Pro Tunc* to March 31, 2014 (the "Petition Date")

Period for which compensation
and reimbursement is sought:        April 1, 2016 through July 31, 2016 (the "Seventh Compensation Period")

       March 31, 2014 through July 31, 2016 (the "Final Compensation Period")

Amount of compensation sought
as actual, reasonable and necessary
during the Seventh Compensation Period:        **$941,760.00**

Amount of expense reimbursement sought
as actual, reasonable and necessary
during the Seventh Compensation Period:        **$19,332.05**

Amount of compensation sought
as actual, reasonable and necessary
during the Final Compensation Period:        **$15,730,407.75**

Amount of expense reimbursement sought
as actual, reasonable and necessary

1

during the Final Compensation Period:        **$678,109.15**

This is a: __ monthly  X̲  interim  X̲  final application.

This is Proskauer's seventh interim and final fee application in this case.

## SUMMARY OF FEES REQUESTED
## DURING SEVENTH COMPENSATION PERIOD

| Name | State and Date of Bar Admission | Hourly Rate | Hours | Fees |
|---|---|---|---|---|
| **Partners** | | | | |
| FAUST, SCOTT A. | Labor & Employment, Massachusetts, 1985 | $910.00 | 0.6 | $546.00 |
| HAMBURGER, PAUL M. | Labor & Employment, District of Columbia, 1985 | $945.00 | 29.8 | $28,161.00 |
| MARWIL, JEFF J. | Bankruptcy, Illinois, 1986 | $1,200.00 | 240.1 | $288,120.00 |
| MATHEWS, KRISTEN J. | Corporate, New York, 1999 | $1,000.00 | 0.5 | $500.00 |
| MERVIS, MICHAEL T. | Litigation, New York, 1991 | $975.00 | 10.2 | $9,945.00 |
| PARNES, ALAN P. | Tax, New York, 1978 | $1,350.00 | 23.5 | 31,725.00 |
| ROSENTHAL, MARC E. | Insurance, Illinois, 1990 | $975.00 | 89.2 | $86,970.00 |
| **Senior Counsel** | | | | |
| COHEN, ROGER A. | Healthcare, New York, 2007 | $795.00 | 1.3 | $1,033.50 |
| GUTWEIN, ABRAHAM | Tax, New York, 1981 | $975.00 | 4.3 | $4,192.50 |
| HOLINSTAT, STEVEN H. | Litigation, New York, 1997 | $875.00 | 32.4 | 28,350.00 |
| PORT, GAIL S. | Environmental, New York, 1977 | $1,050.00 | 14.2 | $14,910.00 |
| **Associates** | | | | |
| ALEX, JUSTIN S. | Labor & Employment, Florida, 2011 | $735.00 | 54.4 | $39,984.00 |
| CINAMON, ALIZA R. | Environmental, New York, 1996 | $900.00 | 7.1 | $6,390.00 |
| DERKSEN, MICHAEL F. | Insurance, Illinois, 2008 | $795.00 | 48.0 | $38,160.00 |
| LAWTON, ASHLEY A. | Tax, Virginia, 2009 | $735.00 | 18.5 | $13,597.50 |
| LEVITAN, BRANDON W. | Bankruptcy, Illinois, 2010 | $770.00 | 81.7 | $62,909.00 |
| MADDEN, JASON | Healthcare, New York, 2013 | $735.00 | 2.5 | $1,837.50 |

3

| Name | State and Date of Bar Admission | Hourly Rate | Hours | Fees |
|---|---|---|---|---|
| MYERS, DAMIAN A. | Labor & Employment, District of Columbia, 2011 | $825.00 | 0.6 | $495.00 |
| RICHLAND, SARA C. | Tax, California, 2007 | $695.00 | 13.4 | $9,313.00 |
| STILLINGS, JEREMY T. | Bankruptcy, Illinois, 2003 | $900.00 | 168.3 | $151,470.00 |
| WEBB, JERAMY D. | Bankruptcy, Illinois, 2015 | $445.00 | 165.0 | $73,430.00 |
| ZAJAK, JARED | Corporate, New York, 2009 | $795.00 | 0.4 | $318.00 |
| **Paraprofessionals** | | | | |
| a. Legal Assistants | | | | |
| PETROV, NATASHA | N/A | $300.00 | 164.3 | $49,290.00 |
| c. Practice Support Personnel | | | | |
| HENDERSON, LAURIE | N/A | $300.00 | 0.2 | $60.00 |
| JONES, ALLISON | N/A | $265.00 | 0.2 | $53.00 |
| **TOTAL** | | | **1,170.7** | **$941,760.00** |

4

## SUMMARY OF BLENDED HOURLY RATES
## DURING SEVENTH COMPENSATION PERIOD

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION (inclusive of 50% travel time reduction) |
|---|---|---|---|
| All Timekeepers | $804.44 | 1,170.7 | $941,760.00 |
| All Attorneys | $887.03 | 1,006 | $892,357.00 |
| Attorneys (Partners) | $1,132.18 | 393.9 | $445,967.00 |
| Attorneys (Senior Counsel) | $928.85 | 52.2 | $48,486.00 |
| Attorneys (Associates) | $710.67 | 559.9 | $397,904.00 |
| Paraprofessionals | $299.96 | 164.7 | $49,403.00 |

## BUDGET VARIANCE
## DURING SEVENTH COMPENSATION PERIOD

| TYPE | VARIANCE[1] | BUDGETED AMOUNT | ACTUAL AMOUNT |
|---|---|---|---|
| Fees | $978,240.00 | $1,920,000 - $7,500,000 | $941,760.00 |
| Expenses | $100,667.95 | $120,000 - $240,000 | $19,332.05 |

---

[1] Variance is the lower amount of Budgeted Amount less Actual Amount.

5

## PROJECT CATEGORY SUMMARY BY TASK
## CODE DURING SEVENTH COMPENSATION PERIOD

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 006 | BUSINESS OPERATIONS | 14.0 | $12,417.50 |
| 007 | CASE ADMINISTRATION | 50.5 | $32,075.00 |
| 008 | CLAIMS ADMINISTRATION AND OBJECTIONS | 9.9 | $8,534.00 |
| 009 | CORPORATE GOVERNANCE AND BOARD MATTERS | 18.3 | $13,051.00 |
| 010 | RETIREE BENEFITS (1114) | 245.0 | $212,036.00 |
| 017 | PLAN AND DISCLOSURE STATEMENT | 403.1 | $307,116.50 |
| 018 | ASBESTOS | 235.2 | $224,936.00 |
| 019 | REPORTING | 0.4 | $180.00 |
| 020 | ENVIRONMENTAL CLAIMS | 37.7 | $32,443.00 |
| 028 | ANALYSIS OF CHAPTER 11 PLAN TAX ISSUES | 18.7 | $23,707.50 |
| 029 | MONTHLY FEE STATEMENTS | 15.1 | $13,027.00 |
| 030 | FEE APPLICATIONS | 122.8 | $62,236.50 |
| **TOTAL FOR ALL TASK CODES (excluding the 50% travel time reduction)** | | **1,170.7** | **$941,760.00** |
| **TOTAL TASK CODE FEE AMOUNT AFTER 50% TRAVEL TIME ADJUSTMENT** | | | **$941,760.00** |

**SUMMARY OF EXPENSES SOUGHT FOR
REIMBURSEMENT DURING SEVENTH COMPENSATION PERIOD**

| EXPENSE | AMOUNT |
|---|---|
| Reproduction | $2,740.50 |
| Computerized Research (Westlaw/Lexis) | $5,703.50 |
| Litigation Support/Docketing | $190.20 |
| Transcripts & Depositions | $936.00 |
| Database Search Services (Pacer) | $933.80 |
| Taxicab/Car Svc. | $254.25 |
| Professional Services | $318.20 |
| Postage | $6.45 |
| Messenger/Delivery | $71.83 |
| Airplane | $13.95 |
| Out of Town Meals | $187.87 |
| Outside Reproduction | $7,663.81 |
| Local Meals | $64.01 |
| Subscriptions | $247.68 |
| **TOTAL** | **$19,332.05** |

7

### SUMMARY OF PROSKAUER MONTHLY FEE
### STATEMENTS DURING SEVENTH COMPENSATION PERIOD

| Date Circulated to Notice Parties | Period Covered | Requested | | Approved and Paid | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees (80%) | Expenses |
| 5/24/2016 | 4/1/2016 – 4/30/2016 | $181,904.50 | $4,727.67 | $145,523.60 | $4,727.67 |
| 6/30/2106 | 5/1/2016 – 5/31/2016 | $226,998.00 | $10,028.21 | $181,598.40 | $10,028.21 |
| 7/29/2016 | 6/1/2016 – 6/30/2016 | $318,721.50 | $2,027.07 | $254,977.20 | $2,027.07 |
| 8/8/2016 | 7/1/2016 – 7/31/2016 | $214,136.00 | $2,549.10 | $171,308.80 | $2,027.07 |

8

## SUMMARY OF FEES REQUESTED DURING FINAL COMPENSATION PERIOD

| Name | State and Date of Bar Admission | Hourly Rate[2] | Hours | Fees |
|------|-------------------------------|------------|-------|------|
| **Partners** | | | | |
| BOGNER, IRA G. | Tax, New York, 1991 | $1,175.00 | 1.8 | $2,115.00 |
| FAUST, SCOTT A. | Labor & Employment, Massachusetts, 1985 | $910.00 | 0.9 | $819.00 |
| GASWIRTH, MITCHELL M. | Tax, California, 1982 | $795.00 | 1.9 | $1,510.50 |
| GILFORD, STEVEN R. | Insurance, Illinois, 1978 | $1,075.00 | 139.9 | $144,172.50 |
| | | $537.50[3] | 8.4 | $4,305.00 |
| GOLDSTEIN, IRENA M. | Bankruptcy, New Jersey, 1988 | $1,075.00 | 640.7 | $657,507.50 |
| | | $537.50[4] | 17.0 | $8,287.50 |
| HAMBURGER, PAUL M. | Labor & Employment, District of Columbia, 1985 | $945.00 | 215.7 | $197,540.00 |
| MARWIL, JEFF J. | Bankruptcy, Illinois, 1986 | $1,200.00 | 2,270.8 | $2,567,527.50 |
| | | $600.00[5] | 63.3 | $35,070.00 |
| MATHEWS, KRISTEN J. | Corporate, New York, 1999 | $1000.00 | 5.5 | $5,052.00 |
| MERVIS, MICHAEL T. | Litigation, New York, 1991 | $975.00 | 965.3 | $885,077.50 |
| | | $487.50[6] | 114.3 | $52,861.25 |
| PARNES, ALAN P. | Tax, New York, 1978 | $1,350.00 | 526.4 | $662,512.50 |
| POSSINGER, PAUL V. | Bankruptcy, Illinois, 1993 | $975.00 | 0.3 | $292.50 |
| PROJANSKY, ROBERT M. | Labor & Employment, New York, 1998 | $885.00 | 1.1 | $973.50 |
| ROSENTHAL, MARC E. | Insurance, Illinois, 1990 | $975.00 | 721.0 | $675,680.00 |
| | | $487.50[7] | 8.0 | $3,700.00 |

---

[2] Proskauer periodically adjusts its billing rates to reflect economic changes in the market in which it operates.  Between the Petition Date and the end of the Final Application Period, the hourly rate of several timekeepers was adjusted upward.  These adjustments were not specific to Proskauer's representation of the Debtor and they applied to all matters on which these timekeepers worked.  This summary reflects the highest rate at which a timekeeper billed during the Final Application Period.

[3] Represents a 50% discount for non-working travel time.

[4] Represents a 50% discount for non-working travel time.

[5] Represents a 50% discount for non-working travel time.

[6] Represents a 50% discount for non-working travel time.

[7] Represents a 50% discount for non-working travel time.

| Name | State and Date of Bar Admission | Hourly Rate[2] | Hours | Fees |
|---|---|---|---|---|
| SHAPIRO, HOWARD | Labor & Employment, Louisiana, 1979 | $825.00 | 26.7 | $21,422.00 |
| THOMAS, MARK K. | Bankruptcy, Illinois, 1981 | $1,200.00 | 13.6 | $15,030.00 |
| WEINSTEIN, STEVEN D. | Labor & Employment, New York, 1985 | $875.00 | 0.2 | $175.00 |
| YOUNG, PETER | Bankruptcy, Illinois, 2002 | $925.00 | 42.4 | $37,295.00 |
| **Senior Counsel** | | | | |
| COHEN, ROGER A. | Healthcare, New York, 2007 | $795.00 | 1.3 | $1,033.50 |
| GUTWEIN, ABRAHAM | Tax, New York, 1981 | $975.00 | 374.6 | $340,331.00 |
| HERRNSON, LISA BERKOWITZ | Tax, New York, 1991 | $815.00 | 0.4 | $326.00 |
| HOLINSTAT, STEVEN H. | Litigation, New York, 1997 | $875.00 | 927.0 | $780,642.50 |
| | | $437.50.00[8] | 109.2 | $46,223.75 |
| MOSKOWITZ, ELLEN H. | Health Care, New York, 1987 | $785.00 | 4.0 | $3,067.50 |
| PORT, GAIL S. | Environmental, New York, 1977 | $1,050.00 | 143.5 | $146,315.00 |
| **Associates** | | | | |
| ALEX, JUSTIN S. | Labor & Employment, Florida, 2011 | $735.00 | 375.6 | $250,396.50 |
| ANDERSON, JACKI L. | Litigation, Illinois, 2013 | $610.00 | 349.5 | $149,564.00 |
| | | $305.00[9] | 9.8 | $2,278.50 |
| BERTULLI, SCOTT W. | Litigation, Massachusetts, 2014 | $695.00 | 17.3 | $12,023.50 |
| BOWLES, JAMIE | Tax, California, 2012 | $575.00 | 6.4 | $3,680.00 |
| CANTER, EDWARD | Litigation, New York, 2015 | $465.00 | 174.2 | $72,344.00 |
| CHIRINOS, TULIO D. | Labor & Employment, Louisiana, 2013 | $305.00 | 76.9 | $23,454.50 |

---

[8] Represents a 50% discount for non-working travel time.

[9] Represents a 50% discount for non-working travel time.

| Name | State and Date of Bar Admission | Hourly Rate[2] | Hours | Fees |
|---|---|---|---|---|
| CHUBAK, JEFFREY | Bankruptcy, New Jersey, 2007 | $795.00 | 451.4 | $344,117.00 |
| CINAMON, ALIZA R. | Environmental, New York, 1996 | $900.00 | 193.9 | $166,269.00 |
| DAHL II, DOUGLAS W. | Labor & Employment, Missouri, 2006 | $795.00 | 0.9 | $653.50 |
| DALSEN, WILLIAM D. | Litigation, New York, 2011 | $625.00 | 20.5 | $12,812.50 |
| DERKSEN, MICHAEL F. | Insurance Recovery Counseling, Illinois, 2008 | $795.00 | 2,127.4 | $1,578,392.50 |
| | | $397.50[10] | 9.5 | $3,467.50 |
| DOWN, ELIZABETH D. | Labor & Employment, Massachusetts, 2011 | $575.00 | 59.4 | $34,155.00 |
| DURBA, ERIN C. | Litigation, New York, 2006 | $760.00 | 136.2 | $103,512.00 |
| | | $380.00[11] | 21.9 | $8,322.00 |
| GOLDENBERG, JESSICA | Corporate, New York, 2012 | $575.00 | 1.7 | $977.50 |
| HANDLER, CHELSEA P. | Corporate, New York, 2015 | $395.00 | 1.6 | $632.00 |
| KOPPLE, JOSHUA L. | Litigation, California, 2013 | $425.00 | 54.5 | $23,035.00 |
| LAI, VINCENT | Litigation, Massachusetts, 2010 | $655.00 | 80.6 | $52,793.00 |
| LAWTON, ASHLEY A. | Tax, Virginia, 2009 | $735.00 | 18.5 | $13,597.50 |
| LEVITAN, BRANDON W. | Bankruptcy, Illinois, 2010 | $770.00 | 2,738.3 | $1,951,966.00 |
| LORDEN, BRADLEY J. | Litigation, Illinois, 2012 | $695.00 | 343.0 | $188,807.00 |
| MADDEN, JASON | Healthcare, New York, 2013 | $735.00 | 2.5 | $1,837.50 |
| MALCA, JOSEPH P. | Tax, New York, 2013 | $610.00 | 18.4 | $9,794.50 |
| MOBLEY, MICHAEL T. | Labor & Employment, New York, 2010 | $345.00 | 106.8 | $36,484.00 |
| MYERS, DAMIAN A. | Labor & Employment, District of Columbia, 2011 | $825.00 | 102.3 | $67,099.50 |
| OLSON, LINDSEY A. | Litigation, New York, 2014 | $425.00 | 8.6 | $3,220.00 |
| PANG, EVELYN | Litigation, New York, 2016 | $445.00 | 20.1 | $8,944.50 |

---

[10] Represents a 50% discount for non-working travel time.

[11] Represents a 50% discount for non-working travel time.

| Name | State and Date of Bar Admission | Hourly Rate[2] | Hours | Fees |
|---|---|---|---|---|
| POPKIN, LEE | Litigation, New York, 2013 | $735.00 | 1,068.9 | $725,828.50 |
| | | $367.50[12] | 36.5 | $12,566.25 |
| PRICE, JONAH L. | Corporate, New York, 2007 | $800.00 | 0.5 | $400.00 |
| RICHLAND, SARA C. | Tax, California, 2007 | $695.00 | 13.4 | $9,313.00 |
| SIEGELAUB, JONATHAN | Litigation, New York, 2013 | $535.00 | 2.5 | $1,337.50 |
| SILBER, GARY | Tax, New York, 2011 | $770.00 | 150.1 | $102,004.50 |
| SILVER, TRACEY L. | Litigation, California, 2012 | $535.00 | 69.5 | $36,874.50 |
| STILLINGS, JEREMY T. | Bankruptcy, Illinois, 2003 | $900.00 | 2,296.7 | $1,948,298.00 |
| | | $450.00[13] | 32.6 | $13,645.00 |
| TAYLOR, COURTNEY D. | Litigation, New Jersey, 2008 | $730.00 | 137.6 | $98,775.00 |
| WARSHAFSKY, JEFFREY H. | Litigation, New York, 2012 | $695.00 | 40.8 | $28,356.00 |
| WEBB, JERAMY D. | Bankruptcy, Illinois, 2015 | $445.00 | 403.4 | $179,518.00 |
| WERB, DANIEL J. | Litigation, New York, 2015 | $395.00 | 112.2 | $44,319.00 |
| ZAJAK, JARED | Corporate, New York, 2009 | $795.00 | 62.7 | $49,846.50 |
| ZELCER, AMY | Tax, New York, 2014 | $465.00 | 42.7 | $17,458.50 |
| **Paraprofessionals** | | | | |
| a. Consultants | | | | |
| HAYWOOD, JAMAR | N/A | $375.00 | 1.0 | $375.00 |
| MAKIN, WILLIAM | N/A | $425.00 | 1.4 | $595.00 |
| WAINGARTEN, DANIEL K. | N/A | $250.00 | 68.6 | $17,150.00 |
| b. Legal Assistants | | | | |
| BRALY, JACOB | N/A | $195.00 | 28.9 | $5,635.50 |
| CANDAL, ALLISON | N/A | $230.00 | 159.3 | $36,359.00 |
| CZERNYK, MARK C. | N/A | $245.00 | 5.0 | $1,225.00 |
| DUBUQUE, J. DEVOY | N/A | $235.00 | 1,468.1 | $331,983.50 |
| FIASCONE, THOMAS B. | N/A | $195.00 | 1.0 | $195.00 |
| FLAXENBURG, BENJAMIN O. | N/A | $195.00 | 3.1 | $604.50 |
| FOSTER, RACHEL | N/A | $195.00 | 3.2 | $624.00 |

---

[12] Represents a 50% discount for non-working travel time.

[13] Represents a 50% discount for non-working travel time.

| Name | State and Date of Bar Admission | Hourly Rate[2] | Hours | Fees |
|---|---|---|---|---|
| GORDON, DANA | N/A | $195.00 | 20.7 | $4,036.50 |
| GOVER, JESSICA A. | N/A | $195.00 | 311.5 | $60,742.50 |
| | | $97.50[14] | 10.5 | $1,023.75 |
| HARWOOD, BROOKE | N/A | $245.00 | 1.1 | $269.50 |
| LEE, MAGALI | N/A | $350.00 | 9.3 | $3,035.00 |
| LEO, PAMELA | N/A | $195.00 | 19.7 | $3,841.50 |
| MARASA, JESSICA M. | N/A | $270.00 | 44.5 | $12,015.00 |
| MARGOLIS, SAMUEL C. | N/A | $195.00 | 8.5 | $1,657.50 |
| MARTINEZ, WINSTON | N/A | $260.00 | 8.4 | $2,184.00 |
| MELENDY, MARLEE E. | N/A | $220.00 | 1.7 | $374.00 |
| NAGORNY, SUSANNA | N/A | $260.00 | 30.1 | $7,826.00 |
| ORR, LISA P. | N/A | $310.00 | 11.0 | $3,410.00 |
| PETROV, NATASHA | N/A | $300.00 | 577.5 | $172,755.00 |
| PIFER, RYAN | N/A | $350.00 | 16.9 | $5,915.00 |
| PRESANT, BRADLEY | N/A | $235.00 | 35.6 | $8,006.00 |
| RANDAZZO, SAMANTHA | N/A | $220.00 | 4.9 | $1,078.00 |
| SCHNEIDER, HEIDI M. | N/A | $290.00 | 1.8 | $522.00 |
| SCHOMBURG, SUSAN | N/A | $235.00 | 82.7 | $19,434.50 |
| SILVERMAN, HANNAH | N/A | $195.00 | 1.5 | $292.50 |
| SOLOFF, MOLLY | N/A | $195.00 | 7.0 | $1,365.00 |
| STOKES, MATTHEW | N/A | $195.00 | 18.2 | $3,549.00 |
| WHITE, HELEN E. | N/A | $220.00 | 1.5 | $330.00 |
| c. Librarians | | | | |
| CUPPLO, SHERRI | N/A | $250.00 | 1.0 | $250.00 |
| D'ERRICO, MEGAN T. | N/A | $225.00 | 2.5 | $587.50 |
| DORIA, JOANN | N/A | $225.00 | 1.2 | $270.00 |
| MOLLER, RACHAEL | N/A | $250.00 | 0.8 | $194.00 |
| d. Practice Support Personnel | | | | |
| ALLEN, STACEY V. | N/A | $325.00 | 127.6 | $41,571.00 |
| ANTOON, ISAAC L. | N/A | $350.00 | 18.0 | $6,188.00 |
| HARRIS, GUY | N/A | $335.00 | 27.0 | $9,007.00 |
| HENDERSON, LAURIE | N/A | $300.00 | 0.8 | $235.00 |

[14] Represents a 50% discount for non-working travel time.

13

| Name | State and Date of Bar Admission | Hourly Rate[2] | Hours | Fees |
|---|---|---|---|---|
| JONES, ALLISON | N/A | $265 | 0.6 | $153.00 |
| KAY, JOSHUA M. | N/A | $350.00 | 1.0 | $342.50 |
| KLEBANOFF, NEW | N/A | $350.00 | 88.4 | $26,338.00 |
| KLOCK, JOSEPH | N/A | $330.00 | 3.0 | $975.00 |
| RAYMUNDO, SIMON | N/A | $330.00 | 33.0 | $10,558.50 |
| WATTS, SHELLEY L. | N/A | $315.00 | 26.7 | $8,391.00 |
| **TOTAL** | | | **22,638.8** | **$16,502,356.50** |
| **LESS REDUCTIONS[15]** | | | | **$771,948.75** |
| **TOTAL FEE AMOUNT** | | | | **$15,730,407.75** |

---

[15] Reductions include Proskauer's voluntary and court-ordered reductions.

### SUMMARY OF BLENDED HOURLY RATES DURING FINAL COMPENSATION PERIOD

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION (inclusive of 50% travel time reduction) |
|---|---|---|---|
| All Timekeepers | ~$729 | 22,638.8 | $16,502,356.50 |
| All Attorneys | ~$811 | 19,343 | $15,690,035.25 |
| Attorneys (Partners) | ~$1,033 | 5,785.2 | $5,978,925.75 |
| Attorneys (Senior Counsel) | ~$845 | 1,560.0 | $1,317,939.25 |
| Attorneys (Associates) | ~$700 | 11,997.8 | $8,393,170.25 |
| Paraprofessionals | ~$247 | 3,295.8 | $813,469.25 |

**PROJECT CATEGORY SUMMARY BY TASK CODE FOR**
**TOTAL FEES INCURRED DURING FINAL COMPENSATION PERIOD**

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 002 | ASSET ANALYSIS AND RECOVERY | 1,320.8 | $1,080,477.00 |
| 003 | ASSUMPTION AND REJECTION OF LEASES AND CONTRACTS | 3.9 | $1,735.50 |
| 005 | BUDGETING | 21.8 | $11,107.00 |
| 006 | BUSINESS OPERATIONS | 170.2 | $142,176.00 |
| 007 | CASE ADMINISTRATION | 872.9 | $468,193.00 |
| 008 | CLAIMS ADMINISTRATION AND OBJECTIONS | 721.2 | $517,793.50 |
| 009 | CORPORATE GOVERNANCE AND BOARD MATTERS | 511.0 | $403,805.00 |
| 010 | RETIREE BENEFITS (1114) | 3,103.0 | $2,329,297.50 |
| 011 | EMPLOYMENT APPLICATIONS | 922.0 | $537,048.50 |
| 012 | EMPLOYMENT AND FEE APPLICATION OBJECTIONS | 8.7 | $7,333.00 |
| 014 | LITIGATION: CONTESTED MATTERS AND ADVERSARY PROCEEDINGS (TKNA SETTLEMENT MOTION) | 4,096.5 | $2,620,369.50 |
| 015 | MEETING AND COMMUNICATIONS WITH CREDITORS | 131.3 | $97,921.00 |
| 016 | NON-WORKING TRAVEL (NO REDUCTION) | 441.0 | $383,501.00 |
| 017 | PLAN AND DISCLOSURE STATEMENT | 2,305.3 | $1,891,597.50 |
| 018 | ASBESTOS | 3,263.2 | $2,623,238.50 |
| 019 | REPORTING | 38.2 | $26,627.00 |
| 020 | ENVIRONMENTAL CLAIMS | 432.9 | $379,836.00 |
| 021 | DEBTOR 2004 MOTION (TK) | 309.7 | $228,847.00 |
| 022 | TK ADVERSARY PROCEEDING | 459.0 | $358,109.50 |
| 023 | RETIREE 2004 MOTION (TK) | 703.2 | $414,388.50 |
| 024 | ASBESTOS 2004 MOTION AND RELATED DISCOVERY | 576.8 | $380,809.00 |
| 025 | ANALYSIS OF TSA CLAIMS AND RECOVERY SCENARIO | 313.3 | $273,728.00 |
| 026 | ANALYSIS OF WAUPACA CLAIMS | 395.4 | $253,246.50 |
| 027 | SETTLEMENT NEGOTIATIONS WITH TKNA | 618.2 | $595,190.00 |
| 028 | ANALYSIS OF CHAPTER 11 PLAN TAX ISSUES | 324.5 | $333,122.00 |
| 029 | MONTHLY FEE STATEMENTS | 80.4 | $62,167.50 |
| 030 | FEE APPLICATIONS | 494.4 | $273,590.50 |
| **TOTAL FOR ALL TASK CODES (excluding the 50% travel time reduction)** | | **22,638.8** | **$16,695,255.00** |
| **TOTAL TASK CODE FEE AMOUNT AFTER 50% TRAVEL TIME ADJUSTMENT** | | | **$16,502,356.50** |

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| LESS REDUCTIONS[16] | | | $771,948.75 |
| TOTAL TASK CODE FEE AMOUNT | | | $15,730,407.75 |

---

[16] Reductions include Proskauer's voluntary and court-ordered reductions.

### SUMMARY OF EXPENSES SOUGHT FOR
### REIMBURSEMENT DURING FINAL COMPENSATION PERIOD

| EXPENSE | AMOUNT |
|---|---|
| Reproduction | $46,027.07 |
| Advertising | $605.93 |
| Facsimile | $35.00 |
| Computerized Research (Westlaw/Lexis) | $445,643.09 |
| Proofreading | $22.95 |
| Filing and Court Costs | $1,693.00 |
| Litigation Support/Docketing | $4,096.93 |
| Taxis, Car Services, Mileage, and Parking | $15,456.36 |
| Dinner Vouchers and Local Meals | $12,526.61 |
| Postage | $552.01 |
| Messenger/Delivery | $3,804.36 |
| Out of Town Transportation, including Airfare | $67,923.58 |
| Out of Town Meals | $7,870.70 |
| Food Service / Conference Dining | $747.71 |
| Telephone, including Long-Distance | $950.81 |
| Corporate Services & Title Searches | $20,423.92 |
| Pacer | $184.80 |
| Transcripts and Depositions | $34,951.09 |
| Professional Services | $1,725.41 |
| Auto Rental | $340.84 |
| Supplies | $40.76 |
| Lodging | $33,452.98 |
| Outside Reproduction | $21,270.58 |
| Subscriptions | $1,704.34 |
| Database Search Services | $1,654.90 |
| Court Reporting Services | $500.00 |
| Other Disbursements | $1,155.57 |
| **SUB-TOTAL** | **$725,361.30** |
| **LESS REDUCTIONS**[17] | **$47,252.15** |
| **TOTAL EXPENSES** | **$678,109.15** |

---

[17] Reductions include Proskauer's voluntary and court-ordered reductions.

### FINAL COMPENSATION PERIOD BY INTERIM FEE APPLICATION

| Summary of Fees and Expenses Paid to Date and the Balance of Fees and Expenses for which Final Allowance and Payment is Requested for the Final Compensation Period | | | | | | | |
|---|---|---|---|---|---|---|---|
| Application & Date Filed | Period Covered | Total Fees Earned | Total Fees Allowed | Expenses Incurred | Expenses Allowed | Fees Paid | Expenses Paid |
| **First Interim** 9/15/2014 | 3/31/2014 to 7/31/2014 | $2,825,013.50 | $2,700,013.50 | $102,056.93 | $92,504.78 | $2,700,013.50 | $92,504.78 |
| **Second Interim** 1/20/2015 | 8/1/2014 to 11/30/2014 | $2,849,857.75 | $2,693,807.50 | $183,584.12 | $164,634.12 | $2,693,807.50 | $164,634.12 |
| **Third Interim** 5/15/2015 | 12/1/2014 to 3/31/2015 | $1,726,052.75 | $1,615,187.25 | $68,832.42 | $68,832.42 | $1,615,187.25 | $68,832.42 |
| **Fourth Interim** 9/4/2015 | 4/1/2015 to 7/31/2015 | $2,026,011.00 | $1,961,011.00 | $90,299.82 | $79,049.82 | $1,961,011.00 | $79,049.82 |
| **Fifth Interim** 1/29/2016 | 8/1/2015 to 11/30/2015 | $2,711,137.50 | $2,601,604.50 | $67,027.82 | $64,027.82 | $2,601,604.50 | $64,027.82 |
| **Sixth Interim** 5/16/2016 | 12/1/2016 to 3/31/2016 | $3,422,524.00 | $3,217,024.00 | $194,228.14 | $189,728.14 | $3,217,024.00 | $189,728.14 |
| **Seventh Interim** 8/29/2016 | 2/1/2016 to 4/12/2016 | $941,760.00 | Pending | $19,332.05 | Pending | $753,408.00 | $19,332.05 |
| **Totals** | | **$16,502,356.50** | **$14,788,647.75** | **$725,361.30** | **$658,777.10** | **$15,542,055.75** | **$678,109.15** |

*[Remainder of Page Intentionally Left Blank]*

Dated: August 29, 2016                    Respectfully submitted,

                                          **THE BUDD COMPANY, INC.**


                                          By: */s/ Jeff J. Marwil*_____
                                                One of Its Attorneys

                                          Jeff J. Marwil (IL #6194054)
                                          Jeremy T. Stillings (IL #6279868)
                                          Proskauer Rose LLP
                                          70 W. Madison St.
                                          Chicago, Illinois 60602-4342
                                          Telephone: (312) 962-3550
                                          Facsimile: (312) 962-3551

                                          *Counsel to the Debtor*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No. 14-11873 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |
| | ) | **Objection Deadline: October 14, 2016** |

## SEVENTH INTERIM AND FINAL FEE APPLICATION OF PROSKAUER ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO DEBTOR THE BUDD COMPANY, INC. FOR THE PERIOD MARCH 31, 2014 THROUGH JULY 31, 2016

Proskauer Rose LLP ("Proskauer"), chapter 11 counsel to The Budd Company, Inc. ("Budd" or the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case, pursuant to sections 105, 330, and 331 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq*., the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 5082-1 of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), and the *Order Establishing Professional Interim Compensation Procedures* [Docket No. 147]   (the "Interim Compensation Order"), submits this seventh interim and final application (the "Application") for allowance of compensation for services rendered and reimbursement of expenses incurred for the periods from April 1, 2016 through and including July 31, 2016 (the "Interim Application Period") and from March 31, 2014 through and including July 31, 2016 (the "Final Application Period"), and respectfully requests that the Court enter an order, in substantially the form submitted herewith, awarding Proskauer: (1) interim compensation of $941,760.00  for professional services rendered during the Interim Application Period, (2) interim reimbursement of $19,332.05 for ordinary and necessary expenses incurred during the Interim Application Period, (3) final compensation of

$15,730,407.75 for professional services rendered during the Final Application Period, and (4) final reimbursement of $678,109.15 for ordinary and necessary expenses incurred during the Final Application Period. In support of the Application, Proskauer respectfully states as follows:

## Jurisdiction

1.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Application is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      The statutory and rule-based predicates for the relief requested herein are sections 105, 330, and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 5082-1 of the Local Rules.

## Relevant Background

### *History of the Debtor's Bankruptcy Case*

4.      On March 31, 2014 (the "Petition Date"), the Debtor commenced a voluntary case (the "Chapter 11 Case") under chapter 11 of the Bankruptcy Code.

5.      The United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court") approved Proskauer's retention as chapter 11 counsel for the Debtor pursuant to the Bankruptcy Court's *Order Authorizing and Approving Retention and Employment of Proskauer Rose LLP as Chapter 11 Counsel for the Debtor* [Docket No. 105], entered on April 23, 2014 (the "Retention Order").[18]

### *Interim Compensation Procedures*

---

[18] The Retention Order provides, among other things, that Proskauer will make a "reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. §330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013, in connection with the interim and final fee applications to be filed by Proskauer in this Chapter 11 Case." See Retention Order at ¶ 7.

6.      On May 12, 2014, the Court entered the Interim Compensation Order, pursuant to which Proskauer and other professionals retained in the Chapter 11 Case were authorized to serve upon the parties identified therein (each, a "Notice Party," and together, the "Notice Parties") monthly fee statements or invoices (the "Monthly Fee Statements").  The Notice Parties had ten days from the date of service of a Monthly Fee Statement to object to the amounts requested therein.  Upon expiration of the ten-day objection period, the Debtor was authorized to pay each respective professional eighty percent (80%) of the fees and one hundred percent (100%) of the expenses sought in such professional's Monthly Fee Statement that were not subject to objection from a Notice Party.

7.      In addition to the Monthly Fee Statements, the Interim Compensation Order directed professionals to seek interim allowance and payment of compensation (including the amounts held back from Monthly Fee Statements) and expense reimbursement at four-month intervals (each an "Interim Fee Period") by filing with the Bankruptcy Court and serving on the Notice Parties an application for approval and allowance of all compensation and reimbursement of expenses relating to services rendered and expenses incurred during the preceding Interim Fee Period.

8.      On July 25, 2014, the Court entered that certain *Stipulation and Agreed Order with Respect to Appointment of an Independent Fee Examiner* [Docket No. 346] appointing Diana G. Adams as fee examiner in the Chapter 11 Case (the "Fee Examiner").

***Proskauer's Prior Interim Fee Applications***

9.      On October 23, 2014, the Court awarded Proskauer on an interim basis fees in the amount of $2,700,013.50 and reimbursement of expenses in the amount of $92,504.78 for the first interim period (the period from the Petition Date through and including July 31, 2014).  *See*

23

*Order Granting First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses as Counsel to Debtor for the Period March 31, 2014 Through July 31, 2014* (the "First Interim Order") [Docket No. 622].

10.     On February 23, 2015, the Court awarded Proskauer on an interim basis fees in the amount of $2,693,807.50 and reimbursement of expenses in the amount of $164,634.12 for the second interim period (the period from August 1, 2014 through and including November 30, 2014).  *See Order Granting Second Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses as Counsel to Debtor for the Period August 1, 2014 Through November 30, 2014* (the "Second Interim Order") [Docket No. 787].

11.     On June 30, 2015, the Court awarded Proskauer on an interim basis fees in the amount of $1,615,187.25 and reimbursement of expenses in the amount of $68,832.42 for the third interim period (the period from December 1, 2014 through and including March 31, 2015). *See Order Granting Third Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses as Counsel to Debtor for the Period December 1, 2014 through March 31, 2015* (the "Third Interim Order") [Docket No. 938].

12.     On December 28, 2015, the Court awarded Proskauer on an interim basis fees in the amount of $1,961,011.00 and reimbursement of expenses in the amount of $79,049.82 for the fourth interim period (the period from April 1, 2015 through and including July 31, 2015).  *See Final Order Awarding Fourth Interim Fee Application of Proskauer Rose LLP, as Counsel to Debtor (Dkt. 1065)* (the "Fourth Interim Order") [Docket No. 1346].

13.     On May 31, 2016, the Court awarded Proskauer on an interim basis fees in the amount of $2,601,604.50 and reimbursement of expenses in the amount of $64,027.82 for the

24

fifth interim period (the period from August 1, 2015 through and including November 30, 2015).

*See Order Granting Fifth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses as Counsel to Debtor for the Period August 1, 2015 through November 30, 2015 (Dkt. 1483)* (the "Fifth Interim Order") [Docket No. 1862].

14.     On July 13, 2016, the Court awarded Proskauer on an interim basis fees in the amount of $3,217,024.00 and reimbursement of expenses in the amount of $189,728.14 for the sixth interim period (the period from December 1, 2015 through and including March 31, 2016). *See Order Granting Sixth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses as Counsel to Debtor for the Period December 1, 2015 through March 31, 2016* (the "Sixth Interim Order," and collectively with the First Interim Order, Second Interim Order, Third Interim Order, Fourth Interim Order, and Fifth Interim Order, the "Interim Orders") [Docket No. 1927].

15.     Proskauer has bene paid in full for all amounts earned and expenses incurred in accordance with the Interim Orders.

***Proskauer's Monthly Fee Statements During the Interim Application Period***

16.     Pursuant to the Interim Compensation Order, Proskauer circulated a Monthly Fee Statement for each month of the Interim Application Period and received aggregate interim payments in the amount of $753,408.00 of fees for services rendered and $19,332.05 for reimbursement of expenses incurred during the Interim Application Period, for a total of $772,740.05 (the "Interim Payments").

17.     Copies of Proskauer's Monthly Fee Statements covering the Interim Application Period, which include detailed itemization of the services rendered and expenses incurred by Proskauer during the Interim Application Period, are attached hereto as **Exhibits A–D**.

Proskauer received no objections to any the compensation or expenses sought in its Monthly Fee Statements.

***Nature of Legal Services Performed by Proskauer During the Interim Application Period***

18.     During the Interim Application Period, the Debtor finalized and the Bankruptcy Court confirmed the Debtor's chapter 11 plan (the "Plan")[19]  [Docket No. 1797], which has since become effective.  The Plan resolved ***all*** outstanding issues among the major parties in this case. Specifically:

a.      The Plan had the support of the UAW, E&A Retiree Committee, Asbestos Committee, and TKNA;

b.      on May 6, 2016, this Court entered an order (the "Disclosure Statement Order") [Docket No. 1811] approving a disclosure statement to the Plan (the "Disclosure Statement") [Docket No. 1798] and Plan confirmation procedures.  The approved Disclosure Statement and Plan confirmation procedures were the culmination of the Debtor's discussions with various parties in interest that resolved objections thereto and contested hearings concerning earlier version of the Disclosure Statement;

c.      on May 31, 2016, the Court entered an order authorizing the Debtor to enter into the Amended Asbestos Cost Sharing Agreement, consensually resolving the Debtor's objections to the Claims  of insurers and guaranteeing that holders of Asbestos Claims would continue to have access to hundreds of millions of dollars of insurance that can provide coverage for Asbestos Claims that manifest in the future [Docket No. 1864];

---

[19] Each capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

26

    d.      on June 27, 2016, the Court entered an order confirming the Plan (the "Confirmation Order") [Docket No. 1913];

    e.      on July 12, 2016, the Court entered an order approving evidence of insurance for the Budd Funds Administrator (the "Insurance Order") [Docket No. 1923];

    f.      on July 28, 2016, the Court entered an order approving the consensual settlement of the claims of the Debtor and Martinrea International Inc. ("Martinrea") against one another [Docket No. 1974];

    g.      on the same date, the Court entered an order approving the consensual resolution of the claims of the Environmental Protection Agency and representatives of PRP groups (collectively, the "EPA Groups") for certain EPA cleanup sites [Docket No. 1973]; and

    h.      on August 1, 2016, the Effective Date of the Plan occurred.

    i.      on August 2, 2106, the Debtor provided notice of the Effective Date of the Plan [Docket No. 1984].

19.    ***The Plan.***    Pursuant to Proskauer's efforts, the Plan was confirmed and consummated during the Interim Application Period.  The Plan provides the following benefits:

    a.      **UAW Retiree Benefits Claims.**  The UAW VEBA was funded on the Effective Date with $169,438,766.00 in cash from the Debtor's Estate,[20] together with (i) $320 million in cash over 8 years from TKNA as provided in the TKNA

---

[20] The Plan provided that the amount of cash received by the UAW VEBA was dependent on the amount of Effective Date Cash remaining after payment of $55 million to the E&A VEBA and payment of, among other things, administrative expenses.

Settlement Agreement; and (ii) an additional $10 million in cash consideration from

TKNA pursuant to the TK Finance Settlement Agreement.

b.       **E&A Retiree Benefits Claims.**  The E&A VEBA was funded on the

Effective Date with $70 million in cash from contributions of the Debtor's estate and

TKNA, in the amounts of $55 million and $15 million, respectively.

c.       **Pension Plans.**  TKNA assumed responsibility for the Pension Plans so

Retirees receive their pension plan payments, uninterrupted, in full and on time.

d.       **Asbestos Claims.**  In connection with the Amended Asbestos Cost

Sharing Agreement, Asbestos Claims "passed through" the Chapter 11 Case, allowing

Asbestos Claimants to bring or continue lawsuits against Budd and be paid either (i)

100% of the amount of their Insured Asbestos Claims from proceeds of the Asbestos

Insurance Policies or (ii) 67% of the amount of Uninsured Asbestos Claims paid from

the Uninsured Asbestos Claim Fund until it is exhausted.  To aid in the enforcement

of its insurance policies, the Debtor entered into the Amended Asbestos Cost Sharing

Agreement with multiple insurers, pursuant to which the insurers coordinate and pay

costs of defense and asbestos claims judgments and settlements and Asbestos Claims

are administered.

e.       **General Unsecured Claims.**  Holders of General Unsecured Claims

received cash equal to 67% of the Allowed amount of their Claims.  Specifically, the

Debtor made $5,004,377.33 in payments to holders of General Unsecured Claims on

the Effective Date.[21]

---

[21]  At the request of the Environmental Protection Agency, their disbursement in the amount of
$3,042,556.00 was made on August 10, 2016.

20.     Proskauer's efforts during the Interim Application Period provided significant benefit to the Estate by moving the Debtor's case to and resulting in confirmation of the Plan, which occurred on June 27, 2016.[22]

21.     All services rendered and expenses incurred for which compensation or reimbursement is requested were performed or incurred for or on behalf of the Debtor.

22.     The services described in this Application were actually provided to the Debtor and were necessary to the prosecution of the Chapter 11 Case, and the compensation requested for those services is reasonable.

23.     The expenses described in this Application were actually incurred by Proskauer in connection with its representation of the Debtor and were necessary to the prosecution of the Chapter 11 Case.

24.     Proskauer's attorneys and paraprofessionals have devoted substantial time to numerous complex legal matters in this case, often under severe time constraints. Recitation of each and every task performed by Proskauer during the Interim Application Period would be burdensome and unnecessary. Hence, the following summaries highlight the major areas to which Proskauer has devoted time and attention during the Interim Application Period.[23] Each of the following summaries is accompanied by a table providing the name, position, hourly rate, and number of hours and amount billed during the Interim Application Period by each Proskauer professional and paraprofessional for services rendered relating to such category:

---

[22] Proskauer incorporates by reference the statements of Jeff J. Marwil set forth in the *Declaration of Jeff J. Marwil and Disclosure Statement of Proskauer Rose LLP Pursuant to Bankruptcy Code Sections 327, 329, 504 and 1107, Bankruptcy Rule 2014(a) and 2016(b) and Local Rule 2016-1* [Docket No. 10-1] concerning its billing practices and rates with respect to its representation of Budd.

[23] With respect to the major areas to which Proskauer has devoted time and attention during the Final Application Period, Proskauer hereby incorporates its prior interim fee applications and supplements thereto [Docket Nos. 467, 569, 601 714, 885, 931, 1065, 1225, 1483, 1812, and 1832].

## A.     BUSINESS OPERATIONS (Total Hours: 14.0; Total Fees: $12,417.50)

25.     During the Interim Application Period, Proskauer expended 14.0 hours having a value of $12,417.50 at a blended hourly rate of approximately $886.96 in connection with this category. Services rendered by Proskauer in this category include, among other things, the following: (a) assisting the Debtor (including by participating in group and individual meetings and telephone conferences with the Debtor's management) in prosecuting the Chapter 11 Case and satisfying the Debtor's obligations, including by interpreting Court orders and advising on bankruptcy obligations and general operational issues (*i.e.* servicing pension and medical benefits plans, claims etc.); (b) overseeing the continued administration of Budd's retiree medical plans in accordance with section 1114(e) of the Bankruptcy Code; (c) coordinating TKNA's payments to participants in the Debtor's SERP plan; and (d) advising the Debtor as to its obligations as a debtor in possession.

26.     The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEFF J. MARWIL | PARTNER | $1,200.00 | 4.7 | $5,640.00 |
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 5.8 | $5,220.00 |
| JERAMY D. WEBB | ASSOCIATE | $445.00 | 3.5 | $1,557.50 |
| TOTAL | | | 14.0 | $12,417.50 |

## B.     CASE ADMINISTRATION (Total Hours: 50.5 Total Fees: $32,075.00)

27.     During the Interim Application Period, Proskauer expended 50.5 hours having a value of $32,075.00 at a blended hourly rate of approximately $635.15 in connection with this category. Services rendered by Proskauer in this category include, among other things, the following: (a) preparing for and attending nine (9) hearings in the Chapter 11 Case, and

variousadministrative meetings; and (b) researching, preparing, filing, serving and/or presenting to the Bankruptcy Court pleadings and other items that do not fall into a more specific category identified in this Application.

28.     The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEFF J. MARWIL | PARTNER | $1,200.00 | 7.4 | $8,880.00 |
| MARC E. ROSENTHAL | PARTNER | $975.00 | 1.4 | $1,365.00 |
| MICHAEL T. MERVIS | PARTNER | $975.00 | 1.1 | $1,072.50 |
| STEVEN H. HOLINSTAT | OF COUNSEL | $875.00 | 1.4 | $1,225.00 |
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 6.6 | $5,940.00 |
| BRANDON W. LEVITAN | ASSOCIATE | $770.00 | 6.8 | $5,236.00 |
| JERAMY WEBB | ASSOCIATE | $445.00 | 4.3 | $1,913.50 |
| NATASHA PETROV | PARALEGAL | $300.00 | 21.3 | $6,390.00 |
| ALLISON JONES | PRACTICE SUPPORT | $265.00 | 0.2 | $53.00 |
| TOTAL | | | 50.5 | 32,075.00 |

## C.     CLAIMS ADMINISTRATION AND OBJECTIONS (Total Hours: 9.9 Total Fees: $8,534.00)

29.     During the Interim Application Period, Proskauer expended 9.9 hours having a value of  $8,534.00 at a blended hourly rate of approximately $862.02 in connection with this category.  Services rendered by Proskauer in this category include, among other things, the following: (a) documenting and seeking approval of the Debtor's settlement with Martinrea; (b) reviewing and analyzing the Debtor's objection concerning the Travelers Action (as defined in the Confirmation Order); and (c) coordinating with various creditors over payment of their claims on the Effective Date.

30.     Proskauer professionals devoted significant time to negotiating, documenting and seeking approval of the Debtor's settlement with Martinrea concerning the claims filed by

31

Martinrea in the Chapter 11 Case, and claims the Debtor holds against Martinrea. As the parties previously disclosed, the settlement resulted in a settlement between the Debtor and Martinrea, Martinrea withdrawing its claims against the Debtor, and Martinrea paying the Debtor $600,000.00 for the benefit of the Estate. Proskauer analyzed correspondence with Martinrea counsel, drafted a proposed settlement agreement and motion to approve the same, and sought approval of the motion, which the Court granted by order entered on July 28, 2016 [Docket No. 1974].

31.     The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEFF J. MARWIL | PARTNER | $1,200.00 | 3.5 | $4,200.00 |
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 3.2 | $2,880.00 |
| BRANDON W. LEVITAN | ASSOCIATE | $770.00 | 0.3 | $231.00 |
| JERAMY WEBB | ASSOCIATE | $445.00 | 2.4 | $1,073.00 |
| NATASHA PETROV | PARALEGAL | $300.00 | 0.5 | $150.00 |
| TOTAL | | | 9.9 | $8,534.00 |

**D.   CORPORATE GOVERNANCE AND BOARD MATTERS** (Total Hours: 18.3; Total Fees: $13,051.00)

32.     During the Interim Application Period, Proskauer expended 18.3 hours having a value of $13,051.00 at a blended hourly rate of approximately $713.17 in connection with this category. Services rendered by Proskauer in this category include, among other things, the following: (a) preparing and participating in meetings of the Debtor's board of directors and officers; (b) communicating with the Debtor's board of directors and officers regarding the status of the Chapter 11 Case; (c) negotiating, seeking approval, and executing the Plan; (d) preparing written board materials, including consents, resolutions, and minutes of board meetings; and (e)

32

preparing agendas to meetings of the Debtor's board of directors. The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEFF J. MARWIL | PARTNER | $1,200.00 | 4.0 | $4,800.00 |
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 5.2 | $4,680.00 |
| JERAMY WEBB | ASSOCIATE | $445.00 | 5.8 | $2,581.00 |
| NATASHA PETROV | PARALEGAL | $300.00 | 3.3 | $990.00 |
| TOTAL | | | 18.3 | $13,051.00 |

**E.     RETIREE BENEFITS (1114)** (Total Hours: 245.0 Total Fees: $212,036.00)

33.     During the Interim Application Period, Proskauer expended 245.0 hours having a value of $212,036.00 at a blended hourly rate of approximately $865.45 in connection with this category. The most important issue in the Debtor's chapter 11 case has always been modifying the Debtor's healthcare benefit obligations to its Retirees to assure continued healthcare benefits at the highest level for as long as possible, which was accomplished by establishing Retiree VEBAs in accordance with the Plan. Services rendered by Proskauer in this category include, among other things, the following: (a) post-trial briefing related the modification of benefits received by UAW Retirees following the § 1114 trial; (b) analyzing the formation of, establishing, and funding tax-advantaged VEBAs for the Debtor's Retirees; (c) amending the Debtor's health care plans in connection with the foregoing; (c) documenting and seeking TKNA's assumption of the Debtor's Pension Plans; (d) reviewing and analyzing the Debtor's ability to share sensitive information with the Retiree VEBAs; (e) coordinating with third-party service providers on terminating services related to the Debtor's health care plans; and (f) researching and drafting related to Retiree eligiblity to enroll in the VEBAs.

33

34.     The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEFF J. MARWIL | PARTNER | $1,200.00 | 41.2 | $49,440.00 |
| ALAN P. PARNES | PARTNER | $1,350.00 | 4.4 | $5,940.00 |
| MICHAEL T. MERVIS | PARTNER | $975.00 | 7.6 | $7,410.00 |
| KRISTEN J. MATHEWS | PARTNER | $1,000.00 | 0.5 | $500.00 |
| PAUL M. HAMBURGER | PARTNER | $945.00 | 29.8 | $28,161.00 |
| SCOTT A. FAUST | PARTNER | $910.00 | 0.6 | $546.00 |
| ROGER A. COHEN | SENIOR COUNSEL | $795.00 | 1.3 | $1,033.50 |
| ABRAHAM GUTWEIN | SENIOR COUNSEL | $975.00 | 0.2 | $195.00 |
| STEVEN H. HOLINSTAT | SENIOR COUNSEL | $875.00 | 30.3 | $26,512.50 |
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 15.7 | $14,130.00 |
| MICHAEL F. DERKSEN | ASSOCIATE | $795.00 | 7.0 | $5,565.00 |
| SARA C. RICHLAND | ASSOCIATE | $695.00 | 13.4 | $9,313.00 |
| DAMIAN A. MYERS | ASSOCIATE | $825.00 | 0.6 | $495.00 |
| JASON MADDEN | ASSOCIATE | $735.00 | 2.5 | $1,837.50 |
| BRANDON W. LEVITAN | ASSOCIATE | $770.00 | 0.4 | $308.00 |
| JUSTIN S. ALEX | ASSOCIATE | $735.00 | 54.4 | $39,984.00 |
| ASHLEY A. LAWTON | ASSOCIATE | $735.00 | 18.5 | $13,597.50 |
| JERAMY WEBB | ASSOCIATE | $445.00 | 14.4 | $6,408.00 |
| NATASHA PETROV | PARALEGAL | $300.00 | 2.0 | $600.00 |
| LAURIE A. HENDERSON | PRACTICE SUPPORT | $300.00 | 0.2 | $60.00 |
| TOTAL | | | 245.0 | $212,036.00 |

34

F.    **PLAN AND DISCLOSURE STATEMENT** (Total Hours: 403.1; Total Fees: $307,116.50)

35.    During the Interim Application Period, Proskauer expended 403.1 hours having a value of $307,116.50 at a blended hourly rate of approximately $761.89 in connection with this category.

36.    During the Interim Application Period, the Debtor finalized negotiations of, documented, solicited, and confirmed a chapter 11 plan. The Debtor filed the eighth and ninth versions of the Plan and related Disclosure Statements [Docket Nos. 1765-66 and 1797-98] in order to: (a) incorporate comments from parties-in-interest; and (b) keep the case moving towards confirmation of a chapter 11 plan. Proskauer professionals were instrumental in: (i) negotiating with TKNA (per the TKNA Settlement Agreement), the E&A Retiree Committee and other constituencies the terms of the Plan and the language in the Plan and the Disclosure Statement to seek the support for the Plan of all major parties in the Chapter 11 Case; (ii) negotiating language for and drafting the eighth and ninth (final) Plan and Disclosure Statement; (iii) negotiating language of and drafting two versions of the proposed Order seeking approval of the Disclosure Statement and Plan confirmation procedures to conform to the revised versions of the Disclosure Statement (and Plan) [Docket Nos. 1771 and 1800]; (iv) researching and responding to objections to the legal and economic terms of the Plan and Disclosure Statement; and (v) negotiating the language of and drafting the proposed order confirming the Plan [Docket No. 1911].   Importantly, Proskauer's fees and expenses in connection with the Disclosure Statement and Plan are reasonable and fully compensable, including because, during the Interim Application Period, Proskauer assisted the Debtor in reaching an agreement in principle with the UAW and other major constituents that harmonized the Disclosure Statement with treatment under the Plan that resulted in a fully consensual Disclosure Statement and Plan.   Although

35

substantial fees were incurred by many professionals, fees and expenses would have been significantly higher had consensus not been reached on the form and substance of the Plan and Disclosure Statement.

37.     As discussed above, Proskauer's efforts during the Interim Application Period have led to a confirmed and effective Plan and Disclosure Statement that have the support of the UAW, E&A Retiree Committee, TKNA, and Asbestos Committee. The Plan represents a successful conclusion to the Debtor's chapter 11 case, including by: (a) providing $345 million cash to fund Retiree healthcare benefits at levels generally consistent with current benefits for an extended period of time, and likely beyond the lifespan of most, if not all, Retirees; (b) providing for the assumption of well over $200 million of underfunded pension obligations through the TKNA Settlement Agreement and the TK Finance Settlement Agreement; (c) avoiding costly, time-consuming, and uncertain litigation with TKNA and others; (d) providing each Insured Asbestos Claimant with 100% cash recovery using proceeds of the Debtor's asbestos liability insurance policies; (e) providing  Uninsured Asbestos Claimants with a 67% cash recovery to be paid from a segregated fund of $4.45 million, which is well in excess of the Debtor's projections concerning such liabilities; and (f) paying in cash a 67% return to general unsecured claimants.

38.     The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEFF J. MARWIL | PARTNER | $1,200.00 | 101.4 | $121,680.00 |
| MARC E. ROSENTHAL | PARTNER | $975.00 | 2.1 | $2,047.50 |
| MICHAEL T. MERVIS | PARTNER | $975.00 | 1.5 | $1,462.50 |
| STEVEN H. HOLINSTAT | SENIOR COUNSEL | $875.00 | 0.7 | $612.50 |
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 81.4 | $73,260.00 |

| MICHAEL F. DERKSEN | ASSOCIATE | $795.00 | 3.1 | $2,464.50 |
|---|---|---|---|---|
| BRANDON W. LEVITAN | ASSOCIATE | $770.00 | 55.6 | $42,812.00 |
| JERAMY D. WEBB | ASSOCIATE | $445.00 | 107.5 | $47,837.50 |
| NATASHA PETROV | PARALEGAL | $300.00 | 49.8 | $14,940.00 |
| **TOTAL** | | | **403.1** | **$307,116.50** |

**G.     ASBESTOS** (Total Hours: 235.2; Total Fees: $224,936.00)

39.     During the Interim Application Period, Proskauer expended 235.2 hours having a value of $224,936.00 at a blended hourly rate of approximately $956.36 in connection with this category.

40.     One of the significant challenges facing the Debtor was developing a plan for addressing its asbestos liabilities. The Plan and the Amended Asbestos Cost Sharing Agreement provide that Asbestos Claims not objected-to during the bankruptcy case on legal grounds "pass through" the bankruptcy case, allowing those Asbestos Claimants to continue existing lawsuits and to bring new lawsuits against Budd.  This allowed individual asbestos claimants to avoid litigating in federal court the Debtor's objections to hundreds of Asbestos Claims, and incurring substantial related fees and expenses.  The Amended Asbestos Cost Sharing Agreement also preserves a myriad of multiple insurance policies that provide more than $100 million of insurance coverage to satisfy asbestos claims judgments or settlements, and pay defense costs. To supplement this insurance and on the Effective Date, the Debtor  funded (a) the Insured Asbestos Claim Fund, for the benefit of insured asbestos claims holders, with $2.2 million of cash, and (b) the Uninsured Asbestos Claim Fund, for the benefit of uninsured asbestos claims holders, with $4.45 million of cash.  Collectively, the Debtor ensured that asbestos claimants will receive meaningful compensation for their claims, both those that currently have presented and those that manifest in the future.

37

41.     To achieve the foregoing, Proskauer professionals engaged in substantial negotiations with certain of the Debtor's insurers and the Asbestos Committee concerning the Amended Asbestos Cost Sharing Agreement and the Plan that implements it. The Amended Asbestos Cost Sharing Agreement sets forth details regarding the manner in which Asbestos Claims are administered. Proskauer's efforts in negotiating the Amended Asbestos Cost Sharing Agreement and the related terms of the Plan have been responsible for the ultimate resolution of these issues, execution and Bankruptcy Court approval of the Amended Asbestos Cost Sharing Agreement, and the funding by the Debtor, under the Plan and the Amended Asestbsos Cost Sharing Agreement, of millions of dollars for the benefit of the Debtor's asbestos claimants who now are free to litigate their claim in state court.

42.     The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEFF J. MARWIL | PARTNER | $1,200.00 | 60.4 | $72,480.00 |
| ALAN P. PARNES | PARTNER | $1,075.00 | 4.5 | $6,075.00 |
| MARC E. ROSENTHAL | PARTNER | $975.00 | 85.7 | $83,557.50 |
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 27.3 | $24,570.00 |
| MICHAEL F. DERKSEN | ASSOCIATE | $795.00 | 37.9 | $30,130.50 |
| JARED ZAJAK | ASSOCIATE | $795.00 | 0.4 | $318.00 |
| BRANDON W. LEVITAN | ASSOCIATE | $770.00 | 0.9 | $693.00 |
| JERAMY D. WEBB | ASSOCIATE | $445.00 | 11.6 | $5,162.00 |
| NATASHA PETROV | PARALEGAL | $300.00 | 6.5 | $1,950.00 |
| TOTAL | | | 235.2 | $224,936.00 |

**H.     REPORTING** (Total Hours: 0.4; Total Fees: $180.00)

43.     During the Interim Application Period, Proskauer expended 0.4 hours having a value of $180.00 at a blended hourly rate of approximately $450.00 in reviewing and filing of the

Debtor's monthly operating reports and U.S. Trustee quarterly reports.  The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 0.1 | $90.00 |
| NATASHA PETROV | PARALEGAL | $300.00 | 0.3 | $90.00 |
| **TOTAL** | | | **0.4** | **$180.00** |

## I.    ENVIRONMENTAL CLAIMS (Total Hours: 37.7; Total Fees: $32,443.00)

44.    During the Interim Application Period, Proskauer expended 37.7 hours having a value of $32,443.00 at a blended hourly rate of approximately $860.56 in connection with this category.

45.    On July 29, 2015, the Debtor filed its fourth omnibus objection to environmental claims [Docket No. 976] (the "Fourth Omnibus Objection"). After the filing of the Fourth Omnibus Objection, Proskauer professionals engaged in a dialogue with environmental claimants. These environmental claimants fall into three groups: (a) the EPA Groups for certain EPA cleanup sites; (b) the Michigan Department of Environmental Quality (the "MDEQ"); and (c) the Folcroft PRP Group ("Folcroft"), and certain of its individual PRPs. The Court previously approved settlement agreements with the MDEQ and Folcrot, *see* Docket Nos. 1670 and 1787, and during the Interim Application Period, Proskauer professionals successfully sought and received approval of settlement agreements with the EPA Groups, *see* Docket No. 1973.  In each case, Proskauer professionals negotiated substantial reductions, in the millions of dollars, in the allowed amount of each of three parties' general unsecured claims, which are reflected below:

- Michigan Department of Environmental Quality:
  - Filed Unsecured Claim Amount: $15,026,692.87

- o Stipulated Unsecured Claim Amount: $734,436.00

- Folcroft PRP Group, and certain of its individual PRPs:
  - o Filed Unsecured Claim Amounts: in excess of $2,000,000.00
  - o Stipulated Unsecured Claim Amounts: $536,585.00 (in the aggregate)

- Environmental Protection Agency, and representative of the PRP Group for Army Creek/ Blosenski/Delaware Sand & Gravel:
  - o Filed Unsecured Claim Amounts: in excess of $50,000,000.00
  - o Stipulated Unsecured Claim Amounts: $6,197,557.00 (in the aggregate)

46. The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEFF J. MARWIL | PARTNER | $1,200.00 | 4.1 | $4,920.00 |
| GAIL S. PORT | SENIOR COUNSEL | $1,050.00 | 14.2 | $14,910.00 |
| ALIZA R. CINAMON | ASSOCIATE | $900.00 | 7.1 | $6,390.00 |
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 1.8 | $1,620.00 |
| BRANDON W. LEVITAN | ASSOCIATE | $770.00 | 0.5 | $385.00 |
| JERAMY D. WEBB | ASSOCIATE | $795.00 | 8.4 | $3,738.00 |
| NATASHA PETROV | PARALEGAL | $300.00 | 1.6 | $480.00 |
| **TOTAL** | | | **37.7** | **$32,443.00** |

**J.    ANALYSIS OF CHAPTER 11 PLAN TAX ISSUES** (Total Hours: 18.7; Total Fees: $23,707.50)

47. During the Interim Application Period, Proskauer's expert tax attorneys expended 18.7 hours having a value of $23,707.50 at a blended hourly rate of approximately $1,267.78 in connection with analyzing potential tax issues associated with the Plan's structure and the establishment of VEBAs contemplated thereunder. The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

40

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| ALAN P. PARNES | PARTNER | $1,350.00 | 14.6 | $19,710.00 |
| ABRAHAM GUTWEIN | SENIOR COUNSEL | $975.00 | 4.1 | $3,997.50 |
| TOTAL | | | 18.7 | $23,707.50 |

**K.     MONTHLY FEE STATEMENTS** (Total Hours: 15.1; Total Fees: $13,027.00)

48.     During the Interim Application Period, Proskauer expended 15.1 hours having a value of $13,027.00 at a blended hourly rate of approximately $862.72 in connection with, among other things, (a) preparing and serving Proskauer's twenty-fifth, twenty-sixth, twenty-seventh, and twenty-eighth Monthly Fee Statements; and (b) reviewing monthly fee statements of other professionals retained in this chapter 11 case.  The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEFF J. MARWIL | PARTNER | $1,200.00 | 1.0 | $1,200.00 |
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 11.8 | $10,620.00 |
| BRANDON W. LEVITAN | ASSOCIATE | $770.00 | 1.1 | $847.00 |
| NATASHA PETROV | PARALEGAL | $300.00 | 1.2 | $360.00 |
| TOTAL | | | 15.1 | $13,027.00 |

**L.     FEE APPLICATIONS** (Total Hours: 122.8; Total Fees: $62,236.50)

49.     During the Interim Application Period, Proskauer expended 122.8 hours having a value of $62,236.50 at a blended hourly rate of approximately $506.81 in connection with this category. Services rendered by Proskauer in this category include, among other things, the following: (a) preparing and filing Proskauer's sixth interim fee application, and seventh interim and final fee application; (b) preparing and filing Analysis Research Planning Corporation's fourth interim fee application, and final fee application; (c) preparing and filing Towers

41

Watson's fourth interim fee application, and fifth interim and final fee application; (d) responding to requests for information from the Fee Examiner concerning the foregoing; (e) responding to the Court's questions concerning the foregoing; (f) drafting revised orders for the fifth and sixth interim fee applications; and (g) other tasks relating to the foregoing, such as preparing for hearings concerning professional fee and retention applications.

50.     The following chart summarizes the total amount of time entered by each Proskauer timekeeper for services rendered in this billing category during the Interim Application Period, as well as the corresponding dollar value of those services:

| TIMEKEEPER | POSITION | HOURLY RATE | HOURS | FEES |
|---|---|---|---|---|
| JEFF J. MARWIL | PARTNER | $1,200.00 | 12.4 | $14,880.00 |
| JEREMY T. STILLINGS | ASSOCIATE | $900.00 | 9.4 | $8,460.00 |
| BRANDON W. LEVITAN | ASSOCIATE | $770.00 | 16.1 | $12,397.00 |
| JERAMY WEBB | ASSOCIATE | $445.00 | 7.1 | $3,159.50 |
| NATASHA PETROV | PARALEGAL | $300.00 | 77.8 | $23,340.00 |
| TOTAL | | | 122.8 | $62,236.50 |

### Applicable Legal Standards and Criteria

51.     The Court may award a professional employed by the estate "reasonable compensation for actual, necessary services" rendered by the professional, plus "reimbursement for actual, necessary expenses" under Section 330 of the Bankruptcy Code. *See* 11 U.S.C. § 330(a)(1); *see also, generally, In re Eckert*, 414 B.R. 404 (Bankr. N.D. Ill. 2009); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 840 (3d Cir. 1994); *In re Armstrong World Indus., Inc.*, 366 B.R. 278, 280 (D. Del. 2007); *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 861 (Bankr. D. Del. 2004).

52.     In determining "reasonable compensation," the Court must consider the nature, extent, and value of the services rendered, taking into account all relevant factors, including the time spent on such services, the rates charged for such services, whether the services were

42

necessary and beneficial, whether the services were performed in a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed, and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code. *See* 11 U.S.C. § 330(a)(3).

53.     The congressional policy expressed in this statute is to provide for adequate, market-driven compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d at 850 ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankrutpcy specialists to practice in the bankruptcy courts.") (citation and internal quotation marks omitted).

54.     In assessing attorneys' fees, courts frequently utilize the "lodestar" method, which is a determination as to the number of hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates. *See id.* at 849 n.21 ("The most familiar formula courts in this circuit use to calculate attorneys' fees is undoubtedly the 'lodestar' approach…"); *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994). When applying the lodestar approach, courts generally incorporate the familiar factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[24] *See, e.g., Lohman v. Duryea*, 574 F.3d 163 (3d Cir. 2009) (applying *Johnson* factors); *Public Interest Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 n.8 (3d Cir. 1995) ("The factors commonly considered are set out in the United States Court of Appeals for

---

[24]   The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions presented, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) the time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

the Fifth Circuit's opinion in *Johnson v. Georgia Highway Express, Inc.*") (citation omitted).

Additionally, Courts have recognized that the appropriate starting point in analyzing a

professional's fees is the customary hourly rate charged by such professional. *Zolfo, Cooper &

Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 260 (3d Cir. 1995) ("The baseline rule is for firms

to receive their customary rates") (finding that bankruptcy court should have looked first to

customary market rates for accounting firm's home market in New York, then applied any

adjustments based on other factors); *see also In re Fender*, 12 F.3d at 487 ("The lodestar is

computed by multiplying the number of hours reasonably expended by the prevailing hourly rate

in the community for similar work"); *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993)

(same).

      55.    In awarding attorneys' fees, courts also consider whether the services rendered

were reasonably likely to benefit the debtor's estate at the time they were performed. *See*, *e.g.*, *In

re APW Enclosure Sys., Inc.*, 2007 WL 3112414 (Bankr. D. Del. Oct. 23, 2007) (citing *In re

Ames Dep't Stores, Inc.*, 76 F.3d 66, 71 (2d Cir. 1996), *rev'd on other grounds*, *Lamie v. U.S.

Trustee*, 540 U.S. 526 (2004)). Whether services are necessary should be judged in light of the

facts known at the time those services were rendered.  *See In re Tri-State Plant Food Inc.*, 273

B.R. 250, 259 (Bankr. M.D. Ala. 2002) ("Professionals will not be paid for services which are

not necessary to the administration of the estate . . . [t]his determination is made in light of the

facts known at the time the services were performed and not on an after-the-fact basis using the

benefit of hindsight"). Thus, as one court explained, the Court should focus on what a reasonable

lawyer would have done at the time and not invoke a hindsight analysis:

> [I]t is important for a court to maintain "a sense of overall proportion,"
> and not "become enmeshed in meticulous analysis of every detailed facet
> of the professional representation."  It is easy to speculate in retrospect
> that the work could have been done in less time or with fewer attorneys or

with an associate rather than a partner.  On the other hand, it is also possible that [the debtor] would not have enjoyed the success it did had its counsel managed matters differently.

*Boston & Maine Corp. v. Moore* (*In re Boston & Maine Corp.*), 776 F.2d 2, 10 (1st Cir. 1985)

(citations omitted).

### Application of Relevant Criteria and Standards to this Application

56.    In applying the criteria set forth above to this request for compensation, the Court should consider foremost the effort required and expended by Proskauer, the reasonableness of the services rendered, and the necessity of such services at the time they were rendered. All of the services performed by Proskauer were necessary at the time they were rendered, were authorized by the Bankruptcy Court, and were performed by Proskauer at the request and direction of the Debtor. Pursuant to section 330 of the Bankruptcy Code and the criteria regarding time, nature, extent and value of the services performed, all of Proskauer's services are compensable.

**I.    Services Rendered by Proskauer During the Interim Application Period Were Reasonable and  Necessary**

57.    The services provided by Proskauer during the Interim Application Period resulted in confirmation of the Plan.  The Debtor filed, confirmed, and consummated the Plan. The Plan was premised upon, and made possible by, the TKNA Settlement, which provides the Debtor's estate with $335 million of cash payments in addition to a number of other significant benefits.  The Plan also provided for the resolution of the Debtor's asbestos-claims liabilities through a pass through structure and execution of the Amended Asbestos Cost Sharing Agreement to preserve the Debtor's valuable insurance policies.  Proskauer's services during the Interim Application Period were reasonable and contributed substantially to the formulation of

45

the Plan and Disclosure Statement and confirmation and consummation of the Plan, exiting the

Debtor from chapter 11.

### a. *Proskauer Minimized Potentially Duplicative Efforts*

58.     Proskauer took steps to avoid duplicative billing among its own professionals.

Compensation is sought for participation in a single task by more than one Proskauer attorney

only in those instances in which joint participation was absolutely necessary because of: (a) the

significant impact of a particular hearing or meeting; (b) the level of complexity of the issues

involved; (c) the volume of the work to be performed; (d) the specialization required; (e) the

need to preserve continuity of representation; or (f) the number of overlapping and intertwining

issues involved, which may require expertise beyond a single lawyer.  In cases of this magnitude

and complexity, it is often more economical and sometimes necessary for multiple attorneys to

attend internal and external meetings or hearings to facilitate communication of information and

coordinate strategy than to relay the information from attorney to attorney and risk

miscommunication detrimental to the client.  Under such circumstances, such representation has

been approved.  *Berberana v. Coler*, 753 F.2d 629, 631 (7th Cir. 1985).  For example, on certain

occasions, more than one Proskauer attorney attended hearings in these cases only when

numerous matters were before the Court and it would have been virtually impossible for one

attorney to respond, not only to the Court's inquiries on every matter, but to any off-the-record

discussions with other counsel.

### b. *Multiple Attendees at Court Hearings*

59.     During the Interim Application Period, there were six (6) hearings at which more

than two Proskauer attorneys were in attendance: (a) the hearing on April 29, 2016 was attended

by Marc Rosenthal, Jeff Marwil, and Brandon Levitan; (b) the hearing on May 6, 2016 was

attended by Marc Rosenthal, Jeff Marwil, and Brandon Levitan; (c) the hearing on May 31, 2016 was attended by Marc Rosenthal, Jeff Marwil, and Jeremy Stillings; (d) the hearing on June 24, 2016 was attended by Marc Rosenthal, Jeff Marwil, Jeremy Stillings, and Jeramy Webb; (e) the hearing on June 27, 2016 was attended by Marc Rosenthal, Jeff Marwil, Jeremy Stillings, and Jeramy Webb; and (f) the hearing on July 28, 2016 was attended by Jeff Marwil, Jeremy Stillings, and Jeramy Webb. Mr. Marwil (lead bankruptcy counsel) attended and led the hearings. Mr. Levitan (former bankruptcy associate), Mr. Stillings (bankruptcy associate), and/or Mr. Webb (bankruptcy associate) assisted Mr. Marwil with the hearings. Mr. Rosenthal (lead asbestos insurance counsel) attended the hearings on April 29, 2016; May 6, 2016; May 31, 2016; June 24, 2016; June 27, 2016; and July 12, 2016 to advise on matters concerning the Debtor's asbestos-related issues.  Multiple attorneys were necessary in order to effectively (i) address the matters before the Court, including the Amended Asbestos Cost Sharing Agreement, issues with respect to a representative for future Asbestos Claims, insurer issues, and the continuing objection of the Asbestos Committee with respect to treatement under the Plan, and (ii) quickly respond to the needs of the Court and its inquiries concerning the foregoing.

### c. *Summer Associates and Interns*

60.    Proskauer did not bill time during the Interim Application Period for interns or summer associates.

61.    Proskauer submits that its services have rendered a significant benefit to the Debtor, its estate, creditors and other parties in interest.

62.    The experience and expertise in bankruptcy cases and the quality of the services brought to this case by Proskauer further supports the requested compensation.  Proskauer has charged the Debtor's estate the normal and customary hourly rates for similar services rendered

in like circumstances to other nonbankruptcy clients. The rates at which Proskauer seeks compensation are its standard and customary hourly rates charged for work, both bankruptcy and non-bankruptcy, performed for other clients. The rates are comparable to the rates charged by other practitioners of similar experience and competence.

63.     Proskauer submits that its hourly rates for the hours for which compensation is sought are reasonable and appropriate. The compensation request is well within an acceptable range for comparable legal services and is imminently fair given the efforts of Proskauer required in this case and the results achieved for the benefit of the Debtor's estate and its creditors.

## II.    Expenses Incurred by Proskauer During the Interim Application Period Were Reasonable and  Necessary

64.     Proskauer seeks reimbursement of actual, necessary expenses incurred in performing professional services during the Interim Application Period.

### a.  Airfare

65.     Proskauer generally does not bill airfare at a rate higher than the rate charged for travel in coach or economy class on the same or comparable flight.

### b.  Computerized Legal Research

66.     Proskauer bills the estate for computerized legal research based on rates established by third party computerized research providers and the actual use of such services by Proskauer professionals. While Proskauer pays a flat fee to its third party computerized research providers, Proskauer's usage impacts the flat fee that Proskauer pays.

### c.  Copying

67.     Proskauer bills in-house black and white copying and color copying at the rate of $.10 per page and $.20 per page, respectively.

48

### d. *Professional Services*

68.     Expenses categorized as "professional services" relate to services provided by outside vendors, including services related to expenses for CourtCall (telephonic appearances at hearings), obtaining hearing transcripts, and costs for services provided by Standard and Poor's.

### e. *Subscriptions*

69.     Expenses categorized as "subscriptions" during the Interim Application Period are costs for CourtAlert, a third party service which tracks developments and new filings on PACER in relevant cases.

70.     Proskauer respectfully submits that the actual expenses incurred in providing professional services during the Interim Application Period and billed to the Debtor were necessary, reasonable and justified under the circumstances to serve the needs of the Debtor in this chapter 11 case.

## III.   Services Rendered by Proskauer During the Final Application Period Were Reasonable and  Necessary

71.     The services provided by Proskauer during the Final Application Period brought the Debtor from the commencement of its Chapter 11 Case, through intense negotiations and trials among and between the Debtor, its insurers, TKNA, the UAW, and certain of the Debtor's creditors, to the confirmation and consummation of a plan of reorganization.  Among other things, the Plan establishes funds for holders of Asbestos Claims who obtain judgments against or settlements with the Debtor, and VEBAs to provide the Debtor's retirees with meaningful health care benefits far into the future.  The Plan would not have been possible without the Debtor's negotiation of the TKNA Settlement Agreement and Amended Asbestos Cost Sharing Agreement, each of which is a source of funding and/or preservation of the Debtor's assets. Proskauer's services during the Final Application Period were reasonable and contributed

49

substantially to confirmation and consummation of the Plan, including formulation of the Plan and Disclosure Statement, negotiations with TKNA and the Debtor's creditors, resolution of environmental claim, settlement of the Debtor's claims against Martinrea and TKNA.

72.      Indeed, with respect to all but the current Interim Application Period, this Court has already ruled that Proskauer's fees and expenses were reasonable and necessary in the Interim Orders.  Proskauer submits that the same is true with respect to the Interim Application Period.  Therefore, Proskauer respectfully submits that professional services rendered in during the Final Application Period and billed to the Debtor were necessary, reasonable and justified under the circumstances to serve the needs of the Debtor in the Chapter 11 Case, and the Court should approve them on a final basis.

## IV.  Expenses Incurred by Proskauer During the Final Application Period Were Reasonable and  Necessary

73.      Proskauer seeks reimbursement on a final basis of actual, necessary expenses incurred in performing professional services during the Final Application Period.  As with professional services rendered during the Final Application Period, this Court has already ruled that Proskauer's expenses were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtor in the Chapter 11 Case with respect to the periods covered by the Interim Orders.  Proskauer submits that the same is true with respect to the expenses for which reimbursement is sought in the current Interim Application Period, and therefore, the Court should approve the fees sought for reimbursement during the Final Application Period on a final basis.

*Additional Disclosures to Aid Fee Examiner*

74.    On August 12, 2016, the Fee Examiner requested additional information from all parties to be disclosed in their respective Applications.  In response thereto, Proskauer respectfully represents as follows:

a.    Proskauer increases the rates of its attorneys, paralegals, and other professionals on an annual basis on November 1 of each calendar year.  Since the commencement of the Chapter 11 Case, Proskauer has increased its rates twice to account for, among other things, increased professional experience and skill, and, with respect to partners, natural market forces.[25]  The increases were disclosed in Proskauer's previous interim fee applications.

b.    Proskauer estimates that if it had never altered its rates during the Chapter 11 Case, professional services rendered would have resulted in Proskauer seeking approval during the Final Application Period of an amount 3.5% less than that requested herein, or a total of $15,171,659.00.  This calculation, however, is derived without regard for associate class-year promotion toward senior counsel and partnership, and does not reflect the causes of rate increases mentioned above, including increased professional experience and skill of Proskauer's professionals that contributed to the success of the Debtor's Plan.  Therefore, Proskauer submits that its rates are fully supported by the *Johnson* factors and "lodestar" method.

c.    Pursuant to the terms of its court-approved engagement letter, the Debtor has reviewed, approved, and agreed to Proskauer's rate increases in advance.

---

[25] Annual rate increases based on associate promotion and matriculation to senior counsel and partnership were not included as rate increases.

      d.     Proskauer submits that its rates are in line with, if not below, comparable market rates in its district.  As evidence in support thereof, Proskauer has attached hereto as **Exhibit E** a copy of the most recently approved fee application of the debtors' counsel in the bankruptcy proceedings of Caesars Entertainment Operating Company, Inc., *et al.*,[26] currently proceeding before the Hon. A. Benjamin Goldgar in the United States Bankruptcy Court for the Northern District of Illinois.  By comparison, the hourly rates of Proskauer attorneys, paralegals, and other professionals are lower by, at times, hundreds of dollars an hour.  Accordingly, Proskauer submits that its rates are in accordance with or below comparable market rates.

### Method of Calculating Fees

75.     In preparing this Application, Proskauer calculated the amount of time spent by each attorney and paraprofessional in performing actual and necessary legal services for the Debtor's estate. The data came directly from computer printouts that are kept for each of Proskauer's clients. Time entries are recorded in daily logs or via computer. These entries are entered into the firm's computer system which produced the time records for this Application. Proskauer has reviewed the computer printouts for errors.

### Statement of Legal Services and Expenses
### Pursuant to 11 U.S.C. § 504 and Bankruptcy Rule 2016

76.     No agreement exists between Proskauer and any third person for the sharing of compensation received by Proskauer in this case, except as allowed by the exception set forth in section 504 of the Bankruptcy Code and Rule 2016 of the Bankruptcy Rules with respect to the sharing of compensation among members of Proskauer.

---

[26] Case No. 15-1145 (Bankr. N.D. Ill.).

77.     During the Interim Application Period, Proskauer has devoted 1,170.7 hours to representing the Debtor with respect to categories "A" through "L" above, and, in so doing, has provided the Debtor's estate with valuable and necessary legal services worth a total of $941,760.00 and has incurred expenses totaling $19,332.05.

## Notice

78.     In accordance with the Interim Compensation Order, notice of this Application has been given to: (a) The Office of the United States Trustee for the Northern District of Illinois; (b) the members of and counsel to the Retiree Committee; (c) counsel to the UAW, in its capacity as authorized representative of certain retiree creditors under section 1114 of the Bankruptcy Code; (d) counsel to the Asbestos Committee; (e) the Fee Examiner; (f) the United States Attorney for the Northern District of Illinois; (g) the Internal Revenue Service; (h) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtor may have environmental liabilities; (i) the Notice Parties (as defined in the Interim Compensation Order); and (j) the parties listed on the 2002 List. The Debtor submits that good and sufficient notice of this Application has been provided and no other or further notice need be provided.

WHEREFORE, Proskauer respectfully requests that the Court enter an order, substantially in the form submitted herewith: (a) granting this Application; (b) approving interim compensation in favor of Proskauer in the amount of $941,760.00 for actual, necessary and reasonable professional services rendered on behalf of the Debtor from April 1, 2016 through and including July 31, 2016; (c) approving interim reimbursement of expenses in favor of Proskauer in the amount of $19,332.05 for actual, necessary and reasonable expenses incurred on behalf of the Debtor from April 1, 2016 through and including July 31, 2016; (d) directing the

Debtor to pay to Proskauer $188,352.00, which is the difference between the amount allowed hereunder and the amounts previously paid to Proskauer; and (e) approving final compensation in favor of Proskauer in the amount of $15,730,407.75 for actual, necessary and reasonable professional services rendered on behalf of the Debtor from March 31, 2014 through and including July 31, 2016; (f) approving final reimbursement of expenses in favor of Proskauer in the amount of $678,109.15 for actual, necessary and reasonable expenses incurred on behalf of the Debtor from March 31, 2014 through and including July 31, 2016; (g) granting such other and further relief as the Court deems just.

Dated: August 29, 2016                    Respectfully submitted,

                                          **THE BUDD COMPANY, INC.**


                                          By: */s/ Jeff J. Marwil*_____
                                             One of Its Attorneys

                                          Jeff J. Marwil (IL #6194054)
                                          Jeremy T. Stillings (IL #6279868)
                                          Proskauer Rose LLP
                                          70 W. Madison St.
                                          Chicago, Illinois 60602-4342
                                          Telephone: (312) 962-3550
                                          Facsimile: (312) 962-3551

                                          *Counsel to the Debtor*