**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No.  14-11873 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |

**NOTICE OF HEARING ON THE SEVENTH INTERIM AND FINAL FEE
APPLICATION OF JENNER & BLOCK LLP FOR ALLOWANCE OF
COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL FOR
THE COMMITTEE OF EXECUTIVE & ADMINISTRATIVE RETIREES**

PLEASE TAKE NOTICE that on **Friday, October 21, 2016 at 1:30 p.m. CT**, or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Jack B. Schmetterer, United States Bankruptcy Judge, in Room 682 of the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"), 219 South Dearborn Street, Chicago, IL 60604, or any other Judge who may be sitting in his place and stead, and then and there present for hearing the *Seventh Interim and Final Fee Application of Jenner & Block LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Counsel for The Committee of Executive & Administrative Retirees* (the "Application"), a copy of which was served upon you on August 29, 2016 via the Court's ECF system and alternatively by first class mail or electronic mail.

**PLEASE TAKE FURTHER NOTICE** that objections to the Application must be in writing and filed with the Bankruptcy Court and served on undersigned counsel to the Retiree Committee and the office of the United States Trustee no later than October 14, 2016 at 4:00 p.m. (Central Time).

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in this case are available free of charge by visiting the case website maintained by Epiq Bankruptcy Solutions, LLC, notice and claims agent for this chapter 11 case, at http://dm.epiq11.com/Budd or by calling (646) 282-2400.  You also may obtain copies of any pleadings by visiting the Court's website at www.ilnb.uscourts.gov in accordance with the procedures and subject to the fees applicable thereto.

Dated: August 29, 2016                                    Respectfully submitted,

                                                                  JENNER & BLOCK LLP


                                                                  /s/ *Catherine L. Steege*
                                                                  Catherine Steege (06183529)
                                                                  Melissa M. Root (62882466)
                                                                  Landon S. Raiford (6297473)
                                                                  353 North Clark Street
                                                                  Chicago, IL 60654-3456
                                                                  Telephone:  (847) 583-1618
                                                                  Facsimile: (847) 583-1719

                                                                  Counsel to the Retiree Committee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No.  14-11873 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |
| | ) | |

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE
GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**SEVENTH INTERIM AND FINAL FEE APPLICATION**

| | |
|---|---|
| Name of Applicant: | Jenner & Block LLP |
| Name of Client: | The Budd Company, Inc. |
| Time Period covered by this Application (Final Fee Period): | May 6, 2014 through August 29, 2016 |
| Total Period covered by this Application (Seventh Interim Fee Period): | April 1, 2016 through August 29, 2016 |
| Total Compensation Sought in the Final Fee Period | $3,951,713.60 |
| Total Compensation Sought in the Seventh Interim Fee Period | $505,106.49 |
| Total Expenses Sought in the Final Fee Period: | $283,909.86 |
| Total Expenses Sought in the Seventh Interim Fee Period: | $37,234.44 |
| Authorized to Provide Services to: | The Committee of Executive & Administrative Retirees |
| Petition Date: | March 31, 2014 |
| Retention Date: | May 6, 2014 |
| Date of order approving employment: | May 20, 2014 |
| Total compensation approved by interim order to date: | $3,446,607.20 |
| Total expenses approved by interim order to date: | $246,742.70 |

| | |
|---|---|
| Blended rate for all attorneys during the Final Fee Period:[1] | $686.43 |
| Blended rate for all attorneys during the Final Fee Period: | $609.23 |
| Blended rate for all timekeepers during the Seventh Interim Fee Period: | $726.64 |
| Blended rate for all attorneys during the Seventh Interim Fee Period: | $769.93 |
| Compensation and expenses sought in this application for the Seventh Interim Fee Period already paid pursuant to a monthly compensation order but not yet allowed: | $348,311.00 |
| Number of professionals included in this application for the Final Fee Period: | 36 |
| Number of professionals included in this application for the Seventh Interim Fee Period: | 14 |
| If applicable, number of professionals in this application not included in staffing plan approved by client: | N/A |
| If applicable, difference between fees budgeted and compensation sought for the Seventh Interim Fee Period | $0.00 |
| Number of professionals billing fewer than 15 hours to the case during the Seventh Interim Fee Period: | 7 |
| Are any rates for the Seventh Interim Fee Period higher than those approved or disclosed at retention?  If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application: | Yes.<br><br>$443,080.99 (applying 15 percent discount) |

**This is an interim and final fee application.**

---

[1] Blended rates do not reflect Jenner's 15% discount.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No.  14-11873 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |
| | ) | |

**SEVENTH INTERIM AND FINAL FEE APPLICATION
OF JENNER & BLOCK LLP FOR ALLOWANCE OF
COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL FOR
THE COMMITTEE OF EXECUTIVE & ADMINISTRATIVE RETIREES**

Jenner & Block LLP ("Jenner"), counsel to the Committee of Executive & Administrative Retirees (the "Retiree Committee"), submits this seventh interim and final fee application (the "Final Fee Application"), pursuant to which it seeks: (a) final allowance and approval of compensation for professional services rendered to the Retiree Committee by Jenner in the amount of $3,951,713.60 for the periods from May 6, 2014 through July 31, 2014 (the "First Interim Fee Period"), from August 1, 2014 through November 30, 2014 (the "Second Interim Fee Period"), from December 1, 2014 through March 31, 2015 (the "Third Interim Fee Period"), from April 1, 2015 through July 31, 2015 (the "Fourth Interim Fee Period"), from August 1, 2015 through November 30, 2015 (the "Fifth Interim Fee Period"), from December 1, 2015 through March 31, 2016 (the "Sixth Interim Fee Period"), and from April 1, 2016 through August 29, 2016 (the "Seventh Interim Fee Period," and, together with the First Interim Fee Period, the Second Interim Fee Period, the Third Interim Fee Period, the Fourth Interim Fee Period, the Fifth Interim Fee Period, and the Sixth Interim Fee Period, the "Final Fee Period"); (b) reimbursement of actual and necessary expenses in the amount of $283,909.86 incurred by Jenner in rendering such services during the Final Fee Period; and (c) the release of all unpaid

amounts on account of fees withheld during the Final Fee Period in accordance with this Court's Order Establishing Professional Interim Compensation Procedures (the "Interim Compensation Order") (Dkt. No. 147).  In support of this Final Fee Application, Jenner respectfully states as follows:

## BACKGROUND

1.      On March 31, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code.

2.      On April 14, 2014, this Court entered an Order Directing the Appointment of a Retirees' Committee (Dkt. No. 61), and on April 30, 2014, the United States Trustee filed a Notice of Appointment of Committee of Executive and Administrative Retirees (the "Retiree Committee") (Dkt. No. 113).

3.      On May 9, 2014, this Court entered the Interim Compensation Order.

4.      On May 12, 2014, the Retiree Committee filed an application to retain Jenner as its counsel.  (Dkt. No. 158)  The retention application set forth the terms and conditions of Jenner's employment and compensation, and the source of compensation.  Specifically, the application stated that Jenner would seek compensation for attorneys' fees and paraprofessionals' fees and reimbursement of necessary and reasonable out-of-pocket expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Interim Compensation Order.

5.      On May 20, 2014, this Court entered the Order Authorizing the Employment and Retention of Jenner & Block LLP as Counsel for the Retiree Committee Pursuant to 11 U.S.C. §§ 1103(a) and 1114(b)(2) *effective as of* May 6, 2014. (Dkt. No. 180.)

6.      On July 25, 2014, this Court entered the Stipulation and Agreed Order with Respect to Appointment of an Independent Fee Examiner. (Dkt. No. 346.)

7.      On September 15, 2014, Jenner filed its First Interim Fee Application seeking allowance of compensation and reimbursement of expenses for the period from May 6, 2014 through July 31, 2014 in which it sought $702,293.01 (reflective of a 15 percent discount) in compensation and $17,531.82 in expenses.  (Dkt. No. 469.)  Following negotiations with the Fee Examiner, Jenner agreed to voluntarily reduce its request to $686,193.01 in compensation and $16,341.22 in expenses.  (Dkt. No. 527.)   On October 7, 2014, this Court entered an Order granting Jenner's request for compensation and reimbursement of expenses and awarding it $686,193.01 in compensation and $16,341.22 in expenses.  (Dkt. No. 549.)

8.      On January 20, 2015, Jenner filed its Second Interim Fee Application seeking allowance of compensation and reimbursement of expenses for the period from August 1, 2014 through November 30, 2014 in which it sought $832,861.42 (reflective of a 15 percent discount) in compensation and $68,031.09 in expenses.  (Dkt. No. 720.)  Following negotiations with the Fee Examiner, Jenner agreed to voluntarily reduce its request for expenses to $67,023.60—the Fee Examiner did not request a reduction in the amount of compensation.  (Dkt. No. 760.)  On February 23, 2015, this Court entered an Order granting Jenner's request for compensation and reimbursement of expenses and awarding it $832,861.42 in compensation and $67,023.60 in expenses.  (Dkt. No. 796.)

9.      On May 15, 2015, Jenner filed its Third Interim Fee Application seeking allowance of compensation and reimbursement of expenses for the period from December 1, 2014 through March 31, 2015 in which it sought $290,323.44 (reflective of a 15 percent discount) in compensation and $26,959.53 in expenses.  (Dkt. No. 880.)  Following negotiations with the Fee Examiner, Jenner agreed to voluntarily reduce its request for compensation by $1,762.00—the Fee Examiner did not request a reduction in the amount of expenses.  (Dkt.

No. 912.)   On July 2, 2015, this Court entered an Order granting Jenner's request for compensation and reimbursement of expenses and awarding it $288,561.44 in compensation and $26,959.53 in expenses.  (Dkt. No. 944.)

10.    On September 3, 2015, Jenner filed its Fourth Interim Fee Application seeking allowance of compensation and reimbursement of expenses for the period from April 1, 2015 through July 31, 2015 in which it sought $894,070.98 (reflective of a 15 percent discount) in compensation and $88,567.04 in expenses.  (Dkt. No. 1052.)  Following negotiations with the Fee Examiner, Jenner agreed to voluntarily reduce its request for expenses by $15,503.58—the Fee Examiner did not request a reduction in the amount of fees.  (Dkt. No. 1145.)  On December 28, 2015, this Court entered an Order granting Jenner's request for compensation and reimbursement of expenses and awarding it $894,070.98 in compensation and $73,063.66 in expenses.  (Dkt. No. 944.)

11.    On January 19, 2016, Jenner filed its Fifth Interim Fee Application seeking allowance of compensation and reimbursement of expenses for the period from August 1, 2015 through November 30, 2015 in which it sought $313,306.81 (reflective of a 15 percent discount) in compensation and $34,881.39 in expenses.  (Dkt. No. 1487.)  On May 10, 2016, this Court entered an Order granting Jenner's request for compensation and reimbursement of expenses and awarding it $312,156.77 in compensation and $34,814.11 in expenses.  (Dkt. No. 1814.)

12.    On May 16, 2016, Jenner filed its Sixth Interim Fee Application seeking allowance of compensation and reimbursement of expenses for the period from December 1, 2015 through March 31, 2016 in which it sought $431,613.60 (reflective of a 15 percent discount) in compensation and $29,283.59 in expenses.  (Dkt. No. 1833.)  On July 13, 2016 this Court entered an Order granting Jenner's request for compensation and reimbursement of

expenses and awarding it $431,613.60 in compensation and $28,473.30 in expenses.  (Dkt. No. 1929.)

13.     From the Petition Date until early September 2014, the primary focus of the Debtor's case and therefore of Jenner's efforts was the first proposed settlement between the Debtor and the Debtor's insider/parent ThyssenKrupp North America Inc. ("TKNA") and certain of its affiliates.  (*See* Dkt. No. 11.)  Given that the Debtor has no operating assets, and does not own any operating assets, ensuring that any settlement between the Debtor and TKNA and its affiliates was extremely important to the Retiree Committee particularly given that the Debtor's proposed settlement was significantly less than the Debtor's liabilities to its retirees.

14.     In early September 2014, the Debtor filed a statement with this Court advising the Court that it did not intend to ratify the settlement agreement because a document on which the settlement agreement was premised—a Tax Sharing Agreement—was not the correct document, and by not ratifying the settlement agreement the Debtor was preserving its potentially valuable rights under the correct tax sharing agreement.  (Dkt. No. 447.)

15.     As a result of that decision, the Retiree Committee's efforts turned to examining the newly identified tax sharing agreement as well as the Debtor's other potential claims and causes of action.  On October 2, 2014, the Retiree Committee, along with the UAW, filed a motion for a Bankruptcy Rule 2004 examination of certain persons and entities.  (Dkt. No. 531.) From October 2014 through July 2015, the Retiree Committee, along with the UAW, conducted a thorough investigation into potential claims the Debtor may be able to assert against TKNA, its affiliates, and other third parties.  That investigation not only investigated potential claims the Debtor considered prior to the Petition Date, but numerous other claims that the Debtor did not investigate.  For example, the Retiree Committee conducted a thorough investigation into the

2012 sale of the Debtor's last remaining asset—its 100% ownership interest in ThyssenKrupp

Waupaca ("Waupaca")—a foundry located in Wisconsin.

16.    Once that investigation concluded, the Retiree Committee's focus shifted to

attempting to negotiate a global resolution of those claims.  Those efforts proved fruitful and

eventually lead to a proposed settlement that forms the backbone of the Debtor's proposed plan

of reorganization, whose terms Jenner also negotiated with the Debtor.

17.    The reaching of the proposed settlement and the negotiation of the accompanying

plan of reorganization was not, however, the end of the matter.  For example, the UAW raised

various objections to both the proposed settlement and the plan of reorganization.  The UAW's

objections eventually led to extensive briefing over the Debtor's proposed settlement as well as

the Debtor's proposed plan and disclosure statement and eventually to a multi-day trial before

this Court concerning whether the Debtor's proposed plan satisfies §1114 of the Bankruptcy

Code.  Consequently, during the Final Fee Period, Jenner devoted significant time and resources

in representing the Retiree Committee in its support of the settlement and plan, including

Jenner's participation in the §1114 trial and its participation in drafting certain portions of the

proposed disclosure statement related to the retirees' treatment under the proposed plan.

Eventually, the UAW was able to reach a settlement with TKNA, which resolved the UAW's

objections.  (Bankr. Dkt. 1755; 1810).  That resolution allowed Jenner to focus its efforts on the

implementation of the Debtor's plan, including the establishment of a VEBA Trust that will

oversee the providing of retiree benefits to the Retiree Committee and its constituents upon

confirmation of the Debtor's plan.

18.    On June 27, 2016 (Bank. Dkt. 1913) this Court entered an Order confirming the

Debtor's plan.  Following the entry of the confirmation order, the Retiree Committee held

meetings in Philadelphia, Pennsylvania and Detroit, Michigan, at which Jenner, the Retiree Committee's actuaries, and representatives from Blue Cross Blue Shield of Michigan, the insurer providing benefits to beneficiaries of the VEBA Trust, presented on the status of the bankruptcy case, the establishment of the VEBA Trust, and the benefits changes going forward to the E&A Retirees.  Jenner also worked closely with the Retiree Committee's other retained professionals, Blue Cross Blue Shield of Michigan, and the VEBA Trust's plan administrator to prepare for an August 1, 2016 effective date, including meeting with the Retiree Committee in July 2016 to prepare the necessary documents for execution and to provide the Retiree Committee members, now the VEBA Trust board of trustees, with the training and information needed to transition into their new roles.  Following the effective date, Jenner has assisted the Retiree Committee with a number of transition and claims and plan administration matters.

19.      Jenner has prepared this Application in accordance with (i) the United States Trustee Guidelines for Reviewing Interim Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58), dated May 17, 1996, and the Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases, 78 Fed. Reg. No. 116. Page 36248 (June 17, 2013) (collectively, the "UST Guidelines"); (ii) Bankruptcy Code §§ 328, 329, 330, and 331; (iii) Rule 2016 of the Federal Rules of Bankruptcy Procedure; (iv) the Interim Compensation Order; and (v) Local Bankruptcy Rule 5082-1.  In addition, for expenses, and as requested by the Fee Examiner, Jenner has prepared this Application in accordance with Administrative Order Re: Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases dated June 20, 1991 (the "Original SDNY Guidelines") and the Amended Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 17, 2003 (the "Amended SDNY Guidelines," and together with the UST Guidelines, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, the "Guidelines").  To the extent necessary, Jenner requests a waiver for cause shown of any Guideline requirement not met by this Application.

20.      The fees charged by Jenner in this case are billed in accordance with its general 2014-2016 billing rates and procedures for legal services rendered and expenses incurred in the Final Fee Period and in accordance with its general 2014-2016 billing rates and procedures for legal services rendered and expenses incurred in the Final Fee Period.  The rates Jenner charges for the services rendered by its professionals and paraprofessionals to the Retiree Committee are the rates charged by the firm for professional and paraprofessional services rendered in comparable matters.  Jenner agreed with the Retiree Committee that it would discount its customary fees by 15% discount and the fees requested in this interim application reflect that discount.  Jenner's fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable cases in a competitive national legal market.  In accordance with the UST Guidelines, attached hereto as Exhibit A is a Customary and Comparable Compensation Disclosures With Fee Applications supporting the reasonableness of Jenner's fees.  None of Jenner's professionals included in the Application have varied their hourly rate based on the geographic location of the Debtor's bankruptcy case.

21.      All of the services for which compensation is sought were rendered to the Retiree Committee solely in connection with this case and not on behalf of any individual creditor or other person.

22.     Jenner has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

23.     Jenner has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the members, counsel and associates of the firm, or (b) any compensation another person or party has received or may receive.  No promises have been received by Jenner or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## RATE INCREASES DURING THE FINAL FEE PERIOD

24.     In response to the Fee Examiner's August 12, 2016 Memorandum regarding rate changes during the Final Fee Period, Jenner responds as follows: (a) Jenner's rates have increased on a yearly basis.  When Jenner was first retained, the rates in place were the 2014 rates.  Jenner's rates increased in 2015 and again in 2016; (b) had Jenner's 2014 rates been in place for the Final Fee Period, the aggregate amount of fees charged would be $3,779,704.35 after an application of the 15 percent discount.[2] (c) Jenner disclosed its rates to the Retiree Committee and sought approval for the filing of each Fee Petition; (d) Jenner's yearly rate increases are reasonable and in line with comparable market rates.  Jenner's rate increases were made following a thorough analysis of peer firms and market rates, including analysis and counsel from consultants retained by Jenner to evaluate Jenner's rates and determine whether increases are in line with market standards.  In general, Jenner's rates are lower than those charged by peer firms in comparable markets.

---

[2] This total does not reflect the voluntary reductions made by Jenner.

**SERVICES PROVIDED AND EXPENSES INCURRED**
**DURING THE SEVENTH INTERIM FEE PERIOD AND FINAL FEE PERIOD**

25.    The fees incurred during the Seventh Interim Fee Period reflect an aggregate of 817.80 hours of attorney and paraprofessional time spent and recorded in performing services for the Retiree Committee during the Seventh Interim Fee Period.  Of the aggregate time expended during the Seventh Interim Fee Period, 392.75 recorded hours were expended by partners, 349.75 recorded hours were expended by associates, 75.3 recorded hours were expended by paralegals and project assistants. During the Seventh Interim Fee Period, Jenner's hourly billing rates for attorneys working on these matters ranged from $675.00 to $975.00 per hour (before the 15% discount).  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

26.    The fees incurred during the Final Fee Period reflect an aggregate of 7,735.58 hours of attorney and paraprofessional time spent and recorded in performing services for the Retiree Committee during the Final Fee Period.  Of the aggregate time expended during the Final Fee Period, 3374.23 recorded hours were expended by partners, 2906.65 recorded hours were expended by associates, 1,454.70 recorded hours were expended by paralegals and project assistants. During the Final Fee Fee Period, Jenner's hourly billing rates for attorneys working on these matters ranged from $295.00 to $1,100.00 per hour (before the 15% discount).  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

27.    Pursuant to the Guidelines, annexed hereto as <u>Exhibit B</u> is a schedule setting forth all Jenner professionals and paraprofessionals who have performed services for the Retiree Committee during the Final Fee Period, the capacities in which each such individual is employed

10

by Jenner, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended in this matter and fees billed therefore, and as to lawyers, the year in which each professional was first licensed to practice law.  Exhibit B has been adjusted for and does not reflect Jenner's voluntary reductions for attorney and paraprofessional time that Jenner elected not to charge to the estate consisting of ½ of Jenner's travel plus miscellaneous time entries that were viewed to be duplicative.  In addition, Jenner has agreed to give this client a 15% discount which has resulted in a further reduction of $688,113.51 for all fees charged during the Final Fee Period.

28.     Annexed hereto as Exhibit C is a schedule specifying the categories of expenses for which Jenner is seeking reimbursement of during the Final Fee Period and the total amount for each such expense category; Exhibit C contains a list of all expenses for which Jenner seeks reimbursement.   Jenner maintains detailed records of the time spent by all attorneys and paraprofessionals and the expenses incurred in connection with its representation of the Retiree Committee.   Subject to redaction for the attorney-client privilege where necessary, copies of those detailed time records for expenses incurred during the Seventh Interim Fee Period are annexed hereto as Exhibit D; copies of those detailed time records for the expenses incurred during all prior fee periods are attached to Jenner's prior fee applications for each respective period.

29.     Exhibit E is a summary of all time spent by each attorney for all matters during the Final Fee Period.[3]

30.     Below is a summary of the amount of time spent by each attorney by matter during the Seventh Interim Fee Period.  The line items in this chart summary do not reflect the

---

[3] Exhibit E does not reflect Jenner's 15% discount.

fifteen percent discount Jenner has agreed to give the Retiree Committee; instead, the discount is

shown at the end of the chart.

| Matter description | Name | Rate Year | Billing Rate | Time | Amount |
|---|---|---|---|---|---|
| **CASE ADMINISTRATION - 10010** | | | | | |
| | **CATHERINE L. STEEGE** | 2016 | $975.00 | 1.30 | $1,267.50 |
| | **MELISSA M. ROOT** | 2016 | $735.00 | .60 | $441.00 |
| | **LANDON S. RAIFORD** | 2016 | $700.00 | 1.00 | $700.00 |
| | **TOI D. HOOKER** | 2016 | $340.00 | 4.40 | $1,496.00 |
| | **MARC A. PATTERSON** | 2016 | $210.00 | 5.90 | $1,239.00 |
| | **ANNETTE M. YOUNG** | 2016 | $210.00 | 2.30 | $483.00 |
| | | | | | |
| | | | **Total** | **15.50** | **$5,626.50** |
| | | | | | |
| **COMMITTEE GOVERNANCE AND ATTENDANCE AT MEETINGS - 10037** | | | | | |
| | **CATHERINE L. STEEGE** | 2016 | $975.00 | 44.60 | $43,485.00 |
| | **MELISSA M. ROOT** | 2016 | $735.00 | 26.9 | $19771.50 |
| | **SARAH E. HADDY** | 2016 | $675.00 | 19.20 | $12,960.00 |
| | | | **Total** | **90.70** | **$76,216.50** |

| EMPLOYEE BENEFITS (1114) | | | | | |
|---|---|---|---|---|---|
| | CATHERINE L. STEEGE | 2016 | $975.00 | 46.80 | $45,630.00 |
| | GAIL H. MORSE | 2016 | $800.00 | 2.30 | $1,840.00 |
| | MATTHEW J. RENAUD | 2016 | $875.00 | 22.70 | $19,862.50 |
| | S. TONY LING | 2016 | $790.00 | 5.80 | $4,582.00 |
| | RAYMOND D. SINNAPPAN | 2016 | $720.00 | 19.90 | $14,328.00 |
| | OLGA A. LOY | 2016 | $775.00 | 7.00 | $5,425.00 |
| | JEFFREY R. SHUMAN | 2016 | $775.00 | 1.60 | $1,240.00 |
| | MELISSA M. ROOT | 2016 | $735.00 | 38.70 | $28,444.50 |
| | LANDON S. RAIFORD | 2016 | $700.00 | 1.00 | $700.00 |
| | SARAH E. HADDY | 2016 | $675.00 | 325.80 | $219,915.00 |
| | TOI D. HOOKER | 2016 | $340.00 | .60 | $204.00 |
| | ANNETTE M. YOUNG | 2016 | $210.00 | .80 | $168.00 |
| | MARC A. PATTERSON | 2016 | $210.00 | 1.70 | $357.00 |
| | | | **Total** | **474.70** | **$342,696.00** |
| | | | | | |
| | | | | | |
| EMPLOYMENT AND FEE APPLICATIONS - 10053 | | | | | |
| | CATHERINE L. STEEGE | 2016 | $975.00 | 5.80 | $5,655.00 |
| | MELISSA M. ROOT | 2016 | $735.00 | 16.00 | $11,760.00 |
| | LANDON S. RAIFORD | 2016 | $700.00 | 6.30 | $4,410.00 |
| | TOI D. HOOKER | 2016 | $340.00 | 46.50 | $15,810.00 |
| | MARC A. PATTERSON | 2016 | $210.00 | 12.60 | $2,646.00 |
| | | | **Total** | **87.20** | **$40,281.00** |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

13

| | | | | | |
|---|---|---|---|---|---|
| **COMMUNICATIONS WITH RETIREES - 10096** | | | | | |
| | **CATHERINE L. STEEGE** | 2015 | $950.00 | 4.70 | $4,582.50 |
| | **MELISSA M. ROOT** | 2016 | $735.00 | 18.90 | $13,891.50 |
| | | | **Total** | **23.60** | **$18,474.00** |
| | | | | | |
| **NON-WORKING TRAVEL - 10100** | | | | | |
| | **CATHERINE L. STEEGE** | 2016 | $975.00 | 11.00 | $10,725.00 |
| | **MELISSA M. ROOT** | 2016 | $735.00 | 16.75 | $12,311.25 |
| | **SARAH E. HADDY** | 2016 | $675.00 | 4.75 | $3,206.25 |
| | | | **Total** | **32.50** | **$26,242.50** |
| | | | | | |
| **PLAN AND DISCLOSURE STATEMENT-10118** | | | | | |
| | **JOEL T. PELZ** | 2016 | $800.00 | .60 | $480.00 |
| | **CATHERINE L. STEEGE** | 2016 | $975.00 | 67.10 | $65,422.50 |
| | **MELISSA M. ROOT** | 2016 | $735.00 | 24.40 | $17,934.00 |
| | **LANDON S. RAIFORD** | 2016 | $700.00 | 1.00 | $700.00 |
| | **TOI D. HOOKER** | 2016 | $340.00 | .50 | $170.00 |
| | | | **Total** | **93.60** | **$84,706.50** |
| **Subtotal** | | | | | **594,243.00** |
| | | | | **Less 15% discount** | **$89,136.51** |
| **GRAND TOTAL** | | | | **817.80** | **$505,106.49** |

Attached as <u>Exhibit F</u> are the summaries of the amount of time spent by each attorney by matter during the Final Fee Period, organized by each interim fee period.  The line items in those summaries do not reflect the fifteen percent discount Jenner agreed to give the Retiree Committee or the voluntary reductions agreed to by Jenner; instead, the discount is shown at the end of the chart.

31.     To provide an orderly summary of the services rendered to the Retiree Committee by Jenner and in accordance with the Guidelines, Jenner has established numerous billing categories in connection with this case.  The following summary is intended to highlight the services rendered in each separate billing category and is not intended to be a comprehensive detailed description of the work performed.  Detailed descriptions of the day-to-day services provided and the time expended performing such services in each project billing category are attached as <u>Exhibit D</u> hereto and show that Jenner has been heavily involved in the performance of services for the Retiree Committee on a daily basis.

<b>REASONABLE AND NECESSARY SERVICES RENDERED BY
<u>JENNER &amp; BLOCK - CATEGORIZED BY MATTER</u></b>

32.     The primary professional services that Jenner rendered are described below:

33.     **Matter:  Case Administration
(Fees incurred: $73,777.50; Hours: 111.40 (Final Fee Period); $5,626.50
Hours: 15.50 (Seventh Interim Fee Period)).**

The time entries recorded in this category reflects general work done for the Retiree Committee.  They include: (a) reviewing miscellaneous pleadings and attending hearings and meetings related to those pleadings that do not fit into a more specific billing category; and (b) attending omnibus hearings.  This work was necessary (and therefore beneficial) because the Retiree Committee is charged with representing the retirees.  To do that job properly, the Retiree Committee must remain abreast of all matters happening in the case.  This matter is now

complete.  A more detailed description of the services provided in this category, the identify of

each individual who billed time to this category as well as the number of hours spent by each

individual and the compensation sought for those efforts is provided in <u>Exhibit D</u>.

34.     **Matter:  Committee Governance and Attendance at Meetings
        (Fees incurred: $387,267; Hours: 464.20 (Final Fee Period); $76,216.50;
        Hours: 90.70 (Seventh Interim Fee Period)).**

The time entries recorded in this category reflect work done to assist the Retiree

Committee in the proper performance of its duties.  Jenner has attended all of the meetings of the

Retiree Committee and has assisted the Retiree Committee in preparing agendas for those

meetings.  The Retiree Committee meets once a week telephonically to discuss the status of the

case and on-going issues in the case.  The Retiree Committee also meets more frequently when

necessary to address issues in the case.   This matter is now complete.   A more detailed

description of the services provided in this category, the identify of each individual who billed

time to this category as well as the number of hours spent by each individual and the

compensation sought for those efforts is provided in <u>Exhibit D</u>.

35.     **Matter: Employee Benefits
        (Fees incurred: $606,742.50; Hours: 829.80 (Final Fee Period); $342,696;
        Hours: 474.70 (Seventh Interim Fee Period)).**

After the Retiree Committee's settlement with the Debtor and the subsequent plan

effectuating that settlement was filed, the UAW brought an objection asserting that the Debtor's

plan violated §1114 of the Bankruptcy Code.  The UAW's contentions were challenged by both

the Debtor and the Retiree Committee and this Court held a multi-day trial on the issue.  Time in

this category primarily consists of Jenner's efforts responding to the UAW's objection and

preparing for and participating in the §1114 trial.  After the trial was commenced, the UAW

withdrew its objection due to a settlement agreement it reached with TKNA and its various

affiliates.  Jenner's efforts in this time category also have included time spent establishing the

VEBA trust that will oversee and provide the Debtor's non-union retiree's with their retiree benefits after the Debtor's plan of reorganization is approved.  As set forth in the Reservation below, this matter is ongoing.  A more detailed description of the services provided in this category, the identify of each individual who billed time to this category as well as the number of hours spent by each individual and the compensation sought for those efforts is provided in Exhibit D.

36. **Matter: Employment and Fee Applications**
**(Fees incurred: $249,395; Hours: 519.10 (Final Fee Period); $40,281; Hours: 87.20 (Seventh Interim Fee Period)).**

The time entries recorded in this category reflect time spent (a) preparing monthly fee statements for Jenner and assisting the Retiree Committee's other professionals with their monthly statements so that such statements would be in compliance with all requirements; (b) preparing Jenner's sixth and seventh interim fee applications and the Final Fee Application and assisting the Retiree Committee's other professionals with their sixth and seventh interim fee applications and final fee applications; and (c) responding to the Court's and the Fee Examiner's inquiries regarding the sixth interim fee application.  All of the work Jenner has billed under this category related to monthly fee statements is work that was performed because this is a bankruptcy case and was necessary to comply with the many guidelines applicable only in bankruptcy cases.  This matter is now complete.  A more detailed description of the services provided in this category, the identify of each individual who billed time to this category as well as the number of hours spent by each individual and the compensation sought for those efforts is provided in Exhibit D.

37.     **Matter: Litigation: Contested Matters and Adversary Proceedings (Fees incurred: $2,872,416.00; Hours: 5,174.2 (Final Fee Period); $0.00; Hours: 0.0 (Seventh Interim Fee Period)).**

The time entries recorded in this category reflect Jenner's efforts in connection with the Retiree Committee's investigation of potential claims the Debtor may possess against TKNA and other third parties.   Time in this category primarily constitutes of time spent preparing the complaints the Retiree Committee would bring on behalf of the Debtor's estate against these parties.  The present need to file the prepared complaints was alleviated when the relevant parties entered into a tolling agreement that has been approved by this Court.  However, because of the running of the statute of limitations time period, it was necessary to have complaints and related motions conferring standing on the Retiree Committee prepared to file.  This work was done in coordination with the Debtor.  This matter is now complete. A more detailed description of the services provided in this category, the identify of each individual who billed time to this category as well as the number of hours spent by each individual and the compensation sought for those efforts is provided in <u>Exhibit D</u>.

38.     **Matter:  Communications With Retirees (Fees incurred: $22,843; Hours: 28.80 (Final Fee Period); $18,474; Hours: 23.60 (Seventh Interim Fee Period)).**

The time entries recorded in this category reflect time spent responding to inquiries regarding case status form individual retirees.  This matter is now complete.  A more detailed description of the services provided in this category, the identify of each individual who billed time to this category as well as the number of hours spent by each individual and the compensation sought for those efforts is provided in <u>Exhibit D</u>.

39.   **Matter:  Plan and Disclosure Statement**
     **(Fees incurred: $312,116; Hours: 405 (Final Fee Period); $84,706.50; Hours: 93.60 (Seventh Interim Fee Period)).**

Time in this category reflects Jenner's efforts in negotiating, reviewing and editing the Debtor's proposed plan of reorganization as well as the subsequent amendment to the plan after Jenner had negotiated the settlement with TKNA.  In addition, time in this category includes Jenner's efforts responding to the various objections to the plan and disclosure statement put forth by the UAW as well as the Retiree Committee's efforts to negotiate a resolution of those objections with the UAW.  The time incurred in this category was critical to the Retiree Committee as the Debtor's plan of reorganization will govern how the Retiree's Committee's claims are treated in this bankruptcy case and the lynchpin of the Debtor's plan of reorganization is the TKNA settlement.  This matter is now complete.  A more detailed description of the services provided in this category, the identify of each individual who billed time to this category as well as the number of hours spent by each individual and the compensation sought for those efforts is provided in Exhibit D.

40.   **Matter:  Claims Administration**
     **(Fees incurred: $22,724.50; Hours: 40.70 (Final Fee Period); $0.0; Hours: 0.0 (Seventh Interim Fee Period)).**

The time entries recorded in this category reflect time reviewing proofs of claim and reviewing the Debtor's analysis of, and objections to, those claims.  This matter is now complete. A more detailed description of the services provided in this category, the identify of each individual who billed time to this category as well as the number of hours spent by each individual and the compensation sought for those efforts is provided in Exhibit D.

41. **Matter: Budgeting**
**(Fees incurred: $775; Hours: 1 (Final Fee Period); $0.0; Hours: 0.0 (Seventh Interim Fee Period)).**

The time entries recorded in this category reflect time spent preparing budgets and case management plans as required by the UST Guidelines.  This matter is now complete.  A more detailed description of the services provided in this category, the identify of each individual who billed time to this category as well as the number of hours spent by each individual and the compensation sought for those efforts is provided in Exhibit D.

42. **Matter:  Non-Working Travel Time**
**(Fees incurred: $117,162.75; Hours: 144.68 (Final Fee Period); $26,242.50; Hours: 32.50 (Seventh Interim Fee Period)).**

The time entries recorded in this category reflect time spent traveling to several in-person meetings with the Retiree Committee in Detroit, Michigan, as well as time spent traveling to meetings among the E&A Retirees in Detroit, Michigan and Philadelphia, Pennsylvania following confirmation of the plan.  Time in this category is billed at fifty percent of the time incurred.  Thus, the 32.50 hours already represents a fifty percent reduction in time.  Time in this category was necessary and beneficial to the estate as it consists of time spent keeping the Retiree Committee informed of the major developments in the case and ensuring that the Retiree Committee's interests are being protected.  This matter is now complete.  A more detailed description of the services provided in this category, the identify of each individual who billed time to this category as well as the number of hours spent by each individual and the compensation sought for those efforts is provided in Exhibit D.

43. The foregoing professional services performed by Jenner were necessary and appropriate to the Retiree Committee's role in this case and it was in the best interest of the Retiree Committee that Jenner performed these services.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the

problems, issues, or tasks involved.  Jenner has taken significant efforts to ensure that the professional services were performed with expedience and in an efficient manner and without duplication of effort.

44.     In preparing this Application, Jenner calculated the amount of time spent by each attorney and paralegal in performing actual and necessary legal services for the Retiree Committee.  That data came directly from computerized records that are kept for each Jenner client.  Individual time entries are maintained on written daily logs, personal computer hard drives or inputted directly into the firm's central client accounting and billing system.  All time entries and expenses are uploaded into the billing system, which then produces draft client billing memoranda and invoices.  Jenner attorneys have reviewed and edited the draft invoices and billing memoranda for errors prior to their submission.

45.     Jenner adjusts its rates annually at the start of each calendar year.  The rates used in this Application and throughout Final Fee Period are Jenner's 2014 rates for services rendered in 2014, Jenner's 2015 rates for services rendered in 2015, and Jenner's 2016 rates for services rendered in 2016, and in all instances are the customary and usual rates which Jenner charges clients on matters of this type.

46.     Jenner seeks allowance herein of reasonable compensation for actual and necessary professional services rendered to the Retiree Committee during the Final Fee Period, in the amount of $3,951,713.60 and $283,909.86 for reimbursement of actual, reasonable and necessary expenses incurred during the Final Fee Period in connection with the rendition of such services in the aggregate amount of $4,235,623.46.

47.     Within the Seventh Interim Fee Period, Jenner seeks allowance herein of reasonable compensation for actual and necessary professional services rendered to the Retiree

Committee during the Seventh Interim Fee Period, in the amount of $505,106.49 and $37,234.44 for reimbursement of actual, reasonable and necessary expenses incurred during the Final Fee Period in connection with the rendition of such services in the aggregate amount of $542,340.93.

48.    Jenner prepared a proposed budget for Jenner's estimated fees during the Seventh Interim Fee Period as well as a staffing plan.  A copy of the budget and staffing plan is attached hereto as Exhibit G.  In the budget, Jenner estimated that it would incur fees of $634,825.00. During the Seventh Interim Fee Period, Jenner incurred fees in the amount of $594,243.00 (before applying the 15 percent discount).  Attached hereto as Exhibit H is a summary of the fees and hours budgeted by Jenner as compared to the fees and hours actually billed for each project category.  As shown in Exhibit G and Exhibit H, Jenner came in under budget.

49.    In the staffing plan, Jenner estimated that 15 professionals and paraprofessionals would work on matters during the Seventh Interim Fee Period.  Jenner was able to complete its work for the Retiree Committee in accordance with the staffing plan with 14 professionals billing time on behalf of the Retiree Committee.

50.    The disbursements for which Jenner seeks reimbursement are the customary and usual expenses for which Jenner seeks reimbursement from its clients.  It is Jenner's policy to charge all of its clients for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is Jenner's policy to charge its client only the amount actually incurred by Jenner in connection with such items.   Examples of such expenses are postage, Lexis and Westlaw research,[4] overnight mail, courier delivery, transportation, airfare, meals, and lodging.  Jenner only charges

---

[4] Computer assisted legal research is used whenever the researcher determines that using Westlaw or Lexis Nexis is more cost effective than using traditional (non-computer assisted legal research) techniques.  Jenner bills each client for the Lexis and Westlaw charges actually incurred on behalf of such client.  Jenner does not prorate these charges over all clients so that each client is paying only for the Lexis and Westlaw charges incurred by that client.

for overseas or out-of-the-country long distance telephone calls.  Jenner does not charge for facsimile transmissions.  Jenner's standard charges for scanning and document reproduction range from $.08 per page for scanning, to $.11 per page for black and white reproductions, to $.25 per page for color reproductions.  These charges are recorded and captured automatically by the various systems used by Jenner personnel to scan and reproduce paper documents.

51.     Jenner's expense request includes "Litigation Support Vendor (Relativity database fees)" expenses (the "<u>Database Expenses</u>".)  The Database Expenses relate to the storage and hosting fees charged by Advanced Discovery, a discovery vendor, to maintain a Relativity database containing the more than hundred thousand documents produced by the Debtor, TKNA, and third party discovery targets.  As is typical in large cases such as this one, the parties produced the vast majority of documents in electronic form.  The volume of documents produced in this case is too great to store and efficiently review them on any attorney's individual computer.  Accordingly, and consistent with standard large litigation practices, Jenner engaged the services of Advanced Discovery to manage the document production.  Advanced Discovery does so by hosting the data on a Relativity database, which allows for efficient attorney review of the documents.  Advanced Discovery offers competitive pricing and has worked with Jenner and other law firms in cases of similar magnitude.  Advanced Discovery invoices Jenner on a monthly basis for its services, which include maintaining and storing the electronic data, processing and loading new data as documents are produced, and managing the data, including identifying duplicate documents, creating targeted searches of documents, and coding documents following attorney review.  The services provided by Advanced Discovery allow for the most efficient possible review of the documents produced

in this case and this cost is far less expensive than if the firm tried to replicate these services in-house.

52.     To minimize the data management storage and hosting fees to the estate, Jenner agreed to share the Relativity database with the professionals representing the UAW, Cleary Gottlieb and Millstein.  Absent this agreement, Cleary Gottlieb would have had to engage its own vendor to provide these services, at significant additional cost to the estate.  Although Jenner's client, the Retiree Committee, entered into a settlement agreement with TKNA and the Debtor in November 2015, it would be imprudent for Jenner to terminate the services of Advanced Discovery at this time.  To the extent the UAW elects to pursue certain causes of action reserved to it in the proposed settlement agreement, Jenner will work with Cleary Gottlieb and Advanced Discovery to transfer primary responsibility of the Relativity database from Jenner to Cleary Gottlieb.

53.     Section 331 of the Bankruptcy Code provides for compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an Examiner, trustee under Chapter 11, or professional person, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
>
> > (A)     the time spent on such services;
> >
> > (B)     the rates charged for such services;
> >
> > (C)     whether the services were necessary to the administration of, or beneficial at the time at which the

service was rendered toward the completion of, a case under this title;

    (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and;

    (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3).

54.    Jenner respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, necessary for and beneficial to the administration of the Debtor's estate.  Jenner further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided to the Retiree Committee.

55.    The services rendered by Jenner were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Accordingly, approval of the compensation sought herein is warranted.

## **RESERVATION REGARDING SUPPLEMENT TO FINAL FEE APPLICATION**

56.    Jenner has worked diligently to conclude all work relating to the Retiree Committee representation by August 29, 2016.  However, as of the date of this Final Fee Application, Jenner has requested, but has not received, certain information from the Debtors necessary in connection with the transition of benefits from the Debtor's plan to the E&A VEBA.  In addition, the Court has requested that Jenner appear at an October 2016 status hearing to report on letters sent to two individuals regarding certain benefits determinations.  Finally,

while Jenner has completed most of the tasks necessary to establish the E&A VEBA, a small amount of additional work is still required to complete the set-up which per the terms of the TKNA Settlement Agreement is payable by the estate.  Accordingly, Jenner reserves its right to submit a supplement to this Final Fee Application.

### NOTICE

33.     Notice of this Application has been provided to parties in interest in accordance with the Interim Compensation Order.

### CONCLUSION

WHEREFORE Jenner respectfully requests: (i) allowance of interim compensation to Jenner for services rendered during the Seventh Interim Fee Period in the amount of $505,106.49 and $37,234.44 for reimbursement of actual, reasonable and necessary expenses incurred during the Seventh Interim Fee Period in connection with the rendition of such services in the aggregate amount of $542,340.93; (ii) allowance of final compensation to Jenner for services rendered during the Final Fee Period in the amount of $3,951,713.60  and $283,909.86 for reimbursement of actual, reasonable and necessary expenses incurred during the Final Fee Period; and (iii) such other relief as may be just or proper.

Dated:      August 29, 2016                    Respectfully submitted,

                                               JENNER & BLOCK LLP


                                               */s/ Catherine L. Steege*
                                               Catherine Steege (06183529)
                                               Melissa M. Root (62882466)
                                               Landon S. Raiford (6297473)
                                               353 North Clark Street
                                               Chicago, Illinois 60654-3456
                                               Telephone: (312) 222-9350
                                               Facsimile: (312) 527-0484


                                               *Counsel to the Retiree Committee*