**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No.  14-11873 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |

**NOTICE OF HEARING ON THE SEVENTH INTERIM AND FINAL FEE
APPLICATION OF SOLIC CAPITAL ADVISORS, LLC FOR ALLOWANCE OF
COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES INCURRED AS FINANCIAL ADVISOR FOR THE COMMITTEE OF
EXECUTIVE & ADMINISTRATIVE RETIREES FOR THE PERIOD**

PLEASE TAKE NOTICE that on **October 21, 2016 at 1:30 p.m. CT**, or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Jack B. Schmetterer, United States Bankruptcy Judge, in Room 682 of the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"), 219 South Dearborn Street, Chicago, IL 60604, or any other Judge who may be sitting in his place and stead, and then and there present for hearing the *Seventh  Interim and Final Fee Application of  SOLIC Capital Advisors, LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Financial Advisor for the Committee of Executive & Administrative Retiree*  (the "Application"), a copy of which was served upon you on August 29, 2016 via the Court's ECF system and alternatively by first class mail or electronic mail.

**PLEASE TAKE FURTHER NOTICE** that objections to the Application must be in writing and filed with the Bankruptcy Court and served on undersigned counsel to the Retiree Committee and the office of the United States Trustee no later than October 14, 2016 at 4:00 p.m. (Central Time).

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in this case are available free of charge by visiting the case website maintained by Epiq Bankruptcy Solutions, LLC, notice and claims agent for this chapter 11 case, at http://dm.epiq11.com/Budd or by calling (646) 282-2400.  You also may obtain copies of any pleadings by visiting the Court's website at www.ilnb.uscourts.gov in accordance with the procedures and subject to the fees applicable thereto.

Dated: August 29, 2016                    Respectfully submitted,

                                          JENNER & BLOCK LLP


                                          /s/ *Catherine L. Steege*
                                          Catherine Steege (06183529)
                                          Melissa M. Root (62882466)
                                          Landon S. Raiford (6297473)
                                          353 North Clark Street
                                          Chicago, IL 60654-3456
                                          Telephone:  (847) 583-1618
                                          Facsimile: (847) 583-1719

                                          Counsel to the Retiree Committee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE BUDD COMPANY, INC., | ) Case No.  14-11873 |
| | ) |
| Debtor. | ) Hon. Jack B. Schmetterer |
| | ) |

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE
GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**SEVENTH INTERIM AND FINAL FEE APPLICATION**

| | |
|---|---|
| **Name of Applicant:** | SOLIC Capital Advisors, LLC |
| **Name of Client:** | The Budd Company, Inc. |
| **Total Period covered by this Application (Final Fee Period):** | May 9, 2014 through August 29, 2016 |
| **Interim Period Covered by this Application (Seventh Interim Fee Period)** | April 1, 2016 through August 29, 2016 |
| **Total Compensation Sought in Final Fee Period** | $4,011,290.03 |
| **Total Compensation Sought in Seventh Interim Fee Period** | $600,000.00 |
| **Total Expenses Sought in Final Fee Period** | $58,473.00 |
| **Total Expenses Sought in Seventh Interim Fee Period** | $5,039.77 |
| **Authorized to Provide Services to:** | The Committee of Executive & Administrative Retirees |
| **Petition Date:** | March 31, 2014 |
| **Retention Date:** | May 9, 2014 |
| **Date of Order Approving Employment** | June 17, 2014 |
| **Total compensation approved by interim order to date:** | $3,351,290.03 |
| **Total expenses approved by interim order to date:** | $53,433.23 |
| | |

**This is an interim and final fee application.**

**SOLIC Capital Advisors, LLC**
**Reconciliation of Fees and Expenses**

|  | Fees | Expenses | Total |
|---|---|---|---|
| **Approved to date** | $3,351,290.03 | $53,433.23 | $3,404,723.26 |
| **Holdback from 2nd Fee Application**[1] | 60,000.00 | 0.00 | 60,000.00 |
| **7th Interim Fee Application** | 600,000.00 | 5,039.77 | 605,039.77 |
| **Total** | **$4,011,290.03** | **$58,473.00** | **$4,069,763.03** |

[1]During the Second Interim Fee Application Period, SOLIC agreed with the Fee Examiner to a temporary 50% reduction in the payment of the holdback fees and SOLIC agreed to this temporary withholding subject to a further review and reassessment at the end of the case.

## **Summary of Seventh Interim and Prior Fee Applications**

| Seventh Interim Application Period | Fees | Expenses | Payment Received | Amount Due (Holdback) |
|---|---|---|---|---|
| 04/01/2016 - 04/30/2016 | $150,000.00 | $2,763.22 | $122,763.22 | $30,000.00 |
| 05/01/2016 - 05/31/2016 | $150,000.00 | $0.00 | $120,000.00 | $30,000.00 |
| 06/01/2016 - 06/30/2016 | $150,000.00 | $706.14 | $120,706.14 | $30,000.00 |
| 07/01/2016 - 07/31/2016 | $150,000.00 | $1,570.41 | $120,000.00 | $31,570.41 |
| **Total - Seventh Interim Application Period** | **$600,000.00** | **$5,039.77** | **$483,469.36** | **$121,570.41** |
| | | | | |
| Sixth Interim Application Period | $600,000.00 | $11,486.30 | $611,486.30 | $0.00 |
| Fifth Interim Application Period | $600,000.00 | $11,921.34 | $611,921.34 | $0.00 |
| Fourth Interim Application Period | $600,000.00 | $8,925.20 | $608,925.20 | $0.00 |
| Third Interim Application Period | $600,000.00 | $4,335.74 | $604,335.74 | $0.00 |
| Second Interim Application Period | $600,000.00 | $8,738.69 | $548,738.69 | $60,000.00 |
| First Interim Application Period | $411,290.03 | $8,025.96 | $419,315.99 | $0.00 |
| **Cumulative Fees - Grand Total** | **$4,011,290.03** | **$58,473.00** | **$3,888,192.62** | **$181,570.41** |

**Summary of Time Recorded in Connection With the Provision of Services to the
Retiree Committee for the Seventh Interim Fee Period:**

| Period Covered: April 1, 2016 to April 30, 2016 | | |
|---|---|---|
| **Professional** | **Title** | **Hours** |
| Neil Luria | Senior Managing Director | 34.5 |
| Raoul Nowitz | Managing Director | 138.0 |
| Joseph Oriti | Vice President | 34.5 |
| Hayes Parker | Associate | 1.0 |
| **Total** | | **208.0** |

| Period Covered: May 1, 2016 to May 31, 2016 | | |
|---|---|---|
| **Professional** | **Title** | **Hours** |
| Neil Luria | Senior Managing Director | 26.5 |
| Raoul Nowitz | Managing Director | 105.0 |
| Joseph Oriti | Vice President | 30.0 |
| Joseph Kiessig | Senior Associate | 87.0 |
| **Total** | | **248.5** |

| Period Covered: June 1, 2016 to June 30, 2016 | | |
|---|---|---|
| **Professional** | **Title** | **Hours** |
| Neil Luria | Senior Managing Director | 29.5 |
| Raoul Nowitz | Managing Director | 122.0 |
| Joseph Kiessig | Senior Associate | 64.0 |
| **Total** | | **215.5** |

| Period Covered: July 1, 2016 to July 31, 2016 | | |
|---|---|---|
| **Professional** | **Title** | **Hours** |
| Neil Luria | Senior Managing Director | 32.0 |
| Raoul Nowitz | Managing Director | 112.0 |
| Joseph Kiessig | Senior Associate | 66.0 |
| **Total** | | **210.0** |

| **Grand Total (April 1, 2016 – August 29, 2016)** | **882.0** |
|---|---|

## Cumulative Time by Category for Seventh Interim Fee Period

| Category | Hours by SOLIC Capital Advisors, LLC Professional | | | | | |
|---|---|---|---|---|---|---|
| | N. Luria | R. Nowitz | J. Oriti | J. Kiessig | H. Parker | Total |
| Attention to E&A Claim Settlement Matters | 89.5 | 429.0 | 23.5 | 215.0 | 0.0 | 757.0 |
| Bankruptcy Administration | 0.0 | 4.0 | 0.0 | 2.0 | 1.0 | 7.0 |
| E&A Committee Meeting Attendance and Communication | 20.0 | 23.0 | 9.0 | 0.0 | 0.0 | 52.0 |
| Fee Statements & Applications | 3.0 | 5.0 | 24.0 | 0.0 | 0.0 | 32.0 |
| Non-Working Travel Time | 10.0 | 16.0 | 8.0 | 0.0 | 0.0 | 34.0 |
| **Total** | **122.5** | **477.0** | **64.5** | **217.0** | **1.0** | **882.0** |

**Summary of Time Recorded in Connection With the Provision of Services to the Retiree Committee from the Inception of the**
**First Interim Fee Period through the Seventh Interim and Final Fee Period:**

| Period Covered: May 9, 2014 to July 31, 2016 | | |
|---|---|---|
| **Professional** | **Title** | **Hours** |
| Neil Luria | Senior Managing Director | 850.5 |
| Raoul Nowitz | Managing Director | 2,663.0 |
| James Paskell | Managing Director | 431.0 |
| Joseph Oriti | Vice President | 2,006.5 |
| Paul Hogan | Vice President | 2.0 |
| Matthew Cumbee | Senior Associate | 28.0 |
| Joseph Kiessig | Senior Associate | 217.0 |
| John-Francis Kraemer | Senior Associate | 2.0 |
| Connor Casas | Associate | 25.0 |
| Christopher Kennedy | Associate | 31.0 |
| Hayes Parker | Associate | 52.0 |
| Jean-Marie Freise | Administrative Assistant | 4.0 |
| Jacquelyn Hester | Administrative Assistant | 13.0 |
| **Total** | | **6,325.0** |

**Expense Summary**

**For the Period May 9, 2014 through August 29, 2016**

| Expenses | Amount |
|---|---|
| Airfare | $33,284.08 |
| Ground Transportation | $7,329.72 |
| Hotel and Lodging | $14,376.21 |
| Out of Town Meals | $2,177.44 |
| Office - FedEx & Printing Charges | $535.09 |
| US Mileage | $1,008.57 |
| Telephone/Fax/Internet | $35.49 |
| Cumulative Fee Examiner Adjustments | $(273.60) |

| **TOTAL** | **$58,473.00** |
|---|---|

**Expense Summary**

**For the Period April 1, 2016 through August 29, 2016**

| EXPENSES | AMOUNT |
|---|---|
| Airfare | $2,696.50 |
| Ground Transportation | $646.11 |
| Hotel & Lodging | $1,324.42 |
| Out of Town Meals | $66.05 |
| Total Office - FedEx & Printing Charges | $273.21 |
| US Mileage | $33.48 |

| **TOTAL DISBURSEMENTS** | **$5,039.77** |
|---|---|

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No.  14-11873 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |
| | ) | |

**SEVENTH INTERIM & FINAL FEE APPLICATION OF**
**SOLIC CAPITAL ADVISORS, LLC FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**
**INCURRED AS FINANCIAL ADVISOR FOR THE COMMITTEE OF EXECUTIVE &**
**ADMINISTRATIVE RETIREES**

SOLIC Capital Advisors, LLC ("SOLIC"), financial advisor to the Committee of Executive

& Administrative Retirees (the "Retiree Committee" or the "E&A Committee"), for its seventh

interim and final application (the "Application"), pursuant to §§ 328 and 331 of title 11, of the

United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and this Court's Order Establishing Professional Interim

Compensation Procedures (the "Interim Compensation Order") (Dkt. No. 147) seeks: (a)  final

allowance and approval of compensation for professional services rendered to the Retiree

Committee performed by SOLIC in the amount of $4,011,290.03  for the periods from May 6,

2014 through July 31, 2014 (the "First Interim Fee Period"), from August 1, 2014 through

November 30, 2014 (the "Second Interim Fee Period"), from December 1, 2014 through March

31, 2015 (the "Third Interim Fee Period"), from April 1, 2015 through July 31, 2015 (the "Fourth

Interim Fee Period"), from August 1, 2015 through November 30, 2015 (the "Fifth Interim Fee

Period"), from December 1, 2015 through March 31, 2016 (the "Sixth Interim Fee Period"), and

from April 1, 2016 through August 29, 2016 (the "Seventh Interim Fee Period," and, together with

the First Interim Fee Period, the Second Interim Fee Period, the Third Interim Fee Period, the

Fourth Interim Fee Period, the Fifth Interim Fee Period, and the Sixth Interim Fee Period, the

"Final Fee Period");(b) reimbursement of actual and necessary expenses in the amount of

$58,473.00 incurred by SOLIC in rendering such services during the Final Fee Period; and (c) the

release of all unpaid amounts on account of fees withheld during the Final Fee Period.   In further

support of this Final Fee application, SOLIC respectfully states as follows[1]:

## **BACKGROUND**

1.      On March 31, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under the Bankruptcy Code.

2.      On April 14, 2014, this Court entered an Order Directing the Appointment of a

Retirees' Committee (Dkt. No. 61), and on April 30, 2014, the United States Trustee filed a Notice

of Appointment of Committee of Executive and Administrative Retirees (the Retiree Committee)

(Dkt. No. 113).

3.      On May 9, 2014, this Court entered the Interim Compensation Order.  In particular,

the Interim Compensation Order provides that professionals may serve a monthly fee statement on

the Notice Parties (as defined in the Interim Compensation Order) and that, if no objection is timely

raised thereto, the Debtor shall pay such professionals an amount equal to eighty percent (80%) of

the fees and one hundred percent (100%) of the expenses requested in such monthly fee statement.

As further detailed herein, SOLIC has served monthly fee statements for the months of April 2016

---

[1] Exhibits B, C, and D attached hereto are SOLIC's monthly fee statements, out-of-pocket
expenses detail and summary description of service by timekeeper, respectively.  Exhibit E
attached hereto contains the previous interim fee applications and orders approving those
applications.

through July 2016, and no party has objected to the fees or expenses contained SOLIC's monthly fee statements.

4.     On May 20, 2014, this Court entered the Order Authorizing the Employment and Retention of Jenner & Block LLP as Counsel for the Retiree Committee pursuant to 11 U.S.C. §§ 1103(a) and 1114(b)(2) nunc pro tunc to May 6, 2014 (Dkt. No. 180).

5.     On June 2, 2014, the Retiree Committee filed an application to retain SOLIC as its financial advisor (Dkt. No. 190).  The retention application set forth the terms and conditions of SOLIC's employment and compensation, and the source of compensation.  Specifically, the application stated that SOLIC would seek compensation for financial advisory fees and reimbursement of necessary and reasonable out-of-pocket expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Interim Compensation Order.

6.     On June 17, 2014, this Court entered the Order Authorizing the Employment and Retention of SOLIC Capital Advisors, LLC as Financial Advisor for the Retiree Committee Pursuant to 11 U.S.C. §§ 1103(a) and 1114(b)(2) *nunc pro tunc* to May 9, 2014 (Dkt. No. 237).

7.     On July 25, 2014, this Court entered the Stipulation and Agreed Order with Respect to Appointment of an Independent Fee Examiner. (Dkt. No. 346).

8.     Since SOLIC's retention, the primary focus of the Debtor's case and therefore of SOLIC's extensive efforts has been directed towards (i) initially a potential proposed settlement between the Debtor and the Debtor's affiliates (*see* Dkt. 11), (ii) investigating potential sources of recovery for the Debtor's stakeholders, (iii) assisting in negotiations of a settlement amongst

various parties to maximize recovery to retiree committee's stakeholder and (iv) reviewing the issues related to the foregoing with the Retiree Committee and the Retiree Committee's Advisors. During the Seventh Interim Fee Period, SOLIC as directed by Counsel and the Retiree Committee, prepared a number of financial analyses and presentations including, but not limited to, a review of cash status including sources and uses of cash, a cash projection analysis to the effective date and sensitivities that included a review of the Debtor's key assumptions pertaining to same, a potential cash recovery analysis with a variety of sensitivities of possible outcomes to the end of the Bankruptcy case an analysis relating to the appointment of an investment advisor to assist the Retiree Committee in the post-effective date period.  During the Final Fee Period, SOLIC's role was extensive in addressing key elements pertaining to maximizing recoveries for the E&A Committee that included participating in negotiations with the Debtor regarding the TKNA settlement that was included in the Chapter 11 Plan and Disclosure statement, on 1114 motion matters where SOLIC was sought to testify as a fact witness on various elements of negotiations, the development of key analyses pertaining to elements of settlement discussions, and the development of key presentations as requested by or required for the Retiree Committee.  SOLIC also advised the Retiree Committee and worked with the Debtor's professionals regarding the Chapter 11 Plan and Disclosure statement, settlement with TKNA, Retiree Committee's potential claims against the Debtor's estate, and the analysis of options for retiree benefit plan post-confirmation of the Plan.

9.     The fees charged by SOLIC in this case were billed as a flat monthly amount of $150,000 (the "Monthly Fee"). It should be noted that in light of the nature of this engagement, SOLIC has offered its services to the Retiree Committee at a rate substantially below the rate that SOLIC typically charges. SOLIC routinely also receives a contingent amount payable upon the

occurrence of certain events or outcomes related to the services it provides its clients; however, in light of the nature of this engagement, it is not currently seeking approval of any additional contingent fees.

10.     All of the services for which compensation is sought were rendered to the Retiree Committee solely in connection with this case and not on behalf of any individual creditor or other person.

11.     SOLIC has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

12.     SOLIC has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the members, counsel, employees and associates of the firm, or (b) any compensation another person or party has received or may receive. No promises have been received by SOLIC or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

13.     SOLIC seeks allowance herein of reasonable compensation for actual and necessary professional services rendered to the Retiree Committee during the Seventh Interim Fee Period, in the amount of $600,000.00 and for reimbursement of actual, reasonable and necessary expenses incurred during the Seventh Interim Compensation Period in connection with the rendition of such services in the aggregate amount of $5,039.77.   SOLIC also seeks allowance herein of reasonable compensation for actual and necessary professional services rendered to the Retiree Committee during the Final Fee Period, in the amount of $4,011,290.03 and for reimbursement of actual, reasonable and necessary expenses incurred during the Final Fee Period

in connection with the rendition of such services in the aggregate amount of $58,473.00. Further, SOLIC seeks allowance herein of $60,000.00 representing the remaining holdback from SOLIC's Second Interim Fee Application.   SOLIC believes that its contribution to the case and the success of outcomes in favor of the Retiree Committee, plus the aggregate hours incurred by SOLIC provide strong justification for receipt of the remaining Second Interim Fee Application holdback of $60,000.00.

## SERVICES PROVIDED AND EXPENSES
## INCURRED DURING THE FIRST INTERIM THROUGH TO THE SIXTH INTERIM
## FEE PERIOD

14.     The fees incurred during the First Interim Compensation Period through to the Sixth Interim Compensation period reflect an aggregate of 5,443 hours of financial advisor time spent and recorded in performing services for the Retiree Committee during the First Interim Compensation Period through to the Sixth Interim Compensation Period.  Of the aggregate time expended during the First Interim Compensation Period through to the Sixth Interim Compensation, 728.0 recorded hours were expended by senior managing directors, 2,214.0 recorded hours were expended by managing directors, and 2,501.0 recorded hours were expended by vice-presidents, senior associates and administrative assistants.   During the First Interim Compensation Period through to the Sixth Interim Compensation, SOLIC received 100% of the Monthly Fee in accordance with the Compensation Order except in the Second Interim Fee Application where $60,000 of the Holdback remains payable to SOLIC.  The primary professional services that SOLIC rendered are described below in the following summary sections. The details included below are reflective of the key work streams, due diligence procedures, reviews and analyses and not intended to be an exhaustive list of all procedures performed.

a.   <u>Fee Statements and Applications (258 Hours)</u>

This category relates to the necessary time that SOLIC professionals spent managing the retention, invoicing and monthly fee statement process. Work during these fee periods included, but was not limited to: (i) negotiating, reviewing, and filing SOLIC's retention application; (ii) documenting, reconciling and reviewing periodic time descriptions; and (iii) preparing and lodging monthly fee statements.

b. <u>Bankruptcy Administration (263 Hours)</u>

This category generally relates to the necessary time spent by SOLIC professionals coordinating, developing and handling key administrative elements of the engagement. This category also included development of information request lists and work plans, review of the case docket and filings, as well as mapping and uploading of dataroom files and folders content onto the SOLIC network for access and related mapping for ease of engagement review and tracking of the bankruptcy case.

This category also comprised two main areas of focus including necessary time spent preparing and attending various Waupaca depositions and the necessary time spent by SOLIC professionals coordinating, developing and handling key and necessary administrative elements of the engagement, namely

i. Waupaca Depositions – SOLIC attended the Bastien, O'Day, Gigante, Todorowski, and Laptner depositions. SOLIC was required to prepare for these same depositions by reviewing Counsel's deposition outlines, deposition transcripts that have

taken place in the period, and the documents mentioned in the "Drafting and Review of Documents" category.

ii.      Administration – SOLIC was also required to spend time attending the Sevani, Paulson, and Hutcheson depositions and preparing for these same depositions.  Please note that these three depositions took place in April 2015 and were categorized as "Court hearings, motions and pleadings" before SOLIC started to break out and allocate time related to depositions into a separate sub-category titled "Waupaca Depositions" directly above.

c.   <u>Drafting and Review of Documents (1,387 Hours)</u>

This category generally relates to the necessary time that SOLIC professionals spent requesting, analyzing and synthesizing information relevant to SOLIC's due diligence efforts related to the Debtor's business, current circumstances and bankruptcy filing and drafting of documents pertaining to same.  An extensive amount of diligence materials were primarily sourced via the Debtor's electronic data room which involved the necessary time for sorting and reviewing of voluminous information to identify materials relevant to SOLIC's work efforts and diligence needs.

This category includes extensive time incurred by SOLIC reviewing the Debtor's procedures on inter-company activity and cash pooling transactions, review of the monthly operating reports and updates to the Retiree Committee related to same, and review and analysis of documentation on financial elements required for preparation pertaining to depositions. This category relates to the

necessary time that SOLIC professionals spent preparing a variety of reports and presentations designed to provide case related information and financial analyses to the Retiree Committee and their counsel. The topics covered in these deliverables included, but were not limited to: (i) initial analyses around the factors leading to the commencement of the Chapter 11 case and the key restructuring settlement goals and settlement projections identified by the Debtor; (ii) detailing out key analyses required to determine the ability to support the continuation of retiree medical benefits in light of recoveries as proposed under the Debtor's settlement agreement; and (iii) presenting SOLIC's preliminary views and findings on the extent of retiree benefits under various scenarios of recovery, (iv) key restructuring settlement goals and settlement projections identified by the Debtor; (v) draft reports for Counsel covering SOLIC's procedures, observations and findings pertaining to review of the Debtor's procedures and findings covering inter-company and cash management activities; (vi) development of specific questions lists, analyses, and source documentation for referencing during depositions; (vii) detailing out key analyses required to determine the ability to support the continuation of retiree medical benefits in light of recoveries as proposed under the Debtor's settlement agreement; (viii) presenting SOLIC's preliminary views and findings on the extent of retiree benefits under various scenarios of recovery; (ix) reviewing and analyzing key elements of the Debtor's Waupaca Transaction and its implication on creditor recoveries; and (x) reviewing and analyzing the TSA and its implications on creditor recoveries.

The review of Waupaca, was a central and critical element of the case, and therefore a significant and necessary amount of due diligence efforts were employed in reviewing a substantial number of business and financial documents on the Waupaca sale transaction that were posted in the Debtor's IntraLinks electronic data room. This voluminous and time-and-fact intensive exercise was essential in order to gain a firm understanding of events that occurred prior to, leading up to, and during the conduct of the Waupaca sales process, a major event that occurred prior to the Debtor commencing its bankruptcy proceeding, and its implication on potential claims against various parties and creditor recoveries. This also included a significant review and development of financial information and data that helped SOLIC formulate a necessary understanding of the historical progress of bid activity and knowledge levels during the course of the sale of Waupaca that culminated in the eventual sale to KPS.

SOLIC's extensive review and analysis efforts led to the preparation of draft financial analyses, documentation, and presentations, as well as necessary material revisions to such draft presentations for the benefit of the Retiree Committee and their Counsel. Procedures on Waupaca included, but were not limited to  (a) advancing an understanding of the progression of the sale process, parties involved, iterations of increasing bids by potential acquirors and the correlation of improved financial performance of Waupaca throughout the sales process, and ultimately the acquisition of Waupaca by KPS, (b) assisting the E&A Retiree Committee's Counsel  by reviewing proposed exhibits for use in scheduled depositions that took place covering various elements pertaining to

Waupaca, (c) understanding around potential causes of action related to Waupaca and its implication on potential claims against various parties and creditor recoveries, (d) reviewing Budd financials post-sale of Waupaca obtained in the KPS discovery to evaluate sensitivities of creditor claim recovery scenarios based on the timing of the sale, (e) developing an initial understanding on how Budd might have met its financial obligations had Waupaca not been sold.

In addition, SOLIC spent significant time reviewing and analyzing the TSA, including reviewing Debtor and CRO-prepared TSA financial analyses, and other materials at the request of the Retiree's Counsel required for depositions that took place during the periods.  This category also relates to the necessary time that SOLIC professionals spent preparing for and attending meetings with the Retiree's Counsel and the Debtor's Counsel to discuss elements of the TSA and understand potential restructuring implications. SOLIC's analysis included: a) review of financial analysis of the tax sharing agreement, b) review of income projections and sensitivities on potential value of TSA, and c) understanding risks pertaining to value recovery.

d.  Settlement Agreement Analysis (837 Hours)

This category generally relates to the necessary time that SOLIC professionals spent sourcing, reviewing and documenting various elements of the Debtor's original settlement agreement as offered to the various creditors at the outset of the case.  Research and analysis was used to confirm SOLIC's understanding of the circumstances surrounding the Chapter 11 case based on the original proposed settlement and the basis of development of the settlement

agreement so as to develop and support work efforts as directed by the Retiree Committee. This also included SOLIC-prepared analyses and presentations of material associated with review and analysis of key elements of the originally proposed settlement agreement, analysis of other areas of potential sources of recovery, and projections of receipts and disbursements to reflect anticipated settlement values at completion of the Chapter 11 case.

Procedures included (i) review and analysis of the Debtor's cash management system; (ii) review and analysis of the Debtor's general ledger inter-company activities; (iii) review and analysis of the Debtor's inter-company cash pooling activities; (iv) telephonic conferences, in-person meetings, and travel to and from meetings pertaining to review of the Chief Restructuring Officer's ("CRO") investigation report that led to the proposed settlement agreement; (v) review and analysis of other matters such as the Waupaca Transaction and the TSA, as directed by the Retiree Committee, as it related to implications on continuation of the settlement agreement and the Debtor's bankruptcy generally, that also consisted of in-person discussions with the CRO and the Debtor on same; (vi) review and analysis of the Debtor's retiree medical benefit plan designs and projected benefit provision costs; (vii) review and analysis of information relevant to determining likely claims against the Debtor; and (viii) meeting with the Debtor and other stakeholders to discuss the case.

Financial analyses were also conducted to prepare preliminary estimates of the Debtor's potential value at the conclusion of the chapter 11 case so as to understand the potential attributable value to be ascribed to medical benefit

recoveries of the executive and administrative retiree creditors. SOLIC professionals held internal meetings to discuss developments in the case based on its review of information and diligence materials provided by the Debtor (including SOLIC's analyses of same), and how to advise and deliver ongoing services to the Retiree Committee. The discussions and related correspondence in this category included, but were not limited to: (i) the Debtor's projected recoveries by claim; (ii) the financial impacts of future retiree medical benefit costs; (iii) the impacts of potential modification of retiree medical benefits, and (v) valuation and recovery estimates including SOLIC's estimates of likely recoveries to unsecured creditors.

e.   Post-Settlement Agreement Analysis (474 Hours)

This category was comprised of the main areas of SOLIC analysis post-termination of the original settlement agreement including elements surrounding cash management, intercompany and general ledger activity, potential restructuring implications, and travel to and from in-person meetings.

   i.      Cash Management – One of SOLIC's areas of focus during the pendency of the case continued to be related to the review and analysis of cash management and cash pooling activities include reviewing case to date Monthly Operating Reports and analyzing actual cash receipts and disbursements, with required follow-up, as needed. This was intended to maintain an understanding of latest cash run-rate receipts and disbursements trends, and how this impacted on projected cash balances available for creditor

recoveries at the end of the Chapter 11 case, as well as required in formulating new settlement proposals once the original proposal was terminated.

ii.     This category also included analysis of the Debtor's proposed Rabobank cash management program for the intention of earning a higher rate of interest on the Debtor's liquid assets. SOLIC's work during the period included analyzing Rabobank's background as a European financial institution, Rabobank's credit profile and how this credit profile has changed over time, cash program draft documentation, risks associated with Budd entering into this program, issues that might arise in program participation, and overall implications of this program on creditor recoveries. Further, SOLIC incurred time to provide frequent updates and status of this proposed program to the Retiree Committee and its Counsel on conference calls.

iii.     Furthermore, SOLIC was tasked by the E&A Committee to draft a long-range cash projection with various assumptions and multiple sensitivity scenarios based on possible outcomes of the bankruptcy case. Extensive time was spent reviewing the Debtor's analyses pertaining to cash projections and thereafter SOLIC's creation of a detailed long-range cash projection that included multiple iterations for the purpose of updating the E&A Committee on potential outcomes. Of key importance was the

necessary time required to be incurred in understanding recent historical trends on key income and expenditure line items in order to establish a sound understanding of go-forward trends and related assumptions. The assumptions in this analysis included requiring SOLIC to review the Debtor's historical Citibank bank statements and all Monthly Operating Reports case to-date, as needed, and create that historical information in an electronic file (Excel) from the source documents format (PDF).

iv.     Intercompany and General Ledger Activity – SOLIC continued to reviewed historical intercompany activity in an effort to identify any potential items of additional value to increase creditor recoveries, on an as needed basis, as part of SOLIC's overall due diligence efforts covering cash and inter-company activities.

f.   <u>Attention to E&A Claim Settlement Matters (1,469 Hours)</u>

This category is comprised of key SOLIC analyses and review of materials that culminated in the TKNA settlement agreement filed with the Disclosure Statement.

SOLIC amended and analyzed its detailed long-range cash projection to update the E&A Committee on the Estate's anticipated cash position as of an assumed Effective Date as part of analysis around settlement.  SOLIC's updating of its views on projected cash at emergence included reviewing and analyzing the CRO's cash projection analysis which included two scenarios based on a

Contested and Consensual Plan. SOLIC's cash projection analysis was then used in a related illustrative scenario analyses with resulting observations that were derived.

SOLIC also spent time reviewing various analyses so as to evaluate potential E&A outcomes achievable through the Estate's cash available for distribution as well as funds receivable from a potential settlement with TKNA. SOLIC staff members spent significant time attending and participating in several in-person settlement negotiation sessions and spent time reviewing several drafts of the proposed settlement agreement with comments provided to counsel as a result of these reviews.

Other analyses performed by SOLIC related to a proposed settlement with TKNA and the implications on the E&A group that included an assessment of: (a) E&A claim values and length of term under differing assumptions of projected investment returns based on hypothetical ranges of investment portfolio returns on bonds and equities; (b) the financial impact of various inbound proposals presented to the E&A Committee; (c) the review of public TKAG financial information in order to better understand TKAG's capital structure vis-à-vis TKAG's ability to make future annual settlement payments as described in the TKAG settlement; (d) the review, together with Segal Consulting, of the accounting and related earnings treatment by virtue of the deconsolidation of the Budd segmental information under IAS19 accounting rules and how future settlement proposals might be recognized in the future post-settlement within TKAG's financial reporting; and (e) financial benefits that

would accrue to TKNA under the status quo payment of retiree benefits in light of the Tax Sharing Agreement as was provided in financial analyses previously prepared by TKNA.

In addition, SOLIC spent time analyzing retiree benefits to evaluate different benefit levels to retirees based on recoveries that may be achieved through the Estate's cash available for distribution as well as funds received from a potential settlement with TKNA.

SOLIC also spent time analyzing and developing VEBA formation and health benefit structuring in conjunction with the E&A Committee's actuary Segal Consulting.  SOLIC also incurred time reviewing and analyzing various documents filed with the Court including, but not limited to, various iterations of the Chapter 11 Plan and Disclosure Statement, various objections filed by Creditor constituents regarding the Chapter 11 Plan and Disclosure Statement, and 11 U.S.C. § 1114 matters that had financial analyses and exhibits warranting SOLIC's necessary review.

Other analyses related to the proposed settlement with TKNA and the implications on E&A claim recovery included: (a) claim recoveries under different assumptions of projected investment returns based on historical investment portfolio returns on bonds and equities; (b) present value analysis of annual payments proposed in the settlement agreement; (c) review of TKAG financials and press releases to assess financial wherewithal and probability of TKAG to make future annual settlement payments as described in the TKAG settlement; and (d) developing a detailed regression analysis of 8 year business

cycles of TKNA's various business segments in all geographic locations in which TKNA does business as well as its competitors in respective markets as a basis to understand the performance of TKNA's business over various cycles. This analysis was required to be done on a segmental basis including comparison against competitor performance.

SOLIC also spent time preparing for and attending court hearings and meetings related to 11 U.S.C. § 1114 trial and settlement discussions.  As part of the 1114 trial, Neil Luria was called as a witness to specifically provide factual evidence for the Court with respect to negotiation process between the E&A Committee and TKNA and the UAW.  In advance of trial, Mr. Luria was also deposed by the UAW—both the deposition and the trial testimony required a significant amount of preparation time amongst SOLIC and Jenner & Block, counsel to the E&A Committee, including review of a significant number of documents.  SOLIC also incurred significant time in this category related to preparing an extensive draft presentations of SOLIC's analyses and findings with respect to the TKNA settlement agreement to the E&A Committee as directed by the Committee that over the period required significant review and analysis of information, a review of chronological steps of the case and key outcomes of same, as well as discussions with the Retiree Committee's other professional advisors in terms of their review and analysis.  Furthermore, these analyses and findings were required to be constantly updated based upon the changing terms of the TKNA settlement agreement and as a result of the passage of time.

g.  Claims Analysis, Review and Negotiation (248 Hours)

This category generally relates to the necessary time that SOLIC professionals spent performing financial review and analysis on the various classes of bankruptcy claims, including an understanding of basis for existence of specific claims, justification for monetary value ascribed to various claims, analysis and review of affiliate claims and affiliate counterclaims, analysis and review of claims as described in the CRO investigation report at the outset of the case, and review of various memoranda and reports prepared by the CRO and the Debtor pertaining to claims and affiliate counterclaims.

In addition, this category included financial analysis pertaining to ascertaining an understanding of projected recoveries to various creditor claim constituents on the basis of acceptance of the Debtor's initially proposed settlement agreement and non-acceptance of the proposed settlement agreement. This category also included discussions with professionals on elements pertaining to various claims.

h.  E&A Committee Meeting Attendance and Communications/Committee Meetings, Communications and Follow-up (383 Hours)

This category generally relates to the necessary time that SOLIC professionals spent meeting and communicating with the Retiree Committee members. This includes, but is not limited to, providing the Retiree Committee members with advisory services related to the case via electronic correspondence, teleconference meetings, and in-person meetings and presentations. SOLIC met in-person with Retiree Committee members in Detroit, Michigan on numerous occasions.

In addition, the Retiree Committee and its professionals held teleconferences on a number of occasions to discuss key issues, findings by the Retiree Committee's professionals and recommended strategy. This category also generally relates to the necessary time that SOLIC professionals spent corresponding and interfacing with other financial, legal and actuarial advisors involved in the Chapter 11 case.   Discussions and related correspondence included in this category were primarily focused on: (i) reviewing case progress and coordinating SOLIC's work efforts with those of the other professionals supporting the Retiree Committee; (ii) dealings with the Debtor's financial advisors to address queries raised by SOLIC in the course of SOLIC's diligence efforts; and (iii) meeting and dialoguing with the Debtor's CRO and financial advisors to progress negotiations around the possibility of a settlement between the Debtor and the Retiree Committee.

i.  <u>Non-Committee Meetings, Communications and Follow-up (28 Hours)</u>

This category generally included the necessary time that SOLIC professionals spent meeting and communicating with Non-Retiree Committee members (namely professionals involved in the case), and required follow-up as a result of these meetings and communications, as well as coordinating with other professionals for the efficiency of allocation of work streams.

j.  <u>Non-Working Travel Time (96 Hours)</u>

During the case, SOLIC started to detail non-working travel time in a separate category. SOLIC incurred necessary time traveling that included, but was not limited to,; (a) to and from Chicago to attend meetings with the E&A

Retiree Committee counsel, TKNA, TKNA counsel, Debtor's counsel, Debtor

CRO, and E&A Actuarial Consultant; (b) to and from Chicago to attend meetings

with the E&A Retiree Committee counsel, TKNA, and TKNA counsel; (c) to

and from Chicago to attend meetings with the E&A Retiree Committee counsel,

E&A Retiree Committee Actuarial Consultant, TKNA, and TKNA counsel; (d)

to Detroit to attend in-person Committee meeting; (e) to and from Orlando to

attend meetings with Neil Luria in advance of Mr. Luria's deposition and trial

testimony; and (f) to and from Chicago to attend 11 U.S.C. § 1114 trial hearings

and depositions.

### SERVICES PERFORMED DURING THE SEVENTH INTERIM FEE PERIOD BY SOLIC CAPITAL ADVISORS, LLC – CATEGORIZED BY MATTER

15.    The fees incurred during the Seventh Interim and Final Compensation Period reflect

an aggregate of 882.0 hours of financial advisor time spent and recorded in performing services

for the Retiree Committee during the Seventh Interim and Final Compensation Period.  Of the

aggregate time expended during the Seventh Interim and Final Compensation Period, 122.5

recorded hours were expended by senior managing directors, 477.0 recorded hours were expended

by managing directors, and 282.5 recorded hours were expended by vice-presidents, senior

associates and administrative assistants.  During the Seventh Interim and Final Compensation

Period, SOLIC only received 80% of the Monthly Fee in accordance with the Compensation Order.

16.    Included in the summary sheet for this Seventh Interim and Final Fee Application

is a summary by project category of the hours generated by the services performed during the

Seventh Interim and Final Compensation Period and, for each separate project category, a list of

each person who provided services on the project, a statement of the number of hours spent for

each person on the project.  The primary professional services that SOLIC rendered during the Seventh Interim and Final Compensation Period are described below in the following summary sections. The details included below are reflective of the key work streams, due diligence procedures, reviews and analyses and not intended to be an exhaustive list of all procedures performed.

     a.  <u>Attention to E&A Claim Settlement Matters (Hours: 757.0)</u>

       This category is comprised of a variety of significant and necessary SOLIC analyses and procedures performed regarding the implementation of the TKNA settlement agreement filed with the Disclosure Statement as it related to the E&A Retirees.   The time spent by SOLIC in the Seventh Interim Compensation Period included detailed financial analyses and review, teleconferences and in-person meetings with various professionals involved in the case. SOLIC continued to perform necessary financial analysis on key elements of the settlement agreement and SOLIC was tasked with developing a detailed "talking points" presentation for the E&A Committee as directed by the E&A Committee. The intention of this presentation was to provide significant detail on all key financial elements of the settlement with TKNA in order to support select members of the E&A Committee whom had scheduled various in-person meetings with retirees and were thus seeking detailed support financial analysis on key elements of the settlement for those meetings. The materials produced by SOLIC included the history of financial elements and proposals through the case and how the E&A Committee negotiated its recovery over time resulting in the final agreed deal, detailed financial analysis on the terms of the final agreed deal with comparative

analysis to prior settlement offers, a financial review of the benefits package and its impacts as proposed by Segal Consulting, the E&A Committee's actuarial firm, and explanations about why the agreed deal delivered an optimal result for the E&A Retiree. This presentation required several versions of review and edit from the E&A Committee's professionals. This category also included a consistent review and analysis of key financial analysis that was prepared by Budd's Chief Restructuring Officer, Mr. Carl Lane. The review of this company-prepared analysis was critical in the context of assuring the E&A Committee that the proposed plan as it related to the E&A Committee was able to be realized based on the proposed cashflow estimates as of the effective date of August 1, 2016. The Budd CRO, on a monthly basis, provided SOLIC with the actual receipts and disbursements, a variance analysis of the prior month's actual cash receipts and activities vs. forecast with explanations, and a revised projection of anticipated cash receipts and disbursements as of the effective date. On a monthly basis SOLIC would review this analysis, compare it to prior analyses, review explanations provided by the Budd CRO, and develop a set of questions for a scheduled review call each month with Budd's CRO. In addition, SOLIC would speak on periodic occasions to Segal Consulting to receive their input on various assumptions and projected balances included in this cash forecast that had an actuarial element to it. SOLIC's work further included updating counsel on a regular basis about the status of existing and projected cash as well as the risks to the achievability of the cash forecast. SOLIC also spent time during the period reviewing the Monthly Operating Reports that were filed with the court in terms

of tracking cash receipts and disbursements and following up with Budd's CRO

on an as-needed basis. This category also included a critical element of work

required by SOLIC, namely the development of a Request for Proposal ("RFP")

for the identification and retention of an investment consultant to manage the

investment of the cash to be received by the E&A Retirees for payment of go-

forward benefits under the E&A VEBA from the effective date onwards.

Selecting the appropriate investment consultant with the requisite experience and

expertise in managing funds on behalf of retirees was essential that required

significant work to be performed by SOLIC. SOLIC, with the support of Segal

Consulting, developed a detailed RFP that had a significant number of qualitative

and quantitative elements to it to ensure identification of the most suitable

investment consultant. Items that were requested in the RFP included past

experience with retiree VEBAs, the responding firm's risk mitigation protocols,

fees and pricing, the individuals to be involved in managing the investment of

the monies, their history and their relevant biographical information,

recommendations on how to deploy the E&A Retirees' VEBA for long-term

returns at an appropriate level of risk so as to maximize the time required to fund

the payment of future benefits. SOLIC was required to work through various

drafts of the RFP including comments taken from counsel and the E&A

Committee.  As part of the required retention of an investment advisor, SOLIC

was tasked with identifying suitable target firms to approach for the RFP. Input

was received from various parties and research was performed by SOLIC prior

to narrowing down the list to the most suitable firms. Once RFP responses were

received, SOLIC's work was highly relevant in reviewing the detailed responses from each firm and following up with needed questions. While SOLIC had requested specific details from the RFP respondents to be as comprehensive as possible, there were instances where specific responses provided insufficient detail or did not address the specific question being asked, and hence SOLIC was required to perform necessary follow-up with the firms whom responded to the RFP.  Once SOLIC had received complete responses, SOLIC undertook a comprehensive side-by-side benchmarking analysis of responses by firm, capturing a voluminous amount of key information as reflected in the responses. This analysis was necessary as output to be shared with the E&A Committee in the context of the E&A Committee determining the most suitable firm for selection. The analysis required several rounds of revision by the SOLIC team and the final version was circulated to counsel and the E&A Committee for their review. Once that was completed, SOLIC thereafter led a call to review key findings, provide a recommendation on choice of investment consulting firm, and have the Committee vote on the investment consultant to be selected. Once the selection was made, SOLIC was tasked with further discussions with the anointed investment consultant firm and was tasked with relaying to the non-chosen firms the status of the decision-making. Thereafter, SOLIC was required to spend time performing telephonic reference checking and provide written reports on the reference checking back to the E&A Committee. SOLIC also assisted counsel in drafting and reviewing drafts of the proposed engagement letter with the selected investment consultant. Additional services that SOLIC

provided during the period included extensive review and analysis of draft closing statements and fund flow statements ahead of the effective date settlements. This was necessary in ensuring that the closing statements reflected the economic terms and conditions of the settlement. SOLIC attended several calls with the Budd CRO and, at times, with Millstein to discuss and review draft versions of the closing statement and to address matters that impacted on the draft numbers. SOLIC also spent time with Segal Consulting in reviewing the sufficiency of reserves in the closing statement pertaining to certain benefit costs and prescription drug rebate estimates that were expected to have a post-effective date impact and thus warranted a reserve for these actuarial amounts as of the effective date.  In late July 2016 leading up to the August 1, 2016 effective date and distributions, SOLIC's work focused on a detailed review of final drafts of the closing statement, discussions with the Budd CRO on same, and providing analysis and review of final versions of the closing statement for the benefit of counsel and the E&A Committee. This also included discussions with Budd CRO's immediately prior to the effective date on specific cash deposits identified and whether or not the E&A Retirees were entitled to those deposits once refunded to the Company.

b.  <u>Bankruptcy Administration (Hours: 7.0)</u>

This category includes necessary time spent by SOLIC professionals coordinating, developing and handling key and necessary administrative elements of the engagement namely reviewing the case docket and filings, and on period work plan updating.

c.  E&A Committee Meeting Attendance and Communication (Hours: 52.0)

This category generally relates to the necessary time that SOLIC professionals spent meeting and communicating with the Retiree Committee members, generally done so on a weekly scheduled basis, and required follow-up as a result of these meetings and communications. This includes, but is not limited to, providing the Retiree Committee members with advisory services related to the case, and key updates, via electronic correspondence, teleconference meetings, and presentations.  During the Seventh Interim Compensation Period, the Retiree Committee and its professionals held two in-person meetings and twenty teleconferences to discuss key case issues, findings by the Retiree Committee's professionals on key case matters, and recommended strategies.

d.  Fee Statements & Applications (Hours: 32.0)

This category relates to the necessary time that SOLIC professionals spent managing the retention, invoicing and monthly fee statement process, as well as attending to inquiries on fee statements and applications, as requested, and items as requested by the fee examiner.  Work during the fee period included, but was not limited to: (a) documenting, reconciling and reviewing periodic time descriptions; (b) preparing and submitting monthly fee statements; (c) preparing, reviewing, and filing interim fee applications; and (d) preparing materials as required to be sent to the fee examiner.

e.  Non-Working Travel Time (Hours: 34.0)

SOLIC incurred necessary time traveling; (a) to and from Detroit to attend

in-person Committee meeting on April 4, 2016; (b) to and from Chicago to attend

Court hearing on June 24, 2016; and (c) to and from Detroit to attend in-person

Committee meeting on July 27, 2016.

## SERVICES PERFORMED DURING THE FINAL FEE PERIOD BY SOLIC CAPITAL ADVISORS, LLC – CATEGORIZED BY MATTER

17.    The fees incurred during the Final Fee Period reflect an aggregate of 6,325.0 hours

of financial advisor time spent and recorded in performing services for the Retiree Committee

during the Final Fee Period.  Of the aggregate time expended during the Seventh Interim and Final

Compensation Period, 850.5 recorded hours were expended by senior managing directors, 2691.0

recorded hours were expended by managing directors, and 2,783.5 recorded hours were expended

by vice-presidents, senior associates and administrative assistants.

18.    Included in the summary sheet for this Seventh Interim and Final Fee Application

is a summary by project category of the hours generated by the services performed during the Final

Fee Period and, for each separate project category, a list of each person who provided services on

the project, a statement of the number of hours spent for each person on the project.  The primary

professional services that SOLIC rendered during the Final Fee Period are described above in the

description of work performed during the First through Sixth Interim Fee Periods and during the

Seventh Interim Fee Period.

19.    The foregoing professional services performed by SOLIC during the Final Fee

Period and the Seventh Interim Fee Period were necessary and appropriate to the Retiree

Committee's role in this case and were in the best interest of the Retiree Committee, the Debtor's

estate and other parties in interest.  Compensation for the foregoing services as requested is

commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved. SOLIC has taken significant efforts to ensure that the professional services were performed with expedience and in an efficient manner and without duplication of effort.

20.     The disbursements for which SOLIC seeks reimbursement during the Final Fee Period and the Seventh Interim Fee Period are the customary and usual expenses for which SOLIC seeks reimbursement from its clients. It is SOLIC's policy to charge all of its clients for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is SOLIC's policy to charge its client only the amount actually incurred by SOLIC in connection with such items. Examples of such expenses are postage, overnight mail, courier delivery, ground transportation, airfare, meals, mileage, lodging, telephone and internet.

21.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals. Pursuant to the Retention Order, SOLIC's Monthly Fees and expenses are subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code and are not subject to the standard of review set forth in Section 330 of the Bankruptcy Code except by the U.S. Trustee, and in such case "reasonableness" shall not be evaluated primarily on an hourly basis.

22.     Section 328(a) of the Bankruptcy Code permits, with the Court's approval, the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). The standards for compensation under section 328 are significantly different than under Section 330. The purpose of section 328 is to permit the pre-approval of compensation arrangements as a method of ensuring that the most competent professionals will be available to provide services in

bankruptcy cases. See In *re Westbrooks*, 202 B.R. 520, 521 (Bankr. N.D. Ala. 1996) (percentage fee arrangements "comport with the Bankruptcy Code's goal of attracting highly qualified professionals to the bankruptcy forum"); In *re Olympia Holding Corp.*, 176 B.R. 962, 964 (Bankr. M.D. Fla. 1994).

23.     Once the terms of a professional's retention have been approved under section 328(a) of the Bankruptcy Code, the approved compensation structure cannot be altered unless the agreed terms "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also In re Reimers*, 972 F.2d 1127, 1128 (9th Cir. 1992) (compensation agreement approved under Section 328(a) must be enforced in the absence of unforeseeable circumstances, and is not subject to a "reasonableness" review under Section 330); *In the Matter of National Gypsum Company*, 123 F.3d 861 (5th Cir. 1997) (same); *In re Olympia Holding Corp.*, 176 B.R. at 964 (same). As the Court explained in *National Gypsum*:

> If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment. Courts must protect those agreements and expectations, once found to be acceptable.  123 F. 3d at 863.

24.     Additionally, SOLIC respectfully submits that its fees and expenses incurred during the Seventh Interim and Final Fee Period were reasonable and warranted.  SOLIC has been involved in a meaningful way in these chapter 11 cases and fulfilled its duties in advising the Retiree Committee.  SOLIC submits that the amount of fees and expenses requested herein is fair

and reasonable in light of (a) the complexity of the issues presented, (b) the time expended, (c) the skill required to properly perform the financial advisory services, (d) the experience, reputation and ability of the professionals rendering services, (e) the preclusion of other similar employment, (f) the value of such services, (g) the market rates charged for comparable services both in and out of the chapter 11 context, and (h) the nature and scope of work performed by SOLIC in the chapter 11 case during the Seventh Interim and Final Fee Period.  Compensation for services rendered during the Seventh Interim and Final Fee Period has been earned and is due and payable under the terms of the Engagement Letter.

25.     Accordingly, SOLIC respectfully submits that fees and expense reimbursement herein should be allowed and approved by this Court pursuant to sections 328(a) and 330 of the Bankruptcy Code.  SOLIC professional incurred aggregate hours in the following categories.  The detailed work performed by category has been described above.

## NOTICE

26.     Notice of this Application has been provided to parties in interest in accordance with the Compensation Order.  In addition, as reflected on the Affidavit of Service, this Application has been served on counsel for the Debtor, the Fee Examiner, and the United States Trustee.

## CONCLUSION

WHEREFORE, SOLIC respectfully requests this Court: (a) allow SOLIC (i) interim compensation for actual, reasonable and necessary services rendered during the Seventh Interim Fee  Period in the amount of $600,000.00, (ii) interim reimbursement in the amount of $5,039.77

for actual, reasonable and necessary expenses incurred during the same period;  (b) authorize and direct the Debtor to pay to SOLIC the amount of $120,000.00, which is the unpaid sum equal to 20% of SOLIC's allowed interim compensation (c) authorize and direct the Debtor to pay to SOLIC the amount of $60,000.00 for unpaid holdback fees during the Second Interim Fee Period, (d) authorize and direct the Debtor to pay to SOLIC interim reimbursement in the amount of $1,570.40 for actual, reasonable and necessary expenses incurred during the Seventh and Final Fee application period during the month of July 2016,  (e) allow SOLIC (i) final compensation for actual, reasonable and necessary services rendered during the Final Fee Period in the amount of $4,011,290.03, and (ii) final reimbursement in the amount of $58,473.00 for actual, reasonable and necessary expenses incurred during the Final Fee Period, (f) enter the order attached hereto as U; (g) grant such other relief as the Court deems just or proper.

Dated:     August 29, 2016                          Respectfully submitted,

                                                    SOLIC CAPITAL ADVISORS, LLC


                                                    */s/ Neil F. Luria*
                                                    Neil F. Luria
                                                    Raoul Nowitz
                                                    1603 Orrington Avenue, Suite 166
                                                    Evanston, Illinois 60201
                                                    Telephone: (847) 583 1618
                                                    Facsimile: (847) 583-1719


                                                    *Financial Advisor to the Retiree Committee*