## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE BUDD COMPANY, INC., | ) | Case No. 14-11873 |
| | ) | |
| Debtor. | ) | Hon. Jack B. Schmetterer |

## FEE EXAMINER'S REPORT AND RECOMMENDATIONS WITH REGARD TO APPLICATIONS SEEKING INTERIM AND FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES

Diana G. Adams, as the Independent Fee Examiner (the "Fee Examiner"), hereby presents her report and recommendations (the "Report") with respect to the interim and final fee applications filed on or about August 29, 2016 (the "Final Fee Applications") by professionals retained by (i) The Budd Company, Inc., as debtor and debtor in possession (the "Debtor" or "Budd"), (ii) the Committee of Executive and Administrative Retirees (the "E&A Committee"), (iii) the International Union, United Automobile, Aerospace and Agricultural Implement Workers (the "UAW"), and (iv) the Committee of Asbestos Personal Injury Claimants (the "Asbestos Claimants Committee").

## INTRODUCTION

1.      As more fully set forth herein, four professional firms retained by the Debtor, three professional firms retained by the E&A Committee, four professional firms retained by the UAW, and two professional firms retained by the Asbestos Claimants Committee (collectively, the "Retained Professionals") have filed fee applications.

2.      In accordance with her duties, and as more fully set forth below, the Fee Examiner and/or her advisors, Manewitz Weiker Associates, LLC ("MWA"), reviewed all of the

Final Fee Applications for the Final Interim Period and the 2014-2016 Period[1], where necessary sent a memorandum to each Retained Professional raising any issues and concerns the Fee Examiner had with each application, and engaged in discussions with the applicant to resolve such issues and concerns. Following such discussions, all of the Retained Professionals either satisfied the issues and concerns raised by the Fee Examiner or reduced their request for fees and/or reimbursement of expenses in the amounts set forth in Exhibits A through D (the "Exhibits").

**Exhibits**

3.      The Exhibits[2] set forth (i) summaries of the results of the discussions with each of the Retained Professionals, (ii) a description of the services performed during the Final Interim Period, (iii) the total hours expended by project category for the 2014-2016 Period, (iv) a recapitulation of the fees and expenses requested, reductions agreed to and amounts awarded during the 2014-2016 Period, (v) a review of rate increases, and (vi) the Fee Examiner's recommendation for final awards with respect to the amounts requested by each Retained Professional. Exhibit A details this information relating to the Debtor's professionals, Exhibit B addresses the E&A professionals, Exhibit C the UAW professionals and Exhibit D the Asbestos Claimants Committee professionals. Capitalized terms used in the Exhibits and not otherwise defined in the Exhibits have the meanings described to them in the Report.

---

[1] Because (i) many of Retained Professionals were retained on different dates, and (ii) the Final Fee Applications have varying end dates ranging from July 31, 2016 through August 29, 2016, (x) the period from April 1, 2016 through a particular applicant's Final Fee Application end date is defined as the "Final Interim Period," and (y) the period from a particular applicant's retention date through that applicant's Final Fee Application end date is defined as the "2014-2016 Period."

[2] Each Exhibit was sent to the appropriate Retained Professional for review prior to the filing of the Report and any comments or corrections received have been incorporated.

**Reductions**

4.      As set forth in Exhibits A, B, C and D, the Retained Professionals agreed to reduce their compensation requests for (i) the Final Interim Period in the aggregate amount of $67,037.39, and their expense requests in the aggregate amount of $2,727.19, for a total of $69,764.58, and (ii) the 2014-2016 Period in the aggregate amount of $1,108,080.61 and their expense requests in the aggregate amount of $85,865.78, for a total of $1,193,946.39.[3]

5.      However, in addition to these quantifiable reductions, there have been other savings for the estate that are not easily quantified.  Some examples are set forth below:

- Initially, the Debtor did not seek to retain its actuarial firm but instead chose to pay the firm as an expense.  The Fee Examiner noted this expense and discussed it with the Debtor who agreed to retain the actuary and have it file fee applications.  Thus, more than $500,000 in fees which might not have been subject to any scrutiny were reviewed by the Fee Examiner, the Court and parties-in-interest.  In addition, the actuary agreed to waive its $10,342 "technical and administrative fee" after discussions with the Fee Examiner, *see* Exhibit A.  Had no review been undertaken similar additional fees might have been charged to the estate.

- After the first fee applications were filed, and reductions agreed to based upon the Fee Examiner's objections, subsequent fee applications showed a significant decrease in the number of professionals attending Court hearings and meetings.

- After the Fee Examiner objected to, and obtained reductions for, charges for time charged for summer associates, the law firms did not seek payment for time spent by summer associates in any subsequent fee applications.

- After the Fee Examiner objected to, and obtained reductions for, charges relating to transitory timekeepers, several of the Retained Professionals wrote-off certain of these timekeeper's charges prior to filing subsequent fee applications.

- After the first fee applications were filed, and reductions agreed to base upon the Fee Examiner's objections, subsequent fee applications no longer included expense charges for non-reimbursable items such as (i) hand cream, (ii) alcoholic beverages, and (iii) per person business meal costs in excess of the $25 per person limit the Fee Examiner had set.

---

[3] The fee application filed by the Fee Examiner on August 29, 2016, Docket No. 2008 (the "Final Fee Application"), stated that a supplement to the Final Fee Application would be filed setting forth the final agreed upon reductions. Because this information is set forth in this Report, no supplement to the Final Fee Application will be filed.

- After the Fee Examiner objected to, and obtained, reductions relating to first class travel, subsequently filed fee applications no longer requested reimbursement for first class travel.

These are just a few examples of savings to the estate that are not easily quantified and are not included in the total reductions set forth above or in Exhibit A through D.

## CASE ADMINISTRATION BACKGROUND

6.      On October 1, 2014, the Fee Examiner filed the Fee Examiner's Report and Recommendations With Regard to Applications Seeking First Interim Compensation and Reimbursement of Expenses (the "1st Fee Report"), Docket No. 527, which is incorporated herein by reference as if fully set forth herein.

7.      On February 17, 2015, the Fee Examiner filed the Fee Examiner's Report and Recommendation with Regard to Applications Seeking Interim Compensation and Reimbursement of Expenses (the "2nd Fee Report"), Docket No. 760, which is incorporated herein by reference as if fully set forth herein.

8.      On June 8, 2015, the Fee Examiner filed the Fee Examiner's Report and Recommendation with Regard to Applications Seeking Interim Compensation and Reimbursement of Expenses (the "3rd Fee Report"), Docket No. 912, which is incorporated herein by reference as if fully set forth herein.

9.      On October 7, 2015, the Fee Examiner filed the Fee Examiner's Report and Recommendation with Regard to Applications Seeking Interim Compensation and Reimbursement of Expenses (the "4th Fee Report"), Docket No. 1145, which is incorporated herein by reference as if fully set forth herein.

10.     On February 22, 2016, the Fee Examiner filed the Fee Examiner's Report and Recommendation with Regard to Applications Seeking Interim Compensation and

Reimbursement of Expenses (the "5th Fee Report"), Docket No. 1597, which is incorporated herein by reference as if fully set forth herein.

11.     On June 20, 2016, the Fee Examiner filed the Fee Examiner's Report and Recommendation with Regard to Applications Seeking Interim Compensation and Reimbursement of Expenses (the "6th Fee Report"), Docket No. 1895, which is incorporated herein by reference as if fully set forth herein.

12.     In the 3rd Fee Report, ¶¶ 8-17, the 4th Fee Report, ¶¶ 9-17, and the 5th Fee Report, ¶5, the Fee Examiner set out the events that had occurred while this case has been pending. Familiarity with these events is assumed.

## CASE STATUS

13.     Simultaneously with the filing of the petition on March 31, 2014 (the "Petition Date"), the Debtor filed a motion seeking approval of a settlement agreement between it and its corporate affiliates (the "Pre-petition Settlement Agreement"), including its parent ThyssenKrupp North America ("TKNA").    Docket No. 11.    As part of the Pre-Petition Settlement Agreement, an affiliate of TKNA released to the Debtor $390,000,000 in funds it was holding under a pre-petition cash management agreement "without exercising any right to setoff with respect to claims that TK Finance, or other Affiliates, may have against Budd." *Id.* These funds were released to the Debtor prior to the Petition Date and were held in the Debtor's accounts when the Debtor filed. In addition, under the Pre-Petition Settlement Agreement TKNA would, among other things, assume sponsorship and financial responsibility for certain of the Debtor's pension plans and make a cash contribution of $10,000,000.00. *Id.*

14.     After it was discovered that the Pre-Petition Settlement Agreement was premised upon a Tax Sharing Agreement to which the Debtor was not a party and the Tax Sharing

Agreement to which the Debtor was a signatory (the "TSA") was identified and reviewed, the Debtor withdrew its request for approval of the Pre-Petition Settlement Agreement. Docket No. 447. The Debtor and the E&A Committee and the UAW then began to assess the benefits that might inure to the Debtor under the TSA.

15.    While the parties were probing into the value of the TSA and conducting discovery, they began to scrutinize the pre-petition sale of the one of Debtor's assets ("Waupaca").

16.    The lengthy TSA and Waupaca investigations resulted in a consensual plan that was filed on May 4, 2016, Docket No 1797, (the "Plan").

17.    Under the terms of the Plan, and pursuant to certain settlement agreements which are part of the Plan, TKNA will contribute, over time, $335,000,000 in cash and, under the TKNA Finance Agreement, another $10,000,000 will be paid in two installments to the UAW VEBA.[4]

18.    Thus, this case has resulted in a substantial increase – almost double the amount originally in the estate - in the funds available to fund the Debtor's obligations, which consist primarily of health benefits and pension obligations, as well as asbestos obligations.

19.    The Plan was confirmed on June 27, 2016, Docket No. 1913, and became effective on August 1, 2016, Docket No. 1984 (the "Effective Date").

20.    In brief, the Plan provides that:[5]

- **UAW Retiree Health Benefits**: Current health benefits to Retirees under Budd's existing benefits plans effectively will be terminated, and replaced without interruption with benefits funded from Retiree VEBAs. The UAW VEBA will be

---

[4] All terms used herein and not otherwise defined have the meanings ascribed to them in the Plan.

[5] These statements are derived from page III-20 of the disclosure statement dated May 4, 2016, Docket No. 1798 (the "Disclosure Statement") but do not contain all of the provisions of the Plan and are intended to be merely a summary of certain of the terms of the Plan.

funded with an estimated $179 million cash from the Debtor's Estate, together with $320 million in cash over eight years as provided under the TKNA Settlement Agreement.

- **E&A Retiree Health Benefits**: Current health benefits to Retirees under Budd's existing benefits plans effectively will be terminated, and replaced without interruption with benefits funded from Retiree VEBAs. The E&A VEBA will be funded with $70 million cash in the aggregate from the Debtor's estate and from the TKNA Settlement Agreement. It is expected that the funds in the E&A VEBA will last for approximately 25 years through 2041.

- **Retiree Pension Benefits (UAW and E&A)**: Under the TKNA Settlement Agreement TKNA will assume responsibility for the Pension Plans, so Retirees will receive their pension plan payments, uninterrupted, in full and on time.

- **Holders of Asbestos Claims**: Asbestos Claims will "pass through" the bankruptcy case, allowing those Asbestos Claimants to bring or continue lawsuits against Budd. The Debtor has multiple insurance policies that will provide more than $100 million of insurance coverage to satisfy asbestos claims, judgments, or settlements, and to pay defense costs

- **Holders of Uninsured Asbestos Claims**: Asbestos Claims that are not insured, including claimants who were only exposed to the Debtor's asbestos after October 1985 will receive 67% of the value of their claim paid from the Uninsured Asbestos Claim Fund until it is exhausted, which will be funded with $3,500,000 from the Debtor and an additional $950,000 from the UAW Cash.

21.     The Disclosure Statement at page III-21 states in part:

> [t]he E&A Retiree Committee, the UAW, and the Asbestos Committee each believe that the TKNA Settlement Agreement ensures the uninterrupted payment of retiree pension benefits, provides the Debtor with enough cash to fund VEBAs that will be able to provide replacement healthcare benefits, and appropriately and adequately provides for holders of Asbestos Claims.

22.     According to the most recent monthly report filed by the Debtor, Docket No. 2036 (the "Operating Report"), the Debtor's "ending balance in all accounts" was $11,573,581

as of August 31, 2016. Under the terms of the Plan, all cash remaining in the estate, subject to certain holdbacks, will be distributed to the UAW VEBA.

## SUMMARY OF FEES[6]

**The Debtor's Professionals**

23.    The Debtor's retained two law firms, an actuary and an asbestos liability advisor. These four professionals combined fees aggregated $17,258,772.52 and expenses aggregated $704,237.31.

**The E&A Committee's Professionals**

24.    The E&A Committee retained one law firm one financial advisor and one actuary. These three professionals combined fees aggregated $8,586,892.84 and expenses aggregated $361,072.64.

**The UAW's Professionals**

25.    The UAW retained two law firms, one financial advisor and one actuary.  These four professionals combined fees aggregated $13,360,952.41 and expenses aggregated $465,073.25.

**The Asbestos Claimants Committee's Professionals**

26.    The Asbestos Claimants Committee retained one law firm and one asbestos liability consultant. These two professionals combined fees aggregated $1,380,691.50 and expenses aggregated $23,709.93.

---

[6] These figures assume that the Court approves the amounts recommended by the Fee Examiner in Exhibits A through D.  In addition, the figures stated are after giving effect to the discounts some of the Retained Professionals provided to their clients, as more fully described in Exhibits A through D.

## THE FEE EXAMINER'S REVIEW OF THE INTERIM FEE
## APPLICATIONS FILED FOR THE CURRENT APPLICATION PERIOD

27.    The Plan provides that Final Fee Applications have to be filed 28 days after the

Effective Date. Plan, page 30. The Effective Date was August 1, 2016, making the date for the

filing of the Final Fee Applications August 29, 2016. Any objections to the Final Fee

Applications, and the filing of this Report, are due 74 days after the Effective Date, or October

14, 2016. Confirmation Order, Docket No. 1913, ¶32. By Order dated October 7, 2016, the

Court dispensed with the hearing on the Final Fee Applications. Docket No. 2039.

28.    In accordance with the Fee Examiner Order, the Fee Examiner or MWA reviewed

each of the 13 Final Fee Applications filed by the Retained Professionals with respect to the

Final Interim Period and the 2014-2016 Period to determine whether it conformed to the Fee

Rules and Guidelines[7], applicable case law and the Court's order approving the retention of the

Retained Professionals.

29.    After reviewing a Retained Professional's application, the Fee Examiner or MWA

prepared and sent a memorandum identifying any discrepancies from the Fee Rules and

Guidelines.  Each Retained Professional had an opportunity to provide back-up documentation

and otherwise explain and support the fees and expenses sought in its application, or to offer a

reduction in its fees and/or expenses.

30.    All of the Retained Professionals were responsive and worked to resolve the

issues raised. The Fee Examiner and/or MWA had at least one, and in several cases, more than

one, conversation with most of the Retained Professionals regarding the issues raised in the

---

[7] The "Fee Rules and Guidelines" refer to (i) Bankruptcy Code sections 328, 329, 330 and 331, as applicable; (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure; (iii) the Interim Compensation Order; (iv) Local Bankruptcy Rule 5082-1; and (v) Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases, 78 Fed. Reg. No. 116, page 36248 (June 17, 2013) (the "UST Guidelines").

memoranda.    In addition, issues were raised and addressed in follow-up emails and with supplemental documentation.

**Rate Increases**

31.    The Fee Examiner had reserved her right to review rate increases at the end of the case.  The Fee Examiner reviewed each of the Final Fee Applications for any rate increases during the 2014-2016 Period, whether the Retained Professional was a law firm, an actuary, an asbestos consultant or a financial advisor.

32.    With regard to rate increases for law firms, the UST Guidelines provide, in part, that:

> "Rate increases" as used in the Guidelines exclude annual "step increases" historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion.

33.    The Retained Professionals that were law firms provided the information required by the UST Guidelines. The other Retained Professionals supplied similar information.

34.    While the subject of rate increases during the course of a chapter 11 case has generated some controversy, such rate increases are not generally prohibited.  A number of courts have allowed mid-case implementation of reasonable, routine, across-the-board rate increases otherwise applicable to all of the professional's clients.  *See In re Lee Tractor Co.,* No. 07-03928-8-RDD, 2008 WL 2788413, at *2 (Bankr. E.D.N.C., July 16, 2008); *Teraforce Tech.,* 347 B.R. 847 (Bankr. N.D. Tex. 2006); *In re Dimas, LLC,* 357 B.R. 563, 580 (Bankr. N.D. Cal. 2006).

35.    Following the rate change, the resulting rates must be reasonable, including being in line with market rates in the professional's district.  *Teraforce Tech.,* 347 B.R. at 860 (rate

increase objection "goes to the reasonableness of [the professional's] rates . . . thus, a comparison with the local market is in order"); *Lee Tractor*, 2008 WL 2788413, at *2).

36.     Recent articles and cases have found that 3% to 4% increase a year were reasonable, but that for "substantially higher" increases additional support was required. *See, e.g., Caesars Entertainment Operating Co., Inc., et al, Case* No. 15-01145 Bankr. N.D. Ill., Docket Nos. 2750-1 and 3595.

37.     The Fee Examiner looked at the rate increases on an individual basis and a firm-wide basis.  In addition, she reviewed, among other things, (i) the retention application of each Retained Professional to determine if it disclosed the potential for rate increases, (ii) market data provided by certain of the Retained Professionals, (iii) the number of individuals whose rates were increased, (iv) the area of specialization of those individuals, and (v) the number of hours worked by those individuals.  In the few cases where a rate increase might have reached the level of "significantly higher," the Fee Examiner discussed the matter with the Retained Professional and was satisfied with their explanations for the rate increases.

38.     Accordingly, for the reasons set forth in Exhibits A through D, the Fee Examiner had no objections to the rate increases requested in this case.

**Section 328(a)**

39.     The two orders approving the retention of the two financial advisors approved their retention at a fixed monthly rate under 11 U.S.C §328 ("§328") and only permitted the United States Trustee the right to object to the fees "based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code; provided, however, that "reasonableness" shall not be evaluated primarily on an hourly basis." Docket Nos. 148, 237.

40.     Despite this language, the Fee Examiner reviewed the fees requested and the case law interpreting §328. *See, e.g., Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation, Inc.)*, 433 B.R.19, 45 (N.D. Ill. 2010) (the standards for compensation under §328 are significantly different than under §330, and the reasonableness standard of §330 does not apply); *In re River Road Hotel Partners, LLC*, 536 B.R. 228, 237-39 (N.D. Ill. 2015) (upholding approval of financial advisor's restructuring fee despite imputed hourly rate in excess of $6,000); *Riker, Danzig, Scherer, Hyland & Perretti v. Official Comm. Of Unsecured Creditors (In re Smart World technologies, LL)*, 552 F.3d 228 (2d Cir. 2009) (finding that the "improvident" standard is a "high hurdle" and that the reasonableness standard of §330 and the pre-approved compensation under ¶328(a) are "mutually exclusive").

41.     Based upon this review, including the engagement letters annexed as exhibits to the retention applications, Docket Nos. 114, 190, and as more fully set forth in Exhibits A through D, the Fee Examiner has no objection to an award of compensation requested by the financial advisors pursuant to §328.

## CONCLUSION

42.     As noted earlier, set forth on the annexed Exhibits A through D are (i) summaries of the results of the discussions with each of the Retained Professionals, (ii) a description of the services performed during the Final Interim Period, (iii) the total hours expended by project category for the 2014-2016 Period, (iv) a recapitulation of the fees and expenses requested, reductions agreed to and amounts awarded during the 2014-2016 Period, (v) a review of rate increases, and (vi) the Fee Examiner's recommendation for final awards with respect to the amounts requested by each Retained Professional.

Dated: Hobart, NY
      October 12, 2016

Respectfully submitted,


*/s/ Diana G. Adams*
Diana G Adams
Fee Examiner
602 Main Street
Hobart, NY 13788
607-643-2455
diana.goldberg.adams@gmail.com

Filed By:


/s/ Margaret M. Anderson
Margaret M. Anderson
**FOX SWIBEL LEVIN & CARROLL LLP**
200 West Madison Street, Suite 3000
Chicago, IL 60606
Ph: 312.224.1200
Fx: 312.224.1201
panderson@foxswibel.com

***Counsel to the Fee Examiner***

# EXHIBIT A

## THE DEBTOR'S PROFESSIONALS

**PROSKAUER ROSE, LLP**
**Counsel to the Debtor**

**Background:**  By Order of the Court dated April 22, 2014, Docket No. 105, Proskauer Rose, LLP ("Proskauer") was retained effective as of the Petition Date (the "Proskauer Retention Date").  On August 29, 2016, Proskauer filed its fee application, Docket No. 2011, (the "Proskauer Application"), covering the periods from (i) April 1, 2016 through July 31, 2016 (the "Final Interim Period"), and (ii) the Proskauer Retention Date through July 31, 2016 (the "2014-2016 Period").

Prior to filing the Proskauer Application, Proskauer filed six interim fee applications:  September 15, 2014 (the "1st Application"); January 20, 2015 (the "2nd Application"); May 15, 2015 (the 3rd Application"); September 4, 2015 (the "4th Application"); January 19, 2016 (the "5th Application"); and May 16, 2016 (the "6th Application") (collectively, the "Previous 6 Applications").

| | | |
|---|---|---|
| **Fees and Expenses Sought Final Interim Period:** | **Fees:** | **$941,760.00** |
| | **Expenses:** | **$19,332.05** |
| **Fees and Expenses Sought 2014-2016 Period:** | **Fees:** | **$15,730,407.75** |
| | **Expenses:** | **$678,109.15** |

**Staffing:**  In general, during the 2014-2016 Period, Proskauer used the services of its Associates twice as much as the services of its Senior Counsel and Partners and made extensive use of paralegals and other support staff.

**Rate Increases:**  The Proskauer Application at ¶ 74, states, in part:

> Proskauer increases the rates of its attorneys, paralegals, and other professionals on an annual basis on November 1 of each calendar year. Since the commencement of the Chapter 11 Case, Proskauer has increased its rates twice to account for, among other things, increased professional experience and skill, and, with respect to partners, natural market forces.  The increases were disclosed in Proskauer's previous interim fee applications.

increases were disclosed in Proskauer's previous interim fee applications.

Proskauer estimates that if it had never altered its rates during the Chapter 11 Case, professional services rendered would have resulted in Proskauer seeking approval during the Final Application Period of an amount 3.5% less than that requested herein, or a total of $15,171,659.00. This calculation, however, is derived without regard for associate class-year promotion toward senior counsel and partnership, and does not reflect the causes of rate increases mentioned above, including increased professional experience and skill of Proskauer's professionals that contributed to the success of the Debtor's Plan.   Therefore, Proskauer submits that its rates are fully supported by the *Johnson* factors and "lodestar" method.

Pursuant to the terms of its court-approved engagement letter, the Debtor has reviewed, approved, and agreed to Proskauer's rate increases in advance.

After a review of (i) the Proskauer Application, (ii) the Previous 6 Applications, (iii) the reductions obtained from Proskauer, (iv) additional information relating to its rate increases provided by Proskauer at the request of the Fee Examiner, and (v) the cases and Guidelines referred to in the Report, the Fee Examiner has no objection to the rate increases of Proskauer.

**Final Interim Period Review**:  During the Final Interim Period, Proskauer expended 1,170.7 hours and billed $941,760 rendering services primarily relating to (i) retiree benefits, (ii) asbestos claims, and (iii) obtaining approval of the Plan and Disclosure Statement.

The Fee Examiner raised certain issues with Proskauer after her review of the Proskauer Application and, after discussions, obtained a reduction of $4,030.00 relating to the charges for "transitory timekeepers.". Mindful of the Court's previous orders with regard to compensation related to the eight iterations of the Disclosure Statement, the Fee Examiner found no further charges relating to those versions.

The Fee Examiner also questioned certain expenses relating to subscriptions and meals.  After a review of invoices and discussions, it was agreed that Proskauer would reduce one meal expense by $137.87.

**2014-2016 Period Review:**

**1st Application**:  Initially the Fee Examiner was concerned about duplication of effort between co-counsel to the Debtor.  After the 1st Application was filed, the Fee Examiner had a lengthy conversation with both counsel, confirming that there was little overlap between the firms.  In addition, after November 2014 Proskauer acted without the assistance of co-counsel for the next 20 months.

The Fee Examiner also questioned multiple attendees on conference calls and vague time entries.  Proskauer agreed to a reduction in compensation for the 1st Application of $125,000, and expense reductions of $9,552.15.

**2nd Application:**  The primary issues raised by the Fee Examiner to the 2nd Application related to charges for fee application preparation and certain pleadings.  Proskauer agreed to reduce its compensation request by $156,050 and expenses by $18,950 relating to air travel and computer assisted legal research.

**3rd Application:**  The primary concern with the 3d Application was the number of hours expended on legal research and drafting memoranda incorporating the research and assisting the actuary in preparing the actuary's fee application. Proskauer agreed to a reduction in compensation of $110,865.50.

**4th Application:**  The Fee Examiner's concern with the 4th Application centered again around multiple attendees, legal research and first class air travel.  Proskauer agreed to reductions of $65,000 in compensation and $11,250 in expenses.

**5th Application:**  The Fee Examiner's concerns with the 5th Application included multiple attendees, transitory timekeepers, legal research and drafting the multiple versions of its Disclosure Statement.  Proskauer agreed to reductions of $109,927 in compensation and $3,000 in expenses.

**6th Application:**  The same concerns expressed to the 5th Application were expressed again to the 6th Application, including first class air travel.  Proskauer agreed to reductions of $205,500 in compensation and $4,500 in expenses.

## Fees & Expenses Incurred and Awarded for the 2014-2016 Period

| Application | Fees Requested | Fee Reductions | Fees Awarded | Expenses Requested | Expense Reductions | Expenses Awarded |
|---|---|---|---|---|---|---|
| 1st | $2,825,013.50 | $125,000.00 | $2,700,013.50 | $102,056.93 | $9,552.15 | $92,504.78 |
| 2nd | $2,849,857.75 | $156,050.00 | $2,693,807.50 | $183,584.12 | $18,950.00 | $164,634.12 |
| 3rd | $1,726,052.75 | $110,865.50 | $1,615,187.25 | $68,832.42 | $0.00 | $68,832.42 |
| 4th | $2,026,011.00 | $65,000.00 | $1,961,011.00 | $90,299.82 | $11,250.00 | $79,049.82 |
| 5th | $2,711,137.50 | $109,927.00 | $2,601,604.50[2] | $67,027.82 | $3,000.00 | $64,027.82 |
| 6th | $3,422,524.00 | $205,500.00 | $3,217,024.00 | $194,228.14 | $4,500.00 | $189,728.14 |
| Final Interim Period | $941,760.00 | $4,030.00 | $937,730 | $19,332.05 | $137.87 | $19,194.18 |
| TOTALS[3] | $16,502,356.50 | $776,372.50 | $15,726,377.75 | $725,361.30 | $47,390.02 | $677,971.28 |

---

[2] The compensation awarded was $394.00 more than agreed to between the Fee Examiner and Proskauer. *See* Opinion, Docket No. 1846, and Order, Docket No. 1850.

[3] Assuming the Court awards the Final Interim Period compensation and expenses in the reduced amounts requested.

**Fees Incurred for 2014-2016 Period by Project Category**

| DESCRIPTION | HOURS |
|---|---|
| ASSET ANALYSIS AND RECOVERY | 1,320.8 |
| ASSUMPTION AND REJECTION OF LEASES AND CONTRACTS | 3.9 |
| BUDGETING | 21.8 |
| BUSINESS OPERATIONS | 170.2 |
| CASE ADMINISTRATION | 872.9 |
| CLAIMS ADMINISTRATION AND | 721.2 |
| CORPORATE GOVERNANCE AND BOARD MATTERS | 511.0 |
| RETIREE BENEFITS (1114) | 3,103.0 |
| EMPLOYMENT APPLICATIONS | 922.0 |
| EMPLOYMENT AND FEE APPLICATION OBJECTIONS | 8.7 |
| LITIGATION: CONTESTED MATTERS AND ADVERSARY PROCEEDINGS (TKNA SETTLEMENT MOTION) | 4,096.5 |
| MEETING AND COMMUNICATIONS WITH CREDITORS | 131.3 |
| NON-WORKING TRAVEL (NO REDUCTION) | 441.0 |
| PLAN AND DISCLOSURE STATEMENT | 2,305.3 |
| ASBESTOS | 3,263.2 |
| REPORTING | 38.2 |
| ENVIRONMENTAL CLAIMS | 432.9 |
| DEBTOR 2004 MOTION (TK) | 309.7 |
| TK ADVERSARY PROCEEDING | 459.0 |
| RETIREE 2004 MOTION (TK) | 703.2 |
| ASBESTOS 2004 MOTION AND RELATED DISCOVERY | 576.8 |
| ANALYSIS OF TSA CLAIMS AND RECOVERY SCENARIO | 313.3 |

| ANALYSIS OF WAUPACA CLAIMS | 395.4 |
| SETTLEMENT NEGOTIATIONS WITH TKNA | 618.2 |
| ANALYSIS OF CHAPTER 11 PLAN TAX | 324.5 |
| MONTHLY FEE STATEMENTS | 80.4 |
| FEE APPLICATIONS | 494.4[4] |
| **TOTAL:** | **22,638.8** |

**Blended Hourly Rate After Reductions:**
**$694.67 ($15,726,377.75 ÷ 22,638.8)**

**Recommendation:**  The Fee Examiner has no objection to an award to Proskauer of (i) compensation for the Final Interim Period in the amount of $937,730.00, (ii) reimbursement of expenses for the Final Interim Period of $19,194.18, (iii) compensation for the 2014-2016 Period of $15,726,377.75, or (iv) expense reimbursement for the 2014-2016 Period of $677,971.28.

---

[4] Proskauer prepared all of the fee applications for LAS and LAS did not charge the estate for any fee-related services. Proskauer also assisted in the preparation of the fee applications for Towers.

**DICKINSON WRIGHT, PLLC**
**Special Counsel to the Debtor**

**Background:**   By Order of the Court dated May 9, 2014, Docket No. 150, Dickinson Wright, PLLC ("Dickinson") was retained effective as of the Petition date (the "Dickinson Retention Date").  On August 24, 2016, Dickinson filed its fee application, Docket No. 2003, (the "Dickinson Application") covering the periods from (i) December 1, 2014 through July 31, 2016 (the "Final Interim Period"), and (ii) the Dickinson Retention Date through July 31, 2016 (the "2014-2016 Period").

Prior to filing the Dickinson Application, Dickinson filed two previous fee applications covering (i) the Dickinson Retention Date through July 31, 2014 (the "1st Application"), and (ii) August 1, 2014 through November 30, 2014 (the "2nd Application").  It filed no fee applications after that date until August 24, 2016, when it filed the Dickinson Application.

| **Fees and Expenses Sought Final Interim Period:** | **Fees:** | **$25,278.00** |
| | **Expenses:** | **$3,667.33** |
| **Fees and Expenses Sought 2014-2016 Period[1]:** | **Fees:** | **$541,810.00** |
| | **Expenses:** | **$17,712.54** |

**Staffing:**  After reviewing the 1st Application filed by Dickinson, the Fee Examiner expressed concern over the use of partners instead of associates.  After that, the use of associates increased.  In addition, for both the 1st Application and the 2nd Application, Dickinson lowered the rate of two of its partners by $30 and $45 per hour.  The rates for attorneys for the 2014-2016 Period range between $220 and $630, with 65% of the attorney services performed by two attorneys with rates $375 and $420.

**Rate Increases:**  There were no rate increases during the 2014-2016 Period for Dickinson and, as noted above, two partners were billed at decreased rates.

---

[1] These figures differ slightly from those stated in the Conclusion of the Dickinson application.  After discussions, the Fee Examiner and Dickinson agree that these are the correct figures.

**Final Interim Period Review**:  During the Final Interim Period, Dickinson expended 67.5 hours and billed $25,278 rendering services relating to (i) confidentiality agreements among the parties prior to providing access to documents, (ii) assisting in providing access to documents for discovery requests, and (iii) preparation of the Dickinson Application.  The blended hourly rate for the Final Interim Period was $374.49.

The Fee Examiner had no issues after her review of the fees incurred for the Final Interim Period except that she noted that one timekeeper had failed to reduce his non-working travel time by 50%.  Dickinson agreed with this finding and agreed to the reduction of $3,112.50.

The Fee Examiner also questioned the expense of $2,832.00 shown as "Other."  Dickinson advised her that this charge related to data hosting relating to storage of the thousands of documents needed for discovery and provided a copy of the invoice.

**2014-2016 Period Review:**

**1st Application**:  Initially the Fee Examiner was concerned about duplication of effort between co-counsel to the Debtor.  After the 1st Application was filed, the Fee Examiner had a lengthy conversation with both counsel, confirming that there was little overlap between the firms.  In addition, after November 2014 Dickinson rendered less than 100 hours of services over the next 20 months.

The Fee Examiner also questioned multiple attendees on conference calls and vague time entries.  Although some of the vague time entries were supplemented, Dickinson agreed to a reduction in compensation for the 1st Application of $12,500.

**2nd Application:**  The primary issue raised by the Fee Examiner to the 2nd Application related to charges for a supplement to the 2nd Application.  Dickinson agreed to a reduction in those charges of $6,000.  Dickinson also agreed to a reduction in expenses related to travel agent fees of $140.

**Fees and Expenses Requested and Awarded for the 2014-2016 Period**

| Application | Fees Requested | Fee Reductions | Fees Awarded[2] | Expenses Requested | Expense Reductions | Expenses Awarded |
|---|---|---|---|---|---|---|
| 1st Application | $411,260.15 | $12,500 | $398,760.15 | $8,510.08 | $0 | $8,510.08 |
| 2nd Application | $123,771.85 | $6,000 | $117,771.85 | $5,675.13 | $140 | $5,535.13 |
| Final Interim Period | $25,278.00 | $3,112.50 | $22,165.50 | $3,667.33 | $0 | $3,667.33 |
| **Totals** | **$560,310.00** | **$21,612.50** | **$538,697.50** | **$17,852.54** | **$140** | **$17,712.54** |

**Fee Incurred for 2014-2016 Period by Project Category**

| CATEGORY | HOURS | FEES |
|---|---|---|
| Administration | 92.2 | $29,881.70 |
| Fee Applications and Fee Responses | 128.3 | $51,906.00 |
| Contested Matters | 1,192.8 | $451,452.30 |
| Non-Working Travel | 106 | $25,443.00 |
| Board of Director Matters | 0.4 | $252.00 |
| General Bankruptcy | 2.5 | $1,375.00 |
| **TOTALS:** | **1522.2** | **$560,310.00** |

**Blended Hourly Rate After Reductions:  $353.89 ($538,697.50 ÷ 1,522.2)**

**Recommendation:**  The Fee Examiner has no objection to an award to Dickinson of (i) compensation for the Final Interim Period in the amount of $22,165.50 ($25,278-$3,112.50), (ii) reimbursement of expenses for the Final Interim Period of $3,667.33, (iii) compensation for the 2014-2016 Period of $538,697.50, or (iv) expense reimbursement for the 2014-2016 Period of $17,712.54.

---

[2] The total assumes the Court awards the reduced amount requested in full.

**ANALYSIS RESEARCH PLANNING CORPORATION**
**Asbestos Liability Advisor to the Debtor**

**Background**:  By Order of the Court dated January 16, 2015, Docket No. 727, Analysis Research Planning Corporation ("ARPC") was retained *nunc pro tunc* to December 15, 2014 (the "ARPC Retention Date"). ARPC filed its fee application on August 29, 2016, Docket No. 2013, (the "ARPC Application") covering the periods from (i) April 1, 2016 through July 31, 2016 (the "Final Interim Period"), and (ii) the ARPC Retention Date through July 31, 2016 (the "2014-2016 Period").

Prior to filing the ARPC Application, ARPC filed four fee applications:  May 15, 2015 (the "1st Application"); September 14, 2015 (the "2nd Application"); January 19, 2016 (the "3rd Application"); and May 16, 2016 (the "4th Application," and collectively, the "Previous 4 Applications).

Although the ARPC Application covers the Final Interim Period, no fees or expenses were incurred by ARPC during the Final Interim Period.

**Fees and Expenses Sought Final Interim Period:**     None

**Fees and Expenses Sought 2014-2016 Period:**     Fees:      $462,460
                                                                          Expenses:  $0.00

**Staffing:**  During the 2014-2016 Period, ARPC most of the services were rendered by between four and six professionals consisting of Managing Directors, Directors, Consultants and Vice Presidents, with fees ranging between $275 and $650 per hour.  During one fee application where more than six professionals were used, ARPC used an additional seven analysts at $100 per hour.

**Rate Increases:**  There were no rate increases during the 2014-2016 Period for ARPC.

**Fees and Expenses Requested and Awarded for the 2014-2016 Period**

| Application | Fees Requested | Fees Awarded | Expenses Requested | Expenses Awarded |
|---|---|---|---|---|
| 1st Application | $178,576.50 | $178,576.50 | $0.00 | $0.00 |
| 2nd Application | $112,724.50 | $112,724.50 | $0.00 | $0.00 |
| 3rd Application | $117,605.00 | $117,605.00 | $0.00 | $0.00 |
| 4th Application | $53,554.00 | $53,554.00 | $0.00 | $0.00 |
| Total: | $462,460.00 | $462,460.00 | $0.00 | $0.00 |

**Fee Incurred for 2014-2016 Period by Project Category**

| CATEGORY | HOURS | FEES |
|---|---|---|
| Claims Analysis: | | |
| (a) Historical Data Analysis | 134.4 | $64,942.00 |
| Claims Forecast: | | |
| (a) Data Analysis – Model Building | 966.8 | $322,993.50 |
| (b) Cash flow Analysis | 5.2 | $1,949.00 |
| (c) Reporting | 84.4 | $52,460.50 |
| (d) Compile Database | 25.2 | $16,380.00 |
| Prepare/Attend Meetings/Calls | 9.3 | $3,735.00 |
| TOTALS: | 1,225.3 | $462,460.00 |

**Blended Hourly Rate:**
**$377.43 ($462,460 ÷1,225.3)**

ARPC did not charge the estate for the preparation or review of its monthly statements or fee applications or for providing additional information requested by the Fee Examiner.  As noted in the Proskauer report, Proskauer prepared the fee applications for ARPC.

After her review of the Previous 4 Applications, the Fee Examiner requested supplemental information, including more detailed time records.  After the additional information was provided and reviewed, the Fee Examiner had no objections to the request for interim compensation and no objection to a final award of compensation.

**Recommendation:**  The Fee Examiner has no objection to an award to ARPC of final compensation in the amount of $462,460.00.

**TOWERS WATSON DELAWARE, INC.**
**Actuary to the Debtor**

**Background:**  By Order of the Court dated October 17, 2014, Docket No. 609, Towers Watson Delaware, Inc. ("Towers") was retained effective as of the Petition Date (the "Towers Retention Date")[1].  On August 29, 2016, Towers filed its fee application, Docket No. 2012 (the "Towers Application") covering the periods from (i) April 1, 2016 through July 31, 2016 (the "Final Interim Period"), and (ii) the Towers Retention Date through July 31, 2016 (the "2014-2016 Period").

Prior to filing the Towers Application, Towers filed four fee applications:  January 20, 2015 (the "1st Application"); May 15, 2015 (the "2nd Application"); January 19, 2016 (the "3rd Application"); and May 16, 2016 (the "4th Application," and collectively, the "Previous 4 Applications").

Although the Towers Application includes the Final Interim Period, no services were rendered during the Final Interim Period.  The fees and expenses requested for the Final Interim Period include only services and expenses incurred during prior periods that were not previously invoiced.  The Towers Application states that:

> Towers Watson also requests payment for services rendered and reimbursement of expenses incurred during the period covered by the [4th Application], which amounts were inadvertently omitted in the Monthly Fee Statements and the [4th Application]. For the avoidance of doubt, Towers Watson has not requested payment for, nor been paid for, these fees and expenses at any prior point during the Chapter 11 Case.

> Towers Application at page 5, n.5.

**Fees and Expenses Sought Final Interim Period:**      Fees:  $33,466.05
                                                        Expenses:  $1,912.53

**Fees and Expenses Sought 2014-2016 Period:**      Fees:      $531,237.27
                                                    Expenses:  $8,740.57

**Staffing:**  During the 2014-2016 Period, Towers primarily relied on three Senior Actuarial Consultants, four Senior Consultants, two Actuarial Consultants, one Actuary, and three Analysts.  The 13 professionals

---

[1] Towers was not initially retained by the Debtor and it was intended that Towers be treated as an "Ordinary Course Professional."  However, upon reviewing the July 2014 monthly invoice of Counsel to the Debtor, the Fee Examiner noted an expense of $117,904 paid to Towers.  After discussions with Counsel to the Debtor, it was agreed that the Debtor would seek to retain Towers and that Towers would file fee applications.

accounted for more than 92% of the hours expended and fees incurred during the 2014-2016 Period. The blended hourly rate was $486.70, after giving effect to the 10% discount Towers gave to the Debtor.

**Rate Increases:**  With regard to rate increases, the Towers Application states:

> Since the commencement of the Chapter 11 Case, Towers Watson has increased its rates once to account for, among other things, increased professional experience, skill, and natural market forces.

> Towers Watson estimates that if it had never altered its rates during the Chapter 11 Case, professional services rendered would have resulted in Towers Watson seeking approval during the Final Application Period of an amount 1.8% less than that requested herein, or a total reduction of $9,848.01. This calculation, however, does not reflect the causes of rate increases mentioned above, including increased professional experience and skill of Towers Watson's professionals that contributed, over multiple years, to the success of the Debtor's Plan.

> The rate of most individuals was increased during the period between the Second Interim Application and Third Interim Application while the rate of a single individual was increased during the period between the Third Interim Application and Fourth Interim Application. For the avoidance of doubt, the rate of any single person was only increased once during the Chapter 11 Case, and all increases were disclosed in the previous Interim Applications.

Towers Application ¶28 and ¶28 n.7.

Based upon a review of the Towers Application, including (i) the 10% discount Towers provided to this client, and (ii) the cases and Guidelines referred to in the Report, the Fee Examiner has no objection to Towers' rate increases.

**Accommodations:**  As noted above, Towers provides a 10% discount on its fees to the Debtor.

**Final Interim Period Review:**  As noted above, Towers did not incur any new fees or expenses during the Final Interim period but did charge the estate for fees and expenses that should have been charged in the 4th Application but were not. These fees and expenses included 65.6 hours billed at $33,466.05 for rendering services relating to, among other things, (i) fee application preparation, and (ii) VEBA cash flow analysis.
Again, as noted earlier, the services rendered and expenses requested for the Final Interim Period relate to services and expenses incurred during the 4th Application period that were not previously invoiced. The Fee Examiner reviewed each entry and expense to ensure there was no duplication. After a review of the time

records and expense backup documentation and discussions with Towers, Towers agreed to an expense reduction of $187.08. The Fee Examiner had no other objections to the Final Interim Period fees or expenses requested.

**2014-2016 Period Review:**    In general, after discussions and supplemental information, including revised time records, the Fee Examiner was satisfied with the content of the Previous 4 Applications filed by Towers. There was an initial charge for an expense of $10,342 that the Fee Examiner objected to which was described as "7% "technical and administrative fee."   Towers agreed to this reduction.   There was also a $5,000 reduction in compensation related to preparation of fee applications.   The chart below summarizes the requests, reductions and awards of compensation and expenses.

### Fee & Expense Requests and Awards for the 2014-2016 Period

| Application | Fee Requested | Fee Reductions | Fees Awarded | Expenses Requested | Expense reductions | Expenses Awarded |
|---|---|---|---|---|---|---|
| 1st Application | $147,765.00 | $151.88 | $147,613.12 | $10,342.00 | $10,342 | $0.00 |
| 2nd Application | $21,149.00 | $5,000.00 | $16,149.00 | $0.00 | $0.00 | $0.00 |
| 3rd Application | $175,565.00 | $0.00 | $175,565 | $0.00 | $0.00 | $0.00 |
| 4th Application | $158,444.10 | $0.00 | $158,444.10 | $7,140.39 | $512.35 | $6,828.04[2] |
| Final Interim Period | $33,466.05 | $0.00 | $33,466.05[3] | $1,912.53 | $187.08 | $1,725.45[4] |
| **TOTALS** | **$536,389.15** | **$5,151.88** | **$531,237.27** | **$19,394.92** | **$11,041.43[5]** | **$8,553.49** |

[2] While the agreement was for a reduction of $512.35, which would have resulted in an award of expenses of $6,628.04, the Order awarding the expenses awarded $6,828.04.   Docket No. 1944.   Accordingly, the request for expenses of $8,740.57 should be lowered by (i) $187.08 for the Final Interim Period, and (ii) $200 for the 4th Application Period, resulting in a final award of expenses of $8,403.49.

[3] Assuming the Court awards the Final Interim Period request for compensation in full.

[4] Assuming the Court awards the Final Interim Period request for expenses in full.

[5] *See* n.2, *supra.*

**Fees Incurred for 2014-2016 Period by Project Category[6]**

| DESCRIPTION | HOURS | FEES |
|---|---|---|
| Preparation of Defined Benefit Obligation (DBO) by individual for the E&A and UAW retiree medical plans as of September 30, 2013 | 19.1 | $9,396.00 |
| Preparation of plan termination and ongoing liabilities for the E&A and UAW pension plans as of March 31, 2014 | 27.6 | $12,833.70 |
| Reconciliation of data for the E&A and UAW retiree medical plans as of March 31, 2014 to be used to provide plan termination liabilities | 35.0 | $11,689.00 |
| Individual obligations for E&A and UAW retiree medical plan participants as of March 31, 2014 | 121.4 | $47,236.95 |
| Listing of E&A and UAW pension plan participants potentially impacted by PBGC limits in the event of a March 31, 2014 plan termination | 19.9 | $8,595.48 |
| Consulting on retiree medical strategy | 21.3 | $11,244.39 |
| Expanded billing summary | 23.5 | $10,946.28 |
| Preparation of fees for Fee Examiner, preparation of detailed billing summaries, participation of conference calls with Proskauer and the fee examiner and in court hearings regarding fee applications | 86.0 | $44,112.40 |
| Preparation of preliminary retiree financial income analysis report delivered on August 20, 2015 | 36.9 | $17,961.75 |
| Preparation of revised retiree financial income analysis report delivered on August 24, 2015 | 55.8 | $26,982.00 |
| Preparation of revised retiree financial income analysis report delivered on August 31, 2015 | 90.6 | $45,498.85 |
| Preparation of additional scenarios to supplement the August 31, 2015 retiree financial income analysis report delivered on September 2, 2015 | 17.7 | $9,131.00 |
| Comparison of the current Budd Company UAW retiree health care plan to a plan design offered under the UAW VEBA delivered on October 6, 2015 | 26.4 | $11,776.00 |

---

[6] These categories and figures were copied from Towers Application Pp 7-11. However, because Towers uses 62 categories, the Fee Examiner prepared this chart using only those project categories where 15 hours or more were recorded. This method included 81% of the fees and hours recorded and provides sufficient information for analysis of the services rendered. Using the full amount of time expended, 1,102.1, and the full amount of fees charged, $531,237.27, the blended hourly rate was $482.02.

| | | |
|---|---|---|
| Provide analysis on HRA levels that provide a comparable level of benefits as a plan design offered under the UAW VEBA delivered on October 16, 2015 | 15.5 | $8,041.05 |
| Preparation of estimate PBGC distress liabilities for the Budd Company qualified pension plans delivered November 6, 2015 | 19.4 | $8,421.25 |
| Review and Revise Retiree Exchange Education Deck and Plan Provision Comparison | 24.8 | $13,224.60 |
| 1114 Trial | 213.4 | $119,124.00 |
| Revised HRA Report - Winner and Loser Analysis | 15.7 | $8,440.65 |
| UAW VEBA cash flow for retiree medical benefits | 20.4 | $11,221.65 |

**Recommendation:** The Fee Examiner has no objection to an award to Towers of (i) compensation for the Final Interim Period in the amount of $33,466.05 and expenses of $1,725.45 (ii) compensation for the 2014-2016 Period of $531,237.27, or (iii) expense reimbursement for the 2014-2016 Period of $8,553.49.

# EXHIBIT B

# THE E&A COMMITTEE PROFESSIONALS

**JENNER & BLOCK, LLP**
**Counsel to the E&A Committee**

**Background:**  By Order of the Court dated May 20, 2014, Docket No. 180, Jenner & Block, LLP ("Jenner") was retained effective as of May 6, 2014 (the "Jenner Retention Date").  On August 29, 2016, Jenner filed its fee application, Docket No. 2022 (the "Jenner Application"), covering the periods from (i) April 1, 2016 through August 29, 2016 (the "Final Interim Period"), and (ii) the Jenner Retention Date through August 29, 2016 (the "2014-2016 Period").

Prior to filing the Jenner Application, Jenner filed six previous fee applications:  September 16, 2014 (the "1st Application"); January 20, 2015 (the "2nd Application"); May 15, 2015 (the "3rd Application"); September 3, 2015 (the "4th Application"); January 19, 2016 (the "5th Application"); and May 16, 2016 (the "6th Application, and collectively, the "Previous 6 Applications").

| | | |
|---|---|---|
| **Fees and Expenses Sought Final Interim Period:** | **Fees:** | **$505,106.49** |
| | **Expenses:** | **$37,234.44** |
| **Fees and Expenses Sought 2014-2016 Period:** | **Fees:** | **$3,950,563.81[1]** |
| | **Expenses:** | **$283,909.86** |

**Staffing:**  During the 2014-2016 Period, 50% of the services performed were performed by three partners and one paralegal.  Other partners and associates with different areas of specialization were used as needed.

**Rate Increases:**  Jenner raised its rates on January 1, 2015 and January 1, 2016.  The Jenner Application states that it received prior approval of its rate increases from its client.  Had Jenner not raised its rates, the aggregate amount of compensation requested would have been $172,009.30 less, an approximate increase of 4.5% over the two-year period.  Taking into account (i) the 15% discount Jenner provided to this client, (ii) the

---

[1] The Jenner Application stated the total fees for the 2014-2016 Period as $3,951,713.60.  After filing the Jenner Application, Jenner and the Fee Examiner discussed whether the Jenner Application calculation was inadvertently based on this Court's May 6, 2016 Order, not the subsequent amended Order entered by this Court on May 10, 2016.  *See* Docket Nos. 1809,1814.  Accordingly, the correct aggregate fees for the 2014-2016 Period is $3,950,563.81.  The Fee Examiner understands that Jenner will tender a revised proposed order in this amount.

other information contained in the Jenner Application, and (iii) the cases and Guidelines referred to in the Report, the Fee Examiner has no objection to these rate increases.

**Accommodation:** Jenner provided its client with a 15% discount from its normal hourly rates.

**Final Interim Period Review:** During the Final Interim Period, Jenner expended 817.80 hours and billed $505,106.49 for a blended hourly rate of $617.64. Jenner rendered services primarily relating to (i) employee benefits including the trial, and then the settlement, between the UAW and TKNA, (ii) E&A Committee governance and attendance at meetings and communications with the E&A Committee, and (iii) the Plan and Disclosure Statement. After a review of the time records of Jenner, the Fee Examiner and MWA had no objections. However, after a review of the expense backup, the Fee Examiner and MWA raised some questions regarding certain expenses. Jenner has agreed to reduce its expense request for the Final Interim Period by $1,200.36.

**2014-2016 Period Review:** Prior to filing the Jenner Application, Jenner filed the Previous 6 Applications. The Fee Examiner or MWA reviewed each of the Previous 6 Applications and obtained reductions in compensation for, among other things, paralegal and attorney time, time expended on fee applications, transitory timekeepers, and administrative tasks. Expense reductions were also obtained, primarily related to meal or other travel expenses.

**2014-2016 Period Review:  Fees and Expenses Requested and Awarded**

| Application | Fees Requested | Fee Reduction | Fees Awarded | Expenses Requested | Expense Reduction | Expenses Awarded |
|---|---|---|---|---|---|---|
| 1st Application | $702,293.01 | $16,100 | $686,193.01 | $17,531.82 | $1,190.60 | $16,341.22 |
| 2nd Application | $832,861.42 | $0.00 | $832,861.42 | $68,031.09 | $1,007.49 | $67,023.60 |
| 3rd Application | $290,323.44 | $1,762.00 | $288,561.44 | $26,959.53 | $0.00 | $26,959.53 |
| 4th Application | $894,070.98 | $0.00 | $894,070.98 | $88,567.04 | $15,503.58 | $73,063.66 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 5th Application | $313,306.81 | $1,150.04 | $312,156.77 | $34,881.39 | $62.78 | $34,814.11 |
| 6th Application | $431,613.60 | $0.00 | $431,613.60 | $29,283.59 | $810.29 | $28,473.30 |
| Final Interim Period | $505,106.49 | $0.00 | $505,106.59 | $37,234.44 | $1,200.36 | $36,034.38 |
| **Totals:** | **$3,969,575.75** | **$19,012.04** | **$3,950,563.81[2]** | **$302,488.90** | **$19,775.10** | **$282,709.80[3]** |

### Fees Incurred for 2014-2016 Period by Project Category[4]

| CATEGORY | HOURS |
|---|---|
| Case Administration | 111.40 |
| Committee Governance & Attendance at Meetings | 464.20 |
| Employee Benefits | 829.80 |
| Employment &Fee Applications | 519.10 |
| Litigation | 5,174.20 |
| Communications with Retirees | 28.80 |
| Plan & Disclosure Statement | 405 |
| Claims Administration | 40.70 |
| Budgeting | 1.0 |
| Non-working Travel Time | 144.68 |
| **Total:** | **7,718.88** |

---

[2] If the compensation requested for the Final Interim Period is awarded in full.

[3] If the expenses requested in the reduced amount are approved by the Court.

[4] These figures were derived from the Jenner Application ¶¶ 33-42.

**Blended hourly rate after reductions:**
**$511.81 ($3,950,563.71 ÷ 7,718.88)**

**Recommendation:**  The Fee Examiner has no objection to an award to Jenner of (I) compensation for the Final Interim Period in the amount of $505,106.49 and expenses of $36,034.08, (ii) compensation for the 2014-2016 Period of $3,950,563.81, or (iii) expense reimbursement for the 2014-2016 Period of $282,709.80.

**THE SEGAL COMPANY**
**Actuarial Consultant to the E&A Committee**

**Background:**  By Order of the Court dated May 20, 2014, Docket No. 181, The Segal Company ("Segal") was retained effective as of May 8, 2014 (the "Segal Retention Date").  On August 29, 2016, Segal filed its fee application, Docket No. 2023 (the "Segal Application"), covering the periods from (i) April 1, 2016 through July 31, 2016 (the "Final Interim Period"), and (ii) the Segal Retention Date through July 31, 2016 (the "2014-2016 Period").

Segal filed six previous fee applications:  September 18, 2014 (the "1st Application"); January 20, 2015 (the "2nd Application"); May 15, 2015 (the "3rd Application"); September 3, 2015 (the "4th Application"); January 19, 2016 (the "5th Application"); and May 16, 2016 (the "Sixth Application," and collectively, the "Previous 6 Applications").

| | | |
|---|---|---|
| **Fees and Expenses Sought Final Interim Period:** | **Fees:** | **$119,609.50** |
| | **Expenses:** | **$5,963.77** |
| **Fees and Expenses Sought 2014-2016 Period:** | **Fees:** | **$625,387.50** |
| | **Expenses:** | **$19,889.84** |

**Staffing:**   During the Final Interim Period, Segal used five Vice Presidents with different areas of specialization, one Senior Compliance Consultant and one Actuarial Analyst with rates ranging between $245 and $790.  The blended hourly rate for the Final Interim period was $456.19.

For the 2014-2016 Period, Segal appeared to staff the matter appropriately using, in most instances, no more than six professionals.  The blended hourly rate for the Final Interim Period of $456.19 was the highest blended rate during the 2014-2016 Period.  For the Previous 6 Applications the blended hourly rate ranged between $403 and $434.

**Rate Increases:**   Segal implemented rate increases in January 2016.   Certain timekeeper's rates were increased between $5.00 and $15.00 per hour.  If the rate increases had not been implemented the fees for the 6th Application Period and Final Interim Period would have been $4,510.50 less.  Based upon her review of the information provided by Segal, including that Segal did not raise its 2014 rates to the 2015 level in January 2015, but waited until 2016, and the cases and Guidelines referred to in the Report, the Fee Examiner has no objection to the rate increase.

**Final Interim Period Review**:  During the Final Interim Period, Segal expended 262.3 hours and billed $119,658.50 rendering services relating to, among other things, (i) actuarial analysis (ii) reviewing the Plan and related documents, (iii) various documents provided by medical and drug plans, and (iv) meetings and conference calls with the E&A Committee to discuss and explain the status of the case and the post-confirmation effect of the Plan on employee benefits.  After a review of the unredacted time record and discussions, Segal agreed to a reduction in compensation of $348.50 relating to vague and duplicative entries. The Fee Examiner and MWA had no objection to the expenses requested.

**2014-2016 Period Review:**  In general, after discussions and supplemental information, the Fee Examiner and MWA were satisfied with the content of the Previous 6 Applications.  However, for the 2nd Application there was an agreed upon reduction in expenses of $70.00.  For the 3rd Application there were agreed upon reductions of (i) $337.50 in compensation for transitory timekeepers, and (ii) $105 for expenses.  For the 4th Application, Segal agreed to a reduction (i) in compensation of $675 relating to invoice preparation and a billing error, and (ii) in expenses of $183.91.  For the 5th Application, Segal agreed to (i) a compensation reduction of $322 for vague time entries, and (ii) an expense reduction of $223.01.  For the 6th Application, Segal agreed to a $15.00 reduction in expenses.

| Application | Fees Requested | Fee Reductions | Fees Awarded | Expenses Requested | Expense Reductions | Expenses Awarded |
|---|---|---|---|---|---|---|
| 1st | $75,719.50 | $0.00 | $75,719.50 | $2,333.60 | $70.00 | $2,263.60 |
| 2nd | $53,848.50 | $337.50 | $53,511.00 | $1,485.45 | $105.00 | $1,380.45 |
| 3rd | $84,819.50 | $675.00 | $84,144.50 | $4,616.85 | $183.91 | $4,432.94 |
| 4th | $53,680.50 | $322.00 | $53,358.50 | $1,698.58 | $223.01 | $1,475.57 |
| 5th | $141,416.00 | $0.00 | $141,416.00 | $1,891.76 | $15.00 | $1,876.76 |
| 6th | $97,628.50 | $0.00 | $97,628.50 | $2,496.75 | $0.00 | $2,496.75 |
| Final Interim Period | $119,609.50 | $348.50 | $119,261.00[1] | $5,963.77 | $0.00 | $5,963.77 |
| | **$626,722.00** | **$1,683.00** | **$625,039.00** | **$20,486.86** | **$596.92** | **$19,889.84[2]** |

---

[1] This figure assumes the Court awards the reduced amount requested for Final Interim Period.

[2] This figure assumes the Court awards the Final Interim Period expenses requested in full.

### Fees Incurred for 2014-2016 Period by Project Category[3]

| CATEGORY | HOURS |
|---|---|
| Actuarial Analysis | 600.6 |
| Case Management | 51.3 |
| Data Analysis | 13.8 |
| Document Review | 142 |
| Conferences with other Professionals | 160.4 |
| Report Preparation | 104.5 |
| Research | 46.0 |
| Committee Meetings/Conferences | 358.1 |
| **Totals Hours:** | **1,476.7** |

**Blended Hourly Rate After Reductions:  $423.27 ($625,039 ÷ 1,476.7)**

**Recommendation:**  The Fee Examiner has no objection to an award to Segal of (i) compensation for the Final Interim Period in the amount of $119,261.00, and expenses of $5,963.77 (ii) compensation for the 2014-2016 Period of $625,039.00, or (iii) expense reimbursement for the 2014-2016 Period of $19,889.84.

---

[3] These categories and figures were derived from the Previous 6 Applications and the Segal Application because this type of summary was not provided in the Segal Application.

**SOLIC CAPITAL ADVISORS, LLC**
**Financial Advisor to the E&A Committee**

**Background:**  By Order of the Court dated June 16, 2014, Docket No. 237, SOLIC Capital Advisors, LLC ("SOLIC") was retained effective as of May 9, 2014 (the "SOLIC Retention Date").  On August 29, 2016, SOLIC filed its fee application, Docket No. 2024 (the "SOLIC Application") covering the periods from (i) April 1, 2016 through August 29, 2016 (the "Final Interim Period"), and (ii) the SOLIC Retention Date through August 29, 2016 (the "2014-2016 Period").

Prior to filing the SOLIC Application, SOLIC filed six fee applications:  September 15, 2014 (the "1st Application); January 20, 2015 (the "2nd Application"); May 15, 2015 (the "3rd Application"); September 15, 2015 (the "4th Application"; January 16, 2016 (the "5th Application"); and May 16, 2016 (the "6th Application," and collectively, the "Previous 6 Applications").

Although the SOLIC Application covers the months from April 1, 2016 through August 29, 2016, no time was expended or fees incurred by SOLIC after July 31, 2016 and the last payment made to SOLIC disclosed in the SOLIC Application was made on or about July 1, 2016 for work to be performed in July.

| | | |
|---|---|---|
| **Fees and Expenses Sought Final Interim Period:** | **Fees:** | **$600,000.00** |
| | **Expenses:** | **$5,039.77** |
| **Fees and Expenses Sought 2014-2016 Period:** | **Fees:** | **$4,011,290.03** |
| | **Expenses:** | **$58,473.00** |

**Retention Order:**  By Order of the Court dated June 16, 2014, Docket No. 237, SOLIC was retained effective as of May 9, 2014 under 11 U.S.C. §328 (the "SOLIC Order") at a flat monthly fee, payable in advance, of $150,000.00.

The SOLIC Order provided, among other things:

SOLIC shall apply for compensation for professional services  rendered and reimbursement  of expenses incurred in connection with its professional  services for the  Retiree Committee  in the

Debtor's Chapter 11 Case in compliance with section 328(a)of the Bankruptcy Code, and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the Court except that SOLIC personnel may keep their time as set forth in the Application in one hour (1.0) increments. The Debtor shall pay SOLIC its flat monthly amount, and shall reimburse SOLIC for reasonable and necessary expenses (as provided in the Engagement Letter), incurred on or after May 9, 2014.

Notwithstanding the preceding paragraph of this Order and any provision contrary in the Application or the Engagement Letter, the U.S. Trustee shall have the right to object to SOLIC's request(s) for interim and final compensation based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code; provided, however, that "reasonableness" shall not be evaluated primarily on an hourly basis.

**Staffing:**  During the 2014-2016 Period, the SOLIC professionals primarily responsible for work on this case consisted of one Senior Managing Director, one Managing Director and one Vice President.  These three professionals accounted for more than 87% of the hours expended during the 2014-2016 Period.  Because SOLIC was paid on a flat monthly fee basis, there is no hourly rate. However, using the number of hours worked during the 2014-2016 Period (6,325), divided into the fees incurred during the 2014-2016 Period ($4,011,290.03), the imputed blended hourly rate is $634.20.

**Rate Increases:**  SOLIC did not raise its flat monthly rate during the 2014-2016 Period.

**Rate Accommodation:**  Upon request of the E&A Committee, SOLIC agreed to reduce its monthly fee from $175,000 to $150,000.00.

**Final Interim Period Review**:  During the Final Interim Period, SOLIC expended 882 hours and billed $600,000, rendering services primarily relating to (i) the settlements with TKNA incorporated into the Plan, and (ii) communications with the E&A Committee and attending E&A Committee meetings.  The imputed

blended hourly rate was $680.27 for the Final Interim Period.  After a review of the detailed and unredacted time records and expenses of SOLIC, the Fee Examiner and MWA have no objections[1].

**2014-2016 Period Review:**   Prior to the filing of the SOLIC Application, SOLIC filed the Previous 6 Applications.  After a review of each of the Previous 6 Applications, including the more detailed unredacted time records, the Fee Examiner and MWA had no objection to the fees requested.   There were minor reductions for expenses in five of the six applications aggregating $810.33.

Based upon (i) the information set forth in the SOLIC Application, (ii) the agreement by SOLIC prior to its retention to reduce its monthly fees from $175,000 per month to $150,000 per month, (iii) the terms of the SOLIC Order, and (iv) the cases cited in the Report, the Fee Examiner has no objection to an award of compensation in the amount requested.

### Fees Incurred for 2014-2016 Period by Project Category

| CATEGORY | HOURS |
|---|---|
| Fee Statements & Applications | 290 |
| Bankruptcy Administration Including Depositions | 270 |
| Drafting & Review of Documents Including Those Produced in Discovery | 1,387 |
| Settlement and Post-Settlement Agreement Analysis | 1,311 |
| TKNA Settlement Agreement | 2,236 |
| Claims Analysis, Review and Negotiation | 248 |
| Committee Communications, Conferences and Attendance | 435 |

---

[1] Attached hereto as Exhibit SOLIC-1 is a sample of the more detailed time records SOLIC provided to the Fee Examiner and MWA.  These records are too voluminous to annex in their entirety and may also contain confidential information.

| | |
|---|---|
| Non-Committee Meetings and Communications | 28 |
| Non-Working Travel Time | 120 |
| **TOTAL** | **6,325** |

**Recommendation:** The Fee Examiner has no objection to an award to SOLIC of (i) compensation for the Final Interim Period in the amount of $600,000.00, and expenses of $5,039.77, (ii) compensation for the 2014-2016 Period of $4,011,290.03, or (iii) expense reimbursement for the 2014-2016 Period of $58,473.00.

# EXHIBIT SOLIC-1

| Date | Timekeeper | Time | Initial Entry | Detail |
|------|-----------|------|---------------|--------|
| 4/9/2016 | Nowitz, Raoul | 3.00 | Attention to E&A Claim Settlement Matters | Attention to review of TKNA latest public financials and research, latest credit stats, performance changes in the context of ability to service settlement agreement obligations. |
| 4/12/2016 | Nowitz, Raoul | 1.00 | E&A Committee Meeting Attendance and Communication | Attend weekly E&A Committee teleconference with E&A Committee Members, C. Steege (Jenner & Block), M. Root (Jenner & Block), S. Wohl (Segal), C. Grice (Segal), N. Luria (SOLIC), and J. Oriti (SOLIC). |
| 7/27/2016 | Nowitz, Raoul | 6.00 | E&A Committee Meeting Attendance and Communication | Attend E&A Committee in-person meeting with E&A Committee Members, C. Steege (Jenner & Block), M. Root (Jenner & Block), S. Wohl (Segal), and C Grice (Segal); discussion on various elements/agenda items including VEBA set-up items and closing/funding elements at effective date. |
| 7/30/2016 | Luria, Neil | 3.00 | Attention to E&A Claim Settlement Matters | Review of final closing mechanics and final cash flow projections; Updating cash recovery models based on CRO projections; Review of issues presented by outstanding cash flow items and reimbursement into post closing trust. |

# EXHIBIT C

# THE UAW PROFESSIONALS

**CLEARY, GOTTLIEB, STEEN & HAMILTON, LLP**
**Counsel to the UAW**

**Background:**  By Order of the Court dated May 9, 2014, Docket No. 151, Cleary, Gottlieb, Steen & Hamilton, LLP ("Cleary") was retained effective as of April 9, 2014 (the "Cleary Retention Date").  On August 29, 2016, Cleary filed its fee application, Docket No. 2020, (the "Cleary Application"), covering the periods from (i) April 1, 2016 through August 25, 2016 (the "Final Interim Period"), and (ii) the Cleary Retention Date through August 25, 2016 (the "2014-2016 Period").

Prior to filing the Cleary Application, Cleary filed six interim fee applications:  September 15, 2014 (the "1st Application"); January 20, 2015 (the "2nd Application"); May 14, 2015 (the 3rd Application"); September 1, 2015 (the "4th Application"); January 19, 2016 (the "5th Application"); and May 16, 2016 (the "6th Application, and collectively, the "Previous 6 Applications").

**Fees and Expenses Sought Final Interim Period:**   Fees:  **$671,357.25**
                                                      Expenses:  **$36,800.68**

**Fees and Expenses Sought 2014-2016 Period:**   Fees:  **$8,897,286.74**
                                                 Expenses:  **$454,959.82**

**Staffing:**  In general, during the 2014-2016 Period, Cleary relied primarily on associates and support staff, with only two or three partners providing services.  As noted below, after reductions the blended hourly rate was $532.05 indicating that Cleary assigned staff appropriately.

**Rate Increases:**  The Cleary Application at ¶ 46, states, in part:

> Since the beginning of the case, Cleary Gottlieb's rates have increased four times: first, on January 1, 2015 in accordance with Cleary Gottlieb's general policy relating to annual rate increases for clients; second, on July 1, 2015, with respect to  certain individual timekeepers due to class matriculation; third, on January 1, 2016 in accordance with Cleary Gottlieb's general policy relating to annual rate increases for clients; and fourth, on July 1, 2016, with respect to certain individual timekeepers due to class matriculation. The January 1, 2015 rate increase was disclosed and discussed in the fee [3rd Application], the July 1, 2015 rate increase was disclosed and discussed in [4th Application], the

January 1, 2016 rate increase is discussed in the 6th Application], and the July 1, 2016 increase is discussed and disclosed herein. Each rate increase was reflected in the monthly budgets provided to the UAW, and the UAW was aware of, reviewed and approved of each rate increase. The annual rate increases[1] were reasonable in light of market practice; a survey of recent bankruptcy filings shows that annual increases are typical among law firms in the New York City region, and Cleary Gottlieb is willing to provide such examples to the Court or fee examiner upon request to demonstrate that Cleary Gottlieb's annual rate increases are in line with market practice and reasonable, particularly when taking into account the across-the-board 10% discount. Taking into account only the annual rate increases, Cleary Gottlieb estimates that it would have invoiced the estate for approximately $300,000.00 less over the course of the [2014-2016 Period]. However, this amount is substantially higher than ultimately what would have been the difference in the fees paid by the estate to Cleary Gottlieb, given the substantial amount of post-invoice write-offs made by Cleary Gottlieb throughout the [2014-2016 Period] as discussed in [the Previous 6 Applications] and elsewhere herein.

After a review of (i) the Cleary Application, (ii) the Previous 6 Applications, (iii) the reductions obtained from Cleary, (iv) Cleary's other reductions, (v) the 10% discount Cleary provided to its client, and (vi) the cases and Guidelines referred to in the Report, the Fee Examiner has no objection to the rate increases of Cleary.

**Final Interim Period Review**: During the Final Interim Period, Cleary expended 1,210.4 hours and billed $671,357.25 rendering services primarily relating to (i) employee benefits and pensions, (ii) finalizing and implementing the settlement with TK Finance, (iii) fee application preparation, and (iv) the Plan and Disclosure Statement.

---

[1] Cleary Gottlieb makes this disclosure pursuant to a memorandum received from the fee examiner on August 12, 2016, which requires that "[i]f the applicant increased rates, following the rate change the resulting rates must be reasonable, including being in line with market rates in the professional's district." Following discussion with the fee examiner, Cleary Gottlieb understands that the only "rate increases" that need to be reflected in this calculation are the annual rate increases, since the matriculation rate increases for individual timekeepers simply reflect a higher billing rate for more experienced attorneys, rather than an actual rate increase as a result of Cleary Gottlieb's practices. Cleary Application, ¶ 46, n.6.

The Fee Examiner and MWA raised several issues with Cleary after their review of the Cleary Application and, after discussions, obtained a reduction in compensation of $53,901.23 relating to, among other things, (i) administrative tasks, (ii) fee application costs, and (iii) repetitive time entries.  Cleary also agreed to reduce its request for expenses by $1,201.88 relating to first class travel and supplies. Mindful of the Court's previous orders with regard to compensation related to the eight iterations of the Disclosure Statement, the Fee Examiner and MWA found no further charges relating to those versions.

**2014-2016 Period Review:**

**1st Application**: The issues raised to the 1st Application by MWA and the Fee Examiner related to the use of contract attorneys, multiple attendees at conferences and the number of hours expended on research by first year associates.  Cleary agreed to reduce its compensation request by $64,738.46 and also agreed to an expense reduction of $1,161.54 relating to meals, transportation and teleconference charges.

**2nd Application:**  The primary issues with the 2nd Application again related to the use of contract attorneys and multiple attendees in court and at conferences.  Cleary agreed to reduce its compensation request by $89,727.90 and also agreed to an expense reduction of $667.06 relating to meals, transportation and teleconference charges.

**3rd Application:**  The primary concern with the 3rd Application related to administrative tasks.  Cleary agreed to a reduction in compensation of $6,012.46 and also an expense reduction of $130.66 for meal and transportation costs.

**4th Application:**  The concerns with the 4th Application centered on (i) large blocks of time in drafting pleadings and deposition outlines, (ii) staffing of assignments, and (iii) multiple attendees at hearings and conferences.  After discussions with Cleary regarding the write-offs it had already taken Cleary agreed to a further reduction in compensation of $2,282.50 and expense reduction of $232.76 relating to meals.

**5th Application:**  The concerns with the 5th Application included multiple attendees at conferences and charges for services performed by a legal clerk prior to her admission to the Bar.  Cleary agreed to reductions in compensation of $12,913.65, and an expense reduction of $365.27 relating to travel and meal expenses.  In addition, the Court ordered an additional reduction of $5,533.50.  *See* Docket No. 1848.

**6th Application:**   The concerns with the 6th Application included administrative tasks, excessive research costs and multiple attendees.   Cleary agreed to a reduction in compensation of $26,704 and an expense reduction of $1,711.20 relating to audio-visual litigation support.   In addition, pursuant to an Order dated July 28, 2016, Cleary's fees were reduced an additional $123,000.   Docket No. 1969.

### Fees & Expenses Incurred and Awarded for the 2014-2016 Period

| Application | Fees Requested | Fee Reduction | Fees Awarded | Expenses Requested | Expense Reduction | Expenses Awarded |
|---|---|---|---|---|---|---|
| 1st | $1,731,746.70 | $64,738.46 | $1,667,008.24 | $36,264.53 | $1,161.54 | $35,102.99 |
| 2nd | $1,621,680.00 | $89,727.90 | $1,531,952.10 | $84,833.00 | $667.06 | $84,165.94 |
| 3rd | $640,697.40 | $6,012.46 | $634,684.95 | $8,574.10 | $130.66 | $8,443.44 |
| 4th | $1,419,417.90 | $2,282.50 | $1,417,135.40 | $77,375.86 | $232.76 | $77,143.10 |
| 5th | $831,120.30 | $12,913.65 | $812,673.15[2] | $22,977.76 | $365.27 | $22,612.49 |
| 6th | $2,312,179.65 | $26,704.00 | $2,162,475.65[3] | $192,402.38 | $1,711.20 | $190,691.18 |
| Final Interim Period | $671,357.25 | $53,901.23 | $617,456.02[4] | $36,800.68 | $1,201.88 | $35,598.80[5] |
| TOTALS | $9,228,199.20 | $256,280.20 | $8,843,385.51 | $459,228.31 | $5,470.37 | $453,757.94 |

---

[2] As noted above, the Court ordered an additional reduction of $5,533.50.  *See* Docket No. 1848.

[3] As noted above, pursuant to an Order dated July 28, 2016, Cleary's fees were reduced an additional $123,000.  Docket No. 1969.

[4] This figure assumes the Court awards the reduced amount of compensation requested for the Final Interim Period.

[5] This figure assumes the Court awards the reduced amount of expenses requested for the Final Interim Period.

**Fees Incurred for 2014-2016 Period by Project Category**

| Project Category | Hours |
|---|---|
| Settlement | 2,726.60 |
| Avoidance Action Analysis | 6.00 |
| Budgeting | 21.80 |
| Case Administration | 893.00 |
| Claims Administration and Objections | 80.00 |
| Employee Benefits and Pensions | 606.80 |
| Employment and Fee Applications | 1,499.50 |
| Litigation | 1,972.00 |
| Non-working Travel | 393.40 |
| Plan | 620.10 |
| Disclosure Statement | 661.00 |
| Tax | 194.40 |
| Asset Analysis and Recovery | 3.50 |
| Participation at and Preparation for Monitor Docket | 651.80 |
| Client Communication | 77.50 |
| Communication with Case Parties | 275.20 |
| Exclusivity | 368.30 |
| 2004 Discovery: Document Review | 0.70 |
| 2004 Discovery: Deposition and | 1,908.00 |
| 2004 Discovery: Discovery Disputes | 2,043.00 |
| Estate Claims Analysis and Research | 298.90 |
| Tax Adversary Proceeding | 1,314.30 |
| **Total** | 5.60 |
| | **16,621.40** |

**Blended Hourly Rate After Reductions:**
**$532.05 ($8,843,385.51 ÷16,621.40).**

**Recommendation:**  The Fee Examiner has no objection to an award to Cleary of (i) compensation for the Final Interim Period in the amount of $617,456.02, (ii) reimbursement of expenses for the Final Interim Period of $35,598.80, (iii) compensation for the 2014-2016 Period of $8,843,385.51, or (iv) expense reimbursement for the 2014-2016 Period of $453,757.94.

**CRANE, HEYMAN, SIMON, WELCH & CLAR**
**Local Counsel to the UAW**

**Background:**  By Order of the Court dated May 20, 2014, Docket No. 182, Crane, Heyman, Simon, Welch & Clar ("Crane") was retained effective as of May 7, 2014 (the "Crane Retention Date").  On August 26, 2016, Crane filed its fee application, Docket No. 2004 (the "Crane Application") covering the periods from (i) April 1, 2016 through August 24, 2016 (the "Final Interim Period"), and (ii) the Crane Retention Date through August 24, 2016 (the "2014-2016 Period").

Prior to filing the Crane Application, Crane filed six interim fee applications:  September 15, 2014 (the "1st Application"); January 20, 2015 (the "2nd Application"); May 12, 2015 (the 3rd Application"); September 2, 2015 (the "4th Application"); January 21, 2016 (the "5th Application"); and May 18, 2016 (the "6th Application,") and collectively, the "Previous 6 Applications").

| | | |
|---|---|---|
| **Fees and Expenses Sought Final Interim Period:** | **Fees:** | **$5,821.50** |
| | **Expenses:** | **$115.70** |
| **Fees and Expenses Sought 2014-2016 Period:** | **Fees:** | **$65,417.00** |
| | **Expenses:** | **$1,695.40** |

**Staffing:**  During the 2014-2016 Period, Crane used two attorneys with rates ranging between $295 and $495.

**Rate Increases:**  One associate's rate was increased by $5.00 per hour in 2015 and $10 per hour in 2016. One Of Counsel's rate was increased by $5.00 per hour in 2015 but not increased in 2016.  Based upon, among other reasons, (i) the associate increases are "step" increases, (ii) no partner rates were increased during the 2014-2016 Period, and (iii) the cases and Guidelines referred to in the Report, the Fee Examiner has no objection to the rate increases.

**Final Interim Period Review**:  During the Final Interim Period, Crane expended 12.1 hours and billed $5,821.50 rendering services relating to (i) the settlement agreement between the UAW and TKNA, (ii) confirmation of the plan, (iii) the Crane Application, and (iv) work regarding the VEBA.  The blended hourly

rate was $481.12.  After a review of the time records and expenses of Crane, the Fee Examiner and MWA have no objections.

**2014-2016 Period Review:**  Prior to the Crane Application, Crane filed the Previous 6 Applications.  After a review of each of the Previous 6 Applications the Fee Examiner and MWA had no objections either to the fees requested or to the expense reimbursement.  There was no duplication between Crane and Cleary, co-counsel to the UAW.

### Fees & Expenses Requested and Awarded for the 2014-2016 Period

| Application | Fees Requested | Fees Awarded | Expenses Requested | Expenses Awarded |
|---|---|---|---|---|
| 1st | $17,330.00 | $17,330.00 | $138.20 | $138.20 |
| 2nd | $11,930.00 | $11,930.00 | $81.80 | $81.80 |
| 3rd | $3,979.50 | $3,979.50 | $2.90 | $2.90 |
| 4th | $2,923.50 | $2,923.50 | $54.20 | $54.20 |
| 5th | $4,239.00 | $4,239.00 | $0.00 | $0.00 |
| 6th | $19,193.50 | $19,193.50 | $1,302.60 | $1,302.60 |
| **Final Interim Period** | $5,821.50 | $5,821.50 | $115.70 | $115.70 |
| **Total** | **$65,417.00** | **$65,417.00**[1] | **$1,695.40** | **$1,695.40**[2] |

---

[1] This assumes the Court awards the compensation requested for the Final Interim Period in full.

[2] This assumes the Court awards the expenses requested for the Final Interim Period in full.

**Fees Incurred for 2014-2016 Period by Project Category[3]**

| CATEGORY | HOURS | FEES |
|---|---|---|
| Administration | 19.1 | $8,024.00 |
| Fee Applications | 17.0 | $7,973.00 |
| Discovery | 20.6 | $9,027.00 |
| TKNA Settlement Agreement | 1.5 | $742.50 |
| Plan & Disclosure Statement | 30.6 | $13,879.50 |
| Asbestos | 0.2 | $99.00 |
| Section 1114 and Other Contested Matters | 52.6 | $24,434.50 |
| VEBA Motion | 2.5 | $1,237.50 |
| **TOTALS:** | **144.5** | **$65,417.00** |

**Blended Hourly Rate for 2014-2016 Period:  $452.71 ($65,417.00 ÷ 144.5)**

**Recommendation:**  The Fee Examiner has no objection to an award to Crane of (i) compensation for the Final Interim Period in the amount of $5,821.50 and expenses of $115.70, (ii) compensation for the 2014-2016 Period of $65,417.00, or (iii) expense reimbursement for the 2014-2016 Period of $1,695.40.

---

[3] These categories and figures were derived from the Previous 6 Applications and the Crane Application because this type of summary was not provided in the Crane Application.

**MILLCO ADVISORS, LP**
**Financial Advisor to the UAW**

**Background:**  By Order of the Court dated May 9, 2014, Docket No. 148, Millco Advisors, LP ("Millco") was retained effective as of April 30, 2014 (the "Millco Retention Date").  On August 26, 2016, Millco filed its fee application, Docket No. 2006 (the "Millco Application"), covering the periods from (i) April 1, 2016 through August 1, 2016 (the "Final Interim Period"), and (ii) the Millco Retention Date through August 1, 2016 (the "2014-2016 Period").

Prior to filing the Millco Application, Millco filed six interim fee applications:  September 15, 2014 (the "1st Application"); January 20, 2015 (the "2nd Application"); May 14, 2015 (the 3rd Application"); August 28, 2015 (the "4th Application"); January 19, 2016 (the "5th Application"); and May 16, 2016 (the "6th Application, and collectively, the "Previous 6 Applications").

| **Fees and Expenses Sought Final Interim Period:** | **Fees:** | **$705,645.16** |
| | **Expenses:** | **$0.00** |
| | | |
| **Fees and Expenses Sought 2014-2016 Period:** | **Fees:** | **$4,211,478.50[1]** |
| | **Expenses:** | **$3,527.09** |

**Retention Order:**  As noted above, Millco was retained effective as of April 30, 2014 under 11 U.S.C. § 328 (the "Millco Order") at a flat monthly fee of $175,000.00.

The Millco Order provided, among other things, that:

> [Millco] shall apply for compensation for professional services rendered and reimbursement of expenses incurred  in connection with its professional  services for  the UAW in the Debtor's chapter 11 case in compliance with section 328(a) of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules and any other  applicable procedures  and orders of the Court except that [Millco] personnel may keep  their time as set forth in the Application in one hour (1.0) increments.

---

[1] This figure gives effect to the $525,000.00 voluntary reduction referred to in the Millco Application.

The Debtor shall pay [Millco] its flat amount, and shall reimburse Millstein & Co. for reasonable and necessary expenses (as provided for in the Engagement Letter), incurred on and after April 30, 2014.

Notwithstanding the preceding paragraph of this Order and any provision to the contrary in the Application or the Engagement Letter, the U.S. Trustee shall have the right to object to [Millco's] request(s) for interim and final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code; provided, however, that "reasonableness" shall not be evaluated primarily on an hourly basis.

**Staffing:**  During the 2014-2016 Period, the Millco professionals primarily responsible for work on this case consisted of one Partner, two Associates and one Analyst.  These four professionals accounted for more than 92% of the hours expended during the 2014-2016 Period.  Because Millco was paid on a flat monthly fee basis, there are no hourly rates ascribed to the professionals. However, using the number of hours worked during the 2014-2016 Period (2,483), divided into the fees requested for the 2014-2016 Period ($4,211,478.50), the imputed blended hourly rate is $1,696.13.

**Rate Increases:**  Millco did not raise its flat monthly rate during the 2014-2016 Period.

**Accommodation:**  As noted above, Millco has reduced its request for compensation for the 2014-2016 Period by $525,000.00.

**Final Interim Period Review**:  During the Final Interim Period, Millco expended 60 hours and billed $705,645.16 rendering services primarily relating to (i) the settlement with TKNA incorporated into the Plan, (ii) matters relating to fee applications, and (iii) post-Effective Date matters.  After a review of the Millco Application, MWA advised Millco of certain errors in the figures used in the Millco Application.  Since that time, Millco has filed a supplement correcting these errors.  In addition, MWA and the Fee Examiner requested that Millco reduce its request by the $5,645.16 it charged as a pro-rated flat fee for one day in August.  Millco agreed to this reduction.

**2014-2016 Period Review:**  Prior to the filing of the Millco Application, Millco filed the Previous 6 Applications.  Each of the Previous 6 Applications was reviewed by MWA and the Fee Examiner.  Because of the fixed-fee approved in the Millco Order, the Fee Examiner and MWA closely monitored the services performed by Millco and obtained substantially increased holdbacks so that the total compensation could be

reexamined at the end of the case when the results of the efforts of Millco could be assessed. In addition, (i) a reduction in compensation of $5,833.33 was obtained due to a calculation error in the 1st Application, (ii) as noted above, a reduction of $5,645.16 has been agreed to for the Final Interim Period, and (iii) aggregate reductions of $637.49 for expenses were obtained for the 1st Application and the 2nd Application.

| Application | Fees Earned at the Flat Rate | Holdback Amount | Fee Reductions | Fees Awarded | Expenses Requested | Expense Reduction | Expenses Awarded |
|---|---|---|---|---|---|---|---|
| 1st | $536,666.67 | $0.00 | $5,833.33 | $530.833.34 | $2,888.72 | $466.65 | $2,422.07 |
| 2nd | $700,000.00 | $105,000 | $0.00 | $595,000.00 | $1,023.86 | $170.84 | $853.02 |
| 3rd | $700,000.00 | $420,000 | $0.00 | $280,000.00 | $0.00 | $0.00 | $0.00 |
| 4th | $700,000.00 | $270,000 | $0.00 | $430,000.00 | $252.00 | $0.00 | $252.00 |
| 5th | $700,000.00 | $490,000 | $0.00 | $210,000 | $0.00 | $0.00 | $0.00 |
| 6th | $700,000.00 | $617,000 | $0.00 | $83,000.00 | $0.00 | $0.00 | $0.00 |
| Final Interim Period | $705,645.16 | $0.00 | $5,645.16 | $700,000.00 | $0.00 | $0.00 | $0.00 |

For the 2014-2016 Period Millco now seeks payment of all of the holdbacks, less the accommodation it has offered to this client of $525,000, less $5,645.16 for the Final Interim Period, for a total compensation request of $4,211,478.50 and reimbursement of expenses of $3,527.09.

Based upon (i) the information set forth in the Millco Application, including its efforts regarding Waupaca, (ii) the $525,000 accommodation Millco has given its client, (iii) the terms of the Millco Order, and (iv) the cases cited in the Report, the Fee Examiner has no objection to the compensation requested by Millco.

## Fees Incurred for 2014-2016 Period by Project Category

| CATEGORY | HOURS |
|---|---|
| General Due Diligence | 256 |
| Settlement Analysis | 683 |
| Tax | 78 |
| Communications & Presentations | 759 |

| Client Recovery | 16 |
|---|---|
| Deposition Preparation | 244 |
| Review of Documents | 279 |
| Case Administration | 134 |
| Effective Date Closing Matters | 34 |
| **TOTAL** | **2,483** |

**Recommendation:** The Fee Examiner has no objection to an award to Millco of (i) compensation for the Final Interim Period in the amount of $700,000.00, (ii) compensation for the 2014-2016 Period of $4,211,478.50, or (iii) expense reimbursement for the 2014-2016 Period of $3,527.09.

**MILLIMAN, INC.**
**Actuary to the UAW**

**Background:**  By Order of the Court dated June 16, 2014, Docket No. 238, Milliman, Inc. ("Milliman") was retained effective as of May 7, 2014 (the "Milliman Retention Date").  On August 29, 2016, Milliman filed its fee application, Docket No. 2021 (the "Milliman Application"), covering the periods from (i) April 1, 2016 through July 31, 2016 (the "Final Interim Period"), and (ii) the Milliman Retention Date through July 31, 2016 (the "2014-2016 Period").

Prior to filing the Milliman Application, Milliman filed 5 applications:  September 17, 2015 (the "1st Application"); January 20, 2015 (the "2nd Application); September 2, 2015 (the "3rd Application"); January 19, 2016 (the "4th Application"); and May 16, 2016 (the "5th Application," and collectively, the "Previous 5 Applications").

**Fees and Expenses Sought Final Interim Period:**     **Fees:**     **$49,569.25**
                                                       **Expenses:**  **$1,550.24**

**Fees and Expenses Sought 2014-2016 Period:**     **Fees:**     **$240,671.40**
                                                   **Expenses:**  **$6,096.94**

**Staffing:**  During the 2014-2016 Period, Milliman used analysts and actuaries with rates ranging between $185 and $615.  There appeared to be no overstaffing by Milliman and professionals with the required expertise were used appropriately.

**Rate Increases:**  Milliman raised its rates in January 2015 and January 2016.  The Milliman Application ¶ 19 states that its client, the UAW, was aware of these rate increases and approved them.  Those with the highest hourly rates, principals, did not have their rates increased.  Milliman calculates that the increases added $415.00 to the amount it otherwise would have charged the estate had the increases not been implemented.  Based upon (i) the information contained in ¶ 19 of the Milliman Application, and (ii) the cases and Guidelines referred to in the Report, the Fee Examiner has no objection to these rate increases.

**Final Interim Period Review**:  During the Final Interim Period, Milliman expended 106.85 hours and billed $49,569.25 rendering services relating to Retiree Health Benefits including, but not limited to, (i) analyses of

the Debtor's pension obligations and healthcare and other benefits, and (ii) development and analysis of multiple alternative medical plan designs. The blended hourly rate was $463.91. After a review of the time records and expenses of Milliman, the Fee Examiner and MWA had no objection.

**2014-2016 Period Review:**  Prior to the filing of the Milliman Application, Milliman filed the Previous 5 Applications. After a review of each of the Previous 5 Applications, and after certain time records were supplemented or explained, the Fee Examiner and MWA had no objections to the fees requested. There was a minor reduction of $4.12 to the expense request in the 2nd Application.

**Fee and Expenses Requested and Awarded for the 2014-2016 Period**

| Application | Fees Requested | Fee Reductions | Fees Awarded | Expenses Requested | Expense Reductions | Expenses Awarded |
|---|---|---|---|---|---|---|
| 1st | $56,676.25 | $0.00 | $56,676.25 | $0.00 | $0.00 | $0.00 |
| 2nd | $37,562.65 | $0.00 | $37,562.65 | $4.12 | $4.12[1] | $0.00 |
| 3rd | $3,801.25 | $0.00 | $3,801.25 | $0.00 | $0.00 | $0.00 |
| 4th | $33,938.25 | $0.00 | $33,938.25 | $0.00 | $0.00 | $0.00 |
| 5th | $59,123.75 | $0.00 | $59,123.75 | $4,542.58 | $0.00 | $4,542.58 |
| Final Interim Period | $49,569.25 | $0.00 | $49,569.25 | $1,550.24 | $0.00 | $1,550.24 |
| **TOTAL** | **$240,671.40** | **$0.00** | **$240,671.40** | **$6,096.94** | **$4.12** | **$6,092.82** |

**Fees Incurred for 2014-2016 Period by Project Category**

| CATEGORY | HOURS | FEES |
|---|---|---|
| Pensions | 66.25 | $25,671.25 |
| Retiree health benefits | 541.28 | $214,538.90 |
| Attendance at Hearings | 0.75 | $461.25 |
| **TOTALS:** | **608.28** | **$240,671.40** |

---

[1] The Milliman Application fails to take into account the $4.12 reduction in expenses in the 2nd Application. Accordingly, the total amount of expenses to be reimbursed is $6,092.82 not the $6,096.94 as stated in the Milliman Application.

**Blended Hourly Rate for 2014-2016 Period:  $395.66 ($240,671.40 ÷ 608.28)**

**Recommendation:**  The Fee Examiner has no objection to an award to Milliman of (i) compensation for the Final Interim Period in the amount of $49,569.25 and expenses of $1,550.24, (ii) compensation for the 2014-2016 Period of $240,671.40, or (iii) expense reimbursement for the 2014-2016 Period of $6,092.82.

# EXHIBIT D

## THE ASBESTOS CLAIMANT COMMITTEE PROFESSIOANLS

**FRANKGECKER LLP**
**Counsel to the Asbestos Committee**

**Background:** By Order of the Court dated August 22, 2014, Docket No. 425, FrankGecker LLP ("FGLLP") was retained effective as of July 30, 2014 (the "FGLLP Retention Date"). On August 29, 2016, FGLLP filed its fee application, Docket No. 2016 (the "FGLLP Application"), covering the periods from (i) April 1, 2016 through August 1, 2016 (the "Final Interim Period"), and (ii) the FGLLP Retention Date through August 1, 2016 (the "2014-2016 Period").

Prior to filing the FGLLP Application, FGLLP filed five previous fee applications: January 20, 2015 (the "1st Application"); May 15, 2015 (the "2nd Application"); September 4, 2015 (the "3rd Application"); January 19, 2016 (the "4th Application"); and May 16, 2016 (the "5th Application," and collectively, the "Previous 5 Applications").

| **Fees and Expenses Sought Final Interim Period:** | Fees: | $221,391.00 |
| | Expenses: | $7,704.00 |
| **Fees and Expenses Sought 2014-2016 Period:** | Fees: | $1,330,255.50 |
| | Expenses: | $23,709.93 |

**Staffing:** During the 2014-2016 Period, FGLLP generally billed for the services of two partners, one Of Counsel, one or two associates and one or two paralegals. Most of the services were performed by the associate with the lowest rate and the paralegals.

**Rate Increases:** FGLLP raised its rates on January 1, 2015 for one Associate and one Of Counsel, with the Associate increase being a "step increase." On January 1, 2016, FGLLP raised its rates for two partners, and two Associates with the latter increases again being "step increases." The FGLLP Application states that FGLLP received prior approval of its rate increases from its client. Excluding the step increases, had FGLLP not raised its rates, the aggregate amount of compensation requested would have been $16,185.00 less, an approximate increase of 1.22 % over the two-year period. Taking into account (i) the accommodations noted below, (ii) the other information contained in the FGLLP Application, and (iii) the cases and Guidelines referred to in the Report, the Fee Examiner has no objection to these rate increases.

**Accommodation for the Final Interim Period:**  FGLLP provided its client with a voluntary fee reduction of $3,057.

**Accommodation for the 2014-2016 Period:**  FGLLP provided its client with voluntary fee reductions of $20,866.50 during the 2014-2016 Period.

**Final Interim Period Review**:  During the Final Interim Period, FGLLP expended 523.1 hours and billed $221,391.00 for a blended hourly rate of $423.23. FGLLP rendered services primarily relating to (i) the Plan and Disclosure Statement, (ii) meetings and communications with it clients, and (iii) negotiating an increase in the amount for its Uninsured Asbestos Claim Fund.  After a review of the time records, the Fee Examiner had no objection to the compensation requested.  The Fee Examiner did request supporting documentation for an expense of $1,582 for Outside Photocopy/Data Services, which she reviewed and had no objection to the request for reimbursement of expenses.

**2014-2016 Period Review**:  Prior to filing the FGLLP Application, FGLLP filed the Previous 5 Applications. The Fee Examiner reviewed each of the Previous 5 Applications and obtained reductions for, among other things, (i) transitory timekeepers, (ii) overstaffing, (iii) fees relating to supplementing a fee application, and (iv) a fee reduction for the fees incurred by a student law clerk.  No expense reductions were requested.

**2014-2016 Period Review:  Fees and Expenses Requested and Awarded**

| Application | Fees Requested | Fee Reduction | Fees Awarded | Expenses Requested | Expense Reduction | Expenses Awarded |
|---|---|---|---|---|---|---|
| 1st Application | $188,718.00 | $4,349.00 | $178,283.00[1] | $2,253.80 | $0.00 | $2,253.80 |
| 2nd Application | $165,974.00 | $1,451.00 | $164,523.00 | $3,676.07 | $0.00 | $3,676.07 |
| 3rd Application | $106,221.50 | $2,490.00 | $103,730.50 | $223.60 | $0.00 | $223.60 |
| 4th Application | $168,615.00 | $0.00 | $168,615.00 | $3,142.14 | $0.00 | $3,142.14 |
| 5th Application | $501,913.00 | $8,200.00 | $493,713.00 | $6,710.32 | $0.00 | $6,710.32 |

[1] The Fee Examiner obtained a reduction of $4,349.00.  The Court ordered an additional reduction of $9,283.00, Docket No. 806, and later ordered an increase of $3,197, Docket No. 849 (the "Increase Order").  Thus, $188,718-$4,349 - $9,283+ $3,197 = $178,283.00.

| Final Interim Period | $221,391.00 | $0.00 | $221,391.00 | $7,704.00 | $0.00 | $7,704.00 |
| **Totals:** | **$1,352,832.50** | **$16,490.00** | **$1,330,255.50[2]** | **$23,709.93** | **$0.00** | **$23,709.93[3]** |

### Fees Incurred for 2014-2016 Period by Project Category[4]

| CATEGORY | HOURS |
|---|---|
| Asbestos Liability Analysis | 145.3 |
| Asset Analysis & Recovery | 103.5 |
| Budgeting | 6.5 |
| Case Administration including Communications, Court Appearances, Review of Pleadings | 203.3 |
| Claims Administration & Objections | 365.1 |
| Employment & Fee Applications & Supplements | 373.1[5] |
| Insurance Litigation | 688.0 |
| District Court Litigation, Stay Litigation | 300.9 |
| Corporate Affiliate Litigation | 56.9 |

[2] The Fee Examiner believes that the figure of $1,105,667.50 of compensation awarded to date shown on the Summary Sheet of the FGLLP Application is incorrect, in that it fails to include the additional $3,197 provided for in the Increase Order. Thus, the figure should be $1,108,864.50 which, when the fees for the Final Interim Period of $221,391.00 are added in, if awarded in full, the aggregate amount of compensation paid to FGLLP will be $1,330,183.50.

[3] Assuming the expenses requested for the Final Interim Period are awarded in full.

[4] These figures were derived from Exhibits B and F to the (i) FGLLP Application, and (ii) the Previous 5 Applications.

[5] FGLLP prepared the fee applications for itself and for LAS. LAS did not charge the estate for preparation of fee applications.

| Settlement Increase Litigation | 49.6 |
|---|---|
| Meetings & Communications with Creditors | 368.3 |
| Plan & Disclosure Statement | 474.8 |
| **Total Hours:** | **3,135.30** |

**Blended Hourly Rate for 2014-2016 Period After Reductions:
$424.28 ($1,330,255.50 ÷ 3,135.3).**

**Recommendation:**  The Fee Examiner has no objection to an award to FGLLP of (i) compensation for the Final Interim Period in the amount of $221,391.00 and expenses of $7,704.00, (ii) compensation for the 2014-2016 Period of $1,330,255.50 or (iii) expense reimbursement for the 2014-2016 Period of $23,709.93.

**LEGAL ANALYSIS SYSTEMS, INC.**
**Asbestos Liability Consultant to the Asbestos Claimants Committee**

**Background:**  By Order of the Court dated October 17, 2014, Docket No. 617, Legal Analysis Systems, Inc. ("LAS") was retained effective as of July 30, 2014, (the "LAS Retention Date").  LAS filed its fee application August 29, 2016, Docket No. 2017 (the "LAS Application") covering the periods from the LAS Retention Date through March 31, 2016 (the "2014-2016 Period").

Prior to filing the LAS Application, LAS filed three fee applications:  September 1, 2015 (the "1st Application"); January 19, 2016 (the "2nd Application"); and May 16, 2016 (the "3rd Application," and collectively the "Previous 3 Applications").

No fees or expenses were incurred between April 1, 2016 and July 31, 2016 (the "Final Interim Period").

**Fees and Expenses Sought Final Interim Period:**     None

**Fees and Expenses Sought 2014-2016 Period:**     Fees:     $50,436.00
                                                                                    Expenses:  $0.00

**Staffing:**  During the 2014-2016 Period, LAS used only two professionals:  one Behavioral Scientist/Lawyer ($800/hour) and one Statistician ($540/hour).

**Rate Increases:**  There were no rate increases during the 2014-2016 Period.

### Fees and Expense Requested and Awarded for the 2014-2016 Period

| Application | Fees Requested | Fees Awarded | Expenses Requested | Expenses Awarded |
|:---:|:---:|:---:|:---:|:---:|
| 1st Application | $11,360 | $11,360 | $0.00 | $0.00 |
| 2nd Application | $23,372 | $23,372 | $0.00 | $0.00 |
| 3rd Application | $15,704 | $15,704 | $0.00 | $0.00 |
| **Total:** | **$50,436** | **$50,436** | **$0.00** | **$0.00** |

**Fee Incurred for 2014-2016 Period by Project Category**

| CATEGORY | HOURS | FEES |
|---|---|---|
| Claims Analysis | 27.9 | 19,408 |
| Claims Forecast | 33.2 | $22,946 |
| Prepare/Attend Meetings/Calls | 11.5 | $8,082 |
| **Totals:** | **72.6** | **$50,436** |

**Blended Hourly Rate:  $694.71 ($50,436 ÷ 72.6)**

LAS did not charge the estate for the preparation or review of its monthly statements or fee applications or for providing additional information requested by the Fee Examiner.  As noted in the FGLLP report, FGLLP prepared the fee applications for LAS.

After her review of the Previous 3 Applications, the Fee Examiner requested supplemental information.  After the additional information was provided and reviewed, the Fee Examiner had no objections to the request for interim compensation.

**Recommendation:**  The Fee Examiner has no objection to an award to LAS of final compensation in the amount of $50,436.00.